**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC,<br><br>PLAINTIFF,<br><br>V.<br><br>SOUTH UNIVERSITY OF OHIO, LLC, *et al.*,<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:19-cv-145<br><br>JUDGE |

**EMERGENCY MOTION FOR THE APPOINTMENT OF A RECEIVER AND ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff, Digital Media Solutions ("DMS") through counsel, respectfully moves this Court to appoint a receiver ("Receiver") to oversee the affairs of Defendants South University of Ohio, LLC and Dream Center Education Holdings, LLC ("DCEH"), and DCEH's assets, specifically: its direct subsidiaries The DC Art Institute of Raleigh-Durham LLC, The DC Art Institute of Charlotte LLC, DC Art Institute of Charleston LLC, DC Art Institute of Washington LLC, The Art Institute of Tennessee – Nashville LLC, AiTN Restaurant LLC, The Art Institute of Colorado LLC, DC Art Institute of Phoenix LLC, The Art Institute of Portland LLC, The Art Institute of Seattle LLC, The Art Institute of Pittsburgh, DC LLC, The Art Institute of Philadelphia, DC, LLC, DC Art Institute of Fort Lauderdale LLC, The Illinois Institute of Art LLC, The Art Institute of Michigan LLC, The Illinois Institute of Art at Schaumberg LLC, DC Art Institute of Phoenix, LLC and its direct subsidiaries the Art Institute of Las Vegas LLC, the Art Institute of Indianapolis, LLC, and AiIN Restaurant LLC; Dream Center Argosy University of California LLC and its direct subsidiaries, Argosy Education Group LLC and AU Student Funding, LLC; Dream Center Education Management LLC; and, South University of Michigan

LLC (collectively "DCEH and its subsidiaries"), and for the entry of a temporary restraining order and preliminary injunction and states as follows:

**INTRODUCTION**

DMS, founded by a team of lifelong athletes, specialized in helping is clients accelerate their growth by deploying diversified and data-driven digital media customer acquisition solutions. DMS provided those services generally, and student lead generation specifically, to DCEH's Argosy, South, and Art Institute campuses through the course of 2018. It invoiced those three school systems for a total of $252,737.00, which remains unpaid. Of that sum, $187,532 was invoiced to South.

DMS understands that DCEH and its subsidiaries are very likely insolvent, and face claims from a variety of creditors including a pending eviction action filed against the South University of Ohio campus located in Warrensville Heights, Ohio. DMS understands that DCEH and its subsidiaries work within a highly regulated industry and the concern is that their insolvency could lead to their ineligibility to continue receiving Title IV funds, which would destroy the enterprise value of the company in short order, leaving it unlikely that DMS or any of the other creditors would recover much, if any, of the sums due them.

However, while DCEH and the schools it continues to own (the "Universities") face the within lawsuit for breach collection of a debt due to DMS, and more suits to follow across the country, they operate in a highly regulated industry and cannot simply cease operations and file for protection under the bankruptcy code. DMS understands that a bankruptcy filing would render SUO, DCEH and the Universities ineligible to receive the principal source of their revenues: federal grants and student loans provided under the Higher Education Act of 1965 (the "Act"), 20 U.S.C. §1001 et seq. In order to qualify and receive such funding under the Act,

DCEH and the Universities must be "eligible institution[s]" which is defined, in part, as an institution that has not filed for bankruptcy. 20 U.S.C. §1002(a)(4)(A); 34 C.F.R. § 600.7 (a)(2). As a result of this statutory impediment, and as a means of protecting and preserving any going concern value associated with the Universities, DCEH and the Universities should be placed into receivership in a forum that maintains the requisite equitable powers that will serve to protect dozens of campuses, thousands of students, Defendants assets and their stakeholders, DMS included.

