# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-CV-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF STUDIO ENTERPRISE MANAGER, LLC'S MOTION TO INTERVENE

This proceeding concerns the receivership and potential wind down of a chain of non-profit colleges indirectly owned by The Dream Center Foundation, a nonprofit organization based in Los Angeles, California. The Defendants have elected to pursue a federal receivership, rather than bankruptcy, which they believe to be the best available means to protect and preserve their going concern value for the benefit of their stakeholders and minimize disruption to their students. Studio Enterprise Manager, LLC ("Studio"), a secured creditor of, and counterparty to several contracts with, the Defendants did not receive any advance notice of the filing of this proceeding or the terms of the *Order Appointing Receiver* (ECF No. 8) ("Receiver Order") entered by the Court on January 18, 2019.

Studio is a secured party pursuant to Section 4.28 of that certain Amended and Restated Framework Agreement dated as of January 7, 2019, by and among Studio, Dream Center Education Holdings, LLC ("DCEH"), Dream Center South University, LLC ("South"), Dream Center Argosy University of California, LLC ("Arogsy"), Argosy Education Group, LLC ("AEG"), the Arts Institutes International, LLC ("AII") and the other parties signatory thereto

("Framework Agreement"). Many of the DCEH entities are Receivership Entities (as defined in the Receiver Order and as further described below). The security interests ("Security Interests") granted to Studio under the Framework Agreement secure the grantors' performance of their obligations under the Framework Agreement and the other Transaction Documents (as defined below).

For the past year, Studio has worked closely with DCEH and the Department of Education to find a solution to the Receivership Entities' financial distress in the hopes of reaching a consensual restructuring that would protect creditors and students alike by providing the necessary financial stability to continue operation of the DCEH campuses. These efforts resulted in the January 7, 2019 spinoff of South and AII and certain of their respective subsidiaries ("Spin-off Schools") to Education Principle Foundation, a non-profit organization unaffiliated with the Defendants and approved by the Department of Education. The Spin-off Schools are not a party to this proceeding. An affiliate of Studio also provided a material portion of the incremental funding necessary to facilitate the spinoff transaction ("Transaction").[1] As part of the Transaction, Studio entered into, among other documents: (i) the Framework Agreement, which outlines the multi-stepped plan for completion of the Transaction; (ii) Managed Services Agreements with AII, South, Argosy and AEG ("MSAs") to create stability after the spin-off and pursuant to which Studio provides short-term services to South, Argosy and AEG and long-term services to AII; and (iii) a Transition Services and License Agreement

---

[1] Studio's affiliate, CB CA Lending, LLC, is a Priority Tranche Lender pursuant to that certain Omnibus Amendment No. 2 to Credit Documents dated as of January 7, 2019, by and among Dream Center Education Holdings, LLC, Dream Center Argosy University of California, LLC, and Dream Center Education Management, LLC, as borrowers, certain subsidiaries of the borrowers, as guarantors, the lenders party thereto from time to time, and U.S. Bank National Association, as administrative agent and collateral agent, as the same may be amended, amended and restated, modified, supplemented, or otherwise modified from time to time, as discussed in the *Unopposed Joint Motion of Flagler Master Fund SPC Ltd. and U.S. Bank, National Association, to Intervene* (ECF No. 19) filed with the Court on January 30, 2019.

{7909971: }  2

("TSLA", together with the Framework Agreement and MSAs, "Transaction Documents") with DCEH, pursuant to which DCEH temporarily provides access to certain systems and related licenses to Studio to allow Studio to perform under the MSAs.

Pursuant to the Transaction Documents, Studio was granted Security Interests in certain property of the following Receivership Entities: (i) The DC Art Institute of Raleigh-Durham, LLC; The DC Art Institute of Charlotte, LLC; DC Art Institute of Charleston, LLC; DC Art Institute of Washington, LLC; The Art Institute of Tennessee−Nashville, LLC; AiTN Restaurant, LLC; The Art Institute of Colorado, LLC; DC Art Institute of Phoenix, LLC; The Art Institute of Portland, LLC; The Art Institute of Pittsburgh, DC, LLC; The Art Institute of Philadelphia, DC, LLC; DC Art Institute of Fort Lauderdale, LLC; The Illinois Institute of Art, LLC; The Art Institute of Michigan, LLC; The Illinois Institute of Art at Schaumberg, LLC; The Art Institute of Las Vegas, LLC; The Art Institute of Indianapolis, LLC; and AiIN Restaurant, LLC (collectively, "AR Entities"); (ii) The Art Institute of Seattle, LLC ("Seattle"); and (iii) DCEH, Argosy, and AEG (collectively, "California Entities" and together with the AR Entities and Seattle, collectively, "Studio Obligors"). Studio's collateral includes: (i) all accounts receivable of the AR Entities that were or will be in existence on or after January 8, 2019, (ii) all assets of Seattle and (iii) all assets of the California Entities with respect to the campus located in San Diego, and (iv) all accounts receivable of the California Entities with respect to the Arts Institute campuses located in Hollywood, Inland Empire, Orange County, Sacramento and San Francisco, that were or will be in existence on or after January 8, 2019.[2] All of the foregoing property is Receivership Property (as defined in the Receiver Order).

