## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE THOMAS M. PARKER |
| | ) | |
| SOUTH UNIVERSITY OF OHIO, | ) | |
| LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION OF HEMINGWAY AT RICHMOND, LLC FOR LIMITED RELIEF FROM STAY PROVISIONS OF ORDER APPOINTING RECEIVER

NOW COMES Hemingway at Richmond, LLC ("Hemingway"), by and through its undersigned attorneys, and requests relief from those provisions of the Order Appointing Receiver issued by this Court in connection with the above-captioned action on January 18, 2019 [Doc #: 8] (the "Order Appointing Receiver") for the limited purpose of allowing Hemingway to prosecute its action for restitution of the real property and improvements located at 4743 Richmond Road, Warrensville Heights, Ohio (the "Premises"), which Hemingway commenced prior to the commencement of this case by filing the Complaint For Forcible Entry and Detainer (the "Eviction Complaint") attached hereto as Exhibit A.

As the lawful owner of the Premises, Hemingway seeks to mitigate its losses arising from the unlawful detainer of the Premises by defendant, South University of Ohio, LLC ("South

University"), which mitigation will benefit the receivership estate and the creditors of South University.  More importantly, Hemingway will be irreparably harmed and its interest in the Premises will be substantially impaired unless Hemingway is permitted to recover occupancy of the Premises so that it may re-let the Premises to a substitute tenant that stands ready, willing, and able to lease the Premises, but only if it can do so relatively soon.  Accordingly, an order from this Court granting Hemingway relief from the stay provisions of the Order Appointing Receiver will both benefit the receivership estate and prevent irreparable harm to Hemingway. For these reasons, Hemingway requests an order from this Court granting Hemingway relief from the stay provisions of the Order Appointing Receiver for the limited purpose of prosecuting the claim for restitution set forth in the Eviction Complaint. The grounds for this Motion are more fully set forth in the attached and incorporated Memorandum of Law and the accompanying Affidavit of Maura Maresh.[1]

Respectfully submitted,

WALTER HAVERFIELD LLP

*/s/ Kirk W. Roessler*
KIRK W. ROESSLER (0060931)
DOUGLAS M. EPPLER (0087018)
  Email: kroessler@walterhav.com
         deppler@walterhav.com
  Direct Dial:  (216) 928-2905
  Direct Fax:  (216) 916-2402
1301 East Ninth Street, Suite 3500
Cleveland, OH 44114-1821

*Attorneys for Intervenor – Creditor,*
*Hemingway at Richmond, LLC*

---

[1] While recognizing that it is within this Court's discretion to rule upon this Motion without a Hearing, to the extent that the Court has any concerns or questions, Hemingway requests a Hearing so that such issues may be addressed.

## MEMORANDUM OF LAW

### I.     STATEMENT OF FACTS

Hemingway at Richmond LLC ("Hemingway") is an Ohio limited-liability company and the owner of the real property and improvements located at 4743 Richmond Road, Warrensville Heights, Ohio (the "Premises").  *See* Affidavit of Maura Maresh (hereafter the "Maresh Affidavit") at ¶ 3.  The Premises contain a 2-story building containing approximately 40,000 square feet of rentable space.  (Maresh Affidavit, ¶ 4).  The Premises are part of a planned office-park development commonly known as "Hemingway at Richmond Office Park."  (Maresh Affidavit, ¶ 5).

Hemingway, as landlord, leased the Premises to defendant, South University of Ohio, LLC ("South University"), as tenant, pursuant to the terms and conditions of a written Lease Agreement dated April 22, 2011, as amended (the "Lease") between Hemingway and South University.  (Maresh Affidavit, ¶ 6 and Exs. A and B).  The term of the Lease (the "Term") commenced on April 22, 2011, and is set to expire on January 31, 2024, unless sooner terminated as provided in the Lease.  (Maresh Affidavit, ¶ 7 and Ex. C).  The Lease permits South University to use the Premises for post-secondary, graduate and/or post-graduate educational or training programs or courses offered by South University from time to time, for admissions, administration, and other office purposes, and for any incidental uses.  (Lease, pp. 3-4, definition of "Permitted Uses").

