# ATTACHMENT

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) CASE NO. 1:19-cv-145 |
| Plaintiff, | )<br>) JUDGE DAN AARON POLSTER |
| v. | )<br>) **MOVANT 3601 SUNFLOWER LLC'S** |
| SOUTH UNIVERSITY OF OHIO, LLC, ET AL., | ) **MEMORANDUM IN SUPPORT OF**<br>) **MOTION TO VACATE THE** |
| Defendants. | ) **INJUNCTION AND RECEIVER ORDER**<br>) **OR, IN THE ALTERNATIVE, TO**<br>) **MODIFY THE SCOPE OF THE**<br>) **RECEIVER ORDER AND**<br>) **INJUNCTION** |

## INTRODUCTION

This case is simply an attempt by Defendants to obtain United States Bankruptcy Code relief for their purported deteriorating financial condition without complying with the requirements of the Bankruptcy Code. 11 U.S.C. § 101 *et seq*. Defendants have improperly convinced the Court to issue injunctive relief and appoint a receiver.

For the purposes of shielding themselves from pending and future lawsuits, preserving their own assets in an attempt to better their own deteriorating economic outlook, and to bypass the Bankruptcy Code, Defendants have dramatically reengineered a breach of contract action by one trade creditor into a nationwide federal receivership action that has paralyzed the leases of landlords, including Movant, at campus locations in numerous states across the country. Movant is landlord of a 55,000 square foot building located in California. The Court had no authority to impose the receivership and therefore abused its discretion in doing so.[1]

---

[1] The Movant's motion to vacate the receivership is properly before the Court because "[t]he power to vacate an appointment [of a receiver] improvidently made or to terminate a receivership no longer needed is a necessary incident to the power to appoint in the first instance." <u>Skirvin v. Mesta</u>, 141 F.2d 668, 673 (10th Cir. 1944).

"An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." Louzon v. Ford Motor Co., 718 F.3d 556, 560 (6th Cir. 2013) (quoting Miller v. Countrywide Bank, N.A. (In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.), 708 F.3d 704, 707 (6th Cir. 2013)) (internal quotation marks omitted). Based on a misapplication of receivership law, the January 18, 2019, receiver order (the "Receiver Order") violates two foundational rules governing the equitable appointment of receivers and, moreover, in entering the Receivership Order, the Court has severely disadvantaged and impaired the legal rights of scores of Defendants' creditors across the country without any protections being provided to them. As a result of these legal errors, and the consequent abuse of discretion, the Receiver Order must be vacated.

First, longstanding Supreme Court precedent holds that federal courts lack equity jurisdiction to appoint a receiver over a debtor's assets for the benefit of an unsecured contract creditor whose claim for damages has not been reduced to judgment—like Plaintiff Digital Media Solutions, LLC ("DMS"). Thus, the Court lacked equitable jurisdiction to grant the relief of the appointment of a receiver to a creditor without a secured interest in or a lien against the assets of Defendants. Instead, DMS coordinated its filing with the Defendants so Defendants could immediately consent to the Order appointing the receiver. In essence, DMS just provided the vehicle by which Defendants could orchestrate the appointment of a receiver over themselves. After all, the Complaint, Motion to Appoint Receiver, Defendants' Response to Motion to Appoint Receiver and Order Appointing Receiver were all filed on January 18, 2019.

Second, even if DMS had been entitled to seek a receiver for Defendants,[2] settled principles of receivership law require that the scope of any resulting receivership estate be limited to the claim for the unpaid invoices at issue in the suit (i.e., $252,737) because the claim for unpaid invoices owed to DMS is the sole subject matter of this suit.

