**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC | : |
| | : Case No. 1:19-cv-145 |
| Plaintiff, | : |
| vs. | : JUDGE DAN AARON POLSTER |
| | : |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.* | : MAGISTRATE JUDGE THOMAS M. PARKER |
| | : |
| Defendant. | : |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND EMERGENCY MOTION TO EXPEDITE DECISION TO ASSUME OR REJECT LEASE**

**RELEVANT BACKGROUND**

**A. The Lease.**

1. Tech Park 6, LLC ("Tech Park") is the owner of the commercial real property development commonly referred to as Green Valley Corporate Center located at 2350 Corporate Circle, Henderson, Nevada (the "Property"). The Art Institute of Las Vegas (the "Institute"), an entity in receivership in this case pursuant to the Receivership Order (defined below), is the tenant of certain premises on the Property (the "Premises") pursuant to that certain *Office Modified Gross Lease*, dated September 14, 2001, as amended by that certain *Amendment to Lease*, dated September 14, 2001, as amended by that certain *Amended and Restated Second Amendment to Lease*, dated July 13, 2007, as amended by that certain *Third Amendment to Lease*, dated July 25, 2008, as amended by that certain *Fourth Amendment to Lease*, dated July 31, 2014, and as amended

by that certain *Fifth Amendment to Lease*, dated October 5, 2017 (collectively, the "Lease").[1]  The laws of the state of Nevada govern the Lease.  Lease § 38.1.

2. The term of the Lease expires on January 1, 2025.  The monthly base rent for the Premises is currently $103,938.32, plus additional rent, including, but not limited to, the Institute's share of Property operating costs and impositions (collectively, the "Rent").  Office Modified Gross Lease § 1.1, Fifth Amendment to Lease ¶ 5.  Failure to pay Rent within five days of the receipt of a written notice of nonpayment constitutes an event of default under the Lease, and all outstanding amounts of Rent are subject to default interest accruing at a rate of 14% per annum.  Office Modified Gross Lease §§ 21.1.1 and 21.10.

3. In the event of default, the Lease provides various remedies to Tech Park, including, but not limited to, the right to (i) terminate or repossess and re-let the Premises, (ii) impose administrative charges and loss of bargain damages, (iii) claw-back sums previously waived or abated by Tech Park including rental improvement allowances, and (iv) elect to treat negative covenants regarding the tenant mix on the Property preferred by the Institute as non-enforceable (collectively, the "Landlord Remedies").  *Id*. §§ 7.2, 21.2(a), 21.4, 21.10(a).

**B.  Pre-Receivership Default and Receiver's Failure to Pay Rent.**

4. Prior to the Receivership,[2] the Institute failed to pay Rent for more than three (3) months.  Kanen Decl. ¶ 8.  On January 2, 2019, Tech Park issued a written notice of nonpayment to the Institute.  *Id*., Ex. B.  That notice was ignored.  *Id*.  Having failed to timely cure the past due Rent, the Institute defaulted on the Lease and triggered the availability of the Landlord Remedies

---

[1] A true and correct copy of the Lease is attached as Exhibit A to the *Declaration of Kimberly D. Kanen in Support of Tech Park 6, LLC's Motion to Intervene and Emergency Motion to Expedite Decision to Assume or Reject Lease* ("Kanen Decl."), filed concurrently herewith.

[2] Capitalized terms used but not defined herein shall have the meaning attributed to them in the *Order Appointing Receiver* [D.I. 8] (the "Receivership Order").

thereunder.  Lease §§ 1.1.11, 21.10(a).  Before Tech Park could exercise any of those remedies, however, the Receivership was commenced.  Kanen Decl. ¶ 8.  As of the date of the entry of the Receivership Order, the aggregate amount of Rent outstanding under the Lease was approximately $230,232.77.  *Id*.

5.  Since entry of the Receivership Order, the Institute continues to occupy the Premises, however, the Receiver has failed to pay Rent to Tech Park despite requests therefor.  *Id*. ¶ 9.  As of the filing of the Motion, the amount of Rent outstanding under the Lease following entry of the Receivership Order is approximately $335,074.72.  *Id*.  Not including default interest contemplated under the Lease, Rent continues to accrue on a per diem basis in the amount of approximately $3,494.73 (monthly base rent in the amount of $103,938.32 + the Institutes share of Property operating costs and impositions in the amount of $903.63 / 30 days).  *Id*.

