UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**The Receiver's Opposition to Motion of Hemingway at Richmond, LLC for Limited Relief from Stay Provisions of Order Appointing Receiver [Doc. 47]**

**I.     INTRODUCTION**

Less than a month after this Court appointed Mark Dottore as Receiver for the Receivership Entities (the "Receiver"), one of the Receivership Entities' landlords, Hemingway at Richmond, LLC ("Hemingway"), asks this Court for leave to prosecute its eviction complaint in state court. *See* (Doc. 47). Hemingway's motion is premature: "[w]here the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." *S.E.C. v. Wencke*, 622 F.2d 1363, 1373–74 (9th Cir. 1980) ("*Wencke I*"); *see also F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005) (denying motion for relief from stay where "receiver has had little more than three months to begin to unravel these labyrinthine entanglements").

The property at issue (the "Premises"[1]) serves as the campus for South University of Ohio. At the time the Receiver was appointed, that university was in the midst of a "teach out," an orderly plan under the oversight of the U.S. Department of Education to wind down the university. A teach out allows students to graduate, transfer to another Receivership Entity campus with a 50% scholarship, or be placed at another institution to complete their program. The Receiver has been trying to determine whether it is possible to complete the teach out as planned, and if so what space within the Premises would be required. If Hemingway is granted relief from the stay, the teach out will be cut short, South University of Ohio's students will be harmed, and the Receiver understands that U.S. Government may assert a lien for the federal student loans canceled as a result of the abrupt closure.

Given the very early stage of this receivership, Hemingway's motion should be denied without prejudice to its right to refile its motion later in the receivership.

## II. ARGUMENT

### A. Legal Standard for Relief from Receivership Stay.

The Ninth Circuit's decision in *S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*"), "provid[es] the framework to consider for lifting the stay." *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1196 (10th Cir. 2010); *see also S.E.C. v. One Equity Corp.*, No. 2:08-CV-667, 2010 WL 4878993, at *6 (S.D. Ohio Nov. 23, 2010) (finding that although the Sixth Circuit "has not articulated a test for determining whether a receivership stay should be lifted," the *Wencke II* standard "appears to be the applicable

---

[1] The "Premises" consist of the real property and improvements located at 4743 Richmond Road, Warrensville Heights, Ohio.

standard"). The *Wencke II* court articulated a three-prong test to determine whether a receivership stay should be lifted:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

*Wencke II*, 742 F.2d at 1231. This Court has discretion in applying this test. *Id.* Hemingway bears the burden of proving the receivership stay should be lifted. *E.g.*, *United States v. ESIC Capital, Inc.*, 675 F. Supp. 1462, 1462 (D. Md. 1987).

## B. The *Wencke II* Factors Weigh in Favor of Maintaining the Stay.

### 1. *Maintaining the Stay Will Preserve the Status Quo.*

Continuing the stay will maintain the status quo. Generally speaking, the Receivership Entities are presently intact and are operating under the receivership. "At least for the near future, things should remain that way." *F.T.C. v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001). If this Court grants Hemingway relief from the stay, then presumably it will do the same for the other similar motions that have been filed. *See* (Docs. 56, 59 & 65— various landlords' motions for relief from the stay). Should this happen, "[n]ot only would the Receiver then have to take his attention away from other tasks, but the assets of the receivership estate would quickly be diminished." *Med Resorts Int'l*, 199 F.R.D. at 609.

Although this factor of the *Wencke II* test "essentially balances the interests in preserving the receivership estate with the interests" of the movant, S.*E.C. v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011), this Court should give "appropriately substantial weight to the receiver's need to proceed unhindered by

litigation, and the very real danger of litigation expenses diminishing the receivership estate," *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). That said, "very early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties." *Id.* at 443-444.

