UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DIGITAL MEDIA SOLUTIONS, LLC,** | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| **SOUTH UNIVERSITY OF OHIO,** | ) | |
| **LLC,** *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# FIRST REPORT OF THE RECEIVER

Mark E. Dottore, the duly appointed and acting receiver for the Receivership Entities[1] (the "**Receiver**"), hereby files his first report (the "**Report**").[2] The Receiver cautions that events are fluid. This Report will be supplemented as the

---

[1] The "Receivership Entities" are South University of Ohio LLC, Dream Center Education Holdings LLC, The DC Art Institute of Raleigh-Durham LLC, The DC Art Institute of Charlotte LLC, DC Art Institute of Charleston LLC, DC Art Institute of Washington LLC, The Art Institute of Tennessee - Nashville LLC, AiTN Restaurant LLC, The Art Institute of Colorado LLC, DC Art Institute of Phoenix LLC, The Art Institute of Portland LLC, The Art Institute of Seattle LLC, The Art Institute of Pittsburgh, DC LLC, The Art Institute of Philadelphia, DC, LLC, DC Art Institute of Fort Lauderdale LLC, The Illinois Institute of Art LLC, The Art Institute of Michigan LLC, The Illinois Institute of Art at Schaumberg LLC, DC Art Institute of Phoenix, LLC and its direct subsidiaries the Art Institute of Las Vegas LLC, the Art Institute of Indianapolis, LLC, and AiIN Restaurant LLC; Dream Center Argosy University of California LLC and its direct subsidiaries, and Argosy Education Group LLC; Dream Center Education Management LLC; and, South University of Michigan LLC. *See* Order Appointing Receiver [Docket no. 8, filed Jan. 18, 2019] (the "**Initial Receiver Order**") at 3-4; *see also* Order Clarifying Order Appointing Receiver [Docket no. 14, filed Jan 25, 2019] (the "**Clarifying Order**") at 1 (removing AU Student Funding, LLC as a "Receivership Entity").

[2] Capitalized terms used but not defined in this motion shall have the meanings given to them in the Initial Receiver Order as modified by the Clarifying Order (collectively, the "**Receiver Order**").

need arises. The Receiver will file, as separate docket items, a report on landlord litigation and a go-forward plan, a report on non-landlord pending litigation, and a financial report. As and for this Report, the Receiver says as follows:

## Introduction

This Court appointed the Receiver on January 18, 2019, on an emergency basis, pursuant to its Order Appointing Receiver [Docket no. 8] (the "**Initial Receiver Order**"). On January 25, 2019, after discussions with the secured lenders of the Receivership Entities, the Receiver filed his *Motion of Mark E. Dottore, Receiver for Entry of Order Clarifying Order Appointing Receiver* [Docket no. 12], pursuant to which the Court entered its Order Clarifying Order Appointing Receiver, *nunc pro tunc* to the entry of the Initial Receiver Order.

On February 25, 2019, the Receiver filed his *Motion of Mark E. Dottore Receiver for Entry of Amended Order Appointing Receiver*, seeking the entry of an Amended Order Appointing Receiver (the "**Amended Receiver Order**"), incorporating changes requested by persons with significant interests in the Receivership Entities and the operations of the receivership proceedings, including government entities and lenders. The various iterations of the orders appointing the Receiver shall be referred to herein as the "**Receiver Order**" because the differences among the Initial Receiver Order, the Clarifying Order and the Amended Receiver Order (if entered by the Court) are insignificant for the purposes of this Report.

**Facts**

Upon his appointment the Receiver was placed in charge of three main groups of assets: 1) Argosy University Group, LLC ("**Argosy**"); 2) all assets of Dream Center Educational Holdings, LLC ("**DCEH**"); and 3) the "Excluded Campuses" (See, *infra*). Two other related university systems— South University ("**South**") and The Art Institutes ("**AI**") both of which were formerly owned and controlled by DCEH but are *not* Receivership Entities—depend on DCEH and the Receiver for vital services without which they could not operate.

Prior to the appointment of the Receiver, each university system kept its own accounting of revenues and expenses, but overall operational management services were shared as were the computer and payroll systems. The prior management of the three university systems caused them to be so intertwined that they cannot be separated immediately. Estimated time tables for the extrication of South and AI support services range from a few weeks to months.

