UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**The Receiver's Opposition to Motion of 3601 Sunflower, LLC to Vacate the Injunction and Receiver Order or, in the Alternative, to Modify the Scope of the Receiver Order and Injunction [Doc. 54]**

**I.  INTRODUCTION**

Instead of simply asking for relief from the stay—as all the other landlords to date have done (*see* Docs. 47, 56, 59 & 65)—movant 3601 Sunflower, LLC ("Sunflower")[1] asks this Court to vacate entirely its order appointing Mark Dottore as Receiver for the Receivership Entities (the "Receiver"). *See* (Doc. 54). But this Court did not abuse its discretion in appointing the Receiver,[2] and Sunflower's arguments that this Court should, in essence, reconsider its decision are unpersuasive. Sunflower principally argues that this Court "lacked equitable jurisdiction to grant the relief of the appointment of a receiver to a creditor without a secured interest in or a lien against the assets of Defendants." Sunflower Memo. at 2 (Doc. 54). Sunflower's position is curious given the fact that the Defendants' and the Receivership Entities' senior secured lenders, Flager Master Fund SPC Ltd. and U.S. Bank, N.A., have ***not*** objected to the

---

[1] Sunflower owns the premises located at 3601 West Sunflower in Santa Ana, California, which it leases to Argosy Education Group, LLC—one of the Receivership Entities.
[2] The appointment of a receiver "is within the sound discretion of the District Judge." *Guy v. Citizens Fid. Bank & Tr. Co.*, 429 F.2d 828, 834 (6th Cir. 1970).

{01288701-6}

appointment of the Receiver and, instead, have moved to intervene in this action (Doc. 19), which motion was granted by this Court (Doc. 26).

In any event, the Defendants admitted the Plaintiff's claim and consented to the appointment of the Receiver. *See* 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2983 (3d ed. Nov. 2018 update) ("Of course, a receiver may be appointed, even at the request of a contract claimant, if defendant admits the claim and consents to the appointment . . . .") (citing, among other authorities, *In re Reisenberg*, 208 U.S. 90 (1908)). The parties' willing submission to this Court's jurisdiction is dispositive:

> A most absurd result would ensue if, when the corporation has submitted to the jurisdiction of the court, either as a court of equity or to the local jurisdiction, a creditor could come in, or, when brought in, might reopen the matter of jurisdiction over the debtor corporation. If such an objection is not waived once for all, so as to close the question as to stockholders and creditors, what number of creditors would conclude the rest? . . . We are therefore constrained to hold, for the purposes of this case, that the court below through diversity of citizenship obtained jurisdiction not only of the parties to the original suit, but also of a subject-matter equitable in its nature and embracing admitted facts sufficient to justify the appointment of the receiver.

*Cincinnati Equip. Co. v. Degnan*, 184 F. 834, 841 (6th Cir. 1910) (internal citations and quotations omitted).

Sunflower's remaining arguments likewise fail. This Court, under binding Sixth Circuit case law, may, in a receivership case, issue a blanket stay enjoining litigation by non-parties, such as Sunflower. Likewise, the Anti-Injunction Act does not prohibit an injunction barring the ***filing*** of a state court lawsuit. And, finally, given the early stages of the receivership, the Court should not, at this time, lift the stay to allow Sunflower to initiate an eviction action.

II. ARGUMENT

    A. **The Court Should Not Vacate Its Order Appointing the Receiver.**

        *1. Defendants Consented to the Appointment of a Receiver.*

Relying principally on the Supreme Court's decision in *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491 (1923), Sunflower argues that "the Court lacked equitable jurisdiction to [appoint the Receiver]. As a result, the Receiver Order must be vacated." Sunflower Memo. at 4 (Doc. 54). Sunflower is wrong. The parties' consent to the Court's jurisdiction is of paramount importance. As the Supreme Court in *Pusey* itself recognized,

> lack of equity jurisdiction (if not objected to by a defendant) may be ignored by the court, in cases where the subject-matter of the suit is of a class of which a court of equity has jurisdiction. And where the defendant has expressly consented to action by the court, or has failed to object seasonably, the objection will be treated as waived.

