# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) |
| | ) CASE NO. 1:19-CV-145 |
| Plaintiff, | ) |
| | ) JUDGE DAN AARON POLSTER |
| v. | ) |
| | ) |
| SOUTH UNIVERSITY OF OHIO, LLC, | ) |
| *et al.* | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| Defendants. | ) |

**STUDENT INTERVENORS' MEMORANDUM IN SUPPORT
OF VACATING ORDER APPOINTING RECEIVER**

In accordance with this Court's February 25, 2019 Order (Dkt. 69),[1] Student-Intervenors Emmanuel Dunagan, Jessica Muscari, Robert J. Infusino and Stephanie Porreca ("Student Intervenors")[2] submit this Memorandum in support of vacating the order appointing the Receiver.

On January 18, 2019, Plaintiff filed this action, asserting that a receivership in this case would "serve to protect dozens of campuses, thousands of students, Defendants assets and their stakeholders." Dkt. 3 at 3. *See also* Dkt. 7 at 3 (noting Defendants' agreement that "the imposition of a receivership serves to protect all stakeholders," including "the students"). The fundamental justification for the receivership was to avoid a bankruptcy filing, *i.e.*, an event that would render

---

[1] References to "Dkt." in this pleading are to docket entries in the above captioned action, *Digital Media Solutions vs. South University of Ohio*, LLC, 1:19-cv-00145-DAP. References to docket entries in the companion case, *Dottore v. Studio Enterprise Manager*, LLC, 1:19-cv-00380-DAP will be designated "Studio Dkt."

[2] Student Intervenors are named representatives in a proposed class-action lawsuit against the Illinois Institute of Art LLC, the Illinois Institute of Art-Schaumburg, LLC, and Dream Center Education Holdings LLC, three of the entities in Receivership, pending in the United States District Court for the Northern District of Illinois. *See Dunagan et al. v. Illinois Institute of Art, LLC, et al.*, No. 19-cv-0809 (N.D. Ill.).

DCEH, South University Ohio and the other schools ineligible to receive the principle source of their revenues. 20 U.S.C. § 1002(a)(4)(A); 34 C.F.R. § 600.72(a)(2); *see also* Dkt. 3 at 2-3. But that justification is now largely, if not entirely, moot. The Department of Education has ended Title IV participation for Argosy University, the largest system under the Receiver's management, and the Receiver has agreed to transfer many of the Art Institutes that are still open. Dkt. 82-1.

Furthermore, as described below, the circumstances of the Receiver's appointment, and developments during the receivership, do not provide confidence that the interests of students are being protected. This court should either dissolve the receivership or replace the current Receiver—who was handpicked by DCEH—with a genuinely neutral receiver and require that the receivership be conducted with greater accountability and transparency than has been provided to date.

I.  **PURPOSE OF THE DREAM CENTER RECEIVERSHIP**

The appointment of a receiver by a federal court "is an extraordinary equitable remedy that is justified only in extreme situations." *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012); *Steinberg v. Young*, 641 F. Supp. 2d 637, 644 (E.D. Mich. 2009). It should not "do more harm than good." *Id.* For that to occur, creditors and interested parties must have confidence in the impartiality of the receiver—particularly where the receivership order constrains the assertions of their interests through other means (reimbursement, foreclosure, eviction, litigation). *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998) (receiver "is a neutral court officer appointed by the court"); *see also Gulf Refining Co. of La. v. Vincent Oil Co.*, 185 F 87, 89-90 (5th Cir. 1911) (a receiver is "an indifferent person between the parties, appointed by the court . . . [to] secure [] funds which this court . . . will have the means of distributing among the persons entitled to those funds"). These attributes are all the more important here, where the ostensible purpose for these

financially-compromised institutions to be placed in receivership rather than bankruptcy is to protect students. Dkt. 3 at 2; Dkt 7-1 ¶ 18.

## II. CIRCUMSTANCES OF THE RECEIVER'S APPOINTMENT

The Receiver for DCEH was selected by DCEH, not the Court. In its unopposed motion to appoint a receiver, Plaintiff DMS asserted that Mr. Dottore was "uniquely qualified" for the position *because* he had "been serving as a consultant for DCEH and the Universities since October 2018." Dkt. 3 at 11-12. He and his team were hired to familiarize themselves with the entities' financial condition and business operations, and to participate in business transactions with the Department of Education. *Id*. As of the date he was appointed Receiver, Mr. Dottore had already provided 300 hours of services to DCEH and met with the undersecretary of the U.S. Department of Education about the "dire financial condition of DCEH and the Universities and their plan to restructure, including potential plans to seek the immediate appointment of a federal receiver." *Id*. at 12.

