# Exhibit B



February 27, 2019

Mark Dottore                                  Sent Overnight Via UPS
Dottore Companies                             #1Z A87 964 02 9010 7619
2344 Canal Road
Cleveland, OH  44113

Randall K. Barton
Chairman of the Board
Dream Center Education Holdings

Re:    Denial of Change of Ownership
       Argosy University
       OPE ID:  02179900

Dear Mr. Dottore and Mr. Barton:

The Multi Regional and Foreign School Participation Division ("MRFSPD") of the U.S.
Department of Education ("Department") has reviewed Argosy University's ("Argosy" or "the
Institution") application for approval of a change in ownership or structure resulting in a change
of control ("CIO").  Prior to the CIO, Argosy was owned by Education Management Corporation
("EDMC").  The CIO was accomplished pursuant to the terms of the Amended and Restated
Purchase Agreement dated February 24, 2017 ("ARPA") between EDMC and its affiliates
("Sellers"), and the Dream Center Foundation ("DCF"), a California nonprofit corporation, and
its affiliates, including Dream Center Education Holdings, LLC ("DCEH").  The CIO, which
was accomplished in two closings (in October 2017 and January 2018) also included other
EDMC-affiliated institutions – certain of the Art Institutes and South University.[1]  The parties to

---

[1] The following institutions were included in the CIO:
    Argosy University (02179900)
    South University (01303900)
    Miami International  University of Art & Design (00887800)
    The Art Institute of Houston (02117100)
    The Art Institute of Atlanta (00927000)
    The Art Institute of Seattle (02291300)
    The Art Institute of Portland (00781900)
    The  Art Institute of Fort Lauderdale (01019500)
    The Art Institute of Phoenix (04051300)
    The Art Institute of Colorado (02078900)
    The  Illinois Institute of Art (01258400)
    The Art Institute of Pittsburgh (00747000)
    The Art Institute of Philadelphia (00835000)



the ARPA also requested the Department's approval of the institutions' conversion to nonprofit status as a result of its new ownership under DCF. This letter only addresses the Department's determination in regard to Argosy.

The Department has determined that the application for the CIO and the request to convert to nonprofit status cannot be approved because the Institution does not meet certain required standards, as explained below. Accordingly, Argosy's participation in the student financial assistance programs authorized pursuant to Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 *et seq.* ("Title IV, HEA programs") is ended as of the date of this letter in accordance with 34 C.F.R. § 600.20(h)(2)(ii).

To establish eligibility and to continue participation in the Title IV, HEA programs, an institution must demonstrate to the Department that, after the change in ownership and control, the institution qualifies to be certified to participate under 34 C.F.R. Part 668, Subpart B. 34 C.F.R. § 600.31(a)(3)(ii). Pursuant to 34 C.F.R. § 668.13(a), for the Department to certify Argosy to participate in the Title IV, HEA programs, it must qualify as an eligible institution under 34 C.F.R. Part 600, meet the standards of financial responsibility set forth at 34 C.F.R. § 668.15 and 34 C.F.R. Part 668, Subpart L, and meet the standards of administrative capability set forth at 34 C.F.R. § 668.16. Further, to participate in any Title IV, HEA program, the institution must meet the fiduciary standard of conduct set forth at 34 C.F.R. § 668.82(a) and (b)(1). Based on its current financial situation, and in particular, its failure to pay Title IV, HEA credit balances owed to its students and parents, Argosy does not meet any of these standards.

## I. ARGOSY DOES NOT MEET THE FIDUCIARY STANDARD OF CONDUCT

Following the CIO, DCEH officials entered into a temporary provisional program participation agreement ("TPPPA") with the Department on October 17, 2017, allowing Argosy to continue to participate in the Title IV, HEA programs subsequent to its purchase by DCEH. A material term of the TPPPA was Argosy's agreement to comply with all Title IV, HEA program requirements, which include the requirement to hold all funds it receives under the Title IV, HEA programs in trust[2] for the intended student beneficiaries and the Department. 20 U.S.C. § 1094(a)(1); 34 C.F.R. §§ 668.14, 668.161(b). As a trustee of those funds, Argosy is prohibited from using or hypothecating the funds for any other purpose. Argosy is subject to the highest standard of care and diligence in administering the Title IV, HEA programs and in accounting to the Secretary for the funds received. 34 C.F.R. § 668.82(a), (b) (fiduciary standard). The Department has determined that Argosy's failure to properly administer the Title IV, HEA program funds entrusted to it constitutes a grievous breach of its fiduciary duty to the Department.

