# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE THOMAS M. PARKER |
| | ) | |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**HEMINGWAY AT RICHMOND, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR LIMITED RELIEF FROM STAY PROVISIONS OF ORDER APPOINTING RECEIVER**

Now comes Hemingway at Richmond, LLC ("**Hemingway**"), by and through its undersigned counsel, and pursuant to Local Rule 7.1(e), hereby replies to the Receiver's Opposition (the "**Opposition**") [Doc. 78] to Hemingway's Motion for Limited Relief from Stay Provisions of the Order Appointing Receiver ("**Hemingway's Motion**") [Doc. 47][1]:

**I.** *Wencke II* **Factor #1: The Receiver's Argument that the Stay Preserves the Status Quo Ignores the Substantial Injuries that the Stay Imposes Upon Hemingway, and Is Unconvincing.**

The Receiver first argues that this Court should continue the stay against Hemingway to maintain the status quo, and that Hemingway's interest in obtaining restitution of its Premises is "considerably outweighed" by the Receiver's "interest in an orderly and efficient administration of the estate." Opposition, p. 4.

---

[1] Unless otherwise indicated, capitalized terms shall have the meanings assigned to them in Hemingway's Motion.

{02818305 -3}  1

This argument is unsupported and without merit. The first *Wencke II* factor "essentially **_balances_** the interests in preserving the receivership estate with the interests of the movants." *Huntington Nat'l Bank v. Saint Catharine Coll., Inc.*, No. 3:16-CV-465-DJH, 2017 WL 6347971, at *6 (W.D. Ky. Dec. 12, 2017) (emphasis added). Unfortunately, the Receiver eschews any legitimate balancing analysis by overstating the receivership's interest in maintaining the stay against Hemingway and ignoring Hemingway's real and substantial injuries resulting from the stay.

Initially, the Receiver provides no convincing explanation why the stay, at least as it relates to Hemingway, is necessary to his administration of the receivership estate. As Hemingway pointed out in its Motion, South University is closing; South University is not enrolling students; the teach-out at South University should already have been completed; and, to the extent that South University continues to offer courses and programs, it can and should explore doing so in an alternative space. *See* Hemingway's Motion, p. 9.

The Receiver does not specifically refute any of these contentions, which are not only contained in Hemingway's Motion, but supported by factual statements in an Affidavit. Instead, ***in a footnote***, the Receiver opines that Hemingway's suggestion that the Receiver locate alternative space "should be disregarded." Opposition, FN 2. However, allowing the Receiver to keep the stay in place, without exploring whether alternative space exists where South University can continue offering courses and programs without irreparably damaging Hemingway, would allow a complete, improper disregard for Hemingway's interests under the applicable balancing test.

This callous indifference to Hemingway's interests is rather shocking. This Court's stay, and the resulting inability of Hemingway to evict its non-paying tenant, South University, is

costing Hemingway approximately $122,465.64 per month in rent. *See* Maresh Affidavit, ¶ 8. As of February 1, 2019, the rent arrearage under the Lease was $352,859.09, a figure that continues to increase. *See id.*, ¶ 20. Hemingway has been forced to use its own funds to pay taxes, operating expenses and insurance premiums that should be paid by the Receiver. *See id.*, ¶ 24. Hemingway's inability to evict South University in favor of a paying tenant may cause a default under a secured Loan Agreement, with potentially disastrous consequences for Hemingway and certain individual guarantors. *See id.*, ¶ ¶ 25-26. In order to avoid this potential catastrophe by leasing the space to a potential new tenant, Hemingway must regain possession of the Premises no later than June 1, 2019. *See id.*, ¶ 26.

The Receiver's Opposition addresses none of these concerns. Instead, it explains that the Receiver is "focusing his efforts" elsewhere. Opposition, FN 2. This is simply not an adequate response to the severe hardship that the stay is imposing upon Hemingway. The substantial, specific injuries that Hemingway detailed in its Motion and supporting Affidavit clearly outweigh the Receiver's vague, non-specific contentions that the stay against Hemingway is necessary—without any supporting details or evidence of how many students need to use the space, or for how long.

