# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### The Receiver's Response To Student Intervenors' Memorandum In Support of Vacating Order Appointing Receiver [Doc. 98]

Earlier this week, the self-titled Student-Intevenors, Emmanuel Dunagan, Jessica Muscari, Robert J. Infusino, and Stephanie Porreca, filed an extensive brief [Doc. 98] supporting 3601 Sunflower LLC's Motion To Vacate [Doc. 54]. The Student Intervenor's brief is more than a simple "me too" brief and raises issues that must be addressed as the Court considers Sunflower's motion.

## Introduction

In December, the Student Intervenors filed a putative class action before the Cook County, Illinois Circuit Court. Exhibit A to the Dunagan Plaintiffs' Motion to Intervene (Doc. 35-1). Their Complaint focuses on a single, relatively simple issue: the alleged misrepresentation of the Illinois Institute of Art -Chicago's and Illinois Institute of Art-Schaumberg's accreditation status. Since the Receiver was appointed on January 18, 2019, the Student Intervenors, who at best would represent a calls of students enrolled at Illinois Institute of Art -Chicago and Illinois Institute of Art-Schaumberg any time after January 20, 2018, *see* Dunagan Compl. ¶ 122 (Doc. 35-2), have attempted to

expand their position to purport to represent all students, everywhere, for every Receivership Entity campus, from any potential harm of any sort.

The Student Intervenors' Memorandum in Support of Vacating Order Appointing Receiver complains bitterly that the Receiver has not answered their questions quickly enough, and appears to complain that their counsel have not been invited into an inner circle whereby all issues facing the Receivership Estate are assessed and strategies developed. In short, the Student Intervenors complain that the Receiver has not, in the six weeks since he was appointed, managed to gain a complete and total understanding of what got Dream Center Education Holdings LLC and its subsidiaries into the mess that required the establishment of a receivership, and has not fixed every problem surrounding the Receivership Estate.

The Student Intervenors misunderstand the very nature of receivership.

Receivers are not appointed to oversee the operations of well-run business enterprises. Rather, they are appointed to oversee troubled businesses on the verge of (or having already entered) ruin. The financials of these companies are often poorly documented, any fraud is typically hidden, and key staff with knowledge of the operations have already headed for the hills. Receivers are therefore charged with the obligation to walk in, figure out how to maximize the value of the enterprise for the benefit of all stakeholders, and stabilize the operations if that would work to the stakeholders' benefit. Once the operations are stabilized, the Receiver can devote efforts to determining what went wrong in the first place and attempting to recover from anyone liable for wrongdoing. Nothing regarding this matter is different. The Receiver was appointed to oversee a university system on the brink of collapse, and which had been on that brink for some time already. Key staff was missing, making it more

difficult to gather the information needed to make a determination of how best to maximize the value of the estate. The Receiver and his staff, and his counsel, have worked with a wide variety of stakeholders to stabilize the enterprise so that the next steps can be taken: determining how to proceed.

**1. The Receivership Order Should Not Be Vacated**

The Student Intervenors contend the Receivership should be vacated since the principal purpose of the Receivership – to allow the Receivership Entities to receive Title IV funds necessary to continue operations – has ended with the United States Department of Education ("DOE") declaring that there will be no more Title IV funds to be paid. There are two basic factual issues that undercut the Student Intervenors' argument. First and foremost, the Department of Education's February 27 letter indicates the suspension of Title IV funds, but leaves open the opportunity for the Receiver to respond. The letter indicates DOE will reconsider its decision based on the Receiver's submission. Second, the DOE letter indicates that it intends to cease funding for *Argosy University* alone. The letter does not indicate an intent to cease Title IV funding for the other campuses in receivership: South University of Ohio LLC, The DC Art Institute of Raleigh-Durham LLC, The DC Art Institute of Charlotte LLC, DC Art Institute of Charleston LLC, DC Art Institute of Washington LLC, The Art Institute of Tennessee – Nashville LLC, AiTN Restaurant LLC, The Art Institute of Colorado LLC, DC Art Institute of Phoenix LLC, The Art Institute of Portland LLC, The Art Institute of Seattle LLC, The Art Institute of Pittsburgh DC LLC, The Art Institute of Philadelphia DC LLC, DC Art Institute of Fort Lauderdale LLC, The Illinois Institute of Art LLC, The Art Institute of Michigan LLC, The Illinois Institute of Art at Schaumburg LLC, DC Art Institute of Las Vegas LLC, Art Institute of Indianapolis LLC, AiIN Restaurant LLC,

South University of Ohio LLC, and South University of Michigan LLC.  Whether DOE stands on its decision that Argosy is no longer eligible for Title IV funding or not, the 22 campuses identified above remain in need of the eligibility to complete the teachouts.  Throwing those campuses into bankruptcy will cease the eligibility, trigger DOE's assertion of a priority lien for rescinded student loans, and ensure that there is no money to pay the Intervening Students should they be successful in their underlying suit.

