UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**The Receiver's Combined Opposition to Motions of
The Buncher Company, Tech Park 6, LLC, HEFCO Meadowbrook LLC,
Historic Berriman-Morgan, LLC, Douglas Emmett 2010, LLC, and Fluorine,
LLC for Relief from the Order Appointing Receiver
[Docs. 56, 59, 65-2, 86, 95, 104 & 105]**

Rather than burden this Court with separate oppositions to each movant landlord's motion for relief from the Receivership Order (Doc. 8), which motions largely make similar arguments, the Receiver submits this Combined Opposition to the motions filed by the Buncher Company ("Buncher") (Doc. 56), Tech Park 6, LLC ("Tech Park") (Doc. 59), HEFCO Meadowbrook, LLC ("HEFCO") (Docs. 65-2 & 105),[1] Historic Berriman-Morgan, LLC ("Historic") (Doc. 86), Douglas Emmett 2010, LLC ("Douglas") (Doc. 95), and Fluorine, LLC ("Fluorine") (Doc. 104) (collectively, Buncher, Tech Park, HEFCO, Douglas, and Fluorine are the "Landlord Movants").[2]

**I.    INTRODUCTION**

Shortly after this Court appointed Mark Dottore as Receiver for the Receivership Entities (the "Receiver"), several of the Receivership Entities' landlords, Buncher, Tech

---

[1] HEFCO filed two identical motions. *Compare* (Doc. 65-2), *with* (Doc. 105).
[2] The Receiver does ***not***, however, oppose Tech Park's (Doc. 59) or HEFCO's (Doc. 65) motion to intervene. In any event, this Court has already granted their motions to intervene.

{01290816-2}

Park, HEFCO, Historic, Douglas, and Fluorine, have asked this Court for leave to prosecute or initiate eviction proceedings in state court. *See* (Docs. 56, 59, 65-2, 86, 95, 104 & 105). Their motions are premature: "[w]here the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." *S.E.C. v. Wencke*, 622 F.2d 1363, 1373–74 (9th Cir. 1980) ("*Wencke I*"); *see also F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005) (denying motion for relief from stay where "receiver has had little more than three months to begin to unravel these labyrinthine entanglements").

Given the very early stage of this receivership, the Landlord Movants' motions should be denied without prejudice to their right to refile their motions later in the receivership.

## II. PROPERTY AT ISSUE

The Landlord Movants are the landlords of several of the Receivership Entities:

- Buncher owns the real property and improvements located at 1400 Penn Ave., Pittsburgh, Pennsylvania, which it leases to Dream Center Education Holdings, LLC ("DCEH")—one of the Receivership Entities. *See* Twelfth Amendment to Agreement of Lease (Doc. 56-2, PageID#: 1182-1196). DCEH operates the Art Institute of Pittsburgh at that location.

- Tech Park owns the real property and improvements located at 2350 Corporate Circle, Henderson, Nevada, which it leases to the Art Institute of Las Vegas, LLC ("Ai Las Vegas")—one of the Receivership Entities. *See* (Docs. 59-3 & 59-4). As its name suggests, the Ai Las Vegas operates the Art of Institute of Las Vegas at the property.

- HEFCO owns the real property and improvements located at 41555 Twelve Mile Road, Novi, Michigan, which it leases to South University of Michigan, LLC ("SU Michigan")—one of the Receivership Entities. Affidavit of Howard Friedlaender ¶¶ 3-4 (Doc. 105-1). Unsurprisingly, SU Michigan operates South University of Michigan at the property.

- Historic owns the real property and improvements located at 1403 North Howard Avenue, Tampa, Florida, which it leases to Argosy Education, LLC ("Argosy Education")—one of the Receivership Entities. *See* Second Amendment to Lease (Doc. 43-1, PageID#: 685-687). Argosy Education operates Argosy University, Tampa at that location.

- Douglas owns the real property and improvements located at 1003 and 1003 Bishop Street, Honolulu, Hawaii, which it leases to Argosy Education. *See* Assignment, Assumption and Consent (Doc. 95-2, PageID#: 2527-2531). At that location, Argosy Education operates Argosy University, Hawaii.