Just as a bankruptcy will destroy the enterprise value of DCEH and the Universities, simply closing campuses overnight will do the same. DMS understands that a particular campus can close only once its students have completed their program of study or been placed at another institution to complete their program (a process commonly called a "teach-out"). The "teach-out" process itself is a highly regulated process involving the submission of a proposed plan to the United States Department of Education ("DOE") as well as academic accreditors for review and possible approval. As discussed in detail below, the immediate closure of a campus, which forecloses the ability of existing students to complete their courses of study, triggers certain fatal ramifications with accreditors that ultimately result in the cessation of federal funding. Students are then left without the classes for which they registered, and ineligible for federal funding to pay for those classes. Absent that funding, DCEH and the Universities will lack the funds to pay DMS and the other creditors.

While it would be best to close the Teach-out Schools on an orderly basis, DMS understands that the DOE limited SUO's ability to pay its creditors. Payments to some vendors were specifically not deemed to be allowable teach-out expenses. Compounding the difficulties faced by SUO are a series of restructuring actions negotiated between the secured creditors

DCEH and its school systems with input by the U.S. Department of Education in December of 2018 and early January 2019, which has resulted in an interruption of the flow of federal funds to SUO, DCEH and the Teach-Out Schools.

The Universities' dire financial condition has resulted in this Plaintiff seeking to enforce its remedies following the DCEH and the Universities' default of their obligations to pay for the services DMS provided them.[1] DMS understands that DCEH and the Universities are on the precipice of a landslide of adverse actions filed by landlords, other creditors and vendors, and our in default with certain commercial lenders (the "Secured Lenders") that hold security interests in the assets of SUO and the other Universities. DMS believes that adverse action against the Universities and the cascading shutdowns will trigger the termination of funding by the DOE and loss of accreditation by applicable accreditation agencies with jurisdiction over the Universities. The inevitable result will be the termination or a substantial disruption in the students' ability to continue and then complete their respective courses of study, the diminution of the value of the DCEH and Universities' assets, and significant harm to all stakeholders including the taxpayers who will bear the financial brunt of the forgiven student loans.

If allowed to proceed in an orderly fashion, the Universities will follow the teach-out protocols to end operations at the Teach-out Schools, thereby protecting the stakeholders, including creditors such as DMS, the students, and the taxpayers. DMS has also been led to

---

[1] DMS notes that the media has also picked up on these issues. In article published in the Pittsburgh Post-Gazette on January 14, 2019, the author noted "The Dream Center Education Holdings is 'at risk of becoming financially insolvent and is now working with the United States Department of Education to reorganize AI Seattle and the existing Art Institute Campuses to preserve their ongoing operations.' . . . The apparently dire financial situation could be one reason the schools have faced pushback from accreditors over the last year." Daniel Moore, *Dream Center plans pullout from most Art Institute Campuses*, Pittsburgh Post-Gazette, 2019, available at https://www.post-gazette.com/business/career-workplace/2019/01/14/Dream-Center-Education-Holdings-bankruptcy-reorganize-Art-Institutes-campuses-EDMC-accreditation/stories/201901140087 (last visited January 17, 2019).

believe that DCEH is also actively negotiating with a number of buyers to sell those schools that will remain (the "Go-forward Schools").

DMS is therefore faced with two possibilities: one in which a cascade of creditor suits against DCEH and the Universities proceed unchecked and thereby spark a mass lock out of all students and faculty of the Universities and the accordant diminution of value for their creditors, DMS included; or, one in which a Receiver is appointed and given the requisite authority under the supervision of this Court in order to proceed with the appropriate teach-outs, which will include SUO and its students, and the controlled sales of the Go-forward Schools to protect the rights of students, faculty, and to maximize the going concern value of the assets to be sold for the benefit of creditors.

**ARGUMENT**

**1. The Standard for Appointment of a Receiver.**

As this Court is aware, there is no bright line rule regarding the appointment of a receiver. Rather, there are a number of elements to be considered:

> Although there is no precise formula for determining when a receiver may be appointed, factors typically warranting appointment are a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm.
>
> *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-317 (8th Cir.1993), *see also BMW of N. Am., LLC v. CJM Automotive II, LLC*, N.D. Ohio No. 1:17CV2688, 2018 U.S. Dist. LEXIS 112982 (Apr. 26, 2018).