---

[2] The accounts receivable held by the AR Entities and the accounts receivable held by the California Entities with respect to the Arts Institute campuses located in Hollywood, Inland Empire, Orange County, Sacramento and San Francisco, that were in existence on or prior to January 7, 2019, were assigned to Studio as part of the Transaction and are not Receivership Property.

{7909971: } 3

Studio plainly satisfies the requirements for intervention as of right, which are set forth in Rule 24(a) of the Federal Rules of Civil Procedure ("Federal Rules").  <u>First</u>, pursuant to the Framework Agreement, Studio has duly perfected security interests in the property of the Studio Obligors, which is Receivership Property, and which is the subject of this proceeding.  <u>Second</u>, the Receiver Order impairs and impedes Studio's ability to protect its interest in the Receivership Property.  Among other things, the Receiver Order grants complete control over the Receivership Property to the Receiver (including the ability to sell such property) and stays Studio from exercising its remedies, as a secured party, with respect to such property.  <u>Third</u>, none of the parties to this proceeding can adequately represent Studio's interests as a secured creditor under the Transaction Documents.  Although certain other secured creditors (U.S. Bank National Association, as administrative and collateral agent, and Flagler Master Fund SPC) have sought to intervene, they seek to protect rights under a credit facility.  Neither of these parties is a party to the Framework Agreement or other Transaction Documents and thus they cannot represent Studio's interests under those agreements.  <u>Fourth</u>, this Motion is timely filed and Studio otherwise satisfies the requirements for intervention as of right under applicable law in the Sixth Circuit.

Accordingly, for these reasons and for the other reasons discussed in this Memorandum, Studio respectfully requests that the Court enter the proposed order, attached to the Motion as <u>Exhibit A</u> (the "Proposed Order"), granting Studio's request to intervene as of right in this proceeding.

## DISCUSSION OF APPLICABLE LAW

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as of right by non-parties. That Rule provides, in pertinent part, that:

> (a) <u>Intervention of Right.</u> On a timely motion, the court *must permit* anyone to intervene who:
>
> . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24 (emphasis added). "Rule 24 is broadly construed in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991). An applicant seeking to intervene as a matter of right under Rule 24(a) must establish the following elements: "(1) timeliness of application; (2) a substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention; and (4) inadequate representation of that interest by parties already before the court." *Northeast Ohio Coalition for the Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1007 (6th Cir. 2006). As detailed below, the standard for mandatory intervention under Rule 24 is satisfied.

First, the requested intervention is timely. In determining the timeliness of a motion for intervention as of right, courts consider five factors: "(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). No one factor is dispositive; rather, "the determination of whether a motion to intervene is timely should be evaluated in the

context of all relevant circumstances." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472-73 (6th Cir. 2000) (citation and quotation marks omitted).

Studio has satisfied the timeliness requirement. The Receivership was filed on January 18, 2019 and thus is in its very early stages. Studio's request for intervention is being made less than a month after the commencement of this proceeding of the Receivership. Studio acted promptly to protect its interests as a secured creditor of the Receivership, satisfying the third and fourth factors. Additionally, there are unusual circumstances here that favor allowing Studio to intervene. The Studio Obligors did not file for chapter 11 relief because a bankruptcy filing would have resulted in a loss of vital federal funding from the Department of Education; however, in a bankruptcy, Studio (as a secured creditor) would have automatically been a party in interest with the right to be heard. As a secured creditor of the Studio Obligors in Receivership, Studio should be afforded the same right to notice and an opportunity to be heard on matters affecting its contractual rights, collateral and recoveries, all of which will be impacted by the Receiver Order and these proceedings. No party to this proceeding will be prejudiced by Studio's intervention. Thus, all of the factors considered for timeliness weigh in favor of satisfaction of the timeliness element for mandatory intervention.

Under the second element governing intervention as of right, the proposed intervenor must establish that it "has a substantial legal interest in the subject matter of the case." *Blackwell*, 467 F.3d at 1007. "The Sixth Circuit has adopted a rather expansive notion of the type of interests sufficient to invoke intervention of right." *Bds. of Trustees. of the Ohio Laborers' Fringe Benefit Programs v. Ford Dev. Corp.*, No. 2:10-cv-0140, 2010 WL 3365927, at *4 (S.D. Ohio Aug. 20, 2010) (*citing Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). Further, "close cases are to be resolved in favor of recognizing an interest." *Id.* The

Receiver Order grants the Receiver control over the Receivership Property (which includes Studio's collateral) and stays any court proceeding against such assets. This clearly impairs Studio's rights with respect to its collateral, which is a substantial legal interest justifying intervention. In addition, the Receiver is authorized to sell property of the Receivership, including Studio's collateral. Studio has a right to be heard with respect to any such sales to protect its interests.