As of February 1, 2019, the annual base rent payable under the Lease is $1,079,764.53, payable in equal monthly installments of $89,980.38.  (Lease, p. 4, definition of "Base Rent").  In addition to the base rent, the Lease requires South University to pay the "Operating Expenses" (as that term is defined in the Lease) relating to the operation and maintenance of the Premises,

including, but not limited to, utilities supplied to the Premises (to the extent not separately billed to South University) and premiums for insurance required to be obtained by Hemingway. (Lease, Section 3.2 [Additional Rent] and pp. 4-5, definition of "Operating Expenses").  The Lease also requires South University to pay real estate taxes assessed against the Premises. (Lease, pp. 6-7, definition of "Impositions").

South University failed to pay the base rent, operating expenses, and impositions that became due and payable under the Lease on December 1, 2018 in the total amount of $122,465.64.  (Maresh Affidavit, ¶ 8; Declaration of Randall Barton in Support of Defendants' Response to Emergency Motion for Appointment of Receiver [Doc #: 7], ¶ 10).  On December 7, 2018, Hemingway sent written notice of default to South University, demanding that South University cure such default within five (5) business days as required by the Lease.  (Maresh Affidavit, ¶ 9 and Ex. D; Lease, Section 10.1).  Despite Hemingway's demand, South University failed to cure its default in payment of rent within the cure period provided by the Lease. (Maresh Affidavit, ¶ 10).

As a result of South University's default under the Lease, on December 21, 2018, Hemingway caused to be served upon South University written notice to leave the Premises. (Maresh Affidavit, ¶ 11 and Ex. E).  South University did not respond to Hemingway's notice to leave the Premises, and consequently, on January 14, 2019, Hemingway filed its Eviction Complaint, in Bedford Municipal Court, seeking restitution of the Premises.  (Maresh Affidavit, ¶12).

Shortly after defaulting in the payment of rent, South University, through its attorneys, contacted Hemingway and asked Hemingway to commence an action in this Court to enable South University to seek the appointment of a federal receiver to, among other things, "promptly

consummate a going concern sale of a substantial portion of the campuses of South Univ. and its affiliates, Argosy University and the Art Institutes." (Maresh Affidavit, ¶ 13).  Wanting to better understand South University's goal, Hemingway asked South University to provide a copy of South University's teach-out program approved by the U.S. Department of Education.[2]  (Maresh Affidavit, ¶ 14).  South University responded by providing a copy of an Addendum to Temporary Provisional Program Participation Agreements ("TPPPAs") for Institutions owned by Dream Center Educational Holdings, LLC ("DCEH") (the "TPPPA").  (Maresh Affidavit, ¶ 15 and Ex. G).

The TPPPA indicates that South University is in the process of closing both its main location and additional locations. (TPPPA, p. 1). The TPPPA further indicates that the Department of Education (the "Department") is holding proceeds that it drew down from letters of credit provided by the prior owner of South University (the "Proceeds").  *Id*.  The TPPPA provides specifically that "[a]ny students who will not complete their course of study prior to December 31, 2018 **must** be transferred to a Transfer School as soon as reasonably possible."  *Id*. (emphasis added).  To that end, the TPPPA also provides that the Proceeds may be used to make "lease payments for existing campus real estate . . .  during the months of August, September and October 2018 **only**."  *Id*. At p. 3. (emphasis added).  The TPPPA states specifically that the Proceeds may not be used to pay "rent for any period prior to or after August, September and October 2018."  *Id*.

Since at least December 2018, South University's website has indicated that its campus operated upon the Premises will be closing and that South University is not currently enrolling

---

[2] When an institution that receives Title IV funding decides to cease operations, it must immediately notify the Higher Learning Commission (the "Commission") regarding the development of a teach-out plan.  A teach-out plan is a written plan that provides for teaching out its students so they can complete their academic programs.  A teach-out plan is required as a condition to the institution continuing to receive Title IV funding.

students.  (Maresh Affidavit, ¶ 16).  South University has largely abandoned the Premises and presently uses only one or two classrooms and a few administrative offices.  (Maresh Affidavit, ¶ 17).  Since the filing of the Eviction Complaint, South University has neither tendered rent of any kind, nor given any indication that it intends to pay rent at any time in the future.  (Maresh Affidavit, ¶ 18).  As of February 1, 2019, the rent arrearage existing under the Lease already equals $352,856.09 (Maresh Affidavit, ¶ 20) and continues to grow rapidly.  (emphasis added).