## STATEMENT OF FACTS

### A.   Defendant DCEH Education Holdings Breaches its Contract with DMS

According to its Complaint, DMS is a Delaware limited liability company that provided leads to Defendant DCEH Education Holdings, LLC ("DCEH") to recruit potential students. (ECF Doc. 1-1 at ¶¶ 3, 13). DMS issued 21 invoices to DCEH, Argosy Universities and a group of Art Institution (ECF Doc. 1-1 at ¶¶ 11, 17). Argosy Education Group, LLC ("Argosy"), the tenant of Movant, is simply the parent company of the Argosy Universities (Id. at ¶ 11). DMS' Complaint does not allege that any services were actually provided to Argosy. Furthermore, none of the 21 unpaid invoices issued from August 2018 to November 2018 are attached as Exhibits to DMS' Complaint.

On January 18, 2019, DMS filed its Complaint (ECF Doc. 1). DMS also filed its Motion to Appoint Receiver (ECF Doc. 3) on January 18, 2019. On that same date, Defendants filed their Response to the Receiver's Motion consenting to the appointment of a receiver (ECF Doc. 7).

### B.   A Receiver is Appointed

The Court did not hold a hearing, but on the same day the Motion was filed issued the Receiver Order. (ECF Doc. 8). Not only did the Court not conduct a hearing, the appointment of the receiver was also accomplished without providing notice to Movant or any other creditor. The Receiver Order bars Movant from collecting rent and protecting its property rights in California,

---

[2] It appears that the Court's Receiver Order goes beyond the Defendants in the case but also appoints a Receiver over non-parties who are not obligated to DMS.

notwithstanding that its property has nothing to do with the matter at issue before this Court. The Receiver Order is, in effect, a license to allow schools controlled by Defendants, which have nothing to do with the action brought by DMS, to not pay rent to the landlords.

## C.    Receiver Order Materially Impairs Movant's Property Rights

Movant 3601 Sunflower LLC ("Sunflower"), a California limited liability company, is the owner and landlord of a 55,000 square foot building located at 3601 West Sunflower in Santa Ana, California. See Decl. of Vickie Dewey at ¶¶ 2-3, attached as Exhibit A. Argosy leases the entire building from Sunflower. Id. at ¶ 8.

The lease carries a current monthly rent amount of approximately $235,937.68 consisting of $140,224.75 in base rent, approximately $84,477.81 in additional rent and $11,235.13 in late fees. Id. at ¶ 5. DCEH has unconditionally guaranteed the Lease, which runs through June 30, 2020. Id. at ¶¶ 6-7. There is currently due and owing Movant for unpaid rent from January and February, the amount of $471,875.36. Id. at ¶11.

## ARGUMENT

## I.    THE APPOINTMENT OF THE RECEIVER WAS IMPROPER

## A.    Federal Courts Lack Equitable Jurisdiction to Appoint a Receiver Over a Debtor's Assets at the Request of an Unsecured Contract Creditor Whose Claim Has Not Been Reduced to Judgment

It is undisputed that DMS is an unsecured contract creditor whose claim for unpaid invoices against DCEH has not been reduced to judgment. In light thereof, Supreme Court precedent makes clear that the Court lacked equitable jurisdiction to grant such relief. As a result, the Receiver Order must be vacated.[3]

---

[3] See Whelpley v. Erie R.R. Co., 29 F. Cas. 918, 920 (S.D.N.Y 1868) ("I am not prepared to admit that an order for an injunction, or a receiver, can be made in an improper case, even with the consent of both parties, more especially where the rights of third persons may be concerned."); JAMES L. HIGH, A TREATISE ON THE LAW OF RECEIVERS § 7, p. 10 (2d ed. 1886) ("Nor will a receiver be appointed in an improper case, even by consent of the parties, especially when the rights of third persons are concerned and may be jeopardized by the appointment.").

In <u>Pusey & Jones Co. v. Hanssen</u>, 261 U.S. 491, 495 (1923), a diversity suit, the Supreme Court squarely addressed the following question: "Whether the federal court sitting in equity has . . . jurisdiction to appoint a receiver of an insolvent [] corporation upon application of an unsecured simple contract creditor." The Court answered no, reversing the district court's order appointing a receiver.[4]

In <u>Pusey</u>, an unsecured creditor holding promissory notes issued by an insolvent corporation moved for the appointment of a receiver over the corporation's assets, and the district court granted the relief sought pending the litigation of the creditor's claim on the promissory notes. In appointing the receiver, the district court reasoned that a Delaware statute authorized a receiver to be appointed "upon application of a simple contract creditor, whose claim had not been reduced to judgment and who had no lien upon the corporate property." <u>Id.</u> at 496.