6.  Shortly after the Receivership began, counsel to the Receiver sent a letter to Tech Park regarding the Lease.  Kanen Decl. ¶ 10, Ex. C.  That letter, among other things, cautioned Tech Park against "tak[ing], commenc[ing] or continu[ing] any action against an entity which is in the receivership, or against the receivership estate, in the absence of the Court's leave to take that action."  *Id*.  The letter also "invite[d Tech Park] to call us or e-mail us at your earliest convenience to discuss the matter."  *Id*.  Tech Park immediately reached out to counsel to the Receiver, expressing a willingness to discuss the disposition of the Lease in the Receivership.  Kanen Decl. ¶ 10.  Tech Park also requested that the Receiver pay Rent under the Lease while such disposition was under consideration.  *Id*.  Counsel to the Receiver promised a decision would be made within the next two weeks.  *Id*.  All communication ceased shortly thereafter; counsel to the Receiver refused to respond to Tech Park's subsequent phone calls and email correspondence.  *Id*.

C.  **Receivership Developments and Other Intervenors.**

3

7. On January 18, 2019, the Court entered the Receivership Order, appointing the Receiver as the federal equity receiver and granting it possession, control and broad authority over Receivership Property, including the power to dispose of such Property and the duty to maximize the value of the Property. Receivership Order ¶¶ 1, 2(c), 2(n). The Receivership Order also empowers the Receiver to "perform pursuant to the terms of any existing contracts executed by the Receivership Entities in connection with the Property" and "reject contracts not deemed to be in the interest of creditors of the estate." *Id.* at ¶ 2(q).

8. Receivership Property encompasses real property, later specified as "including leasehold interests" in addition to "all other assets of whatever kind or nature belonging to the Receivership Entities." *Id.* at ¶¶ 1, 2(b).

9. Facing negative implications of the Receivership on their own part, other similarly situated parties in interest (collectively, the "Other Intervenors") have sought and received authority from this Court to intervene in this case to advance their individual claims and rights.[3]

10. One of the Other Intervenors filed an emergency motion seeking a status conference before this Court to address the Receiver's handling of certain student loan stipends.[4] According to a letter from the Receiver attached to the Student Motion, the Receiver had access to a cash balance as of February 7, 2019, in the amount of $3.8 million (the "Cash Balance"). That letter also confirmed that the Receiver intends to use the Cash Balance along with "$7 million in G5 funds" to pay for "operations and payroll for the remainder of the semester."

---

[3] *See, e.g., Unopposed Joint Motion of Flagler Master Fund SPC Ltd. and U.S. Bank, National Association to Intervene* [D.I. 19]; *Unopposed Motion to Intervene by Student Intervenors, the Dunagan Plaintiffs* [D.I. 35]; *Unopposed Motion of the Bencher Company to Intervene Pursuant to Federal Rule of Civil Procedure 24* [D.I. 40]; *Motion of Studio Enterprise Manager, LLC to Intervene* [D.I. 42]; *Motion to Intervene of Historic Berriman-Morgan, LLC* [D.I. 43]; *Motion of Hemingway at Richmond, LLC to Intervene* [D.I. 45].

[4] *See Pending Student Intervenors' Emergency Motion for Status Conference & Production of Records to Address Loss of Students' Funds* [D.I. 48] (the "Student Motion").

4

**RELIEF REQUESTED AND THE BASIS THEREFOR**

11.     Tech Park's position as an unrepresented party in interest unilaterally providing value to the Receivership Estate through the Receiver's ongoing use of the Premises grows increasingly untenable. Tech Park must be allowed to intervene in this case to assert its claim and protect its rights. In addition, the Receiver should be required to (a) make a determination regarding the disposition of the Lease in short order; and (b) pay Tech Park all Rent accruing thereunder from and after entry of the Receivership Order.

**A.      Tech Park is Entitled to Intervene as a Matter of Right.**

12.     Tech Park is entitled to intervene as a holder of an interest relating to the Receivership Property and the treatment and distribution thereof under Fed. R. Civ. P. 24(a)(2), which provides in pertinent part:

> *Intervention of Right.* On timely motion, the court must permit anyone to intervene who:
>
> \* \* \*
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest .

Fed R. Civ. P. 24(a).

13.     To intervene under Fed. R. Civ. P. 24(a)(2), the prospective intervenor must (1) submit a timely application to intervene, (2) demonstrate a substantial interest in the property or transaction, (3) show that the intervenor's ability to protect such interest might be impaired, and (4) demonstrate that the interest is not adequately represented by the existing parties. *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). Tech Park meets all four of these requirements to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2).

5

14. *First*, the Motion to Intervene is timely. In this circuit, courts look to five non-dispositive factors to determine timeliness: 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention." *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) citing *Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990).

15. As to the first timeliness factor, this case has not progressed substantially and is far from concluding. The Receiver has yet to establish protocols and a schedule for claims against the Receivership Estate. *Cf.* Infinity Capital*, LLC v. Francis David Corp.,* No. 1:18-CV-2422, 2019 WL 350157, at *1 (N.D. Ohio Jan. 29, 2019) (finding intervention untimely based on progress where the case was "nearly over" and court had entered dispositive orders including a scheduling order); *see also Davis v. Lifetime Capital, Inc.,* 560 F. App'x 477, 491 (6th Cir. 2014) (reversing denial of intervention in receivership and noting that "[r]eceiverships proceed in a non-linear fashion and are indefinite in duration. As such, they do not fit within the limited circumstances under which this court denies intervention on the basis of substantial progress.")

16. Moving to the second timeliness factor, the Sixth Circuit has required that the purpose of the intervention be for a "legitimate purpose." *See Infinity Capital* at *2 (finding intervention to reclaim residual payments to be a legitimate purpose). Here, Tech Park seeks to intervene to recover Rent and other monies it is owed under the Lease; a legitimate purpose.

17. Next, Tech Park became aware of its interest in this case upon entry of the Receivership Order, as at that point—a mere month ago—it could neither invoke the Landlord

Remedies, nor act to recover the unpaid Rent and the treatment of the Lease became an issue. *Cf. Blount-Hill* 636 F.3d at 285 (finding three years to be too long for the proposed intervenor to have waited and the third factor to weigh against intervention).

18. As to the fourth timeliness factor, Tech Park would not prejudice the original parties to this case by intervening. Courts have found the fourth factor to weigh against intervention where adjudicating the intervenor's matter would require re-litigation of settled issues or cause undue delay. *See e.g. Johnson v. City of Memphis,* 73 F. App'x 123, 133 (6th Cir. 2003); *Infinity Capital*, at *2. Here, no issues need be re-litigated to address Tech Park's claim and rights according to the Lease and the treatment thereof in this case.

19. Moving to the fifth and final timeliness factor, Tech Park is unaware of any unusual circumstances weighing against or in favor of permitting intervention in this case.

20. Having established the first factor of the test for intervention as of right under Fed. R. Civ. P. 24(a)(2), the ***second*** factor requires that Tech Park have a significant interest in the property that is the subject of this case. The Lease is clearly Receivership Property pursuant to the Receivership Order and Tech Park's claim for non-payment of Rent against the Institute sounding in hundreds of thousands of dollars arises under the Lease.

21. ***Third***, Tech Park's ability to protect its interests under the Lease will be impaired if Tech Park is not permitted to intervene in this case. In this Circuit, the impairment bar is a low one: "[c]ourts generally allow intervention if a party *might be* "practically disadvantaged by the disposition of the action." *Deutsche Fin. Servs. Corp. v. Schwartz Homes,* Inc., 187 F.R.D. 542, 546 (N.D. Ohio 1999) citing *Horrigan v. Thompson,* No. 96–4138, 1998 WL 246008, at *3 (6th Cir.1998) (finding impairment where, if not permitted to intervene, the proposed intervenors would be unable to defend their interest in property of the receivership should the receiver dispose of the

7

property). Similarly, Tech Park cannot assert its rights under the Lease, as property of the Receivership Estate in response to the Institute's default or any other development during this case, and should the Receiver elect to dispose of the Lease, would likely be powerless and will remain so unless allowed to intervene.