The Receiver is cognizant of Hemingway's, and the other landlords', interest in obtaining restitution of its leasehold, but "their interest"—especially at this early stage of the receivership—"is considerably outweighed by the receiver's significant interest in the orderly and efficient administration of the estate." *F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005) (citing *S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). The Receiver simply needs more time to untangle the financial structures of the Receivership Entities and determine how to (and whether he can) continue to operate these university systems and teach out the campuses. Granting Hemingway and the other landlords relief from the stay at this very early stage of the receivership would defeat the whole point of the receivership and the stay in the first place. The reason this Court appointed the Receiver was because the Receivership Entities were in substantial financial distress and, among other reasons, their students would be immediately and irreparably damaged if a receiver were not appointed. *See* Order Appointing Receiver at 2 (Doc. 8).

Indeed, the Plaintiff, Digital Media Solutions, LLC, made the Court explicitly aware of Hemingway's pending eviction action when this Court appointed the Receiver. *See* Pl.'s Mot. to Appoint Receiver at 2 (Doc. 3); *see also* Declaration of Randall Barton ¶¶ 10-11, ¶ 14 (Doc. 7-1) (noting that South University of Ohio defaulted on its December 2018 rent payment and that the universities "currently face 9 separate eviction actions across the country"). Nothing has changed in the intervening month to justify this Court

reconsidering its previous decision. The teach out at South University of Ohio—as Hemingway itself recognizes, Hemingway Memo. at 11 (Doc. 47)—is still continuing, and cutting it short will harm those remaining students at South University of Ohio.[2] Allowing the eviction to proceed would also almost certainly damage the receivership estate insofar as the U.S. Government may assert liens related to canceled student loans, thereby adversely affecting the secured and unsecured creditors alike.

At bottom, at these early stages of the receivership, the first *Wencke II* factor cuts in favor of the Receiver—not Hemingway.

### 2. *Hemingway Filed Its Motion During the Initial Stages of the Receivership.*

Hemingway fails to recognize that "[t]he time at which the motion for relief from the stay is made [] bears on the exercise of the district court's discretion.*" S.E.C. v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980) ("*Wencke I*"). Thus, "[w]here the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." *Id.* at 1373-74; *see also S.E.C. v. One Equity Corp.*, No. 2:08-CV-667, 2010 WL 4878993, at *7 (S.D. Ohio Nov. 23, 2010) (noting that court denied creditor's first motion to lift receivership stay because "the receivership was in its early stages" and "the Receiver needed additional time to identify receivership assets and to investigate and resolve relevant issues pertaining thereto").

---

[2] Hemingway's suggestion that the Receiver find some alternative space to conduct the teach out should be disregarded. Put simply, the Receiver—at this early stage of the receivership—should be focusing his efforts on continuing to try to figure out how to keep the campuses in receivership open, not on finding alternative spaces for the teach out.

{01285997-2}

5

"Generally, courts are reluctant to lift litigation stays early in a receivership where lifting a stay would disrupt the receiver's duty to organize and understand its assets." *United States v. JHW Greentree Capital, L.P.*, No. 3:12-CV-00116 VLB, 2014 WL 2608516, at *7 (D. Conn. June 11, 2014) (collecting authority). In fact, courts have held that the timing factor weighed in favor of a receiver where the receivership was anywhere from three months old,[3] to six months old,[4] to two years old[5] at the time of the creditor's motion.

Here, the timing factor clearly weighs in favor of the Receiver and is dispositive of Hemingway's motion. The Receiver was appointed a little more than one month ago and is only just beginning to untangle the many financial transactions involving tens of millions of dollars and to understand the complex relationships between the various Receivership Entities. It is also worth noting that the stay was imposed, in part, to allow the Receivership Entities to complete teach outs at the designated campuses, including South University of Ohio's.

Hemingway's attempts to dismiss the case law cited above as only applicable to "matters involving fraud, intensive research, satellite litigation, or an otherwise voluminous process," Hemingway Memo. at 10 (Doc. 47), should be disregarded for at least two reasons. First, Hemingway's assertion is not, strictly speaking, true. *See*

---

[3] *F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005) (denying motion for relief from stay where "receiver has had little more than three months to begin to unravel these labyrinthine entanglements").

[4] *S.E.C. v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 234016, at *6 (D. Conn. Jan. 25, 2012) ("At the time of ReoStar's motion, the Receivership had been in place for about six months. . . . [T]he Court is of the view that the Receiver is still in the early stages of the Receivership, the bar date for claims against Receivership Entities having just passed (December 30, 2011). The Receiver's need to organize and understand the financial transactions among all the Receivership entities, as well as assess the claims filed, outweighs ReoStar's need to proceed with its claims.").