Argosy University Group LLC

Argosy University Group LLC is an undergraduate and graduate educational institution formed in 2001 with the merging of three separate and distinguished academic institutions – the American Schools of Professional Psychology, the University of Sarasota, and the Medical Institute of Minnesota. The university currently has the following campuses,[3] as well as offering programs online:

---

[3] *These campuses ceased enrolling students under DCEH (prior to receivership) and are open to see the remainder of students in programs that lead to licensure or certification through their studies.

- Argosy University, Atlanta
- Argosy University, Chicago
- Argosy University, Dallas*
- Argosy University, Hawaii
- The Art Institute of California — Hollywood, a campus of Argosy University
- Argosy University, Los Angeles
- Argosy University, Northern Virginia
- Argosy University, Orange County
- Argosy University, Phoenix
- Argosy, University, Salt Lake City*
- The Art Institute of California — San Diego, a campus of Argosy University
- San Francisco Bay Area*
- Seattle*
- Argosy University, Tampa
- Argosy University, Twin Cities
- Western State College of Law at Argosy University

The university offered undergraduate and graduate degree programs to students through its eight colleges: College of Clinical Psychology, College of Counseling, Psychology and Social Sciences, Graduate School of Business and Management, College of Education, College of Health Sciences, College of Arts and Sciences, College of Creative Arts and Design and Western State College of Law at Argosy University.

At the time the Receiver was appointed, Argosy campuses had an aggregate of 5,737 students. There were an additional 4,581 students studying online. Argosy is institutionally accredited by the WASC Senior College and University Commission. All of the Argosy campuses, including the Western State College of Law at Argosy University, an ABA accredited law school located in Irvine,

California, operate under a single OPE ID number.[4] Argosy University is proud to have eight American Psychological Association accredited Doctor of Psychology in Clinical Psychology programs at its campuses as well as a number of other highly regarded programmatic accreditations.

Dream Center Education Holdings LLC

Dream Center Education Holdings LLC ("**DCEH**") is a not for profit holding company. Prior to the appointment of the Receiver, DCEH centralized and provided operational online services to all of its campuses out of a 17,000 square foot data center (the "**Data Center**") located at 615 McMichael Road, Pittsburgh, PA 15205. Put another way, DCEH structured itself to provide a wide range of managed services for students and employees at campuses including admissions, marketing, communications, student services (such as online course materials and e-textbooks, email, student portals, crisis management services and the like), career services, alumni services, and computer supported operational support and management, such as reporting, financial accounting and human resources. In addition to the Data Center, DCEH also supported its various campuses out of a 100,000 square foot service center in Chandler, Arizona. The monthly rent at the Phoenix facility was $366,206. At the time of filing, DCEH had approximately 2,863 employees. Its operating budget was $27 million per month.

---

[4] The Office of Postsecondary Education assigns a number to identify schools (the "**OPE ID**") that have Program Participation Agreements ("**PPA**"). The PPA and the OPE ID number determines that a school's students are eligible to participate in Federal Student Financial Assistance programs under Title IV regulations ("**Title IV Funds**").

At the time of the Receiver's appointment, DCEH held the equity interest of Argosy and the liabilities of the Excluded Campuses (defined, *infra*, at p. 7). The organizational chart of all of the DCEH/Dream Foundation entities prior to the commencement of the Receivership is attached as Exhibit A. The Receivership Entities are shaded in yellow. The organizational chart was provided by DCEH, and while the Receiver believes it is reliable, he cannot vouch absolutely for its accuracy.

The Studio Transaction and the Excluded Campuses

Just prior to the appointment of the Receiver, DCEH divested itself of its viable South and AI campuses. Each South and AI campus was a separate entity and operated under a separate OPE ID number. Under pressure from regulators, DCEH divested itself of eleven (11) South campuses and eight (8) AI campuses in a complicated transaction with a Delaware for-profit entity, Studio Enterprise Manager, LLC ("**Studio**") and a foundation connected to Studio, Education Principle Foundation ("**EP Foundation**"). The transaction among DCEH, Studio and EP Foundation was documented over the Christmas holidays and completed in the first half of January, 2019 (the "**Studio Transaction**").