*Pusey & Jones Co.*, 261 U.S. at 500 (citing *Brown, Bonnell & Co. v. Lake Superior Iron Co.*, 134 U.S. 530, 535-36 (1890)); *see also In re Reisenberg*, 208 U.S. 90, 110 (1908) ("That the complainant has not exhausted its remedy at law—for example, not having obtained any judgment or issued any execution thereon—is a defense in an equity suit which may be waived . . .and, when waived, the case stands as though the objection never existed.").

Contrary to Sunflower's arguments, the Supreme Court's decision in *Pusey* does not control. But its decision in *In re Reisenberg* does.

In *Reisenberg*, two contract creditors of the New York City Railway Company filed a complaint in the district court, whose subject-matter jurisdiction was based solely on diversity, and alleged that they were owed over $40,000 "for rails and other track

material and for labor done for the company." 208 U.S. at 93. The railway company was apparently insolvent and a defendant in a number of other pending lawsuits. *Id.* at 94-95. "If judgment were obtained in any of these cases, or in any other of the cases where creditors were pressing their demands, it would result in disastrous consequence to the public . . . and thus the security for all the creditors for the ultimate payment of their claims would be impaired and very greatly injured." *Id.* For these reasons, the plaintiffs asked the district court to, among other things, appoint a receiver and issue an injunction against "all other persons, restraining them from interfering with the receiver taking possession of the property." *Id.* at 95.

The New York City Railway Company answered the complaint, "which [answer] admitted all the allegations of the [complaint]," and it joined in the plaintiffs' request that a receiver be appointed. *Id.* at 95-96. The district court granted the plaintiffs' request, appointed a receiver, and "enjoined" all other persons "from interfering in any way with the possession and management of the property by the receivers." *Id.* at 96. Soon thereafter, the Metropolitan Railway Company petitioned the district court to be made a party to the lawsuit and that the receivership be extended to it as well. *Id.* The Metropolitan Railway Company averred that it and the New York City Railway Company "were so inextricably bound together that if the New York City Railway Company went into the hands of a receiver, and all its property were taken possession of by that officer, it was necessary, in the interest of all concerned, that the Metropolitan Railway Company should also be made a party to the suit and the receivership extended to it." *Id.* at 97. The district court granted an order making the Metropolitan Railway Company a party and extended the receivership to it.

Then additional creditors of the two railway companies moved, in essence, to vacate the receivership on the ground that the suit was "filed collusively for the purpose of avoiding the jurisdiction of the courts of the state, and for the purpose of creating a case cognizable under the judiciary act of the United States by the United States courts." *Id.* at 97. These additional creditors also averred that the district court's equity jurisdiction was not properly invoked. *Id.* The district court overruled their objections, and they then petitioned the Supreme Court for leave to file "a petition for a mandamus . . . commanding [] the circuit court to dismiss the bill of complaint against the railroad companies . . . and to vacate injunctions therein issued by such judge, and also to vacate the orders appointing [] the receivers of such railroads." *Id.* at 91-92.

The Supreme Court overruled their arguments and dismissed their petitions. First, the Court held although the defendant railway companies admitted the indebtedness and consented to the appointment of a receiver, "there was such a controversy between these parties as is contemplated by the statute." *Id.* at 107.

Next, the Court turned to the petitioners' argument that the district court "had no jurisdiction because the complainants were not judgment creditors, but were simply creditors at large of the defendant railways." *Id.* at 109. The Supreme Court summarily rejected this argument: "The objection was not taken before the circuit court by any of the parties to the suit, but was waived by the defendant consenting to the appointment of the receivers, and admitting all the facts averred in the bill." *Id.*

Such is the case here. The Plaintiff, Digital Media Solutions, LLC ("DMS"), filed its complaint and alleged that (1) the Defendants, South University of Ohio, LLC, Dream Center Education Holdings, LLC ("DCEH"), and Argosy Education Group, LLC, owed it $252,737 and (2) despite its demand for payment, the Defendants failed to pay. Compl.

{01288701-6}

5

¶¶ 17-18 (Doc. 1). DMS then filed an emergency motion for the appointment of a receiver. (Doc. 3). It explained that "DCEH and its subsidiaries are very likely insolvent, and face claims from a variety of creditors." *Id.* at 2.