Documents filed with this Court after Mr. Dottore's appointment establish that DCEH had been trying to get him appointed receiver since at least November 2018. *See* Studio Dkt. 9 at 5 ("DCEH informed Studio it was contemplating entering into a receivership at the end of November 2018"; "DCEH introduced Studio to Mark Dottore, the individual who would purportedly be appointed as receiver."). In between then and the January 18, 2019 lawsuit by DMS that resulted in his appointment, Mr. Dottore invited a lawsuit against DCEH by South University's landlord— going so far as to prepare a draft complaint against DCEH for that purpose—to create the conditions for his appointment. Dkt 47-8 (December 7, 2018 email from Robert Kracht to "Greg" at gg.geisco.net) (Exh A).[3] That invitation apparently was not accepted. However, as intervenor

---

[3] Notably, December 7 was the day after the Student Intervenors filed their class action lawsuit in Cook

3

3601 Sunflower LLC explained in its Motion to Vacate the Receiver Order, it appears likely that the receivership was arranged with DMS the same way: "DMS coordinated its filing with the Defendants so Defendants could immediately consent to the Order appointing the receiver"; "In essence, DMS just provided the vehicle by which Defendants could orchestrate the appointment of a receiver over themselves." Dkt. 54-1 at 2.

The unorthodox origins of this receivership diminish public and creditor confidence in its fair administration, raising at least the appearance of conflicts of interests regarding financial transactions that took place while Mr. Dottore was consulting for DCEH. This is particularly so given that Mr. Dottore, as the Receiver, is now responsible for addressing these same transactions in his capacity as Receiver. Developments since that time magnify those concerns.

## III. DEVELOPMENTS DURING THE RECEIVERSHIP

Four major developments have occurred in the 45 days since the Receiver was appointed.

**First**, it came to light that Argosy University campuses have not distributed student loan stipends owed to their students, leaving them unable to pay for living expenses like rent, mortgages, child care and groceries. *See* Rachel Leingang, "Argosy University Withholding Financial Aid. Students Can't Pay Their Bills." *Arizona Republic* (Feb. 8, 2019), *available at:* https://www.usatoday.com/story/news/education/2019/02/08/argosy-university-financial-aid-closing-receivership-accreditation/2817950002/. As this story has unfolded, Mr. Dottore has provided a series of vague and often contradictory accounts of where the money went, including, in one court filing, claiming that the money was "not missing." Dkt. 55. Challenged on this, Dkt.

---

County, Illinois, seeking tuition reimbursement damages in excess of $10 million. Dkt. 35-2. Even though DCEH had concluded that the financial circumstances giving rise to a receivership had existed since at least that date, it did not petition for a receivership to protect DCEH and its schools' assets at that time, but instead waited until January 18, 2018, when it apparently collaborated with DMS to bring the lawsuit in Ohio, where Mr. Dottore could be appointed.

4

65, the Receiver then acknowledged that

> there may be irregularities in the method and manner used by some or all of the pre-Receivership Dream Center Entities to request Tittle IV funding, in particular with respect to draw downs of accelerated student funding ("**Student Stipends**"). It appears that amounts improperly requested by the pre-Receivership Dream Center Entities and then advanced by the United States Department of Education were not remitted to students . . . It also appears that when the funding was received by the pre-receivership Dream Center Entities, it was used to pay their operating expenses.

Dkt. 68 (emphasis in original). The Receiver reported, a full month after media reports revealed that Argosy students had not received their stipends, that he was in the "*preliminary* stages of a detailed, forensic investigation." *Id.* (emphasis added). Today, the Receiver submitted a Report, in which he disclosed that: "DCEH and Argosy were altering their submissions to the [Department of Education] to reflect that the Student Stipend had been paid when in fact it had not been paid" and then "voided their bookkeeping entries that showed the student had been paid and paid operating expenses with the money rather than paying the Student Stipend." Dkt. 91 at 11. No information is provided about *who* at DCEH and Argosy did this, or what "operating expenses" were paid with the diverted funds, subjects that the Receiver should be prepared to address at the March 8 status conference.

The Department of Education has determined that the failure to pay the stipends is "a severe breach of the required fiduciary standard of conduct . . . and demonstrates a blatant disregard of the needs of its students." Letter from Michael J. Frola to Mark Dottore, Receiver (February 27, 2019) (Frola Letter) (Exh. B) at 4.[4] As a result of these and other actions, the Department

---

[4] The Argosy students are not the only students to whom DCEH is responsible who are being deprived of funds that are rightfully and legally theirs. As the Department of Education's website explains, students from at least The Art Institute of Pittsburgh, The Art Institute of Las Vegas, and The Art Institute of Seattle have also not received their stipends. *See* U.S. Department of Education, Federal Student Aid, "Information About Credit Balance Refunds Owed to Argosy Students," *available at:* https://studentaid.ed.gov/sa/about/announcements/dream-center#credit-balance-refunds (last visited March 4, 2019).