The Department first placed Argosy on the heightened cash monitoring payment method set forth in 34 C.F.R. § 668.162(d)(1) ("HCM1") on March 1, 2007. Argosy continued on HCM1 until it was placed on the payment method set forth in 34 C.F.R. § 668.162(d)(2) ("HCM2") on January 25, 2019. The Department places an institution on heightened cash management (either

---

[2] The only exception is for funds provided by the Department for administrative expenses and funds used for the Job Location and Development Program under 34 C.F.R. Part 675, Subpart B.

HCM1 or HCM2) when the institution's financial circumstances necessitate a higher level of scrutiny.[3]

Under both HCM1 and HCM2, an institution must credit a student's ledger account for the amount of Title IV, HEA program funds that the student or parent is eligible to receive, and pay the amount of any credit balance due under 34 C.F.R. § 668.164(h), before the institution submits a request for funds to the Department. *See* 34 C.F.R. § 668.162(d)(1) and (2). A Title IV, HEA credit balance occurs whenever the amount of program funds credited to a student's ledger account for a payment period exceeds the amount assessed the student for allowable charges associated with that payment period. 34 C.F.R. § 668.164(h)(1). The credit balance must be paid directly to the student or parent as soon as possible, but no later than 14 days after the balance occurred if the credit balance occurred after the first day of class of a payment period; or 14 days after the first day of class of a payment period if the credit balance occurred on or before the first day of class of that payment period. 34 C.F.R. § 668.164(h)(2). The regulatory requirement that all institutions on heightened cash monitoring pay credit balances to students and parents prior to obtaining funds from the Department was specifically designed to ensure that student beneficiaries are protected when institutions experience financial difficulties.

In late December 2018, as DCEH was threatening receivership, the Department placed the DCEH schools on "route pay." This protection was put in place so that funds would not be automatically released to DCEH, but would have to be manually released by the Department. On January 18, 2019, the federal court in the Northern District of Ohio appointed Mr. Dottore as the receiver ("Receiver") over DCEH and its subsidiaries, thereby subjecting Argosy to the receivership. The complaint in that action, the motion seeking an appointment of a receiver, and the receivership order all describe dire financial circumstances confronting DCEH and its subsidiaries. When an institution is subject to a receivership order, the Department promptly places that institution on HCM2. Here, the Department provided advance notice to DCEH that its schools would be placed on HCM2 in the event of a receivership. On January 25, 2019, following the appointment of the Receiver on January 18th, the Department transferred Argosy to HCM2.

In late January 2019, the Department began to hear numerous complaints from students and parents that Argosy had failed to pay credit balances owed to its students. As an institution on heightened cash monitoring (on HCM1 and later, on HCM2), Argosy was required to first pay student Title IV, HEA credit balances[4] before submitting a request for payment to the Department. 34 C.F.R. § 668.162(d). Not only did Argosy fail to pay credit balances prior to submitting its requests for payment from the Department, even after Argosy received the funds, it still failed to pay those credit balances.

On February 6, 2019, the Department requested the Receiver to provide a list of all of unpaid credit balance stipends that Argosy owed to students. On February 7, 2019, the Department received a summary table and a zip file of unpaid student stipends. The student level detail in the zip file showed that Argosy had not paid stipends totaling $16,299,840, including stipends

---

[3] The Department has sole discretion to determine the method under which it provides Title IV, HEA program funds to an institution. The Department may provide these funds under the advance payment method, reimbursement payment method, or heightened cash monitoring payment method. 34 C.F.R. § 668.162(a).

[4] Argosy refers to these credit balances as "stipends."

for students at Western State College of Law. The summary chart indicated that $10,400,059 of those stipends had been unpaid for at least 14 days (the summary chart does not include the law school). *See* e-mail from D. Linscott (Dottore Companies) with summary chart, attached hereto as Exhibit 1 (because the zip file has student level detail, it is not included in Exhibit 1). Also on February 7, 2019, the Receiver sent a letter to the Department regarding the disposition of the Title IV, HEA funds that the Department paid to Argosy between January 1, 2019 and February 5, 2019. The Cash Flow statement enclosed with the letter showed that although Argosy received $12,955,761 in Title IV, HEA program funds during that time period, Argosy paid $4,289,010 to its staff, paid $2,178,879 to vendors, paid $1,768,875 to DCEH for payroll expenses, and maintained $3,811,883 in the receivership account, instead of ensuring that all Title IV, HEA credit balances were paid to its students and parents. *See* Mark Dottore letter to Diane Auer Jones, dated February 7, 2019, attached hereto as Exhibit 2.