In this regard, the case law that the Receiver cites in support of his "status quo" argument is easily distinguishable because none of the cited cases involved situations where the stay caused the degree of injury to the movant that the instant stay is causing Hemingway. *See F.T.C. v. Med Resorts Intl., Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001) (individuals sought leave to sue a receivership entity for refunds related to vacation services, but "the only 'injury' that [movants] would suffer" from the stay "stems from any delay in enforcing their rights"); *U.S. v. Acorn Tech. Fund., L.P.*, 429 F.3d 438, 449 (3d Cir. 2005) (the Court found that the only injury to the

movants, who claimed they were fraudulently induced to make investments with the receivership entities, was that they would be "forced to wait until the SBA finished untangling the receivership estate"); *F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784 (N.D. Ill. February 23, 2005) (partners failed to show that they would "suffer substantial injury" from stay of action to remove general partner, because assets were under the receiver's control and concern that general partner would divert assets was "unfounded").

The Receiver also suggests that this Court already considered Hemingway's interests when it granted the Order Appointing Receiver, because the Plaintiff, in its Motion to Appoint Receiver, "made the Court explicitly aware of Hemingway's eviction action." Opposition, p. 4. However, when this Court granted the Order Appointing Receiver, it could not have known of the full extent of the harm to Hemingway that Hemingway subsequently detailed in its Motion. Moreover, when this Court granted the Order Appointing Receiver, it likely did not know or understand that the Receiver would continue occupying Hemingway's leased premises without paying rent of any kind to Hemingway on a post-receivership basis. Certainly, the Order Appointing Receiver does not contemplate the type of open-ended, rent-free relationship that the Receiver currently enjoys and seeks to continue indefinitely. Instead, the Order Appointing Receiver provides that the Receiver may "perform pursuant to the terms" of existing contracts or "may reject contracts." Order Appointing Receiver, at ¶ 2(q) on page 9.

In the instant case, the Receiver has neither rejected nor performed under South University's Lease with Hemingway. Instead, the Receiver has accepted the benefits of the Lease without paying rent, relying upon the stay provision of the Order Appointing Receiver to prevent restitution of the Premises. Hemingway respectfully submits that this was not a

circumstance that the Court contemplated or fully considered when it issued the Order Appointing Receiver.

Finally, the Receiver claims that "South University of Ohio's students will be harmed" if Hemingway is granted relief from stay. However, it is possible, and even likely, that this Court can address the students' interests without denying Hemingway's Motion. For example, it is entirely possible that this Court could allow Hemingway to proceed with its state-court eviction case, but delay its ability to enforce a writ of restitution until after some reasonable date that would provide the Receiver the opportunity to identify and move to alternative space, while still allowing Hemingway to re-lease the Premises.

It is utterly improper that the Receiver refuses to engage in this type of problem solving, choosing instead to ignore Hemingway's interests entirely. This Court should not countenance such disregard of an interested party. At the very least, this Court should demand that the Receiver look for alternative space so that this Court can analyze properly the competing equities of all affected parties. If the only reason the Receiver refuses to explore alternative space is because he has no funds whatsoever to pay post-receivership rent, then the balancing test becomes easy to resolve, as no equities mandate that Hemingway fund this receivership.

II. **_Wencke II_ Factor #2: The Receiver's Argument that Hemingway's Motion Is Premature Fails to Consider Relevant Context or Analogous Bankruptcy Law, and Is Unconvincing.**

The Receiver argues that it is too early in the proceedings to lift the stay as to Hemingway. The Receiver reasons that he is "just beginning to untangle the many financial transactions involving tens of millions of dollars and to understand the complex relationships between the various entities." Opposition, p. 6.

While this statement may be true, the Receiver does not explain how it is relevant to Hemingway's Motion. The relationship between Hemingway and South University is not complex. South University leases approximately 40,000 square feet of commercial space from Hemingway. South University has not paid rent since November 1, 2018. South University is in default of its obligations owing under the Lease and Hemingway is entitled to restitution of the Premises. The Receiver neither denies that South University is in default under the Lease, nor contends that South University has any defense to Hemingway's eviction action, nor argues that the eviction action will somehow involve protracted litigation that will be costly or distracting to the Receiver.