### 2.  Mark Dottore Should Not Be Removed As Receiver

The Intervening Students are unhappy with Mr. Dottore's service as Receiver because he has answered their questions (which have nothing whatsoever to do with the claims set forth in their Complaint).  They take at face value accusations made by DOE (to which the Receiver is presently preparing a response) and Studio Enterprise Manager, LLC (via its briefing in the matter settled in principle last week and currently submitted to this Court for review).   Their arguments are misguided.

The contentions at the time DCEH answered Digital Media Solutions, LLC's Complaint were accurate:  Mr. Dottore *was* (and is) uniquely qualified to serve as receiver in this matter.  That said, the Intervening Students misstate the nature of his involvement before the Receivership was established.  He was retained by DCEH in October 2018 to help the entity find prospective buyers and to help it interface with DOE.  He was told, and had no reason to disbelieve, that DCEH and its subsidiaries were in terrible financial distress.  That does not mean, however, that he was privy to any particular detail concerning that distress.  Nor does that mean he was involved in the day-to-day management of the campuses or their finances.   The Student Intervenors have offered no evidence to the contrary.

By a similar token, Mr. Dottore was aware that negotiations were taking place between Studio and DCEH, and he participated in a number of calls with Studio counsel, John Altorelli. But Mr. Dottore neither negotiated the transactions nor was he aware of the details underlying the byzantine contracts that documented the transactions. Once again, the Student Intervenors have offered no evidence to the contrary.

Accordingly, at the time DMS filed suit and sought the appointment of a receiver, Mr. Dottore was well-versed in the issues underlying a troubled university, having worked Myers University successfully through the process. And he was familiar with the people surrounding DCEH, including the Studio and DOE representatives. He had identified potential purchasers for some assets and was in a good position to help shepherd the Receivership Entities through whatever process was required to maximize their value for all stakeholders.

While the Student Intevenors claim that "[t]he unorthodox origins of this receivership diminish public and creditor confidence in its fair administration, raising at least the appearance of conflicts of interests regarding financial transactions that took place while Mr. Dottore was consulting for DCEH," it appears the only "public confidence" in jeopardy is that of the Student Intervenors. The secured creditors, who hold more than $140 million in claims against the Receivership Estate, have not objected to the appointment of a receiver in general, or Mr. Dottore in particular. While it is true that various landlords presently seek to vacate the receivership order as a means to recover access to their properties, none have levied the attacks against the Receiver as the Student Intervenors have.

The lack of general outcry regarding the quality of the Receiver's work is understandable since he has honored his duties as a federal equity receiver:

> Though the "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors," federal equity receivers have multiple duties, including: (1) preserving receivership assets, (2) administering receivership property suitably, and (3) assisting in any equitable distribution of those assets if appropriate.

*SEC v. Louis V. Schooler, et al.*, 2015 U.S. Dist. LEXIS 46870, *3 (S.D. Cal. Mar. 4, 2015).

It bears repeating that the receivership is just six weeks old at this juncture. In that time, the Receiver and his team have spent considerable time engaged in triage: attempting to stabilize the campuses, meeting with creditors, meeting with the DOE, meeting with accrediting agencies, investigating the student stipend issue, and holding town-hall meetings for students and faculty.

## Conclusion

The Student Intervenors' frustration notwithstanding, the Receivership is still in its infancy. The problems that brought the school systems to the brink of receivership were years in the making, and it will take more than a few weeks to solve those problems. While the Receiver supports the concept of transparency, he also suggests there are limited resources available and those resources must be utilized in an efficient manner. The Receiver has already submitted a number of reports, and intends to continue to submit regular reports regarding the status. Weekly reports, however, would improperly divert resources better spent on advancing the Receivership Estate's progress and value, and would add unnecessary expense.

Dated: March 6, 2019

Respectfully submitted,

/s/ Nicholas R. Oleski
Robert T. Glickman (0059579)
Charles A. Nemer (0009261)
Robert R. Kracht (0025574)
Hugh D. Berkson (0063997)
Nicholas R. Oleski (0095808)
McCarthy, Lebit, Crystal & Liffman Co., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
(216) 696-1422 – Telephone
(216) 696-1210 – Facsimile
rtg@mccarthylebit.com
can@mccarthylebit.com
rrk@mccarthylebit.com
hdb@mccarthylebit.com
nro@mccarthylebit.com

*Special Counsel for the Receiver*

**CERTIFICATE OF SERVICE**

The foregoing was electronically filed this 6th day of March, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

In addition, copies of the foregoing were sent via regular U.S. mail on this 6th day of March, 2019 to the following:

Cheyanna Jaffke
P.O. Box 2520
Anaheim, CA 92814

Marina Awed
P.O. Box 1278
Trustin, CA 92781

/s/ Nicholas R. Oleski
Nicholas R. Oleski (0095808)