- Fluorine owns the real property and improvements located at 1550 Wilson Boulevard, Arlington, Virginia, which it leases to Argosy Education. At that location, Argosy Education operates Argosy University, Northern Virginia.

## III.   ARGUMENT

### A.   Legal Standard for Relief from Receivership Stay.

The Ninth Circuit's decision in *S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*"), "provid[es] the framework to consider for lifting the stay." *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1196 (10th Cir. 2010); *see also S.E.C. v. One Equity Corp.*, No. 2:08-CV-667, 2010 WL 4878993, at *6 (S.D. Ohio Nov. 23, 2010) (finding that although the Sixth Circuit "has not articulated a test for determining whether a receivership stay should be lifted," the *Wencke II* standard "appears to be the applicable standard"). The *Wencke II* court articulated a three-prong test to determine whether a receivership stay should be lifted:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

{01290816-2}

3

*Wencke II*, 742 F.2d at 1231. This Court has discretion in applying this test. *Id.* The Landlord Movants bear the burden of proving the receivership stay should be lifted. *E.g.*, *United States v. ESIC Capital, Inc.*, 675 F. Supp. 1462, 1462 (D. Md. 1987).

### B. The *Wencke II* Factors Weigh in Favor of Maintaining the Stay.

#### 1. *Maintaining the Stay Will Preserve the Status Quo.*

Continuing the stay will maintain the status quo. Generally speaking, the Receivership Entities are presently intact and are operating under the receivership. "At least for the near future, things should remain that way." *F.T.C. v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001). If this Court grants all of the Landlord Movants' motions relief from the stay, then "[n]ot only would the Receiver then have to take his attention away from other tasks, but the assets of the receivership estate would quickly be diminished." *Med Resorts Int'l*, 199 F.R.D. at 609.

Although this factor of the *Wencke II* test "essentially balances the interests in preserving the receivership estate with the interests" of the movant, S.*E.C. v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011), this Court should give "appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate," *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). That said, "very early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties." *Id.* at 443-444.

The Receiver is cognizant of the Landlord Movants interest in obtaining restitution of their leaseholds, but "their interest"—especially at this early stage of the receivership—"is considerably outweighed by the receiver's significant interest in the orderly and efficient administration of the estate." *F.T.C. v. 3R Bancorp*, No. 04 C 7177,

{01290816-2}

4

2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005) (citing *S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). The Receiver simply needs more time to untangle the financial structures of the Receivership Entities and craft a plan for the campuses within the Receivership Estate.. Granting the Landlord Movants' relief from the stay at this very early stage of the receivership would defeat the whole point of the receivership and the stay in the first place. The reason this Court appointed the Receiver was because the Receivership Entities were in substantial financial distress and, among other reasons, their students would be immediately and irreparably damaged if a receiver were not appointed. *See* Order Appointing Receiver at 2 (Doc. 8).

In sum, at this early stage of the receivership, the first *Wencke II* factor cuts in favor of the Receiver—not the Landlord Movants.

### 2. The Landlord Movants Filed Their Motions During the Initial Stages of the Receivership.

The Landlord Movants fail to recognize that "[t]he time at which the motion for relief from the stay is made [] bears on the exercise of the district court's discretion." *S.E.C. v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980) ("*Wencke I*"). Thus, "[w]here the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." *Id.* at 1373-74; *see also S.E.C. v. One Equity Corp.*, No. 2:08-CV-667, 2010 WL 4878993, at *7 (S.D. Ohio Nov. 23, 2010) (noting that court denied creditor's first motion to lift receivership stay because "the receivership was in its early stages" and "the Receiver needed additional time to identify receivership assets and to investigate and resolve relevant issues pertaining thereto").

{01290816-2}

5

"Generally, courts are reluctant to lift litigation stays early in a receivership where lifting a stay would disrupt the receiver's duty to organize and understand its assets." *United States v. JHW Greentree Capital, L.P.*, No. 3:12-CV-00116 VLB, 2014 WL 2608516, at *7 (D. Conn. June 11, 2014) (collecting authority). In fact, courts have held that the timing factor weighed in favor of a receiver where the receivership was anywhere from three months old,[3] to six months old,[4] to two years old[5] at the time of the creditor's motion.