The first factor to be considered – the probability that fraudulent conduct has occurred or will occur – must yield in the face of the dire financial circumstances facing the parties and the Universities' students. *United States Bank Natl. Assn. v. Nesbitt Bellevue Property LLC*, 866

F.Supp.2d 247 (S.D.N.Y.2012) (finding that courts appoint receivers in the absence of fraud when there is imminent danger of the diminution of value of the properties), *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc.*, 550 F.Supp.2d 481, 491 (S.D.N.Y.2008) (noting that the "Court has appointed receivers even where there was no evidence of fraud," when there are dire financial stresses that cause a meaningful risk of the loss of the asset value and a deprivation of the creditors' ability to collect the sums due). Thus, the second factor to be considered – the imminent danger of the diminution of assets – is clearly at issue in this matter. DCEH's dire financial status has been discussed in detail above. The appointment of a receiver and issuance of a restraining order will prevent a number of the Universities' campuses from being locked by zealous landlords, leaving the students stranded and without recourse. The receiver and restraining order will also allow for the appropriate teach-outs to be concluded and the assets liquidated in an orderly fashion, thereby maximizing their value and promoting the best recovery for DMS and the other creditors.

The third factor – the inadequacy of legal remedies – also weighs in favor of appointing a receiver. First and foremost, a bankruptcy is not an option, for the reasons discussed above. In the absence of a bankruptcy, which would bring all claims into a single forum to be addressed in an organized fashion, SUO, DCEH and the Universities would be forced to fight each landlord's eviction efforts and each creditor's collection efforts on a piecemeal basis. The result of the piecemeal litigation would be the irreparable and immediate damage caused to the value of the entire enterprise. DCEH will, for obvious reasons, not be able to sell one of the university systems if that system has lost a campus and is facing claims not only from its creditors but the aggrieved students who lost their school programming in the midst of a semester. The single best solution is therefore the broad application of the Court's equitable powers to the entire

enterprise. It can also oversee the orderly teach-out and liquidation of assets remaining on the newly closed campuses and supervise and ultimately approve the sale of the Go-forward Schools as going concerns.

The fourth factor – less drastic equitable remedies – also weighs in favor of a receivership. Each school within the University system is either its own independent LLC wholly owned by DCEH or a trade name used by DCEH. Thus, while DCEH maintains exclusive control over each campus, roughly half of those campuses are themselves independent legal entities. Appointing a receiver over each one of the campuses would be both impractical and inefficient.

The final factor - whether the appointment of a receiver will do more good than harm – obviously weighs in favor of a receivership. While a bankruptcy would provide a single, efficient, coordinated forum to resolve all of the disputes that surround the Universities, it is simply not an option. The receivership would serve as an alternative to a bankruptcy proceeding – allowing for the protection of the assets and operations of all Universities and provide for a coordinated and efficient resolution of the Teach-out Schools, continuing operation and sale of the Go-forward Schools, and preservation of the assets, allowing the Universities to reorganize and cause the least impact in the process. A receivership avoids the likelihood of individual campuses being shuttered mid-semester, leaving thousands of students without a place to attend the classes and pursue their degrees, and without a clear transition to another school's program that would accept them and allow them to proceed toward graduation. A receivership avoids the immediate destruction of the value of the Universities and allows them to be sold free and clear of claims from aggrieved creditors and students. The single harm of a receivership – a short delay in the creditors collecting sums due – is more than outweighed by the preservation of the

value of the assets and the accordant likelihood that the creditors will collect more through the course of a receivership than they would through individual actions scattered throughout the country.

**2. Emergency TRO and Preliminary Injunctive Relief**

The standard for granting either a temporary restraining order ("TRO") or preliminary injunctive relief is the same. A TRO and preliminary injunction are warranted, pursuant to Federal Rule of Civil Procedure 65, upon the demonstration that: (1) DMS has a substantial likelihood of success on the merits; (2) DMS will suffer irreparable injury if the injunction is not granted; (3) an injunction will not substantially injure other interested parties; and (4) an injunction will further the public interest. *Sony/ATV Publ'g, Ltd. Liab. Co. v. Marcos*, 651 F.App'x 482 (6th Cir.2016).