In order to establish the third element for mandatory intervention−impairment of a proposed intervenor's interest if intervention is not permitted−Studio "must show only that impairment of its substantial legal interest is possible if intervention is denied." *Miller*, 103 F.3d at 1247. "[T]he requirement of impairment of a legally protected interest is a minimal one: the requirement is met if the applicant shows 'that representation of his interest 'may be' inadequate.'" *Blackwell*, 467 F.3d at 1007 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). The Receiver Order prohibits Studio from exercising its remedies as a secured party with respect to the Receivership Property. These limitations impair Studio's interests as a secured creditor. In addition, if intervention is not granted, Studio will be denied the right to be heard with respect to issues involving disposition of its collateral. Thus, impairment of Studio's legal rights is clearly possible, satisfying the standard articulated in *Miller* and *Blackwell*.

The fourth and final element requires that an applicant show that there will be inadequate representation of its interest by parties already before the Court. The Supreme Court has explained that an applicant's burden with respect to this factor is "minimal" because "the Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate." *Trbovich*, 404 U.S. at 538 n.10. A brief consideration of the disparate interests of the current

parties to the litigation and the interests of Studio demonstrates that Studio's interests will not be adequately represented. The Plaintiff is an unsecured creditor of the Defendants whose interest is in maximizing its recovery on its unsecured claim. The Defendants' interest in this lawsuit is to minimize their liabilities. The Receiver's interest is in acting as a fiduciary for the Court. None of these interests aligns with Studio's interests as a secured creditor. Furthermore, while other secured creditors have sought to intervene, their interests are tied to the repayment of the Defendants' debts under a credit facility, while Studio seeks intervention to protect its interests under the Transaction Documents to which the other secured creditors are not parties. Indeed, it is possible that the Plaintiff, the Defendants, the Receiver and even the other secured creditors will have different views than Studio regarding how the Receivership should be administered so as to maximize the assets available to satisfy the Defendants' obligations to various classes of creditors, as well as other stakeholders.

Accordingly, all four of the Sixth Circuit's elements for mandatory intervention under Rule 24(a) are satisfied. Accordingly, Studio's Motion to Intervene as of right should be granted.

Finally, even where an applicant fails to satisfy the requirements of intervention as of right, the Court has discretion to grant permissive intervention under Federal Rule 24(b). "To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *See United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). Once the proposed intervenor establishes those two requirements, the "court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id*. Moreover, "permissive intervention under Rule 24(b) is to be liberally

granted, so as to promote the convenient and prompt disposition of all claims in one litigation." *Berk v. Moore*, No. 2:10-cv-1082, 2011 WL 1792534, at *3 (S.D. Ohio May 9, 2011). As discussed above, this Motion is timely and the disposition of the Receivership Property, some of which serves as Studio's collateral, lies at the heart of this proceeding. Accordingly, even if this Court does not grant intervention as of right pursuant to Federal Rule 24(a), it should grant permissive intervention pursuant to Federal Rule 24(b).

## CONCLUSION

As a secured creditor directly impacted by the Receiver Order and the potential wind down of the Defendants' operations, Studio has the right to intervene in this case so that its interests can be protected. Accordingly, Studio respectfully requests that the Court enter the Proposed Order granting its Motion to Intervene in this proceeding.

Dated: February 12, 2019

        Respectfully submitted,

        s/ Scott N. Opincar
        Scott N. Opincar (0064027)
        M. Colette Gibbons (0003095)
        Adam C. Smith (0087720)
        MCDONALD HOPKINS LLC
        600 Superior Avenue, East
        Suite 2100
        Cleveland, OH 44114
        Telephone: (216) 348-5753
        Facsimile: (216) 348-5474
        Email: sopincar@mcdonaldhopkins.com
              cgibbons@mcdonaldhopkins.com
              acsmith@mcdonaldhopkins.com

        OF COUNSEL: [3]

        Dianne F. Coffino
        Martin E. Beeler
        Gabriella B. Zahn-Bielski
        COVINGTON & BURLING LLP
        The New York Times Building
        620 Eighth Avenue
        New York, NY 10018
        Telephone: (212) 841-1000
        Facsimile: (212) 841-1010
        Email: dcoffino@cov.com
              mbeeler@cov.com
              gzahnbielski@cov.com

        *Counsel for Studio Enterprise Manager, LLC*

---

[3] Covington & Burling LLP attorneys are in the process of collecting good-standing certificates necessary for admission *pro hac vice* and will be filing motions for admission *pro hac vice* once all necessary supporting materials are available to comply with local rules.

## Certificate of Service

A copy of the foregoing was served via the Court's Electronic Filing Systems on this February 12, 2019.

s/ Scott N. Opincar
Scott N. Opincar (0064027)

*Counsel for Studio Enterprise Manager, LLC*