The Lease provides that following a default, Landlord may recover from South University an amount equal to the rent payable for the unexpired term of the Lease, less "the net rents received by the Landlord from re-letting the Premises."  (Lease, Section 10.2)  The base rent (excluding operating expenses, impositions and other charges) due from February 1, 2019, through the remaining unexpired term of the Lease equals $5,521,740.35.  Adding operating expenses, impositions, and other charges payable by South University under the Lease to the base rent likely will result in a total claim against the receivership estate in excess of $12,000,000, unless Hemingway is permitted to mitigate its damages by re-letting the Premises.  (Maresh Affidavit, ¶ 21).

With regard to Hemingway's efforts to mitigate its damages, Hemingway has procured a potential new tenant that desires to lease the entire Premises beginning as soon as December 31, 2019.  (Maresh Affidavit, ¶ 22).  In order to timely deliver the Premises to that new tenant, Hemingway needs to regain possession and control of the Premises as soon as possible, but in any event no later than June 1, 2019.  (Maresh Affidavit, ¶23).

Aside from preventing Hemingway from mitigating its damages resulting from South University's breach of the Lease, the stay provisions of the Order Appointing Receiver are causing Hemingway to suffer additional losses and damages, which may prove irreparable unless

Hemingway is granted relief to pursue and prosecute its Eviction Complaint.  The stay provisions not only prevent Hemingway from recovering damages caused by South University's breaches occurring prior to this Court issuing its Order Appointing Receiver, but they are forcing Hemingway to use its own funds to make payments that should be made by South University, including real estate taxes, water and sewer charges, insurance premiums and operating expenses of maintaining the Premises (including, without limitation, services to be performed for landscaping, snow removal, trash removal, life safety systems, elevator, plumbing and electrical).  (Maresh Affidavit, ¶ 24).  More troubling is the fact South University's default under the Lease, and Hemingway's inability to evict South University and re-let the Premises due to the stay provisions of the Order Appointing Receiver, may have an adverse effect upon Hemingway's ability to pay its secured indebtedness and otherwise comply with the terms of a Loan Agreement with its secured creditor, including the applicable debt service coverage ratio.  (Maresh Affidavit, ¶ 25).  Hemingway's secured indebtedness (which is also secured by the personal guaranties of certain individual guarantors) matures on June 1, 2019.  (Maresh Affidavit, ¶ 26).  Unless Hemingway is able to secure a new tenant for the Premises before its mortgage loan matures, it likely will not be able to obtain refinancing thereby putting at risk its entire investment in the Premises.  (Maresh Affidavit, ¶ 27).

Moreover, the mortgage loan secured by the Premises is further secured by additional real property owned by Hemingway, so the stay provisions not only put at risk Hemingway's investment in the Premises, but also Hemingway's investment in other property adjacent to the Premises.  (Maresh Affidavit, ¶ 28).  These adjacent premises include more than 140 employees who could be disrupted or displaced.  (Maresh Affidavit, ¶ 29).

## II.   LAW AND ARGUMENT

### A.   Hemingway Is Entitled to Relief from the Stay Provisions of the Order Appointing Receiver Pursuant to Federal and State Common Law.

A court's ability to lift a stay of litigation already in place is recognized as "an appropriate escape valve, which allows potential litigants to petition the court for permission to sue." *U.S. v. Acorn Technology Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005).  In determining whether to lift a receivership stay, courts have adopted a three part test:  (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.  *S.E.C. v. One Equity Corp.*, S.D.Ohio No. 2:08–cv–667, 2010 WL 4878993, at *6-7 (Nov. 23, 2010) *citing S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984); *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985); *Acorn Tech.* at 443.  Applying these tests to Hemingway's situation mandates that this Court grant Hemingway relief from the stay in the limited manner requested by Hemingway.