The Supreme Court first observed that federal courts are vested with equitable authority to appoint receivers (1) "upon application of a secured creditor who fears that his security [in the debtor's assets] will be wasted" and (2) "upon application of a judgment creditor who has exhausted his legal remedy." <u>Id.</u> at 497. "But," the Court stressed, "an unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his debtor." <u>Id.</u> Instead, "[t]he only substantive right of a simple contract creditor is to have his debt paid in due course." <u>Id.</u> As a result, the Court noted, a creditor's right against his debtor and his debtor's property is "at law," and "[h]e has no right whatsoever in equity until he has exhausted

_____

[4] While "the Sixth Circuit has never explicitly addressed whether federal or state law governs the appointment of a receiver by a district court where federal jurisdiction is based on diversity[,] . . . district courts in this circuit have applied federal law when presented with a motion for appointment of a receiver." <u>McGirr v. Rehme</u>, No. 16-464, 2018 WL 3708357, at *8 (S.D. Ohio Aug. 3, 2018) (citations omitted). Thus, the Supreme Court's explanation of federal receivership principles in <u>Pusey</u> controls in this case because federal courts exercising diversity jurisdiction, as here, are bound to apply federal receivership principles when determining their authority to appoint a receiver in the first place. <u>See</u> <u>Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.</u>, 153 F.3d 1289, 1292 (11th Cir. 1998) (citing <u>Pusey</u> with approval and holding that "[t]he appointment of a receiver by a federal court exercising diversity jurisdiction is governed by federal law.").

his legal remedy." Id. In equity practice, <u>after reducing his claim to judgment</u>, a creditor could then seek equitable remedies in federal court (under a creditor's bill) to "remove any obstacle to satisfy his execution at law, . . . or he may provisionally protect his debtor's property from misappropriation or waste, by means either of an injunction or a receiver." Id. Until that time, however, he may not invoke the equity powers of a federal court sitting in diversity.

Because the trial court's federal equity authority could not be invoked by the plaintiff in <u>Pusey</u>—an unsecured contract creditor without a judgment—the Supreme Court found it "clear" that the federal court lacked authority to appoint the receiver "in the absence of the [Delaware] statute." Id. at 497. But the Court held that because the Delaware statute was merely remedial in nature—conferring no substantive right—it could not be applied by the federal district court under its equitable powers in a diversity suit.[5]

The Supreme Court has since cited with approval what it said in <u>Pusey</u>, noting that, as a matter of equity practice in federal court, "[i]t was well established . . . that, as a general rule, a creditor's bill"—including the ancillary receivership authorized by such a bill—"could be brought only by a creditor who had already obtained a judgment establishing the debt." <u>Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.</u>, 527 U.S. 308, 319 (1999) (holding that, in a creditor's suit for money damages, federal courts lack authority to issue preliminary injunctions "preventing the defendant from transferring assets in which no lien or equitable interest is claimed").

Because the Court lacked equitable jurisdiction to appoint a receiver over Defendants' assets at the request of DMS—an unsecured contract creditor whose claim for damages has not been reduced to judgment—the Receiver Order must be vacated.

---

[5] This is why here, because the Court's subject matter jurisdiction is based solely on diversity of citizenship, any entitlement to a receiver as an equitable remedy that might be afforded to DMS under Ohio law cannot be given effect.