22.  *Finally*, Tech Park should be permitted to intervene because its interests may not be adequately represented by the existing parties. Though certain of the Other Intervenors are similarly situated to Tech Park in their own separate right, they have no reason to represent Tech Park's interests in this case and have expressed no willingness to do so. Indeed, the outcome of this case and the distribution of Receivership Property will dramatically affect, and almost certainly curtail, if not forestall, the ability of Tech Park to assert its substantive legal rights under the Lease if it is not permitted to intervene in this case.

**B.  The Receiver Should be Required to Elect to Assume or Reject the Lease Within 30 Days and Pay Rent for the Prior and Continued Use of the Premises in the Meantime.**

23.  The Receiver is a fiduciary not only of the Court, but to Tech Park.[5] He also must adhere to numerous state laws in connection with the ongoing operation of the Receivership Estate. As such, the Receiver must protect and preserve Receivership Property to maximize interest holder recovery, adhere to the Receivership Order, and, relative to the Lease, manage ongoing operations according to equitable considerations and the laws of the State of Nevada.

24.  In furtherance of, and compliance with, all of the foregoing, this Court should require the Receiver to determine promptly whether to assume or reject the Lease and pay Tech

---

[5] Courts have recognized that a court-appointed receiver (1) is a fiduciary of the court and any person with interests in estate property, (2) has a duty to protect and preserve the assets of the estate for the benefit of parties that are ultimately entitled to it, and (3) is endowed with the powers defined in the order creating the receivership. *See U.S. ex rel Willoughby v. Howard,* 302 US. 445, 450 (1938); *Federal Sav. & Loan Ins. Co. v. PSL Realty Co.,* 630 F. 2d 515, 521 (7th Cir. 1980); *Quilling v. Trade Partners, Inc.,* No. 103-CV-236, 2010 WL 188284, at *3 (W.D. Mich. Jan. 16, 2010).

Park Rent accruing since entry of the Receivership Order for use of the Premises in the meantime. Such a result is not only equitable under the circumstances, but in accordance with prior authority of this Court and applicable law.[6]

> i. *Promptly Determining Disposition of the Lease and Paying Rent to Tech Park in the Meantime is Appropriate Under the Circumstances.*

25. The relief requested by Tech Park is consistent with the maxim that "a district court has broad powers in fashioning relief in an equity receivership proceeding." *Liberte Capital Grp., LLC v. Capwill,* 421 F.3d 377, 382 (6th Cir 2005). Moreover, prior decisional authority issued by this Court supports granting such relief. *See, e.g., Universal Rim Co. v. Scott*, 21 F.2d 346 (N.D. Ohio 1922). In making this request, Tech Park is not seeking to prejudice the rights of other parties in interest in this case, but instead desires only to uphold its obligations as a diligent landlord and party in interest in this case. *Id.* (noting that "the plaintiff is as much to blame as the defendant [receiver] for failing to [earlier seek to] compel the receiver to assume or reject the contract in court.").

26. *Universal Rim* is instructive. There, plaintiff Universal Rim Company sought "an injunction restraining the defendant [(the receiver of the Standard Parts Company)] from manufacturing or selling certain demountable rim constructions alleged to be covered by the terms of the license agreement [between Universal Rim and Standard] . . . for the nonexclusive use of certain patents." *Id*. at 347. Following his appointment, the receiver had continued manufacturing

---

[6] It is worth noting that under Section 365(d)(3) of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, which is analogous insolvency law that this Court should "follow wherever practical", Clark, 3 *Law of Receivers*, § 667.4 at 1215 n. 447 (3d. ed. 1959), "[t]he trustee [is required to] perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected . . ." 11 U.S.C. § 365(d)(3); *see also In re Pahr-Mor, Inc.*, 290 B.R. 319, 322 (Bankr. N.D. Ohio 2003) (confirming Section 365(d)(3) requirement that tenants in bankruptcy provide landlords of nonresidential real property full and timely payment for services due under an unexpired lease prior to rejection thereof).

rims that were covered by the license agreement. *Id.* ("The receiver since his appointment has continued to manufacture and sell split demountable rims of the type known as No. 71, or transversely split demountable rims."). Notwithstanding frequent demands by Universal Rim for the receiver to make royalty payments under the terms of the license agreement, the receiver refused. *Id.* Fed up with the receiver's refusal to make royalty payments required under the license agreement or determine whether to reject such agreement, Universal Rim sought injunctive relief from this Court.