[5] *United States v. ESIC Capital, Inc.*, 675 F. Supp. 1462, 1464 (D. Md. 1987).

*Wencke I*, 622 F.2d at 1374. Second, even if Hemingway's assertion were true, this is a matter that even at this early stage involves fraud, intensive research, and satellite litigation. Consider, for example, the Receiver's Revised and Amended Report on Student Stipends (Doc. 68). The Receiver reported that his investigation has now uncovered the appearance that: there many have been "irregularities" in the method and manner used by some or all of the pre-Receivership Dream Center Entities to request Title IV funding; and, the pre-receivership entities spent monies earmarked for student stipends on operating expenses. Obviously, the investigation has just begun and will require significant effort to complete. There is also satellite litigation at this early stage. As the Receiver took control of the university systems with tens of thousands of students and campuses spread across the country, the Receivership Entities were embroiled in litigation across the country—from class action lawsuits in federal court in Chicago and state court in California to eviction lawsuits in the Bedford Municipal Court in Cuyahoga County, Ohio, not to mention a number of EEOC investigations. In addition, the Receiver just recently filed a lawsuit against Studio Enterprise Manager, LLC and Education Principle Foundation in this Court. *See Dottore v. Studio Enterprise Manager, LLC et al.*, Case No. 1:19-cv-380 (N.D. Ohio). Accordingly, the fraud, intensive investigation, and satellite litigation weigh in favor of denying Hemingway's motion.

No matter how the Court should care to interpret the second *Wencke II* factor regarding timing, that timing factor clearly cuts in favor of the Receiver in light of the early stage of the receivership.

### 3. Since the First Two of the *Wencke II* Factors Weigh in Favor of the Receiver, the Court Need Not Weigh the Merits of Hemingway's Claim.

"[W]hen it is asked to lift a stay it would usually be improper for a district court to attempt to actually judge the merits of the moving party's claims at such an early point in the proceedings. A district court need only determine whether the party has colorable claims to assert which justify lifting the receivership stay." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 444 (3d Cir. 2005). But the fact that this factor tips in favor of the movant "is not determinative, especially when all of the others undoubtedly call for a continuation of the stay." *F.T.C. v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001); *see also F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005) (applying only first two *Wencke II* factors and refusing to lift stay). Since the first two *Wencke II* factors clearly tip in favor of the Receiver, the fact that the final factor may tip in favor of Hemingway is not determinative.

### C. The Court Need Not Wade into Bankruptcy Law to Decide Hemingway's Motion.

As a fall back, Hemingway argues that the Court should apply bankruptcy law to decide its motion. *See* Hemingway Memo. at 13-14 (Doc. 47). But the *Wencke II* factors do not envision application of bankruptcy law. And Fed. R. Civ. P. 66 provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Here, the historical practice of the federal courts involves application of the *Wencke II* factors—not bankruptcy law. Hemingway cites no contrary authority.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Hemingway's motion. In the end, the Receiver just simply needs more time to untangle the financial affairs of the Receivership Entities and to determine whether and how he can continue operating the Receivership Entities, South University of Ohio's campus in Cleveland included.

Dated: February 26, 2019

Respectfully submitted,

/s/ Nicholas R. Oleski
Robert T. Glickman (0059579)
Charles A. Nemer (0009261)
Robert R. Kracht (0025574)
Hugh D. Berkson (0063997)
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA
101 West Prospect Avenue, Suite 1800
Cleveland, Ohio 44115
(216) 696-1422 – Telephone
(216) 696-1210 – Facsimile
rtg@mccarthylebit.com
can@mccarthylebit.com
rrk@mccarthylebit.com
hdb@mccarthylebit.com
nro@mccarthylebit.com

*Special Counsel for the Receiver*

## CERTIFICATE OF SERVICE

The foregoing was electronically filed this 26th day of February, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Nicholas R. Oleski
Nicholas R. Oleski (0095808)