After the Studio Transaction closed, the eight South ("**New South**") and eleven AI ("**New AI**") campuses which were desirable (the "**Specified Campuses**"), and all of the *assets* of the Excluded Campuses were transitioned to Studio. New South has approximately 10,000 students and New AI has approximately 5,000 students. After the Studio Transaction closed, in addition to Argosy, DCEH held the liabilities (only) of two unprofitable South campuses, South University Cleveland

and South University Novi, (the "**South Excluded Campuses**"), and the liabilities (only) of 20 unprofitable AI campuses[5] (the "**AI Excluded Campuses**," and together with the South Excluded Campuses, the "**Excluded Campuses**"). New South has acknowledged that it is responsible for the closing expenses for the South Excluded Campuses, known as a "teach out". New AI has made no such commitment, but in a recent settlement has agreed that if the AI Excluded Campuses are sold or transitioned by the Receiver, New AI will return the assets so that the transaction can close.

After the Studio Transaction, New South, New AI and Argosy paid their own "core" expenses, which included those associated with academic standards, curriculum and financial aid services. The new categorization of "core" expenses required the immediate separation of the campuses' academic and financial aid services. Accordingly, South, AI and Argosy brands began the process of splitting apart, an imprecise process at best. During January 2019, some DCEH employees were transitioned from DCEH payrolls onto the New South and New AI payrolls.

As to "non-core" expenses, the Specified Campuses did not and do not have their own computer platforms, so it was not possible to allocate those expenses to the Specified Campuses. Therefore, while transaction documents show that the Specified Campuses paid Studio for "non-core" services, it was, in fact, DCEH which was obligated to continue to provide these services for Specified Campuses, Argosy,

---

[5] AI Charleston, AI Washington, AI Nashville, AI Colorado, AI Phoenix, AI Portland, AI Pittsburgh, AI Philadelphia, AI Fort Lauderdale, AI Illinois, AI Michigan, AI Schaumburg, AI Las Vegas, AI Indianapolis, AI Charlotte, AI Raleigh-Durham, AI Seattle.

and the Excluded Campuses. Therefore, even though DCEH received no benefits of ownership of the Specified Campuses and the Excluded Campuses, in order to operate all of the campuses and make the Studio Transaction work, DCEH was required to provide support for the Specified Campuses and the Excluded Campuses through its Data Center and administrative staff.

One would think that Studio would pay a premium to DCEH to provide these services, but the premium moved in the opposite direction: Pursuant to the Studio Transaction, Studio collected "managed service fees" from all the campuses (even the campuses they do not own), deducted its fee, waited 45 days, and then paid the net fee to DCEH which had been the entity providing those services all along. This "collect up front and pay well in arrears" system placed DCEH in financial peril. The peril is not limited to DCEH: Because all campuses depend on the services provided by DCEH, if DCEH fails, all of the campuses will be without non-core services, and all of the campuses will close.

On February 21, 2019, the Receiver filed a lawsuit against Studio and EP Foundation seeking rescission of the Studio Transaction, breach of contract, declaratory judgment and other injunctive relief and the Court set the matter for hearing on February 27, 2019. Extensive discussions were held between the parties, and a settlement was reached pursuant to which on a going forward basis, Studio will downstream necessary cash to keep the DCEH computers and support services intact. Studio also wire transferred immediate cash to the Receivership to keep operations running in the near term.

Cash Management Issues

On February 27, 2019, the United States Department of Education (the "**DOE**") published a letter denying Argosy any further Title IV funding (the "**Denial Letter**"). The Denial Letter was the DOE's official statement about a situation that had been extant for ten days. At the time of the Receiver's appointment, DOE placed Argosy on an extremely restrictive cash availability system known as Heightened Cash Management 2 ("**HCM2**"). A school placed on HCM2 no longer receives Title IV Funds in advance for the payment of its expenses. Rather, HCM2 requires that an institution disburse all of its expenses from its own institutional funds and submit a properly documented reimbursement request for those funds to the Department. It is then eligible to draw the funding. HCM2 allows the DOE to have more thorough oversight over cash expenditures, but it requires that the school (and now the Receiver) make payments to students and creditors first, and then request reimbursement. In a very practical sense, in order to operate, the Receiver would have to have on hand *at least* one month's cash budget to advance. The Receiver does not have access to funding that will allow him to do this.

The DOE's decision to cut off Title IV funding to Argosy left the Receiver with over 10,000 students in the middle of their studies and virtually no money. The Receiver is working on a path forward for students who are trying to navigate these issues.