The Defendants admitted they were obligated to pay DMS. Ans. ¶ 4 (Doc. 6). And in response to DMS' emergency motion, the Defendants noted that "DMS perhaps understates the distress DCEH and its subsidiaries – a number of schools spread across the United States – are experiencing." Resp. at 1 (Doc. 7). They explained, through the Declaration of Randall Barton, that, as of late December, "DCEH and its subsidiaries' trade creditors were owed $41 million" and the amount due to its senior lenders "was $46.1 million."[3] Barton Decl. ¶¶ 14-15 (Doc. 7-1). The Defendants thus agreed that DMS' emergency motion should be granted. Resp. at 3 (Doc. 7).

This case is thus on all fours with *In re Reisenberg*. As in *Reisenberg*, a contract creditor of the Defendants filed a complaint and asked the Court to appoint a receiver over an insolvent entity facing a deluge of lawsuits that would impair the security for all creditors. *See In re Reisenberg*, 208 U.S. at 94-95. Likewise, the Defendants admitted the indebtedness and consented to the appointment of the Receiver, which constitutes a waiver of the defense that DMS did not exhaust its remedies at law.[4] *See id.* at 109-110. Sunflower cannot thereafter "reopen the matter of jurisdiction." *Cincinnati Equip. Co. v. Degnan*, 184 F. 834, 841 (6th Cir. 1910) (internal citations and quotations omitted). Rather, the Defendants' admission of the indebtedness and their consent to the

---

[3] The Defendants' and the Receivership Entities' senior secured lenders, Flager Master Fund SPC Ltd. and U.S. Bank, N.A., have **not** objected to the appointment of the Receiver.
[4] Sunflower, in a footnote, cites an 1868 district court opinion and a treatise published in 1886 for the proposition that a receiver cannot be appointed by consent of the parties. *See* Sunflower Memo. at 4 n.3 (Doc. 54). But since these authorities far predate the Supreme Court's holdings in *In re Reisenberg* and *Brown, Bonnell & Co. v. Lake Superior Iron Co.*, 134 U.S. 530, 535-36 (1890), they are not good law.

appointment of the Receiver constitutes a waiver of the defense "once [and] for all, so as to close the question as to stockholders and creditors." *Id.* (internal citations and quotations omitted).

To be sure, consent alone may not justify the appointment of a receiver. *See, e.g.*, *PNC Bank, Nat. Ass'n v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014) (explaining that "the parties' advance consent to the appointment of a receive[r] is a strong factor weighing in favor of appointing one"). But it does constitute a waiver of Sunflower's principal argument: lack of equity jurisdiction. *See In re Reisenberg*, 208 U.S. at 109-110; *Kingsport Press v. Brief English Sys.*, 54 F.2d 497, 500 (2d Cir. 1931) ("There can be no doubt that the federal court obtains jurisdiction where the defendant corporation admits indebtedness and waives its right to have the complainant's claim established at law."); *People's-Pittsburgh Tr. Co v. Hirsch*, 65 F.2d 972, 975 (3d Cir. 1933) ("Again, whatever defects there might have been in the beginning to the jurisdiction under the facts alleged in this case were waived by the defendant when it appeared and admitted the truth of the allegations of the bill and consented to the appointment of a receiver.").

In any event, the balance of factors weighed in favor of appointing a receiver. *See Resolution Tr. Corp. v. Fountain Circle Assocs. Ltd. P'ship*, 799 F. Supp. 48, 51 (N.D. Ohio 1992) (listing factors courts consider when appointing receiver); Pl.'s Mot. to Appoint Receiver at 5-8 (Doc. 3) (explaining why the factors weighed in favor of appointing a receiver).

Finally, the Supreme Court has explained that a receiver may be appointed—even at the suit of a simple contract creditor—"where the defendant is a public service corporation and the unbroken performance of its services is in furtherance of the public

{01288701-6}
7

good" and "though the public good was not involved, where legitimate private interests might otherwise have suffered harm." *Shapiro v. Wilgus*, 287 U.S. 348, 356 (1932) (citing *In re Reisenberg*, 208 U.S. 90, 111 (1908), and, among other authorities, *United States v. Butterworth-Judson Corp.*, 269 U.S. 504, 513 (1926)). Again, this is such a case. The Receivership Entities' operate almost 50 campuses across the United States for the South University, Art Institute, and Argosy University systems. All together, the Receivership Entities are responsible for tens of thousands of students at these campuses throughout the country. If the Receiver were not appointed, these tens of thousands of students would have been promptly pushed out into the cold and the going concern value of the Universities would have been destroyed with no possibility of reorganization for the benefit of all creditors. The Receiver's continued operation of Receivership Entities is simply in furtherance of the public good.