5

terminated Argosy's participation in Title IV (*id.* at 3)—the preservation of which was the primary rationale for the Receiver's appointment. Dkt. 3 at 2.

It remains unclear whether the apparent diversion of student stipends lays at the feet of the pre-receivership entities or the post-receivership entities or both. It is similarly unclear to the Student Intervenors what information the U.S. Department of Education had during this crisis. The Court's direction to the Receiver to invite the Department of Education to participate in the March 8, 2019 status conference is a welcome development in this regard. Dkt. 80.[5]

**Second**, the Receiver filed a lawsuit and Motion for Temporary Restraining Order against Studio Enterprise Managers, demanding payments he claims were owed as a result of DCEH's sale on January 7, 2019 of many of its Art Institute and South campuses, and seeking a rescission of that sale. Studio Dkt. 1 and 2. The Receiver asserted: "On information and belief, the Receiver alleges that the Studio deal was presented by the Department of Education as a 'Take it, or we'll cut of your funding today' prospect . . .". Studio Dkt. 2-1 at 9-10. However, according to Studio, Mr. Dottore, while acting in his pre-receivership capacity as consultant to DCEH, was "intimately involved" in the reorganization plan that resulted in the sale of schools to Studio (Studio Dkt. 9 at 3)—information which DCEH and the Receiver had never disclosed in their Response to the Emergency Motion to Appoint a Receiver or in the lawsuit against Studio. Indeed, the "[o]n information and belief" qualification of his allegations about the deal suggests otherwise.

The Receiver and Studio have submitted a proposed settlement to the Court that, to the best

---

[5] A recent letter from the American Psychological Association (APA) to Secretary DeVos further underscores why the Department's participation in the March 8 hearing is important. The APA letter describes the critical and urgent need for the Department to step in and immediately assist psychology students enrolled at eight APA-accredited Argosy institutions, explaining that these students are "in crisis" and that the Department "must do more to protect, serve, and guide these students now." *See* Letter from Arthur C. Evans, Jr., Chief Executive Officer, APA to Secretary DeVos (March 1, 2019) (Exh. C).

6

of the Student Intervenors' understanding, ends all management services to the Argosy students. Dkt. 82-1. In the absence of Title IV funds, management services, or stipends so students can pay living expenses, it is not clear whether or how the Receiver intends to keep Argosy open. (*See* Dkt. 80, Order Requiring Detailed Organization Chart, Plan for Funding Operations).

**Third**, as a result of the recent intervention by Thomas Perrelli, the Settlement Administrator for the Consent Judgment between DCEH and the states (Dkt. 77), Student Intervenors have learned that the Receiver has failed to fulfill its assurances to the Settlement Administrator "that the receivership filings would reflect the receiver's obligations under the Consent Judgment generally, and regarding Corrective Action Plans specifically." Dkt 77-1 at 10-11. "[T]he receivership filings [have been] silent about the Consent Judgment, and the Receiver. . . . has declined to affirm any intention to fulfill a Corrective Action Plan for the affected students." *Id.* at 11. The Student Intervenors *are* those affected students.

**Fourth**, the Receiver gutted Argosy's faculty, rendering the schools academically nonfunctional. As the Department explains:

> On February 7, 2019, the Receiver terminated the employment of Argosy's chancellor, and nearly 100 Argosy faculty, academic support personnel and financial aid counselors. Those employees were terminated despite the Receiver's repeated assurances to the Department that it would not do so. Additionally, the Department has been advised that this process was so disruptive that professors were called out of classrooms while they were teaching and their employment terminated.

Frola Letter (Exh. B) at 5. The Department found that the Receiver's actions resulted in "substantial and irreparable damage to the academic integrity of Argosy" such that the school could no longer provide the academic programs described in its official publications. *Id.*

## IV. THE EXISTING RECEIVERSHIP ORDER SHOULD BE VACATED

The predominant rationale for the Receivership, rather than traditional bankruptcy, was the preservation of the receivership schools' access to Title IV funds while the Receiver attempted to

7

sell the schools or make arrangements for "teach-out" for students whose schools were closed. In the case of the Argosy schools, which comprise most of the student population under the Receiver's supervision, that rationale no longer applies. As described above, the Receiver has also ignored his responsibilities under the Consent Judgment, including to the Student Intervenors.