The Department released approximately $9.2 million to Argosy on January 15, 2019, just days before the Receiver was appointed on January 18, 2019. Another $2.8 million was released on January 29, 2019, following the appointment of the Receiver. Although the receivership estate may have been cash-strapped at the time of the Receiver's appointment, student credit balances were required to be paid under HCM1 and HCM2 regulations before DCEH (and now the Receiver) obtained reimbursement from the Department. Significant funds were released by the Department since mid-January, including after the Receiver was appointed, which should have been used to pay the existing unpaid credit balances owed to students. The Receiver also knew or should have known of the requirements to release the students' credit balance stipends to them, and assured the Department that the credit balance problem would be resolved.[5]

As set forth in the motion requesting the appointment of a receiver (Doc. 3 in the N.D. Ohio case), this is not a situation where the appointed receiver is new to the financial circumstances and obligations of the receivership estate upon his or her appointment. The Receiver had been serving as a consultant to DCEH and the receivership schools (including Argosy) since October 9, 2018 in various areas, including in regard to the receivership schools' financial conditions and strategies, and also to work with governmental and regulatory agencies. Nevertheless, it appears that no plan was in place to ensure that student credit balances were being paid in accordance with the regulations.

Argosy's actions in failing to pay Title IV, HEA credit balances is a severe breach of the required fiduciary standard of conduct to disburse the student's Title IV, HEA program funds to them, and demonstrates a blatant disregard of the needs of its students.[6]

---

[5] On February 19, 2019, the Receiver submitted a report to the court in the receivership action (Doc. 55) arguing that the credit balance funds were "not missing" and that the receivership estate never had the funds to pay student credit balance stipends, and therefore the credit balances did not need to be paid, asserting that the payment of the credit balances was "stalled over a 'chicken and egg' debate." Doc. 55 at 2. On February 22, 2019 the Receiver submitted an updated report (Doc. 68), acknowledging that there may have been "irregularities in the method and manner" in the draw downs of student stipends. Despite the fact that significant funds were drawn down days before the January 18th receivership order, that some funds were drawn down after the order, and the fact that the Receiver had been acting as a consultant for DCEH and the receivership schools since October 2018, the Receiver places all blame for the failure to properly pay the credit balances on the "pre-receivership Dream Center Entities." Doc. 68 at 2.

[6] Argosy only earns the Title IV, HEA program funds as they are credited to the student accounts to pay for tuition and fees. These credit balance "stipends" are funds the students have borrowed to cover their living expenses and

## II. ARGOSY DOES NOT MEET THE STANDARDS OF FINANCIAL RESPONSIBILITY

To begin and to continue to participate in the Title IV, HEA programs, an institution must demonstrate to the Secretary that it is financially responsible under the standards established by the Department. *See* 34 C.F.R. § 668.15, 34 C.F.R. Part 668, Subpart L. As provided under 20 U.S.C. § 1099c(c)(1), the Department determines whether an institution is financially responsible based on the institution's ability to: provide the services described in its official publications and statements; meet all of its financial obligations; and provide the administrative resources necessary to comply with Title IV, HEA program requirements. 34 C.F.R. §§ 668.15(b), 668.171(a), 668.171(b)(3).

As noted above, the pleadings in the receivership case describe the serious financial difficulties facing all of the receivership schools, including Argosy. Indeed, in the January 18th receivership order, the court specifically found that DCEH and its subsidiaries were indebted to secured, trade, and unsecured creditors for sums in excess of $100,000,000 (Order at ¶3).

In addition, the Department has learned that Argosy has ceased to provide instruction at its additional location in Phoenix, Arizona (02179907) because it was locked out of the premises, and is holding classes at Ottawa University, a location for which it is not authorized. Students have reported that they do not have access to computer labs or to all of the equipment or books needed for their classes. Argosy's failure to maintain and operate its Phoenix school at an approved location is further evidence of the institution's lack of financial responsibility and is inconsistent with the institution's fiduciary duty to the Department.

Further, on February 7, 2019, the Receiver terminated the employment of Argosy's chancellor, and nearly 100 Argosy faculty, academic support personnel and financial aid counselors. Those employees were terminated despite the Receiver's repeated assurances to the Department that it would not do so. Additionally, the Department has been advised that this process was so disruptive that professors were called out of classrooms while they were teaching and their employment terminated. These actions have resulted in substantial and irreparable damage to the academic integrity of Argosy, and accordingly violate the requirements of financial responsibility set forth in 34 C.F.R. § 668.15(b) and 668.171(a), because Argosy can no longer provide the services, including academic programs, described in its official publications and statements. Moreover, students who are close to graduation are at risk for not being able to be licensed to practice in psychology if Argosy's programs no longer meet programmatic accreditation requirements due to the faculty terminations.