Moreover, the circumstances make clear that the Receiver's timing argument is simply a delay tactic. The Receiver has paid no rent to Hemingway, and he gives no indication in his Opposition that he ever intends to do so. The Receiver also provides no timeframe for how long the stay should remain in place, asking this Court to deny Hemingway's Motion "without prejudice to its right to refile" at some unspecified time "later in the receivership." Opposition, p. 2.

As Hemingway explained in its Motion, under analogous bankruptcy law, Hemingway would be entitled to relief from the automatic stay imposed by Section 362 of the Bankruptcy Code due to the Receiver's failure to pay post-receivership rent due under the Lease. Thus, it is understandable that the Receiver would like this Court to ignore and disregard analogous bankruptcy law. *See* Opposition, p. 8. However, this Court's local rules specifically instruct that it "shall administer the estate as nearly as may be in accordance with the practice in the administration of estates in bankruptcy." Local Rule 66.1.

Beyond the directive of the local rule, this Court should look to the bankruptcy code because it provides an apt analogy. By seeking a stay of indefinite length, without paying rent, the Receiver is effectively forcing Hemingway to fund the receivership by providing rent-free premises. There is a good reason why this is not allowed under the Bankruptcy Code; it constitutes a completely unfair and unreasonable burden upon the landlord. The exact same reasoning for the rule applies here, and the Receiver does not, and cannot, make any rational distinction.[2]

Moreover, even if this Court relies entirely upon the "historical practice of the federal courts," it should grant Hemingway's Motion nevertheless. The historical practice of the courts is that "a chancery receiver can have no better right to retain possession of a leasehold than a trustee in bankruptcy has" and that the "landlord's right to enforce a forfeiture of the lease is not

---

[2] See e.g., *In re Palace Quality Servs. Indus., Inc*., 283 B.R. 868, 877 (Bankr. E.D. Mich. 2002) ("Sections 365(d)(3) and (d)(10) mandate that the trustee remain current on the lease payments if the trustee wishes to take additional time to decide whether to assume or reject the lease…Congress's clear purpose in enacting these two sections was to compel the trustee to pay the ongoing obligations of the debtor under the lease while the trustee evaluated the option of either assuming or rejecting the lease.

> **A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease**. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of the space they lease. **In this situation, the landlord is forced to provide current services-the use of its property, utilities, security, and other services-without current payment**. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor. **This bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of non-residential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease**."
>
> (quoting 130 Cong. Rec. S8887, S8894–95 (daily ed. June 29, 1984) (remarks of Sen. Hatch))
>
> (Emphasis added in Court's decision)

less when a chancery receiver is in possession than it is when a trustee in bankruptcy has possession." *Odell v. H. Batterman Co.*, 223 F. 292, 296 (1915).

Similarly, a "receiver appointed by a federal court takes property subject to all liens priorities or privileges existing or accruing under the laws of the State." *S.E.C. v. Madison Real Estate Grp.*, LLC, 647 F. Supp. 2d 1271, 1277 (D. Utah 2009). While *Madison Real Estate* discussed the rights of secured creditors in a receivership, the same principle dictates that the Receiver necessarily took control of South University's leasehold interest in the Premises subject to Hemingway's rights under the Lease and Ohio law.

South University defaulted in its payment under the Lease, failed to cure its default, and forfeited its right to occupy the Premises prior to the receivership. *See* Maresh Affidavit, ¶ 8-11. Neither South University nor the Receiver paid any rent thereafter. There is no basis in federal receivership law for the Receiver to continue to occupy the Premises under these circumstances, especially without paying rent.