Here, the timing factor clearly weighs in favor of the Receiver and is dispositive of the Landlord Movants' motions. The Receiver was appointed a little more than one month ago and is only just beginning to untangle the many financial transactions involving tens of millions of dollars and to understand the complex relationships between the various Receivership Entities.

Consider, for example, the Receiver's Revised and Amended Report on Student Stipends (Doc. 68). The Receiver reported that his investigation has now uncovered the appearance that: there many have been "irregularities" in the method and manner used by some or all of the pre-Receivership Dream Center Entities to request Title IV funding; and, the pre-receivership entities spent monies earmarked for student stipends on operating expenses. Obviously, the investigation has just begun and will require

---

[3] *F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005) (denying motion for relief from stay where "receiver has had little more than three months to begin to unravel these labyrinthine entanglements").

[4] *S.E.C. v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 234016, at *6 (D. Conn. Jan. 25, 2012) ("At the time of ReoStar's motion, the Receivership had been in place for about six months. . . . [T]he Court is of the view that the Receiver is still in the early stages of the Receivership, the bar date for claims against Receivership Entities having just passed (December 30, 2011). The Receiver's need to organize and understand the financial transactions among all the Receivership entities, as well as assess the claims filed, outweighs ReoStar's need to proceed with its claims.").

[5] *United States v. ESIC Capital, Inc.*, 675 F. Supp. 1462, 1464 (D. Md. 1987).

{01290816-2}

significant effort to complete. There is also satellite litigation at this early stage. As the Receiver took control of the university systems with tens of thousands of students and campuses spread across the country, the Receivership Entities were embroiled in litigation across the country—from class action lawsuits in federal court in Chicago and state court in California to eviction lawsuits in the Bedford Municipal Court in Cuyahoga County, Ohio, not to mention a number of EEOC investigations. In addition, the Receiver just recently filed and settled a lawsuit against Studio Enterprise Manager, LLC and Education Principle Foundation in this Court. *See Dottore v. Studio Enterprise Manager, LLC et al.*, Case No. 1:19-cv-380 (N.D. Ohio).

No matter how the Court should care to interpret the second *Wencke II* factor regarding timing, that timing factor clearly cuts in favor of the Receiver in light of the early stage of the receivership.

> 3. ***Since the First Two of the Wencke II Factors Weigh in Favor of the Receiver, the Court Need Not Weigh the Merits of the Landlord Movants' Claims.***

"[W]hen it is asked to lift a stay it would usually be improper for a district court to attempt to actually judge the merits of the moving party's claims at such an early point in the proceedings. A district court need only determine whether the party has colorable claims to assert which justify lifting the receivership stay." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 444 (3d Cir. 2005). But the fact that this factor tips in favor of the movant "is not determinative, especially when all of the others undoubtedly call for a continuation of the stay." *F.T.C. v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001); *see also F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *3 (N.D. Ill. Feb. 23, 2005) (applying only first two *Wencke II* factors and

{01290816-2}

7

refusing to lift stay). Since the first two *Wencke II* factors clearly tip in favor of the Receiver, the fact that the final factor may tip in favor of HEFCO is not determinative.

> **C. The Court Need Not Wade into Bankruptcy Law to Decide the Landlord Movants' Motions.**

To varying degrees, each Landlord Movant also relies on federal bankruptcy law in support of their motion, and each urges this Court to adopt certain provisions of the Bankruptcy Code. As an initial matter, the Court can reject these arguments on their face because this is not a bankruptcy proceeding. Although this Court's Local Rules provide that a receiver "shall administer the estate as nearly as may be in accordance with the practice in the administration of estates in bankruptcy, except as otherwise ordered by the Court," Local Rule 66.1, they do not require that the Court superimpose the Bankruptcy Code upon this proceeding. After all, receiverships are based on equitable principles, and "a district court has broad powers in fashioning relief in an equity receivership proceeding . . . ." *Liberte Capital Group, LLC v. Capwill*, 421 F.3d 377, 382 (6th Cir. 2005). In light of these broad equitable powers and principles, the Receiver submits that it is still too early in the receivership for him to, for example, expedite his decision to assume or reject leases. *See* Tech Park Memo. (Doc. 59-1). Under the *Wencke II* factors outlined above, "[t]he Receiver's need to organize and understand the financial transactions among all the Receivership entities, as well as assess the claims filed, outweighs [the Landlord Movants] need to proceed with [their] claims." *S.E.C. v. Illarramendi*, No. 3:11CV78 JBA, 2012 WL 234016, at *6 (D. Conn. Jan. 25, 2012).