The requested relief is warranted herein because (a) there is a strong likelihood that DMS will succeed on the merits of its very simple breach of contract / suit on account / unjust enrichment claims; (b) absent the Court's appointment of a receiver, the pending eviction actions scattered across the country will result in the prompt loss of accreditations and eligibility for Title IV funding, resulting in both the creditors' inability to recover the sums due and the students' loss of time and energy devoted to pursuing their educational goals; (c) it is necessary to prevent a race to DCEH and the Universities' assets, to enjoin eviction proceedings, and to prevent a disruption of the highly regulated teach-out process; (d) the appointment of a receiver will cause DMS and other creditors to suffer less harm than they would absent a receiver; and (e) the public interest weighs heavily in favor of appointing a receiver to permit DCEH and the Universities to continue their educational mission for the benefit of their students, and to

facilitate an equitable distribution of DCEH and its subsidiaries' assets for the benefit of their creditors.

Creditors have no alternative legal remedy since seeking protection in a traditional bankruptcy filing is simply not an option because a bankruptcy filing would immediately and permanently render the Universities ineligible to participate in federal student aid programs authorized by the Higher Education Act. If SUO, or any of the Universities filed for bankruptcy protection, or were subjected to an involuntary bankruptcy filing, their students would lose access to the federal grants and loans necessary to pay their tuition and fees and face the immediate disruption of their educational goals, challenges of transferring credits, delays in obtaining their sought after accredited degrees, and an inability to access Title IV funds to cover immediate living expenses, such as rent, groceries, daycare expenses, etc. A single federal receivership over this collective proceeding would allow DCEH and its subsidiaries to address these actions in a coordinated, consolidated fashion through application of 28 U.S.C. §754 and 28 U.S.C. §1692.

DMS is a business and, as such, dedicated to providing high quality services for a reasonable cost. It cannot, however, provide its services for free. While the Universities may not have thrived, that failure was not the result of DMS' inability to provide valuable student leads and DMS has every intent of collecting as much of its receivables due from DCEH and the Universities as possible. But, and that said, DMS is not ignorant of the fact that the appointment of the Receiver, along with a TRO and Preliminary Injunction will enable SUO, DCEH, and its subsidiaries to, *inter alia*, satisfy their educational obligations to thousands of students at the Teach-out Schools, preserve the educational futures of students at the Go-forward Schools, stabilize the employment of DCEH and its subsidiaries' thousands of employees, prevent many

tens of millions of loss to the Treasury in the form of student loan discharge obligations (which would be borne by taxpayers), provide significant adequate assurance to numerous landlords, and allow for an orderly transition of DCEH and its subsidiaries' operations through a sale and restructuring plan. On the other hand, if the requested receivership relief is not granted, students at both Teach-out and Go-forward Schools will see their educational plans disrupted, if not altogether eliminated, all of DCEH and its subsidiaries' thousands of employees will be terminated, the taxpayer-supported Treasury will be burdened with millions of dollars of discharge obligations, and DMS will recover a fraction of what it would recover through the course of a receivership.

DMS also notes that public policy greatly favors protecting the Universities' students. The student population largely comprises nontraditional students, including unemployed or underemployed adults seeking to obtain job skills in order to find employment or change careers. The immediate appointment of the Receiver and the entry of an Order restraining and enjoining other claims will ensure that DCEH and the Universities are able to fulfill the mission of educating students without the unnecessary disruption of those students' educational plans.