One of the rationales for imposing a stay in a receivership is to preserve the status quo while the receiver organizes and understands the assets under his control.  The first of the 3-part test from *Wencke II* requires a court to consider not only the benefits of preserving the status quo, but also the consequences of such a stay to third-parties such as Hemingway. This factor "essentially balances the interests in preserving the receivership estate with the interests" of the movant.  *S.E.C. v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011); *Schwartzman v. Rogue Int'l Talent Grp., Inc.*, E.D.Pa. No. CIV.A. 12–5255, 2013 WL 460218 (Feb. 7, 2013) (first factor requires court "to balance the Receiver's interest in maintaining the status quo with any injury the moving party may suffer if the stay remains in place"); *U.S. v. ESIC Capital, Inc.*,

675 F.Supp. 1462, 1463 (D.Md.1987) (court must assess "the competing interests of the injury to the moving party versus preserving the status quo").

In the instant case, South University is closing.  South University is not enrolling students.  Granting Hemingway limited relief from stay for the purpose of regaining possession and control of the Premises will not prevent South University from closing nor require South University to begin enrolling students, but instead, will preserve the status quo.  To the extent South University intends to continue offering educational or training programs or courses until its students can be transferred to another school, South University, through the Receiver, can find alternative space within which to provide such training and programs, including mobile classrooms, at far less cost to the receivership estate.[3]

Further, prior to the issuance of the Order Appointing Receiver, Hemingway had a duty to mitigate its damages.  *See Frenchtown Square P'ship v. Lemstone, Inc.*, 99 Ohio St. 3d 254, 2003-Ohio-3648, ¶20, 259, 791 N.E.2d 417, 422 (landlords owe a duty to mitigate their damages caused by a breaching tenant).  Lifting the stay to allow Hemingway to pursue restitution of the Premises preserves Hemingway's duty to mitigate its damages and provide the receivership estate with the benefits afforded by the remedial provisions of the Lease and applicable state law.

Contrarily, the consequences of staying Hemingway from regaining possession and control of the Premises so it can re-lease the Premises to a third party ready, willing, and able to lease the same could be catastrophic - causing Hemingway to lose the entirety of its investment in the Premises (and potentially exposing third-party, individual guarantors to liability and irreparable harm).  The longer South University remains in possession of the Premises, the more likely Hemingway will lose the opportunity to re-lease the Premises to its prospective tenant

---

[3] It appears from the TPPPA that the process of transferring students unable to complete their degrees by December 31, 2018, already should have been completed; otherwise, Proceeds would have been available to pay rent beyond December 31, 2018.

currently waiting for the Premises to become available.  As noted above, South University's default under the Lease may have an adverse effect upon Hemingway's ability to pay its secured indebtedness and otherwise comply with the terms of the Loan Agreement.  Since December 2018, Hemingway has had to make its debt-service payments using its own funds and capital reserves.  If Hemingway is unable to release the Premises soon, it may deplete entirely its capital reserves, in which case, it will have no means of making its debt-service payments.  Even if Hemingway is able to keep making regular debt-service payments, it likely will be unable to refinance its mortgage loan without a creditworthy tenant in place paying the rent.  Maintaining the stay imposes unfair obligations and risks upon Hemingway and wrongfully jeopardizes its investment in the Premises.

A stay should never be imposed to preclude a party from preventing future harm to itself or the receivership estate, which is what Hemingway seeks to accomplish by obtaining restitution of the Premises.  The equities of the first part of the *Wencke II* test clearly lie in Hemingway's favor.

The second *Wencke II* factor requires courts to analyze the time in a receivership in which a motion to lift a litigation stay is made. There is no "clear cut-off date after which a stay should be presumptively lifted." *Acorn Tech. Fund, L.P.,* 429 F.3d at 450.  The timing factor is fact-specific and "based on the number of entities, the complexity of the scheme, and any number of other factors." *Stanford Int'l Bank Ltd.,* 424 F. App'x at 341; see also *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010)("the timing factor is case-specific").  While case law suggests that the receiver is entitled to an extended stay of litigation in matters involving fraud, intensive research, satellite litigation, or an otherwise voluminous process, the instant case does not present the egregious situations typically favoring an extended stay. *See,*