**B.**     **A Nationwide Receiver, and the Correspondingly Overbroad Injunctive Relief Contained in the Receiver Order, Is Impermissible Because the Subject Matter of this Breach of Contract Suit for Unpaid Invoices has Nothing to do with Movant's Property Located in California**

The purpose of a receivership—ancillary equitable relief sought by a creditor during the pendency of litigation—is to protect, for the creditor's benefit, those assets of the debtor that are actually implicated by the subject matter of the creditor's substantive suit against the debtor.[6] The receivership remedy—and in particular the scope of the receivership estate—is circumscribed by its very nature: "[C]ourts are generally averse to assuming the management of a business except as incidental to the object of the suit. JAMES L. HIGH, A TREATISE ON THE LAW OF RECEIVERS § 36, p. 35 (2d ed. 1886); see also id. § 1, p. 2 ("A receiver is . . . appointed by the court to receive and preserve the property or fund in the litigation pendente lite . . . ."); id. § 4, p. 5 ("[A receivership] is especially beneficial when there is danger that the subject-matter in controversy may be wasted, destroyed, injured or removed during the progress, of the litigation, the object of the relief being to secure the fund for the person who may ultimately be found entitled thereto, with as little prejudice as possible to any of those concerned."); id. § 4, pp. 5-6 ("[A] receivership is one of those remedial agencies originally devised to preserve the fund or thing in controversy from removal beyond the jurisdiction, or from spoliation, waste or deterioration pendente lite . . . . A court of equity, by its order appointing a receiver, takes the entire subject-matter of the litigation out of the control of the parties and into its own hands.").

This principle explains why "[a] court cannot appoint a receiver to take charge of property which is not involved in the litigation, or to take charge of all of a debtor's property, including that

_____

[6] "A receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's interests in the property.' " Pension Ben. Guar. Corp. v. Evans Tempcon, Inc., 630 F. App'x 410, 414 (6th Cir. 2015) (quoting 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2983 (3d ed. 2014)); see also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316 (8th Cir. 1993); Netsphere, Inc. v. Baron, 703 F.3d 296, 305 (5th Cir. 2012).

which is not, as well as that which is, specially bound for the payment of the claim in suit." <u>In re Richardson's Estate</u>, 294 F. 349, 357 (N.D. Tex. 1923); <u>see also</u> <u>Smith v. McCullough</u>, 104 U.S. 25, 29 (1881) ("Notwithstanding the broad terms of the order appointing him, we are satisfied that the court had no purpose to appoint him receiver of any property except that covered by the mortgage.").

The Eighth Circuit Court of Appeals long ago explained that an overbroad receivership estate is contrary to the equitable principle authorizing receiverships because it interferes with the rights of non-petitioning creditors:

> [T]he jurisdiction possessed by a court of chancery to foreclose a mortgage and to appoint a receiver for the mortgaged property pending the foreclosure gives it no jurisdiction or power to seize or take into its custody or control, through a receiver or otherwise, property of the debtor which is not covered by the mortgage. Nor can the court in such a suit rightfully make any order that will prevent, hinder, or delay the other creditors of the mortgagor from subjecting the property not included in the mortgage to the payment of their debts.

<u>Scott v. Farmers' Loan & Trust Co.</u>, 69 F. 17, 20-21 (8th Cir. 1895).

In light of this settled rule of receivership law, even if DMS were authorized to seek a receivership under federal equity principles (which it is not), it is clear that the only property for which a receiver could have been appointed is the amount owed for the outstanding invoices from DCEH. DMS is not entitled to have a receiver appointed to administer all of Defendants' leasehold interests throughout the United States (nor is it entitled to a corresponding injunction barring suits to enforce the leases on those properties) when the lease in California on that property is decidedly not at issue in this lawsuit or in any way related to DMS' claim for unpaid invoices.

## II.    THERE IS NO JURISDICTION OVER MOVANT

The Court's improper appointment of a receiver was entered without jurisdiction over Movant. To obtain jurisdiction over the defendant, a court must have (1) proof of notice to the defendant, (2) a constitutionally sufficient relationship between the defendant and the forum, and

(3) authorization for service of a summons. <u>R.M.S. Titanic, Inc. v. Haver</u>, 171 F.3d 943, 957 (4th Cir. 1999) (citing <u>Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co. Ltd.</u>, 484 U.S. 97, 104 (1987)).