27. The Court declined to immediately grant Universal Rim the injunction against the receiver's continued manufacturing of the subject rims, as requested, but did order the receiver to make a decision regarding the disposition of the license agreement within thirty days' time:

> Thirty days will be given the defendant within which to determine whether the license agreement shall be disavowed, obtain approval of such disavowal from the court having administrative charge of the receivership, and notify plaintiff of its renunciation.

*Id.* at 351. In addition, the Court required the receiver to compensate Universal Rim for the prior and continued use of the patents covered under the license agreement pursuant to its terms:

> The plaintiff, however, is entitled to compensation upon equitable principals during the period prior to such renunciation and notice. It seems to me that equity requires the receiver during the period prior to renunciation to make compensation on the same basis as if had succeeded as an assignee to the rights of the Standard Parts Company. In that situation he would be required to pay the agreed royalty for the type of rim described in article 15 [of the license agreement] during the period that he has been making and selling the same.

*Id.* at 350.

28. Following the pronouncements of this Court in *Universal Rim*, the Receiver should be required to elect whether to assume or reject the Lease within 30 days of the entry of the Proposed Order. In addition, because the Receiver continues to "ha[ve] possession and has used

10

property in carrying on the business [of the Institute], he should be required to make compensation" to Tech Park in the meantime by paying all Rent accruing from entry of the Receivership Order forward. *Id.* at 350.

        ii.        *The Receiver Must Also Pay Rent Pursuant to Nevada Law.*

29.    In addition to the equitable considerations supporting Tech Park's request for Rent highlighted by *Universal Rim*, applicable state law also requires the Receiver to pay Rent for the continued use of the Premises. Pursuant to 28 U.S.C. § 959(b), the Receiver is required to manage and operate the receivership estate "according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor would be bound to do if in possession thereof." Therefore, the laws of the state where the receivership property sits governs and binds the receiver's treatment of such property. *See Resolution Tr. Corp. v. Fountain Circle Assocs. Ltd. P'ship,* 799 F. Supp. 48, 50 (N.D. Ohio 1992).

30.    As discussed above, the Premises are located in the State of Nevada and the choice of law provision in the Lease confirms that Nevada law governs. Under Nevada contract law, the terms and conditions of the Lease, including the provisions regarding the payment of Rent, are enforceable. Failure to comply with material terms of the Lease triggers not only the Landlord Remedies, but also summary eviction proceedings authorized under Nevada law. *See* Nev. Rev. Stat. Ann. § 40.254 (West). The payment of Rent is a critical term of the Lease. As such, the Receiver is bound to pay Rent for the continued use of the Premises under Nevada law.

## CONCLUSION

31.    All requirements for Tech Park to intervene as a matter of right are met here pursuant to Fed. R. Civ. P. 24(a)(2). Accordingly, Tech Park respectfully requests that this Court enter the Proposed Order granting is request to intervene in this case. In addition, equity and

Nevada law confirm that Tech Park's emergency relief should be granted and this Court should require the Receiver to (a) elect to assume or reject the Lease within 30 (thirty) days of the entry of the Proposed Order; and (b) pay all Rent contemplated under the Lease for use of the Premises on a per diem basis from entry of the Receivership Order on January 18, 2019, forward.

Dated:  February 20, 2019          **DLA PIPER LLP (US)**

*/s/  Richard A. Chesley*
Richard A. Chesley (OH-0029442)
Jade M. Williams (*pro hac vice* application forthcoming)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone:  (312) 368-4000
Facsimile:   (312) 236-7516
Email: richard.chesley@dlapiper.com
          jade.williams@dlapiper.com

-and-

Joshua D. Morse (*pro hac vice* application forthcoming)
555 Mission Street, Suite 2400
San Francisco, California 94105
Telephone:  (415) 836-2500
Facsimile:   (415) 836-2501
Email: joshua.morse@dlapiper.com

*Counsel for Tech Park 6, LLC*

12

## **CERTIFICATE OF SERVICE**

In accordance with Section 1.4 of the Electronic Filing and Procedures Manual of the Northern District of Ohio and Federal Rule of Civil Procedure 5(b)(2)(E), a copy of the foregoing has been served through the Court's filing system on all counsel of record on February 20, 2019.

*/s/  Richard A. Chesley*
Richard A. Chesley (OH-0029442)

WEST\285407235.5