The Student Stipends

When students borrow money to go to school, they often borrow more than their tuition, fees and costs and use the additional borrowed money to support themselves while they are studying. For example, a student's tuition may be $10,000, and when added to fees and costs of $500 totals $10,500. But the student may borrow $14,000. The remaining $3,500 is a "credit balance" on the loan, which is paid by the school directly to the student (the "**Student Stipend**").

If the school is financially healthy, DOE advances the entire Title IV balance to the school, and the school pays the student and applies the rest to the student's tuition and fees. But when the school sinks into financial insolvency, the DOE becomes concerned that the institution will commingle the Student Stipend with other operating funds and fail to pay the Student Stipend. To avoid this, the DOE places the school on HCM1, which requires (among other things) that the school pay the Student Stipend first out of its own cash and then when proper proof of the payment of the Student Stipend is submitted to the DOE, the school may request that DOE pay the student's loan money—the entire $14,000—to the school. Upon payment of the $14,000 by the DOE, the school reimburses itself $3,500 for the Student Stipend and applies $10,500 to the student's tuition and fees. Argosy was on this rigorous HCM1 oversight system for a year before the Receiver was appointed.

Under the HCM1 cash oversight regulations, Argosy could not have any Student Stipend money because it was not eligible to receive any Student Stipend

money from DOE unless it had first paid the student for the Student Stipend. What both the Receiver and the DOE did not know was that DCEH and Argosy were altering their submissions to the DOE to reflect that the Student Stipend had been paid when in fact it had not been paid. Based upon these submissions, DOE advanced all of the student's Title IV money. Once the money was received, Argosy and DCEH voided their bookkeeping entries that showed the student had been paid and paid operating expenses with the money rather than paying the Student Stipend.

On February 7, 2019, still acting on the belief that the Student Stipends were not being advanced by the DOE solely because of Argosy's HCM1 cash status, the Receiver entered into earnest discussions with the DOE, seeking advancement from the DOE of the Student Stipends in spite of the HCM1 status. These negotiations were very hopeful until February 16, when the DOE broke off discussions. The Receiver then investigated and determined the true facts. The Receiver requires time to complete a proper, detailed investigation, including the timing of the initial defalcations, who signed the requests and requisitions for the money, who knew about the situation, the exact uses of the money, and a final total amount.

At the time the Receiver was appointed, there was a total of $5.4 million in all bank accounts of the Receivership Entities. Unpaid Student Stipends totaled approximately $13 million. When the Receiver was appointed, the money was already mostly gone.

Immediate Steps Taken by the Receiver

The Receiver has taken immediate and drastic steps to preserve assets and improve his cash position. First, the Receiver has laid off over 1,100 employees, closed the vast Phoenix facility, and cut virtually every other expense. As the Court is no doubt aware, the Receiver has not paid landlords, and many of the landlords are seeking relief from the stay as imposed in the Receiver Order. (A landlord report will be submitted in a separate filing.) Acting under the Receiver Order, the Receiver has also stayed over 60 lawsuits against the Receivership Entities, thus reducing legal costs. (A litigation report will also be submitted in a separate filing.) These steps were not enough to avoid the DOE's termination of Argosy's entitlement to Title IV funding.

Second, the Receiver entered into terse negotiations with Studio and EP Foundation, sued them and settled with them in under two weeks. Key to the settlement is that Studio and EP Foundation will return any assets acquired from the Excluded Campuses, allowing the Receiver to sell or transition those institutions.

Third, the Receiver has actively pursued discussions with 15 different potential purchasers, six for Argosy and nine for the Excluded Campuses. These discussions are critical because one of the best ways to avoid harm to students is to transition the campuses to other owners. The Denial Letter has caused these discussions to accelerate. The Receiver hopes to present term sheets and motions to sell or transition assets this week.

Fourth, the Receiver is also trying to transition the students who are stranded by the financial dysfunction of the Receivership Entities. These discussions are urgent and ongoing, and the Receiver will keep the Court and interested parties advised of developments.

Date: March 4, 2019

**WHITMER & EHRMAN LLC**

*/s/ Mary K. Whitmer*
Mary K. Whitmer (0018213)
James W. Ehrman (0011006)
Robert M. Stefancin (0047184)
2344 Canal Rd., Suite 401
Cleveland, OH 44114
Telephone: (216) 771-5056
Facsimile: (216) 771-2450
Email: mkw@weadvocate.net
       jwe@weadvocate.net
       rms@weadvocate.net

*Attorneys for the Receiver*