At bottom, Sunflower's objection to the Receiver's appointment—like the objecting creditors' objections in *Reisenberg*—should be overruled.

>   **2.**    ***The Court Did Not Abuse Its Discretion in Appointing the Receiver Over All of the Receivership Entities.***

Sunflower's next objection to this Court's Order is likewise foreclosed by *Reisenberg*. Sunflower claims that "it is clear that the only property for which a receiver could have been appointed is the amount owed for the outstanding invoices from DCEH." Sunflower Memo. at 8 (Doc. 54). But recall that in *Reisenberg* the court appointed a receiver over the entirety of two railway companies on the application of two contract creditors that were owed a total of $41,000. *See In re Reisenberg*, 208 U.S. at 93.

Sunflower relies on foreclosure cases that are clearly inapposite. *See* Sunflower Memo. at 7-8 (Doc. 54). And its reliance on *In re Richardson's Estate*, 294 F. 349 (N.D. Tex. 1923), is likewise misplaced. In *Richardson's Estate*, a state court, upon motion of certain contract creditors and the consent of the individual defendant, appointed a receiver. *Id.* at 351. Sixteen months later, the individual defendant then filed a voluntary petition in bankruptcy. *Id.* The bankruptcy trustee then moved the district court to require the state court receiver to turn over to him certain assets of the individual defendant. *Id.* The district court denied the trustee's motion and held that the Supreme Court's decisions in *In re Reisenberg*, 208 U.S. 90, 111 (1908), and *Brown, Bonnell & Co. v. Lake Superior Iron Co.*, 134 U.S. 530, 535-36 (1890), "to be more than merely persuasive to this court." *In re Richardson's Estate*, 294 F. at 361.

As noted, *Reisenberg* is dispositive of this issue.

### 3. *Equity Counsels in Favor of Maintaining the Receivership.*

Sunflower completely omits any discussion in its motion about the management of the Receivership Entities should this Court vacate the Receivership Order. In the Receiver's brief management of the Receivership Entities, he has already discovered "irregularities" in their requests pre-receivership for Title IV funding from the Department of Education. Revised & Amended Report at 1 (Doc. 68). And his preliminary investigation revealed that the entities pre-receivership improperly used Title IV funds "to pay their operating expenses." *Id.* at 2.

In contrast, the Receiver has already proven his value to all interested stakeholders. In a week, the Receiver brought suit, settled the suit—subject to court

approval—and brought in over $3.8 million to the receivership estate. *See* Mot. to Approve Settlement (Doc. 82).

Put simply, "a receiver may be appointed" to manage a business "where it is necessary to preserve assets from irreparable loss through mismanagement of its officers or otherwise." *Macon Lumber Co. v. Bishop & Collins*, 229 F.2d 305, 307 (6th Cir. 1956). In fact, "equity will not hesitate to assume charge and control" if the business has been "mismanaged and [its assets] are in imminent danger of being lost to the stockholders and creditors through the collusion and fraud of [its] officers." *Id.* Here, the Receivership Order should not be vacated as equity counsels in favor of maintaining the receivership.

## B. This Court May Enjoin Sunflower.

As an initial matter, the Sixth Circuit has squarely held in receivership cases that "the receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Thus, a federal district court may impose a litigation stay on a non-party to a receivership as part of its inherent power as a court of equity to fashion effective relief. *See id.* at 551-52; *S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). In *Wencke*, the Ninth Circuit held that a "blanket stay" of litigation was "necessary to achieve the purposes of the receivership" and that "the district court had the power to enter the order." *Id.* Likewise, both the Second Circuit and the Sixth Circuit have approved anti-litigation injunctions in receivership proceedings. *See S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("An anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership."); *Liberte Capital Grp.*, 462 F.3d at

551-52 ("Once assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets. . . . To this extent, the receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained. . . . Because the court's power of injunction in a receivership proceeding arises from its power over the assets in question, non-parties to the underlying litigation may be bound by a blanket stay, so long as the non-parties have notice of the injunction.").