Presumably if the Receivership is vacated, DCEH will seek protection in Bankruptcy Court—which will result in the appointment of a trustee, and the orderly processes under the Bankruptcy Code for the protection and collection of assets and presentment of claims by creditors. Presently, any efforts to protect and collect assets—including the diverted student loan funds—are completely opaque to students and DCEH's creditors, and no process has been established for the presentment of claims.

Alternatively, if the Receivership continues, it should do so under new stewardship. DCEH handpicked Mr. Dottore as its Receiver, ostensibly to "save the receivership estate all of the time and expense of bringing the new person up to speed where time is of the essence to protect the interests of the students." Dkt. 3 at 12. But when the interests of Argosy students in receiving stipend funds to pay living expenses were genuinely at stake, Mr. Dottore deflected responsibility for the whereabouts of the money,[6] and only belatedly acquiesced to conducting a forensic investigation into its disappearance. He also blamed DCEH's financial condition in part on an "unconscionable" transaction with Studio, forced on DCEH by the Department of Education (Studio Dkt. 2-1), without disclosing his own involvement in the transaction. Studio Dkt. 9 at 1 (Mr. Dottore was "intimately involved" in the reorganization plan). Rather than leveraging his

---

[6] *See* Leingang, *supra* ("'We're still trying to determine whose fault it is,' Dottore said. 'All I know is, I haven't been here long enough for it to be mine.' Dottore said he hopes to have a resolution within the 'next day or so.' 'I do not — repeat, do not — have this money, nor would I be hanging onto it if I had,' he said.").

prior involvement and knowledge about DCEH's operations, the Receiver has functioned in his present capacity as if he is walled off from the knowledge he accumulated in his prior capacity. The Receiver's straddling of his prior involvement with DCEH creates at least the appearance of a conflict of interest while conferring no apparent benefits on students or other creditors.[7]

Student Intervenors' confidence in the Receivership is also undermined by the revelations by three different actors that the Receiver has not fulfilled commitments he made to them: to the Department of Education that it would not fire Argosy faculty, Frola Letter (Exh. B) at 5; to the Settlement Administrator that it would recognize its obligations under the Consent Judgment, Dkt 77-1 at 10-11; to Studio that it would "consult with Studio prior to filing any receivership action," Studio Dkt. 9 at 12.

Finally, if the Receivership continues, particularly if it does so under Mr. Dottore's stewardship, the Student Intervenors urge the Court to institute procedures that provide more accountability and transparency, especially to students. The difficulty—still persisting—in getting answers about the whereabouts of the Argosy students' stipend money is emblematic of a process where business interests are being hammered out behind closed doors, but nothing is being done to help, or forthrightly communicate to, students who have claims on the estate or are trying to pursue their education. The Student Intervenors respectfully request that if the Receivership continues, the Court require the Receiver to report weekly on the assets and liabilities under his management, his efforts to recover assets (including the diverted stipend funds), his efforts to

---

[7] The Department of Education has also noted that the circumstances of the Receiver's appointment should have left him better informed about, and better equipped to deal with the problematic transactions that occurred pre-receivership: "this is not a situation where the appointed receiver is new to the financial circumstances and obligations of the receivership estate upon his or her appointment. The Receiver had been serving as a consultant to DCEH and the receivership schools (including Argosy) since October 9, 2018 in various areas, including in regard to the receivership schools' financial conditions and strategies, and also to work with governmental and regulatory agencies." Frola Letter (Exh. B) at 4.

protect students' educations through sales of campuses or other means, and other transactions that may affect current students, students with claims, and other creditors. The Student Intervenors also request regular status conferences to address these items and other issues that arise during the receivership.

## CONCLUSION

For the above stated reasons, the Student Intervenors respectfully request that the Court vacate the Order appointing the Receiver.

Respectfully Submitted,

*/s/ Richard S. Gurbst*
Richard S. Gurbst (Bar # 0017672)
Eleanor M. Hagan (Bar # 0091852)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: +1 216 479 8500
E-mail: richard.gurbst@squirepb.com

Eric Rothschild
Admitted Pro Hac Vice
Alexander S. Elson
Admitted Pro Hac Vice

NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street NW, Suite 600
Washington, DC 20005
Telephone: +1 202 734 7495
E-mail: alex@nsldn.org
eric@nsldn.org

Counsel for Intervenors,
Emmanuel Dunagan, Jessica Muscari,
Robert J. Infusino and Stephanie Porreca

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing was served upon all parties of record by the Court's electronic filing system this 4th day of March 2019.

/s/ *Richard S. Gurbst*

Richard S. Gurbst
One of the Attorneys for Intervenors