---

are not Argosy's funds to spend. Argosy's students are in many cases dependent upon the receipt of these credit balance funds to, among other things, make rent or mortgage payments, pay for childcare, and buy groceries – all of which are acceptable living expenses that are part of the cost of attendance upon which the Title IV, HEA program aid was awarded.

### III.    ARGOSY HAS FAILED TO MEET THE STANDARDS OF ADMINISTRATIVE CAPABILITY

To begin and to continue to participate in any Title IV, HEA program, an institution must demonstrate to the Department that the institution is capable of adequately administering the program under each of the standards established in 34 C.F.R. § 668.16. The Department considers an institution to have that administrative capability if the institution administers the Title IV, HEA program in accordance with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements and agreements entered into under the authority of statutes applicable to Title IV of the HEA. 34 C.F.R. § 668.16(a).

In addition, the institution must designate a capable individual to be responsible for administering all the Title IV, HEA programs in which it participates; use an adequate number of qualified persons to administer the Title IV, HEA programs in which the institution participates; administer the Title IV, HEA programs with adequate checks and balances in its system of internal controls; establish and maintain records required under 34 C.F.R. Part 668, Subpart B and the individual Title IV, HEA program regulations; and provide adequate financial aid counseling to eligible students who apply for Title IV, HEA program assistance. 34 C.F.R. §§ 668.16(b)(1), (b)(2), (c)(1),(d)(1),(h).

Since learning of the credit balance problem, the Department has requested rosters and other information regarding the credit balances. The information that has been submitted on behalf of Argosy has been incomplete and/or inconsistent with other information provided on behalf of Argosy or with the Department's records, which raises serious questions about the Institution's administrative capability.

In addition, for all of the reasons described in Sections I and II above, Argosy has also failed to meet the standards of administrative capability.

### IV. CONCLUSION

As detailed in this letter, the violations involved here are serious, and the potential harm to students and taxpayers is severe. Therefore, Argosy's application for approval of its change of ownership and conversion to nonprofit status is hereby denied.

Should Argosy have evidence to dispute the Department's findings, and demonstrate their inaccuracy, Argosy may submit that evidence via overnight mail to me at:

> U.S. Department of Education
> Federal Student Aid/PC
> 830 First Street NE
> Union Center Plaza, 7th Floor
> Washington, DC 20202-5340

If any such information is received by March 11, 2019, it will be reviewed and Argosy will be notified if the denial is modified or rescinded. Unless the Department modifies or rescinds the

denial, Argosy's eligibility to participate in the Title IV, HEA programs is ended effective the date of this letter, February 27, 2019.

In the event that Argosy submits an application to participate in the Title IV, HEA programs in the future, that application must address the deficiencies noted in this letter.

Please contact Tara Sikora at (215) 656-6488, or Tara.Sikora@ed.gov if you have any questions regarding the content of this notice.

Sincerely,

Michael J. Frola
Director
Multi-Regional and Foreign Schools Participation
Division

cc:     WASC Senior College and University Commission
Arizona State Board for Private Postsecondary Education
California Bureau for Private Postsecondary Education
Colorado Division of Private Occupational Schools, Department of Higher Education
Florida Commission for Independent Education
Georgia Non-Public Postsecondary Education Commission
Hawaii Department of Commerce & Consumer Affairs
Illinois Board of Higher Education
Minnesota Office of Higher Education
Tennessee Higher Education Commission
Texas Higher Education Coordinating Board
Utah Department of Commerce
State Council of Higher Education for Virginia
Washington Student Achievement Council
Department of Defense, via osd.pentagon.ousd-p-r.mbx.vol-edu-compliance@mail.mil
Department of Veteran Affairs, via INCOMING.VBAVACO@va.gov
Consumer Financial Protection Bureau, via CFPB_ENF_Students@cfpb.gov

EXHIBIT 1

| | |
|---|---|
| **From:** | Dave Linscott <dave@dottoreco.com> |
| **Sent:** | Thursday, February 07, 2019 3:05 PM |
| **To:** | Frola, Michael |
| **Cc:** | Sikora, Tara; Puffer, Rhonda; Mark Dottore; 'Mary K Whitmer' |
| **Subject:** | Student stipend data |
| **Attachments:** | 2.7.19_RecieverRequest.zip |

Attached is the student stipend data you requested. One for AU campuses and one for WSU campus.
Thanks
Dave


Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: "Bird, Christopher" <clbird@argosy.edu>
Date: 2/7/19 2:57 PM (GMT-05:00)
To: Dave Linscott <dave@dottoreco.com>
Cc: "Caruso, James" <jcaruso@dcedh.org>
Subject: RE: Argosy/DCEH cash flow for 2019


Dave


Attached is the requested information for Argosy. There are two files embedded in this zip file. One for AU Campuses
and one for WSU. Password will come in a separate email. When you forward this off make sure you also send the
password separately. Thanks


Chris


From: Dave Linscott [mailto:dave@dottoreco.com]
Sent: Thursday, February 07, 2019 2:36 PM
To: Bird, Christopher
Subject: Re: Argosy/DCEH cash flow for 2019


Will i be able to forward file? I assume it complies with all the confidentiality rules and procedures etc that doe
requires?

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: "Bird, Christopher" <clbird@argosy.edu>

Date: 2/7/19 2:28 PM (GMT-05:00)

To: Dave Linscott <dave@dottoreco.com>

Subject: RE: Argosy/DCEH cash flow for 2019

We just received the Argosy Campus file from Alison's group. I will send it over in the next 20 minutes as I have to convert it into winzip. We do not have anything from WSU at your this point. I will reach out and get an ETA

**From:** Dave Linscott [mailto:dave@dottoreco.com]
**Sent:** Thursday, February 07, 2019 2:27 PM
**To:** Bird, Christopher
**Subject:** Re: Argosy/DCEH cash flow for 2019

When can i promise this data to DOE?

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: "Bird, Christopher" <clbird@argosy.edu>

Date: 2/7/19 9:31 AM (GMT-05:00)

To: Dave Linscott <dave@dottoreco.com>, "Caruso, James" <jcaruso@dcedh.org>

Subject: RE: Argosy/DCEH cash flow for 2019


Hey Dave


I will work with Shelley and Alison to get this information for Argosy Campuses and the Ai Schools. We will need to wait for WSU as they are Pacific time and this process is handled by a different team.


Chris

---

**From:** Dave Linscott [mailto:dave@dottoreco.com]
**Sent:** Thursday, February 07, 2019 7:12 AM
**To:** Caruso, James; Bird, Christopher
**Subject:** Fwd: Argosy/DCEH cash flow for 2019


Are we able to send this stipend report easily?

Thanks


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------

From: "Frola, Michael" <Michael.Frola@ed.gov>

Date: 2/6/19 4:20 PM (GMT-05:00)

To: Dave Linscott <dave@dottoreco.com>, Mark Dottore <mark@dottoreco.com>, 'Mary K Whitmer' <mkw@weadvocate.net>

Cc: "Sikora, Tara" <Tara.@ed.gov>, "Puffer, Rhonda" <Rhonda.@ed.gov>, "Frola, Michael" <Michael.Frola@ed.gov>

Subject: RE: Argosy/DCEH cash flow for 2019

Dave,

With the Cash Flow report please include a list of all students that have not been paid their stipends to date. Please include the students name, location, address, phone number, email address, program of study, and amount of unpaid stipend.

Please follow the procedures below when submitting Personally Identifiable information:

**Passwords must be sent separately, with the same school identifiers in the subject line.**

### *Protect Personal Identifiable Information and Encryption Instructions*

Reports containing any Personal Identifiable Information (PII), as defined below, must be protected before transmitting the document electronically. PII is any information about an individual which can be used to distinguish or trace an individual's identity (some examples are name, social security number, birth date, and place of birth). PII submitted electronically or on media must be submitted in a WinZip file (.zip file extension) encrypted with Advanced Encryption Standard (AES) encryption (256-bit is preferred). The Department of Education (the Department) uses WinZip. However, files created with other encryption software are acceptable provided that they are compatible with WinZip and are encrypted with AES encryption. Also, the Department must receive an access password to view the encrypted information. The password must be emailed separately from the encrypted data. Select a complex password at least 12 characters in length and which uses three of the following characters: upper case letter, lower case letter, number, special character.

Thanks,
Mike

**From:** Frola, Michael
**Sent:** Wednesday, February 06, 2019 3:28 PM
**To:** Dave Linscott; Mark Dottore; Mary K Whitmer
**Cc:** Sikora, Tara; Puffer, Rhonda (Rhonda.Puffer@ed.gov)
**Subject:** RE: Argosy/DCEH cash flow for 2019

Hi Dave,

Thanks for the notice. I've copied in Tara Sikora and our accountant Rhonda Puffer.

Please include them on the notice.