Further, the case law that the Receiver cites in support of his timing argument is readily distinguishable from the instant case. Several of the cases do not involve the rights of landlords and do not further the Receiver's position as regards Hemingway.[3] As explained above, a landlord's situation is unique because when a landlord is not paid rent, while also being denied state-court remedies, it is put in the unreasonable and untenable position of financing an insolvent receivership. In some cases it may be proper to force a creditor to wait three months or six months or two years (*see* Opposition, p. 6) to pursue recovery of damages incurred prior to

---

[3] *F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784 (N.D. Ill. February 23, 2005) (the stayed action was to remove a general partner from a partnership); *S.E.C. v. One Equity Corporation*, No. 2:08-cv-667, 2010 WL 4878993 (S.D. Ohio November 23, 2010) (the stayed action involved allegations of fraud); *S.E.C. v. Illarramendi*, No. 3:11CV78, 2012 WL 234016 (D. Conn. Jan. 25, 2012) (the stayed action was an adversary proceeding involving breach of fiduciary duty); *U.S. v. ESIC Capital, Inc.*, 675 F. Supp. 1462 (D. Md. 1987) (the stayed action involved four complex and interrelated actions).

enactment of a receivership, but it is improper, unfair, and inequitable to force a landlord to continue incurring post-receivership damages. This Court would not order professors to continue teaching South University's students without getting paid—and even the Receiver would not suggest that this Court has the authority to render unpaid professors indentured servants for as long as the Receiver sees fit. Yet, the Receiver maintains that he should be given the power and authority to bind Hemingway to provide rent-free accommodations until the Receiver decides otherwise.

Two of the cases that the Receiver cites involved landlord-tenant disputes: *S.E.C. v. Wencke*, 622 F.2d 1363 (9th Cir. 1980) (*Wencke I*) and *U.S. v. JHW Greentree Capital*, L.P., No. 3:12-CV-00116, 2014 WL 2608516 (D. Conn. June 11, 2014). In *Wencke I*, the Receiver argued that the state court eviction proceeding involved "a highly technical interpretation of a contractual relationship" where "all parties to the contract have received what they bargained for." *Wencke, supra*, 622 F.2d at 1374 (1980). In other words, the timing element initially favored a stay in *Wencke I*—but only because it was necessary for the receivership to prepare for complex, contested litigation that could be time consuming, distracting and expensive. No such circumstances exist in the instant case as it relates to Hemingway's straightforward eviction proceeding for an undisputed failure to pay rent.

An equally important distinction is that in *Wencke*, there was "no dispute…that the receiver has been remitting to the lessor the monthly rent on the properties, $10,000 per month." *Id*. at 1375. In the instant case, the Receiver has neither paid nor offered to pay any rent to Hemingway, but retained possession due to the stay provision of the Order Appointing Receiver—a completely different scenario.

In *JHW Greentree*, the Court **granted** a landlord's motion, modifying the receivership stay to allow the landlord to regain possession of its premises. While part of the Court's reasoning in granting the motion was that the receivership was "at a midpoint," the Court also explained, at length, that the landlord's inability to recover possession of its premises would cause it substantial harm because it would lose the financial benefit of a potential new tenant, and this injury was "imminent." *Id*. at *4-7. In that sense, *JHW Greentree* is strikingly similar to the instant case directing that Hemingway be granted relief from the stay to pursue its eviction. In assessing the timing factor, the *JHW Greentree* Court explained that there is no "clear cut-off date" and the inquiry is "fact specific." *Id*. at *7. Timing considerations are not merely an exercise in counting days or weeks on a calendar. Rather, the appropriate question is how the receivership might be prejudiced at any early stage in the proceeding by lifting a stay, as weighed against the injury to the movant caused by the stay.

Here, the action that Hemingway proposes to take in state court is a straightforward eviction proceeding for failure to pay rent. There is no risk of significant distraction or expense to the receivership. Moreover, the Receiver's position is completely untenable insofar as he seeks to have Hemingway finance an insolvent receivership for an indefinite and unspecified period of time to Hemingway's substantial detriment and irreparable harm. Under these particular circumstances, the timing factor favors Hemingway despite the receivership's early stage.

The Receiver's timing argument is undermined further by the circumstances under which the Order Appointing Receiver was granted. This receivership was not imposed involuntarily by a regulatory body, like most of the cases cited by the Receiver. The Receiver and the receivership defendants coordinated and orchestrated the appointment of the Receiver through

the dubious vehicle of an unsecured creditor pursuing a simple breach of contract claim. The Plaintiff's Complaint and Motion to Appoint Receiver; the Defendants' Response consenting to the appointment of the Receiver; and the Order Appointing Receiver were all filed on the *same day*.