To be clear, the Receiver is not arguing that he should be entitled to use the Landlord Movants' property for an indefinite period of time without paying rent.

Instead, what he is arguing is that—given the early stages of this receivership—it is still too early for him to make final decisions regarding the properties at issue. That does not mean that the Receiver is putting off that decision-making for an indefinite period. Rather, the Receiver is, in fact, working diligently on finalizing a plan for those properties.[6] As this Court is keenly aware, reports of the Receivership Entities' demise have been swirling since the United States Department of Education's letter indicating an intent to cease Title IV funding for Argosy University was publicized.[7] Accordingly, this Court entered an Order requiring the Receiver to set forth "detailed plan, based on the information currently known, for the funding of the operations of the receivership entities (including how the receiver plans to satisfy current obligations for rent, student stipends, etc.) for the entities in receivership." [Doc. 80]. The Order calls for that plan to be submitted tomorrow. The Receiver expects that following the hearing set for Friday, March 6, there will be more clarity concerning the status and direction of the receivership.

Put bluntly, the Receiver needs more time. In light of the equitable factors courts consider under *Wencke II*, the Court should grant him more time.

### III. CONCLUSION

For the foregoing reasons, the Court should deny the Landlord Movants' motions. In the end, the Receiver just simply needs more time to untangle the financial affairs of the Receivership Entities and to determine his plan going forward.

---

[6] In fact, today, the Receiver filed an Emergency Motion to Sell, Transition or Close Argosy University Campuses and Art Institutes Campuses (Doc. 112). The resolution of that motion may, effectively, moot many of the issues raised in the Landlord Movants' motions.
[7] *See, e.g.*, Michael J. Frola Letter to Mark Dottore (Doc. 98-2); Stacey Cowley & Erica L. Green, *A Chain of Schools is Cut Off from Student Loans, Leaving Thousands in Limbo*, THE NEW YORK TIMES (Feb. 27, 2019), available at
https://www.nytimes.com/2019/02/27/business/argosy-university-education-department.html.

{01290816-2}

Dated: March 6, 2019                                 Respectfully submitted,

                                                                 /s/ Nicholas R. Oleski
                                                                 Robert T. Glickman (0059579)
                                                                 Charles A. Nemer (0009261)
                                                                 Robert R. Kracht (0025574)
                                                                 Hugh D. Berkson (0063997)
                                                                 Nicholas R. Oleski (0095808)
                                                                 McCarthy, Lebit, Crystal & Liffman Co., LPA
                                                                 101 West Prospect Avenue, Suite 1800
                                                                 Cleveland, Ohio 44115
                                                                 (216) 696-1422 – Telephone
                                                                 (216) 696-1210 – Facsimile
                                                                 rtg@mccarthylebit.com
                                                                 can@mccarthylebit.com
                                                                 rrk@mccarthylebit.com
                                                                 hdb@mccarthylebit.com
                                                                 nro@mccarthylebit.com

                                                                 *Special Counsel for the Receiver*

## **CERTIFICATE OF SERVICE**

The foregoing was electronically filed this 6th day of March, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

In addition, copies of the foregoing were sent via regular U.S. mail on this 6th day of March, 2019 to the following:

| | |
|---|---|
| Cheyanna Jaffke | Marina Awed |
| P.O. Box 2520 | P.O. Box 1278 |
| Anaheim, CA 92814 | Trustin, CA 92781 |

                                                                  /s/ Nicholas R. Oleski
                                                                   Nicholas R. Oleski (0095808)