**3. The Recommended Receiver.**

DMS requests that the Court appoint Mark Dottore, of Dottore Companies, LLC, as Receiver for the within matter. Mr. Dottore is uniquely qualified for the position of receiver. Putting aside his more than thirty years of management, business, and financial experience, and the fact that he has been regularly appointed as a receiver by the Cuyahoga County Court of Common Pleas as a receiver since 1982, by the Cuyahoga County Court of Common Pleas Domestic Relations Division since 2000, and the U.S. District Court of the Northern District of Ohio since 2004, there are two principal reasons Mr. Dottore is particularly well qualified to

serve as Receiver over the assets of SUO, DCEH, and the Universities. First, he has experience serving as a special master for a distressed university: Myers University. Myers was in dire financial straits in late 2007, and was on the verge of closing its doors, causing the costly and substantial disruption in the educational plans of the students, and placing hundreds of jobs and millions of dollars in governmental educational bonds at risk. The school's accreditation was also in jeopardy, leaving the credits earned by thousands of students potentially worthless. Mr. Dottore was appointed Special Master with the powers of a receiver in an effort to stabilize, then liquidate, the university. Working within the strict regulatory confines of a school of higher education, he was successful in securing a Title IV funding program, which he implemented along with immediate cost reductions. The restructured finances allowed the University to remain open and to continue serving its student population. Once the immediate risk of closure was past, Mr. Dottore identified transitional leadership and twelve possible suitors to buy the university, and then negotiated and oversaw a sale to the highest bidder, who had promised to maintain the integrity of the School's structure and mission. He also oversaw repayment to government bond and tax agencies, lenders, and creditors, with above-average recoveries of 82% of the total outstanding debt paid. Of particular importance was the fact that not only did students and staff continue business as usual with no disruption to credits or jobs, but that Mr. Dottore was successful in preserving the school's accreditation. The continued accreditation maximized the value of the school and, by proxy, allowed for an outstanding recovery for the school's creditors.

The second reason Mr. Dottore is particularly and uniquely well qualified to serve as receiver in this matter is the fact that he has been serving as a consultant for DCEH and the Universities since October 9, 2018. He and his team were hired to: familiarize themselves with

the business, operations, properties, financial condition, and prospects; develop and implement a financial strategic plan to market and sell certain assets or equity; develop and implement a closure plan; work with governmental and regulatory agencies as necessary; and, perform such other work as required to effectuate the closure of the company. As of late December 2018, Mr. Dottore had already provided more than 300 hours of his services, and his team provided more than 50 hours, since being retained. Mr. Dottore's work has provided meaningful benefits: he has identified and started negotiations with two potential suitors. As recently as December 12, 2017, Mr. Dottore, representatives of DCEH, and representatives of EGCC traveled to Washington D.C. to meet with the undersecretary of the US Department of Education and their staff to address the dire financial condition of DCEH and the Universities and their plan to restructure, including potential plans to seek the immediate appointment of a federal receiver to stabilize the assets and operations of DCEH and the Universities and continue with the proposed sale of all or substantially all of the Universities in a controlled setting all subject to approval by this Court.

If this Court were to grant this Motion and appoint a receiver, DMS believes that Mr. Dottore, as Receiver, would save the receivership estate all of the time and expense of bringing the new person up to speed where time is of the essence to protect the interests of the students and preserve and safeguard the Universities until a controlled restructuring can be completed.

**CONCLUSION**

Wherefore, and for the reasons set forth above, the immediate appointment of a receiver will serve to both protect thousands of students, spread across Ohio and the entire United States, as well as Plaintiff Digital Media Solutions and hundreds of other trade creditors. Only the

receivership structure will allow SUO's and the Universities' teach-outs to proceed to an orderly conclusion, while preserving the enterprise value.

DMS therefore requests that this Court grant this motion, issue the requested preliminary injunction and temporary restraining order, and appoint a receiver to oversee SUO, DCEH and its subsidiaries, as set forth in the proposed Order (attached as Exhibit A).

Dated: January 18, 2019

Respectfully submitted,

*/s/ Audrey K. Bentz*______________________

STEVEN G. JANIK (0021934)
AUDREY K. BENTZ (0081361)
JANIK L.L.P.
9200 South Hills Blvd., Suite 300
Cleveland, Ohio 44147
Phone: (440) 838-7600 * Fax: (440) 838-7601
Email: Steven.Janik@janiklaw.com
Audrey.Bentz@janiklaw.com

*Counsel for Plaintiff*