*e.g. S.E.C. v. Byers*, 592 F.Supp.2d 532, 537 (S.D.N.Y. 2008) *aff'd*, 609 F.3d 87 (2d Cir. 2010) (where receiver had "only just begun to investigate the full extent of [a] fraudulent scheme," timing factor weighed in favor of receiver); *S.E.C. v. Illarramendi*, D.Conn. No. 3:11CV78 JBA, 2012 WL 234016 (Jan. 25, 2012) (timing factor weighed in favor of receiver where receiver had just begun its "voluminous investigation"); *Stanford Int'l Bank Ltd.*, at 341–42 (affirming district court's conclusion that timing factor weighed in favor of receiver where underlying Ponzi scheme was complex and intricate, involving many entities and billions of dollars, and satellite litigation instigated by receiver on behalf of estate was just beginning).

Plaintiff's Emergency Motion for Appointment of a Receiver envisions a "coordinated, consolidated [proceeding] through application of 28 U.S.C. §754 and 28 U.S.C. §1692" to liquidate assets of the newly closed campuses and "supervise and ultimately approve the sale of the Go-forward Schools."  South University is not one of the Go-Forward Schools and the Receiver will be liquidating the assets of South University.  To the extent the Receiver intends to provide teach-out programs to the few remaining students of South University, it does not need 40,000 square feet do so and may provide those programs at another location that costs substantially less to lease.  Thus, no reasons exist to stay Hemingway from regaining possession of the Premises for any extended period of time.

It is important to remember that Hemingway only seeks a very limited lift of the stay at this juncture to permit it to take the steps necessary to preserve its interest in the Premises.  The Eviction Complaint does not contain a claim for money damages and Hemingway does not intend to pursue its claim for damages against South University outside of the context of the receivership.  Instead, Hemingway seeks restitution of the Premises so that it can fulfill its duty

to mitigate its damages and provide the Receiver and the receivership estate the benefit of liquidating its damage claim to the smallest amount possible.

Hemingway's exposure to a risk of loss is time-sensitive.  It must re-lease the Premises as quickly as possibly or risk losing its investment in the Premises in its entirety.  Notwithstanding the early juncture of this receivership, it would be imprudent for Hemingway to delay its request for relief and prejudicial and unfair for this Court to delay granting the requested relief simply to allow the receiver to liquidate South University's assets at his leisure.

The third consideration a court must make is the merit of the movant's underlying claim. "A district court need only determine whether the party has <u>colorable</u> claims to assert which justify lifting the receivership stay." *Acorn Tech.,* 429 F.3d at 444. (emphasis in original). The more meritorious a movant's underlying claim, the more heavily this factor will weigh in the movant's favor. *See, e.g.*, <u>Wencke I</u>, 622 F.2d at 1373 ("Where the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution").  As described in the Movant's Statement of Facts, Hemingway has satisfied all the requirements for an eviction under Ohio law. The merits of Hemingway's underlying claim are more than sufficient.

While the stay provisions of the Order Appointing Receiver likely were intended to prevent creditors from obtaining and enforcing money judgments against South University and the other receivership entities, the practical effect in Hemingway's situation, is to force Hemingway to fund the receivership by providing rent-free and expense-free business premises to South University to the detriment and prejudice of Hemingway.  Such a result is unfair and inequitable and should not be allowed to continue.

**B.** **The Analogous Stay Provisions of the United States Bankruptcy Code Mandate that Hemingway Be Provided Relief from the Stay Provisions of the Order Appointing Receiver.**

Fed.R.Civ.P. 66 provides that "the practice in administering an estate by a receiver…must accord with the historical practices in federal court or with a local rule." In this case, Local Rule 66.1 specifies that the receiver "shall administer the estate as nearly as may be in accordance with the practice in the administration of estates in bankruptcy." Thus, analogies to bankruptcy law are apt and useful guides for this Court in supervising the administration of a receivership estate.