Movant was never served with a summons or complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 4. Movant received the Court's Receiver Order only after the motion had already been granted by the Court. Notice is "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality . . . ." <u>Mullane v. Cent. Hanover Bank & Tr. Co.</u>, 339 U.S. 306, 314 (1950). The Receiver Order and injunction contained therein prohibits Movant from enforcing its rights under its commercial lease in California notwithstanding that Argosy has stopped paying rent at the property and notwithstanding that Argosy received no services from DMS. In effect, the Court's injunction, which was issued without due process, improperly prevents Movant from bringing its own claims to protect its property rights. <u>R.M.S. Titanic</u>, 171 F.3d at 957 ("It is well established that due process precludes courts from adjudicating in personam the rights or obligations of persons in the absence of personal jurisdiction.").

What is more, this Court does not have personal jurisdiction over Movant. The Supreme Court has recognized general and specific personal jurisdiction. General jurisdiction, or "all-purpose" jurisdiction, is limited to the state "in which the corporation is fairly regarded at home." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 918 (2011). A corporation is "at home" in two places: its place of incorporation and its principal place of business. <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014). Movant is not incorporated in Ohio, does not have a principal place of business in Ohio, and does not occupy or own any real property in Ohio.

Specific jurisdiction is proper when there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." <u>Bristol-Meyers Squibb Co. v. Superior Court of California, San Francisco Cty.</u>, 137 S.Ct.

1773, 1780 (2017). A suit's allegations "must aris[e] out of or relat[e] to the defendant's contacts with the forum." Id. at 1780. Specific jurisdiction over Movant is not appropriate here because there are no claims against Movant arising out of its contacts with Ohio.

The Court's reliance on Federal Rule of Civil Procedure 66 to appoint a receiver to effectuate his reach over property outside Ohio cannot cure the fatal jurisdictional deficiencies. The Court cites U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop., LLC, 866 F.Supp.2d 247 (S.D.N.Y. 2012) for the principle that the Court "has ancillary jurisdiction over the request to appoint a receiver." However, Nesbitt is inapposite because the receiver there was appointed to protect the value of property that was the subject of the litigation and in which the plaintiffs had collateral rights:

> [E]quitable power to appoint a receiver extends to situations where a plaintiff who is a secured creditor seeks the appointment of a receiver to avoid a substantial and preventable decline in the value of its collateral, where the only other proposed alternative is a large loan to a debtor who is already in default, and where an explicitly stated and contemplated end of the receivership is the sale of the properties.

Id. at 257. The Nesbitt court determined that "[t]he dispositive issue is whether the appointment of a receiver is clearly necessary to protect plaintiff's interests in the property." Id. at 254. DMS has no interest in Movant's property outside Ohio.

### III.     THE INJUNCTION SHOULD BE VACATED

The Court's injunction should be vacated because it does not provide a proper basis for its issuance consistent with FRCP 65: "[e]very order granting an injunction and every restraining order must . . . state the reasons why it issued; [and] state its terms specifically." Fed. R. Civ. Pro. 65(d)(1).

### A.     DMS Is the Only Party Subject to a FRCP 65 Injunction

An injunction issued pursuant to FRCP 65 binds only the parties and their officers and agents as well as other persons "in active concert or participation" with the parties. Fed. R. Civ.

Pro. 65(d)(2); see also M & C Corp. v. Erwin Behr GmbH & Co., KG, 508 F. App'x 498, 502 (6th Cir. 2012). Movant is not in the class of persons sufficiently close to – or otherwise in "concert with" – the parties to this action. Moreover, a FRCP 65 injunction should not be granted unless the moving party meets four requirements:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002) (citing Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000)). The failure by DMS to meet its burden on any of these four elements is fatal. Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.").

Ultimately, the Court's failure to adequately address the four required elements is an abuse of the Court's discretion, and accordingly, the preliminary injunction should be vacated. See Louzon v. Ford Motor Co., 718 F.3d 556, 560 (6th Cir. 2013). Even if the Court had addressed these factors, however, none would support the issuance of an injunction in this case.