Sunflower's arguments that this Court lacks jurisdiction over it[5] and/or that it is not subject to the stay run directly afoul of the Sixth Circuit's holding in *Liberte Capital Group*. *See* Sunflower Memo. at 10-12 (Doc. 54). There, the Sixth Circuit held that the district court did not abuse its discretion in finding non-parties in contempt of its receivership order and its corresponding injunction. *Liberte Capital Grp.*, 462 F.3d at 557. The only requirement the Sixth Circuit imposed is that the non-party have notice of the injunction, *id*. at 552, which Sunflower admits it received, *see* Sunflower Memo. at 9 ("Movant received the Court's Receiver Order . . . .") (Doc. 54).

For these reasons, the Court's injunction accords completely with the binding authority of the Sixth Circuit.

### C. The Injunction Does Not Violate the Anti-Injunction Act.

The Anti-Injunction Act, 28 U.S.C. § 2283, is not as broad as Sunflower would make it out to be. The act creates "an absolute prohibition against enjoining state court

---

[5] This Court's jurisdiction over Sunflower is also based on the United States Code: by virtue of 28 U.S.C. § 754, 28 U.S.C. § 1692, and the Sixth Circuit's holding in *Haile v. Henderson Nat. Bank*, 657 F.2d 816 (6th Cir. 1981), this Court's jurisdiction over Sunflower was perfected when the Receiver filed his § 754 notice in the Southern District of California. *See Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 3:19-mc-96 (S.D. Cal. Jan. 24, 2019).

{01288701-6}
11

proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286-87 (1970). But the Anti-Injunction Act "do[es] not preclude injunctions against the institution of state court proceedings[; instead it] only bar[s] stays of suits already instituted." *Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2(1965); *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) (holding that the Anti-Injunction Act "does not preclude injunctions against a lawyer's filing of *prospective* state court actions") (emphasis in original).

Sunflower points to no case it has already filed that has been enjoined.[6] Instead, Sunflower only complains that the "Receiver Order enjoins [it] from ***pursuing*** a state court action in California to enforce its rights in the property." Sunflower Memo. at 12 (Doc. 54) (emphasis added). *Dombrowski* and *Newby* are on point in holding that the Anti-Injunction Act does not preclude injunctions against the ***institution*** of state court proceedings. Thus, the stay does not violate the Anti-Injunction Act.

### D. The Receiver Order Is Not an Improper Substitute for Bankruptcy Proceedings.

Sunflower contends that the Receivership Order should be vacated because "a receivership is not a substitute for bankruptcy proceedings." Sunflower does not, however, cite any authority for vacating a receivership on those grounds. Rather, the only case Sunflower cites to for this proposition merely holds that the Receiver's motion

---

[6] The Receiver does not concede that the three exceptions to the Anti-Injunction Act are inapplicable. Rather, the Receiver contends that the injunction was absolutely necessary to aid the Court's jurisdiction over the receivership assets and to protect and effectuate the Court's judgments. *See* 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2985 (3d ed. Nov. 2018 update) ("Whichever court is entitled to retain control over the property pursuant to the receivership, be it federal or state, has the power to enjoin interference by other courts should that become necessary.") (footnotes and citations omitted). But because Sunflower's motion can be decided on broader grounds, the Receiver will not address the exceptions in detail at this time.

for an injunction was not well taken—not that the receivership should be vacated entirely. *See generally Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04 CV 4971NGMDG, 2005 WL 2205335 (E.D.N.Y. Sept. 9, 2005). In fact, the Second Circuit has "never vacated or modified a receivership order on the ground that a district court had improperly attempted to effect a liquidation." *S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 437 (2d Cir. 1987).

DMS and the Defendants both spent considerable time explaining why bankruptcy was not and is not an option: it would render the universities operated by the Receivership Entities ineligible to receive federal grants and student loans provided under the Higher Education Act of 1965. Pl.'s Mot. to Appoint Receiver at 2-3 (Doc. 3) (citing 20 U.S.C. § 1002(a)(4)(A); 34 C.F.R. § 600.7 (a)(2)); Barton Decl. ¶ 18 (Doc. 7-1). The going concern value of the Receivership Entities would therefore be irrevocably damaged—to the harm of all stakeholders, Sunflower included. This Court did not abuse its discretion, in light of these facts, in appointing the Receiver and concluding that "a bankruptcy filing is not reasonable or practicable in the circumstances." Receivership Order at 3 (Doc. 8); *see S.E.C. v. Malek*, 397 F. App'x 711, 715 (2d Cir. 2010) (holding that district court did not abuse its discretion in concluding that "it would be inequitable to force the case into bankruptcy").