Thanks,

Mike

**From:** Dave Linscott [mailto:dave@dottoreco.com]
**Sent:** Wednesday, February 06, 2019 2:54 PM
**To:** Frola, Michael; Mark Dottore; Mary K Whitmer
**Subject:** Argosy/DCEH cash flow for 2019

Michael

We will be sending a summary cash flow report to you shortly.

We can discuss once you have a chance to review.

Thanks

David Linscott, CPA , CIRA

Dottore Companies

Sent from my Verizon, Samsung Galaxy smartphone

| ARGOSY | < 10 Days | 10-13 Days | 14+ Days | Escalations | Total |
|---|---|---|---|---|---|
| Argosy University - Atlanta | 79,962.70 | 56,063.25 | 1,563,191.90 | - | 1,699,217.85 |
| Argosy University - Chicago | 146,857.60 | 22,718.30 | 1,119,229.63 | - | 1,288,805.53 |
| Argosy University - Dallas | 13,046.00 | 8,640.00 | 18,425.00 | - | 40,111.00 |
| Argosy University - Denver | - | - | 286.00 | - | 286.00 |
| Argosy University - Guam | - | - | 2,148.50 | - | 2,148.50 |
| Argosy University - Hawaii | 67,549.00 | 54,063.60 | 641,911.29 | - | 763,523.89 |
| Argosy University - Los Angeles | 16,528.00 | 9,556.00 | 173,173.81 | 130.00 | 199,387.81 |
| Argosy University - Northern Virginia | 9,793.90 | 32,259.60 | 1,001,411.14 | - | 1,043,464.64 |
| Argosy University - Online | 571,982.00 | 1,674,355.84 | 1,414,479.71 | 16,799.00 | 3,677,616.55 |
| Argosy University - Orange County | 138,279.88 | 16,106.04 | 866,838.60 | 7,106.00 | 1,028,330.52 |
| Argosy University - Phoenix | 82,697.25 | 44,900.50 | 910,564.70 | 18,291.00 | 1,056,453.45 |
| Argosy University - Salt Lake City | - | - | 28,362.00 | - | 28,362.00 |
| Argosy University - San Francisco | 3,036.00 | 2,324.00 | 174,417.40 | 16,926.50 | 196,703.90 |
| Argosy University - Sarasota | - | - | 4,595.50 | - | 4,595.50 |
| Argosy University - Seattle | - | 505.00 | 6,762.00 | - | 7,267.00 |
| Argosy University - Tampa | 152,464.50 | 41,053.70 | 1,378,090.12 | - | 1,571,608.32 |
| Argosy University - Twin Cities | 52,576.20 | 46,524.60 | 1,032,629.91 | 689.00 | 1,132,419.71 |
| TOTAL | 1,334,773.03 | 2,009,070.43 | 10,336,517.21 | 59,941.50 | 13,740,302.17 |

| AI GROUP 2 - ARGOSY | < 10 Days | 10-13 Days | 14+ Days | Escalations | Total |
|---|---|---|---|---|---|
| The Art Institute of California - Hollywood | 13,551.24 | 13,914.00 | 50,610.77 | - | 78,076.01 |
| The Art Institute of California - San Diego | 7,780.00 | 3,242.00 | 12,931.00 | - | 23,953.00 |
| TOTAL | 21,331.24 | 17,156.00 | 63,541.77 | - | 102,029.01 |

EXHIBIT 2



February 7, 2019

Diane Auer Jones
Principal Deputy Undersecretary
United States Department of Education
400 Maryland Ave. SW
Washington, D.C. 20202

  Re: **Source and Application of Funds, January 2019**
     Non-Receivership Entities
       **AI Atlanta**
       **AI Portland**
       **AI Colorado**
       AI **Houston**
       AI **Fort Lauderdale**
       **AI Miami**
       **AI Chicago**
       **South Savannah**
     Receivership **Entities**
       **AI** Seattle
       **AI Pittsburgh**
       Argosy Orange County
       **AI** Phoenix/Las **Vegas**

Dear Ms. Jones,

This letter, and its accompanying exhibits, is intended to account for $50,933,320 of
funds advanced from January 1 to February 4, 2019, to the Argosy, South and Art
Institutes universities (the "Universities") listed above, both pre- and post-
receivership. Through February 4, 2019, $2,853,809 ($2,824,880 + $28,929) was
advanced to the Receivership ("Post-Receivership Receipts"). An additional
$48,079,511 was advanced to the Universities prior to the appointment of the
Receiver, and to the Non-Receivership entities between January 1 and February 4,
2019 ("Non-Receivership Receipts"). Please see the attached spreadsheet entitled
"Receipts Summary" to see the recipients of the cash and the date the cash was
received.