The receivership defendants' counsel of record is also special counsel for the Receiver. The Receiver has been involved with these entities for at least several months. *See e.g.,* Ex. F to Affidavit of Maura Maresh (email from attorney Robert Kracht, dated December 7, 2018, discussing the plan for the receivership, and stating that Mark Dottore "***has been selected by the principals of South University's parent entities to [sic] as the proposed receiver. At present Mark is their consultant***"). (Emphasis added) It is disingenuous, given these facts, for the Receiver to argue that he needs an indefinite period of time to "organize and understand the entities under his control." Opposition, p. 5.

As noted above, there is nothing difficult or complex to understand about South University's relationship with Hemingway. South University is in default of its rent obligations and Hemingway is entitled to restitution of the Premises. No principle of law or equity suggests that Hemingway should be required to subsidize an insolvent receivership estate with rent-free space for an indefinite, unspecified period of time.  The timing factor does not weigh in favor of the Receiver. In fact, as Hemingway explained more fully in its Motion, under these circumstances, making the Motion early in the proceedings is in fact beneficial to the receivership estate because it allows Hemingway to mitigate its damages and reduce its claim against the receivership estate.

### III. *Wencke II* Factor #3: The Receiver's Argument that this Court Should Disregard the Merits of Hemingway's Underlying Claim Is Unconvincing.

Finally, the Receiver argues that this Court "need not weigh the merits of Hemingway's claim" because the "first two *Wencke II* factors clearly tip in favor of the Receiver." Opposition, p. 8. First, this argument is based upon a false premise—as detailed above, neither of the first two factors "clearly tip in favor" of the Receiver.

Second, it is noteworthy that the Receiver tacitly concedes that Hemingway is entitled to the relief it seeks under state law. While this may not be "determinative," it is certainly an important consideration. The strength of Hemingway's underlying claim makes it all the more inequitable that Hemingway remains stayed from realizing its rights.

Additionally, the fact that there is no meaningful dispute over the merits of Hemingway's claim undermines the Receiver's argument, under the second factor, that Hemingway's Motion is premature. The litigation in the Bedford Municipal Court will not be a significant expense or distraction to the Receiver, even at this "early stage," if it is not contested. The "merit" factor weighs heavily in favor of Hemingway, and this Court should not simply dismiss it, as the Receiver urges.

### IV. Conclusion.

For the foregoing reasons, each of the arguments in the Receiver's Opposition is unconvincing. Hemingway will suffer substantial, irreparable injury if its Motion is denied. Moreover, Hemingway's Motion, while made at an early stage of the receivership, is appropriate and timely considering the Receiver has refused to pay rent and evidently intends to retain possession of the Premises, rent-free, for an indefinite period. Finally, the merit of Hemingway's underlying claim for restitution of the Premises is not in dispute. Hemingway's Motion should be granted.

Hemingway reasserts its request that this Court conduct a hearing on Hemingway's Motion to entertain additional evidence and arguments regarding the competing equities to be weighed by this Court.

Respectfully submitted,

WALTER | HAVERFIELD LLP


*/s/ Douglas M. Eppler*
KIRK W. ROESSLER (0060931)
DOUGLAS M. EPPLER (0087018)
Email: kroessler@walterhav.com
          deppler@walterhav.com
Direct Dial:  (216) 928-2905
Direct Fax:  (216) 916-2402
1301 East Ninth Street, Suite 3500
Cleveland, OH 44114-1821

*Attorneys for Movant,*
*Hemingway at Richmond, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this 5th day of March 2019, a copy of the foregoing *Hemingway at Richmond, LLC's Reply Memorandum in Support of its Motion for Limited Relief from Stay Provisions of the Order Appointing Receiver* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties can access this filing through the Court's system.

/s/ Douglas M. Eppler
KIRK W. ROESSLER (0060931)
DOUGLAS M. EPPLER (0087018)

*Attorneys for Movant,
Hemingway at Richmond, LLC*