If South University had filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code"), Hemingway now would be entitled to relief from the automatic stay imposed by Section 362 of the Bankruptcy Code. After the filing of a case under Chapter 11 of the Bankruptcy Code, a debtor, as lessee, must timely perform all of its obligations under any unexpired lease of nonresidential real property until the lease is assumed or rejected. *See* 11 U.S.C. §365(d)(3). In this case, the Order Appointing Receiver, at ¶ 2(q) on page 9, specifies that the Receiver may "perform pursuant to the terms" of existing contracts or "may reject contracts…and the holder of any contract so rejected shall be allowed a claim as an unsecured creditor of the Property, said claim to be calculated consistent with the law." This too suggests that the Receiver is required to assume or reject the Lease within a reasonable amount of time, and cannot occupy the Premises indefinitely without paying rent.

Under the Bankruptcy Code, a court may grant relief from the automatic stay to any party in interest upon one of three of the following grounds: (1) for cause, including lack of adequate protection of an interest of such party in property; (2) with respect to the stay of acts against property, upon a showing that the debtor has no equity in the property and that the property is not necessary for an effective reorganization; and (3) with respect to the stay of acts against real

property, if the court finds that the filing of the case was part of a scheme to delay, hinder or defraud creditors.  *See* 11 U.S.C. §362(d)(3).

Hemingway would be entitled to relief for cause because South Services has failed to (a) pay and perform its obligations under the Lease following the appointment of a receiver, (b) provide adequate protection of Hemingway's interest in the Premises by failing to pay operating expenses and real estate taxes and by putting at risk Hemingway's ability to pay and/or refinance the mortgage loan secured by the Premises.  *See e.g., In re: Rocchio*, D. Rhode Island Bank. No. 90-12252, 125 B.R. 345, 347 (March 29, 1991) ("Debtors' failure to pay postpetition rent, together with a total absence of evidence that they will: (1) cure the default, (2) provide adequate protection, or (3) give adequate assurance of future performance, all violate the clear requirements of § 365(d)(3), and we hold that said violations (individually and cumulatively) constitute "cause" under § 362(d)(1) to lift the stay and to allow [landlord] to continue the state court eviction litigation.")

Hemingway also would be entitled to relief under Bankruptcy Code Section 362(d)(3) as the Premises are not necessary for an effective reorganization of South Services and its affiliated entities as South Services already has determined to close its campus on the Premises and liquidate its assets.

If Hemingway would be entitled to obtain relief from the automatic stay imposed by Section 362 of the Bankruptcy Code, it certainly should be entitled to obtain relief from the stay imposed by the Order Appointing Receiver.

## III.    **CONCLUSION**

Hemingway should not be faced with the prospect of a significant financial loss in order to preserve the assets of other parties. As Plaintiff's Emergency Motion for Appointment of a Receiver states, "DMS is a business. . . It cannot, however, provide its services for free." Hemingway simply asks that the same standard be extended to its own business.  Hemingway seeks limited relief from the stay of litigation ordered by this Court, in order to secure a replacement tenant at the Premises and mitigate its losses.

For all the foregoing reasons, this Court should grant Hemingway's motion and allow it to prosecute its claim for restitution set forth in the Eviction Complaint against South University.

Respectfully submitted,

WALTER HAVERFIELD LLP


*/s/ Kirk W. Roessler*
KIRK W. ROESSLER (0060931)
DOUGLAS M. EPPLER (0087018)
  Email: kroessler@walterhav.com
         deppler@walterhav.com
  Direct Dial:  (216) 928-2905
  Direct Fax:  (216) 916-2402
  1301 East Ninth Street, Suite 3500
  Cleveland, OH 44114-1821

*Attorneys for Intervenor—Creditor,*
*Hemingway at Richmond, LLC*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing *Motion of Hemingway at Richmond, LLC for Limited Relief from Stay Provisions of Order Appointing Receiver* was served via the Court's e-filing system on the parties that have entered an appearance in this case and by regular U.S. mail, postage prepaid, this 12th day of February, 2019 upon:

Cheyanna Jaffke
P.O. Box 2520
Anaheim, CA 92814
*Interested Party Pro Se*

/s/ Kirk W. Roessler
KIRK W. ROESSLER (0060931)
*Attorneys for Intervenor – Creditor,*
*Hemingway at Richmond, LLC*