First, DMS has not and cannot meet its burden of proving that it has a substantial likelihood of success on the merits against Argosy because it has not asserted any factual allegations that Argosy was liable to DMS. No invoices are attached to the Complaint. Argosy is only the parent company of the entities that allegedly received services from DMS. There is also no allegation in the Complaint that DMS provided any services to Argosy. As such, it is difficult to imagine how DMS could prevail "on the merits" against Argosy.

Second, DMS will not suffer irreparable harm for the simple reason that it is only pursuing money damages for past due invoices owed by DCEH. Money damages are not irreparable harm.

<u>Langley v. Prudential Mortg. Capital Co., LLC</u>, 554 F.3d 647, 649 (6th Cir. 2009). Thus, there is zero risk of irreparable harm to DMS from its claims.

Third, the threatened injury to DMS of trying to pursue money damages for past-due invoices owed by DCEH does not outweigh the harm that the injunction has placed on non-parties. The Court's injunction has deprived Movant of its property unrelated to this proceeding. The balance of harms simply does not weigh in favor of DMS because Movant is not able to take any action against Argosy; the injunction is depriving Movant of its property rights and is allowing Argosy to do business in Movant's property rent-free. Enjoining Movant from enforcing rights to its property in California is simply not a proper equitable remedy for an unrelated Ohio breach of contract action. Consequently, there is certainly no need for an injunction against a California landlord that has no connection to this suit.

Lastly, the injunction disserves the public interest because it violates two aspects of public policy. First, the injunction provides Argosy with an end-run around the procedures set forth in the Bankruptcy Code by allowing Argosy, as a quasi-debtor, to attempt to reorganize and erase its debts without providing any protections to Argosy's creditors. Second, the injunction disserves the public interest by condoning Argosy's blatant attempt to skirt United States Department of Education policy, which does not permit funding financially unstable institutions.

**B.     The Injunction was Issued in Violation of the Anti-Injunction Act and the All Writs Act**

The Receiver Order enjoins Movant from pursuing a state court action in California to enforce its rights in the property. Presumably, the Court does so pursuant to the All Writs Act. 28 U.S.C. § 1651. Yet, the Anti-Injunction Act expressly prohibits a federal court from staying proceedings in state courts unless one of the three statutory exceptions is satisfied; the injunction must be "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. If none of the exceptions apply, "there

is an 'absolute prohibition [against] enjoining state court proceedings.' " 202 N. Monroe, LLC v. Sower, 850 F.3d 265, 271 (6th Cir. 2017) (quoting Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286 (1970)). "These exceptions are narrow and 'should not be enlarged by loose statutory construction' because 'the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts.' " Id. (quoting Alt. Coast Line R.R. Co., 398 U.S. at 287). None of the three exceptions apply here.

Congress has certainly not "expressly authorized" an injunction against the actual (and threatened) state court proceedings at issue here. Therefore, this exception is not applicable.

No judgment has been issued in this action, and thus, the exception "to protect or effectuate [] judgments" is facially inapplicable.

The "necessary in aid of its jurisdiction" exception is also inapplicable because it applies in only two, specific scenarios: "where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." Martingale LLC v. City of Louisville, 361 F.3d 297, 302 (6th Cir. 2004). Neither of those scenarios apply to this case. First, this case has not been removed from a state court. Second, this action is not an in rem proceeding against Movant because it does not purport to adjudicate Movant's right to Ohio property. "[A]ctions *in rem* are prosecuted to enforce a right to *things*, whereas actions *in personam* are those in which an *individual* is charged personally." R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 957 (4th Cir. 1999) (quoting The Sabine, 101 U.S. 384, 388 (1879)) (emphasis in original). This is an in personam action against DCEH seeking money damages for past due invoices—no ownership over a *res* is at issue. Where no in rem action is involved, "a simultaneous *in personam* state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter." In re Life Inv'rs Ins. Co. of Am., 589 F.3d 319, 330 (6th Cir. 2009) (quoting Roth v. Bank of the Commonwealth, 583 F.2d 527, 535