### E. The Court Should Not—At These Early Stages—Lift the Stay to Allow Sunflower to Initiate Eviction Proceedings.

Finally, and in the alternative, Sunflower argues that the Court should lift the stay and allow it to initiate eviction proceedings. *See* Sunflower Memo. at 15 (Doc. 54). Given the early stages of this receivership, the Court should decline to do so.

The Ninth Circuit's decision in *S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*"), "provid[es] the framework to consider for lifting the stay." *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1196 (10th Cir. 2010); *see also S.E.C. v. One Equity Corp.*, No. 2:08-CV-667, 2010 WL 4878993, at *6 (S.D. Ohio Nov. 23, 2010) (finding that although the Sixth Circuit "has not articulated a test for determining whether a receivership stay should be lifted," the *Wencke II* standard "appears to be the applicable standard"). The *Wencke II* court articulated a three-prong test to determine whether a receivership stay should be lifted:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

*Wencke II*, 742 F.2d at 1231. This Court has discretion in applying this test. *Id.* Sunflower bears the burden of proving the receivership stay should be lifted. *E.g.*, *United States v. ESIC Capital, Inc.*, 675 F. Supp. 1462, 1462 (D. Md. 1987).

Here, the *Wencke II* factors weigh in favor of maintaining the stay for the same reasons the Receiver articulated in opposition to Hemingway at Richmond, LLC's motion for relief from the stay. *See generally* Receiver Opp. (Doc. 76). Briefly, "[t]he time at which the motion for relief from the stay is made [] bears on the exercise of the district court's discretion." *S.E.C. v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980) ("*Wencke I*"). Thus, "[w]here the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." *Id.* at 1373-74; *see also S.E.C. v. One Equity Corp.*, No. 2:08-CV-667,

2010 WL 4878993, at *7 (S.D. Ohio Nov. 23, 2010) (noting that court denied creditor's first motion to lift receivership stay because "the receivership was in its early stages" and "the Receiver needed additional time to identify receivership assets and to investigate and resolve relevant issues pertaining thereto").

"Generally, courts are reluctant to lift litigation stays early in a receivership where lifting a stay would disrupt the receiver's duty to organize and understand its assets." *United States v. JHW Greentree Capital, L.P.*, No. 3:12-CV-00116 VLB, 2014 WL 2608516, at *7 (D. Conn. June 11, 2014) (collecting authority). In fact, courts have held that the timing factor weighed in favor of a receiver where the receivership was anywhere from three months old,[7] to six months old,[8] to two years old[9] at the time of the creditor's motion.

Here, the timing factor clearly weighs in favor of the Receiver and is dispositive of Sunflower's motion. The Receiver was appointed a little more than one month ago and is only just beginning to untangle the many financial transactions involving tens of millions of dollars and to understand the complex relationships between the various Receivership Entities.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Sunflower's motion.

---

[7] *F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005).
[8] *S.E.C. v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 234016, at *6 (D. Conn. Jan. 25, 2012).
[9] *United States v. ESIC Capital, Inc.*, 675 F. Supp. 1462, 1464 (D. Md. 1987).

Dated: March 4, 2019 

Respectfully submitted,

/s/ Nicholas R. Oleski
Robert T. Glickman (0059579)
Charles A. Nemer (0009261)
Robert R. Kracht (0025574)
Hugh D. Berkson (0063997)
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
(216) 696-1422 – Telephone
(216) 696-1210 – Facsimile
rtg@mccarthylebit.com
can@mccarthylebit.com
rrk@mccarthylebit.com
hdb@mccarthylebit.com
nro@mccarthylebit.com

*Special Counsel for the Receiver*

## CERTIFICATE OF SERVICE

The foregoing was electronically filed this 4th day of March, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Nicholas R. Oleski
Nicholas R. Oleski (0095808)

{01288701-6}