When the Receiver seized the cash accounts, there was $5,478,585 in cash in all
Receivership Entities' accounts. This cash was used by the Receiver to pay the

February 1, 2019, payroll of $5,178,482. The figures are provided in the second spreadsheet entitled "AU & DCEH Cash Flow." The payment of the February 1, 2019, payroll leaves the Receivership Entities with only $3,811,883 to manage all of their support and administrative services.

The Receivership's dire cash situation was born out of an early January series of agreements that were entered into by the Non-Receivership Entities that transitioned those entities into separate 501(c)(3) entities with independent boards of directors (the "Spin-Off"). The problem with the Spin-Off is that the Universities were really not separate entities for purposes of their non-academic operational management. The solution, they thought, was for all of the Universities to use a managed services company named Studio Enterprise Manager, LLC, ("Studio"). But Studio was not equipped to provide any services to the Universities, so Studio had agreements with DCEH to continue to provide all of the operational services to the Universities.

Given that DCEH was ultimately responsible to provide operational services to the Universities, the agreements anticipated a flow of service fees from the Department of Education to the Universities, then to Studio, then to DCEH. The funds were reduced by the fees that Studio was allowed to charge under these agreements. As DCEH is providing all of the operational services to the Universities, it is hard to understand why Studio is receiving substantial fees under its Managed Services Agreements. It is also our understanding that the Universities made their payments in advance, and Studio was required to send the money on to DCEH in arrears. At this point, it appears that over $6 million is due to DCEH from Studio for services to support the Universities; this money may never be paid short of legal action.

We further understand "investors" were supposed to inject $10,000,000 to make sure DCEH paid for the Universities' operations. Unfortunately, there was no cash investment into DCEH by anyone. If any investor cash was contributed, it was consumed by administrative expenses, legal fees and/or Studio management fees. We are still pursuing this line of inquiry to determine from whom this cash was expected, if it was paid, and if paid, to what use it was put.

We also believe that there was scattered matching of revenues and expenses among the Universities. For example, prior to the receivership, DCEH was saddled with a $9 million payroll to pay employees in all of the Universities. Days later when draws on Title IV were made, it appears there was no allocation among the universities for these payroll expenses creating windfalls for the Non-Receivership Entities. Again, we are pursuing this matter with South and Art Institutes systems.

The purpose behind the reorganization in January was a laudable attempt to save the Non-Receivership Entities benefiting both students and taxpayers. However, it

is not working because the Universities in good faith have paid Studio, but Studio has decided to hold on to all monies for their own fees. If the problem cannot be resolved, DCEH will have to work with the Non-Receivership Entities so that they can support their own operations.

While the Receiver is concerned about all of the students, he has a direct fiduciary responsibility to the Argosy students. In order to meet that responsibility, the Receiver is implementing a plan to support the needed managed services at a greatly reduced cost. We intend to have that plan in place by March 1st with the approval of the independent board of Argosy.

The Receiver understands that, regardless of the situation among the Universities and Studio, the most critical need is to pay the $13 million of Argosy student stipends. As the spreadsheets show, the Receiver's cash balance is only $3,811.883. This is clearly not adequate to pay $13 million of stipends due to the Argosy students and the situation must be urgently addressed.

In order to pay the student stipends, complete the semester, transition the Receivership Entities, address the Teach Out requirements, and meet the other regulatory requirements of the Department of Education and the Department of Justice, we plan to take the following action steps:

- On behalf of Argosy, the Receiver will request a $13 million drawdown of the $21 million in available funds to immediately pay all outstanding student stipends. Although Argosy is currently on HCM2, under these urgent circumstances, we are requesting a one-time exemption from the normal rules for the sake of the students who are in extreme need.

- Once the stipends are paid, on behalf of Argosy the Receiver plans to apply for the remaining $7 million in G5 funds. These funds, combined existing balances of approximately $3.8 million will fund Argosy operations and payroll for the remainder of the semester. There is also between $3 million to $6 million of additional draws available related to online starts in February and March.

- The Receiver will work with the independent boards and officers of South and Arts Institutes so that they can take over their own operating services at the earliest possible time.

- The Receiver intends to settle with or unwind the Studio transaction and recover the funds in Studio's hands.

- The Receiver is working with eight active potential purchasers and pursuing transitioning or selling the Receivership Entities as soon as possible.

We look forward to working with the Department of Education and the Department of Justice to transition these Universities to a soft landing, which is in the interest of every stakeholder.