(6th Cir. 1978)). The injunction issued by the Court improperly stays and enjoins both pending and anticipated state court in personam actions in violation of the Anti-Injunction Act and the All Writs Act. The injunction is improper because this scenario involves only parallel in personam state actions, and the Sixth Circuit Court of Appeals "precedents . . . plainly prohibit injunctive relief in this situation." <u>In re Life Inv'rs Ins. Co. of Am.</u>, 589 F.3d at 330. Accordingly, the injunction should be vacated.

## IV. THE RECEIVER ORDER IS AN IMPROPER SUBSTITUTE FOR BANKRUPTCY PROCEEDINGS

The Court's Receiver Order should also be vacated because "a receivership is not a substitute for bankruptcy proceedings." <u>Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.</u>, 2005 WL 2205335, at *2 (E.D.N.Y. Sept. 9, 2005) (citing <u>S.E.C. v. Am. Bd. of Trade, Inc.</u>, 830 F.2d 431, 436–438 (2d Cir. 1987)).

The Court's Receiver Order vests in the receiver essentially all of the rights and powers of a chapter 11 debtor-in-possession or trustee, while depriving landlords of the fundamental protections afforded to them under the Bankruptcy Code. The Bankruptcy Code balances the equities by providing chapter 11 debtors with a forum to efficiently sort out their debts and financial affairs, while preserving the rights and interests that landlords may have in the debtor's estate. <u>See</u> <u>Fla. Dept. of Revenue v. Piccadilly Cafeterias, Inc.</u>, 554 U.S. 33, 51 (2008); <u>see also</u> <u>In re Timbers of Inwood Forest Assoc.'s, Ltd.</u>, 808 F.2d 363, 372–73 (5th Cir. 1987). The Court's Receiver Order by contrast is one-sided and provides Argosy with all the benefits of the Bankruptcy Code, but strips Movant of any protections it would otherwise have under the Bankruptcy Code. The receiver is given free rein to dictate the business and financial operations of Argosy, while Movant is unjustifiably stripped of its fundamental right to due process. <u>See</u> <u>In re Grossman's Inc.</u>, 607 F.3d 114, 126 (3d Cir. 2010). For instance, the Bankruptcy Code requires that monetary leasehold obligations be paid as they become due. 11 U.S.C. § 365(d)(3). Other

14

critical protections required by the Bankruptcy Code are also absent from the Receiver Order. See Exhibit B. For this additional reason, the Receiver Order is unjust and should be vacated.

## V.      ALTERNATIVELY, THE INJUNCTION SHOULD BE MODIFIED

If the Court declines to vacate the injunction in its entirety, it should modify the injunction to permit Movant to initiate eviction proceedings against Argosy. "Courts have long held the power to modify injunctions, whether to narrow or broaden them." LFP IP, LLC v. Hustler Cincinnati, Inc., 810 F.3d 424, 426 (6th Cir. 2016). As outlined extensively above, Movant has demonstrated how the improper and overbroad injunction has prejudiced Movant by prohibiting it from collecting both past-due and future rents. Such prohibition is thereby impacting Movants ability to meet its loan obligations on the property leased to Argosy. Movant is entitled to protect its interests and should be permitted to find a tenant capable of paying its rent. Accordingly, Movant respectfully requests that the Court modify the injunction to permit Movant to pursue eviction proceedings against Argosy.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant its motion and vacate in its entirety the Receiver Order or, in the alternative, modify the terms of the Receiver Order.