Yours very truly,



Mark E. Dottore
Receiver

cc: Jonathan E. Jacobson, Esq.
    Department of Justice
    Benjamin W. Butterfield, Esq.
    Morrison & Foerster, LLP
    James A. Newton, Esq.
    Morrison & Foerster, LLP

Enclosure

| OpsID | Entity | 1/2/2019 | 1/3/2019 | 1/7/2019 | 1/10/2019 | 1/15/2019 | 1/16/2019 | 1/28/2019 | 1/29/2019 | 1/30/2019 | 2/4/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AI Alberta | AII | $ 233,951 | $ - | $ - | $ - | $ 3,115,741 | $ - | $ 830,170 | $ - | $ - | $ - | $ 4,183,962 |
| AI Portland | AI DCEH | $ - | $ 36,755 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 36,755 |
| AI Seattle | AI DCEH | $ 1,000 | $ - | $ 548,250 | $ - | $ - | $ - | $ - | $ - | $ - | $ 28,929 | $ 574,379 |
| AI Pittsburgh | AI DCEH | $ 1,143,182 | $ - | $ - | $ - | $ 2,362,281 | $ - | $ - | $ - | $ - | $ - | $ 3,505,463 |
| AI Philadelphia | AI DCEH | $ 17,377 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 17,377 |
| AI Colorado | AI DCEH | $ - | $ 2,339 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 2,339 |
| AI Houston | AII | $ 46,437 | $ - | $ - | $ - | $ 3,718,337 | $ - | $ 494,479 | $ 366,524 | $ - | $ - | $ 4,526,077 |
| Argosy Orange County | AU DCEH | $ 869,097 | $ 18,372 | $ - | $ - | $ 3,723,500 | $ 5,539,912 | $ - | $ - | $ 2,824,880 | $ - | $ 12,955,761 |
| AI Fort Lauderdale | AI DCEH | $ - | $ 36,138 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 96,138 |
| AI Phoenix/Las Vegas | AI DCEH | $ 32,786 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 32,786 |
| AI Miami | AII | $ 85,303 | $ - | $ - | $ - | $ 2,594,620 | $ 152,257 | $ - | $ 874,060 | $ - | $ - | $ 3,710,240 |
| AI Chicago | AI DCEH | $ 7,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 7,000 |
| South Savannah | South | $ 1,651,050 | $ - | $ - | $ - | $ 9,504,335 | $ - | $ 10,114,469 | $ - | $ 2,824,880 | $ - | $ 21,289,853 |

| Entity | Receipts |
|---|---|
| AII | 12,495,679 |
| AI DCEH | 4,212,027 |
| AU DCEH | 12,955,761 |
| South | 21,269,853 |
| **Total** | **50,933,320** |

**Cash Flow**
**Argosy/DCEH**
**1/1/19 - 2/5/2019**

| Argosy Cash Flow | Total | Pre- Receiver 1/1/19-1/20/19 | Post Receiver 1/21/2019 |
|---|---|---|---|
| starting balance | $ - | $ - | |
| Title IV Receipts | $ 12,955,761 | $ 10,101,952 | $ 2,853,809 |
| 1/18 Pay | $ (2,147,583) | $ (2,147,583) | |
| 2/1 Pay | $ (2,141,427) | | $ (2,141,427) |
| Stipends | $ (907,114) | $ (325,834) | $ (581,280) |
| Other Vendor Payments | $ (569,463) | $ (569,463) | |
| D2L | $ (305,773) | $ (305,773) | |
| Twin Cities Rent | $ (263,690) | $ (263,690) | |
| TSA | $ (1,609,416) | $ (1,609,416) | |
| Current Balance | $ 5,580,757 | $ 5,449,656 | $ 5,580,757 |

| DCEH Cash Flow | Total | Pre- Receiver 1/1/19-1/20/19 | Post Receiver 1/21/2019 |
|---|---|---|---|
| Starting Balance | $ 11,300,000 | $ 11,300,000 | |
| Title IV Receipts | $ 4,212,027 | $ 4,212,027 | |
| 1/4 Pay | $ (9,508,425) | $ (9,508,425) | |
| 1/18 Pay | $ (4,485,422) | $ (4,485,422) | |
| 2/1 Pay | $ (3,037,055) | | $ (3,037,055) |
| Other Vendor Payments | $ (250,000) | $ (250,000) | |
| Current Balance | $ (1,768,875) | $ 1,268,180 | $ (1,768,875) |
| Receiver Cash balance | $ 3,811,883 | | $ 3,811,883 |