*/s/ William J. Stavole* _____

William J. Stavole (0040828)
Frederick D. Cruz (0093598)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel:         216.592.5000
Fax:        216.592.5009
E-mail:      william.stavole@tuckerellis.com
                frederick.cruz@tuckerellis.com

*Attorneys for 3601 Sunflower LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 15, 2019, a copy of the foregoing MOVANT 3601 SUNFLOWER LLC'S MEMORANDUM IN SUPPORT OF MOTION TO VACATE THE INJUNCTION AND RECEIVER ORDER OR, IN THE ALTERNATIVE, TO MODIFY THE SCOPE OF THE RECEIVER ORDER AND INJUNCTION was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ William J. Stavole*
William J. Stavole (0040828)
Frederick D. Cruz (0093598)
Tucker Ellis LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113
Tel:      216.592.5000
Fax:     216.592.5009
E-mail:    william.stavole@tuckerellis.com
          frederick.cruz@tuckerellis.com

*Attorneys for 3601 Sunflower LLC*

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) CASE NO. 1:19-cv-145 |
| Plaintiff, | ) |
| | ) JUDGE DAN AARON POLSTER |
| v. | ) |
| | ) |
| SOUTH UNIVERSITY OF OHIO, LLC, ET AL., | ) **DECLARATION OF VICKIE DEWEY** |
| | ) |
| Defendants. | ) |
| | ) |

I, Vickie Dewey, declare as follows:

1.      I am the Senior Property Manager for 3601 Sunflower LLC ("Sunflower").

2.      Sunflower is a limited liability company organized under the laws of California.

3.      Sunflower owns the 55,000 square foot building located at 3601 West Sunflower in Santa Ana, California (the "Property").

4.      Sunflower has existing loan obligations pursuant to a mortgage on the Property.

5.      Sunflower leases the Property to Argosy Education Group, LLC ("Argosy"), a defendant in the above-captioned case, for a current monthly rent amount of approximately $235,937.68, which consists of $140,224.75 in base rent, approximately $84,477.81 in additional rent and $11,235.13 in late fees.

6.      DCEH Education Holdings, LLC, another defendant in the above-captioned case, unconditionally guaranteed the lease on the Property.

7.      The lease between Sunflower and Argosy expires on June 30, 2020.

8.      Argosy is the sole Tenant of the Property as it leases the entirety of the building from Sunflower.

9.      Sunflower uses the monthly rental income it receives from Argosy to pay down its loan obligations.

10.     Argosy continues to occupy the Property despite not paying its January and February rent to Sunflower.

11.     Argosy currently owes a total of $471,875.36 for unpaid rent.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this _14_ day of February, 2019.

Vickie Dewey, Senior Property Manager

# EXHIBIT B

## EXHIBIT B

- A mechanism and/or procedure for "terminating, annulling, modifying, or conditioning" the broad injunction (11 U.S.C. § 362(d));

- Adequate protection when the receiver seeks to use, sell, or lease property in which a creditor has an interest (11 U.S.C. § 363(e));

- A requirement that the receiver cure existing defaults, compensate landlords for any loss resulting from such default, and provide adequate assurance of future performance prior to the assumption of an unexpired lease (11 U.S.C. § 365(b)(1));

- A requirement that monetary leasehold obligations be paid as they become due in the course of the receivership (11 U.S.C. § 365(d)(3));

- A deadline by which the receiver must assume or reject unexpired leases and executory contracts (11 U.S.C. § 365(d)(4));

- A mechanism and/or procedure for the allowance and administration of pre-receivership and post-receivership creditor claims (11 U.S.C. §§ 501-511);

- A requirement and corresponding procedure for the receiver's payment of damages associated with the rejection of a lease (11 U.S.C. § 502(b)(6));

- A systematic process for the proposal, modification, and confirmation of a restructuring plan (11 U.S.C. §§ 1101-1146);

- A deadline for the receiver to propose a plan of restructuring (11 U.S.C. § 1121(b));

- A mechanism permitting creditors to file competing plans of restructuring should the receiver fail to do so in the time allotted (11 U.S.C. § 1121(c)); and

- A procedure that permits creditors to interject and request a liquidation or appointment of another receiver should a restructuring plan have no prospect of feasibility (11 U.S.C. §§ 1104, 1112, 1121)