UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | : | Case No. 1:19-CV-145 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE DAN AARON POLSTER |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| SOUTH UNIVERSITY OF OHIO, LLC., et al., | : | THOMAS M. PARKER |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF DREAM CENTER SOUTH UNIVERSITY, LLC'S UNOPPOSED MOTION TO INTERVENE**

Dream Center South University, LLC ("South"), by and through its undersigned counsel files this Memorandum in Support of its Unopposed[1] Motion to Intervene pursuant to Federal Rule of Civil Procedure 24.

### I. INTRODUCTION

This proceeding concerns the receivership of certain educational entities, including Dream Center Education Holdings LLC ("DCEH"), the former sole member of South. Importantly, South is not in receivership. Although DCEH transferred its membership interest in South on January 7, 2019, DCEH remains contractually required to provide certain services to South, and the Receiver purports to control certain shared IT assets in which South has material interests through a transitional period. These services and assets are critical to South's continued operations as a nonprofit educational system serving more than 10,000 students throughout the country. On March 6, 2019, the Court entered an Order to Show Cause as to why the order establishing the receivership should not be vacated. Given South's interests in these shared IT

---

[1] Counsel for the Receiver and counsel for the Plaintiff do not oppose the intervention of South.

services and assets, its intervention in the receivership is important to protect its students and continued operations.

Furthermore, on February 27, 2019, the Receiver, on behalf of DCEH and other receivership entities, entered into a Settlement Agreement with Studio Enterprise Manager, LLC ("Studio") and Education Principle Foundation ("EPF").  South generally supports the efforts of the parties to the Settlement Agreement to continue untangling South from the receivership entities.  That said, certain provisions in the Settlement Agreement could alter the legal and equitable rights and obligations of South under contractual agreements with or concerning South, Studio, and EPF.  This proceeding is the proper forum for South to protect its rights in light of this Court's exercise of jurisdiction over the receivership entities, including DCEH.  Because of the differing interests between it and other parties, South seeks intervention as of right under Rule 24 of the Federal Rules of Civil Procedure.

## II.     FACTUAL BACKGROUND

A. **Brief History of South**

South is a nonprofit university system that consists of ten physical campuses in southeastern America as well as a robust online campus.  South traces its roots back to 1899, when it was founded in Savannah, Georgia as a business college with courses in accounting, banking, shorthand, and bookkeeping.  Today, more than 10,000 students are enrolled at South, pursuing studies in a wide variety of fields, including nursing, information technology, business, and healthcare.  The institution is proud to offer its students programs at the associate, baccalaureate, master, and doctoral levels.

### B. South's Transitional Connection to DCEH

South was acquired by DCEH in 2017, along with certain Arts Institutes schools and Argosy schools. Although the educational curricula offered by South was separate from those other systems, the schools did share certain administrative services and IT systems. In transactions leading up to this receivership action, South was spun-off from DCEH and acquired by Studio's designee, EPF in January 2019.[2] As stated by the Receiver, South, along with certain Arts Institutes "were formerly owned and controlled by DCEH but are *not* Receivership Entities."[3] (ECF 91 at 3 (emphasis in the original).) Nonetheless, the January 2019 transactional documents continued to connect South to DCEH during a transitional period.

Specifically, on January 7, 2019, Studio entered into a Transition Services and License Agreement with DCEH (the "TSA") under which DCEH was to continue to provide Shared IT Services, as defined in the TSA, to South with respect to the Shared IT Systems that were jointly used among the university systems. (TSA ¶ 3.2.) At that same time, the transactional documents included a Master Services Agreement (the "MSA") between South and Studio. Under the MSA, Studio's obligations are defined or conditioned upon DCEH's provision of those requisite services to South per the TSA. (*See* MSA at ¶ 1.2.) Studio, DCEH, and South, among others, are parties to a January 7, 2019 Amended and Restated Framework Agreement ("Framework Agreement"). The Framework Agreement expressly acknowledges that South, and other "Dream Parties," have the right to use the Shared IT Systems of the institutions. (Framework

---

[2] Certain Arts Institutes schools were also spun-off and are not receivership entities. The recently filed First Report of the Receiver identifies the receivership entities in organizational charts showing former relationships to non-receivership entities. (ECF 91.)

[3] Two entities that were formerly subsidiaries of South are now receivership entities – South University of Michigan, LLC and South University of Ohio, LLC. (*See* ECF 91 at Ex. A, Dream Center South University, LLC and Subsidiaries (highlighting receivership entities).)

Agreement at ¶ 2.19(b).) Both the MSA and the TSA purport to contain the terms of payment for South's receipt of the Shared IT Services and use of the Shared IT Systems.

### C. South's Interest in the Receivership

DCEH along with various Argosy institutions, two South University institutions, and several Arts Institutes institutions have entered into receivership. (ECF 8, Order Appointing Receiver.) Although South continues to operate outside of the receivership action as a viable university system serving more than 10,000 students nationwide, South has certain legal and equitable interests in these proceedings. The Receiver himself has stated that South, along with the spun-off Arts Institutes schools, "depend on DCEH and the Receiver for vital services without which they could not operate." (ECF 91 at 3.) More specifically, as explained by the Receiver, "overall management services were shared as were the computer and payroll systems. The prior management of the three university systems caused them to be so intertwined that they cannot be separated immediately. Estimated time tables for the extrication of [South] and AI support services range from a few weeks to months." (*Id.*)

### D. The Settlement Between the Receiver, Studio, and EPF

The Receiver instituted an action against Studio and EPF on February 21, 2019, claiming that the heft of the reorganizational documents should be rescinded, that Studio breached the Framework Agreement, the Equity and Asset Purchase Agreement, and the TSA, and that Studio had been unjustly enriched as a result of those agreements. (*See Dottore v. Studio Enterprise Manager, LLC*, 1:19-cv-00380 (N.D. Ohio) at ECF 1.) At the same time, the Receiver asked the Court to enter a temporary restraining order and preliminary injunction seeking the payment of funds purportedly necessary for DCEH to provide the services contemplated under the TSA. (*See generally id.* at ECF 2.) Otherwise, the Receiver predicted, "the Receivership Entities will

be unable to operate, the Ai University System, Argosy University System and the South University System will close, and the school's tens of thousands of students will bear the brunt of the damage." (*Id.* at 4-5.)

Within one week of that filing claiming that Studio had been unjustly enriched through the January 2019 transaction and seeking to rescind the reorganization documents, Studio, EPF, and the Receiver entered into a February 27, 2019 settlement agreement. (*See* ECF 82-1.) The following day, the Receiver filed a motion to approve the Settlement Agreement and set a schedule for objections (ECF 82), which was granted by the Court on February 28, 2019 (ECF 84). The Receiver, Studio, and EPF filed two amendments to the settlement agreement (together, the "Settlement Agreement").[4] (*See* ECF 85; 118.)

Through the Settlement Agreement, Studio and DCEH attempt to take, *inter alia*, the following actions that potentially could affect South: (i) changing the terms on which services are to be provided to South; (ii) defining the nature of payments made by South and potentially require additional payments of South; (iii) giving Studio the potential right to purchase assets in which South has an interest for a fixed sum; and (iv) settling claims concerning alleged wrongdoing in the reorganization.

South has identified certain issues with the Settlement Agreement insofar as it does or may impact South's rights. Studio's counsel informed South that, because it was not a party to the Settlement Agreement, it should file an objection to the Settlement Agreement in order to raise those concerns.

---

[4] The Court did not grant permission for the amendments to relate back to the original motion to approve the settlement agreement or adjust the schedule for filing objections.

E. Order to Show Cause

On March 6, 2019, the Court entered an Order to Show Cause as to why the order establishing the receivership should not be vacated. (ECF 111.) Because the receivership entity DCEH currently controls certain shared IT assets and services upon which South's operations—along with the futures of more than 10,000 of South's students—are dependent, South believes it is in its best interest to intervene formally as an interested party in the case to protect its students and continued operations interests.

### III. LEGAL DISCUSSION

A. **Intervention as of Right**

The Federal Rules of Civil Procedure provide for intervention as of right for certain non-parties to actions. Specifically, Rule 24 provides that a court must permit the intervention of one who:

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Sixth Circuit has recognized four elements that a nonparty must satisfy in order to intervene successfully: "(1) timeliness of application; (2) a substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention; and (4) inadequate representation of that interest by parties already before the court." *Northeast Ohio Coalition for Homeless & Service Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1007 (6th Cir. 2006) (*citing Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). South satisfies each of these requirements; accordingly, intervention is permitted as of right.

6

> 1. *Timeliness*

South's request for intervention is timely. The Sixth Circuit has enunciated the relevant factors to consider:

> The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances. *See Bradley v. Milliken,* 828 F.2d 1186, 1191 (6th Cir.1987). The following factors should be considered: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Grubbs v. Norris,* 870 F.2d 343, 345 (6th Cir.1989).

*Blount-Hill v. Ohio*, 244 F.R.D. 399, 402 (S.D. Ohio 2005).

Here, South filed its Motion to Intervene within two months of the initiation of the instant action. *Compare Blount-Hill*, 244 F.R.D. at 402 (finding filing within five months of action commencing timely); *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990) (finding filing over six months of action commencing timely).

Further, in *Jansen*, the Sixth Circuit also considered the time between the intervenor's recognition of its need to intervene and its motion to intervene. In that case, "[a]pproximately two weeks elapsed between the time in which the proposed intervenors learned of their need to intervene and when they filed their motion to intervene." *Id.* at 342. The court concluded that, "[c]ertainly, this short period does not support a finding of undue delay." *Id.* In the instant case, South is filing its motion immediately after entry of the Order to Show Cause and within days of the February 28, 2019 filing of the Settlement Agreement (which was amended twice on March 1, 2019 and March 7, 2019) and its evaluation of the potential effects the arrangement could have on South. In light of the relevant standard, South's request for intervention is timely.

        2.      *Substantial Legal Interest In The Case*

South has a substantial legal interest in this action. "The Sixth Circuit subscribes to a 'rather expansive notion of the interest sufficient to invoke intervention of right, and close cases should be resolved in favor of recognizing an interest under Rule 24(a).'" *Blount-Hill*, 244 F.R.D. at 403 (*quoting Miller*, 103 F.3d at 1245-47). In addition, the Sixth Circuit has rejected the notion that Rule 24 requires a specific legal or equitable interest. *Id.* at 402. The requisite interest need not rise even to the level required to initiate a lawsuit. *Id.* In *Blount-Hill*, the U.S. District Court for the Southern District of Ohio determined that a management company had the requisite legal interest for intervention when the lawsuit affected nearly all of the management company's contractual clients. 244 F.R.D. at 402-03.

Applying that standard, South has a substantial legal interest in this action. In the first instance, the Receiver has explained that South has an interest in Shared IT Systems and Shared IT Services related to DCEH and other receivership entities. (ECF 91 at 3.) South also has great interest in DCEH's ability to perform the services and any disposal of those assets. As South understands, the continuation of the Receivership is critical to South's access to necessary shared systems and services that only DCEH can provide at this time. Moreover, the recently reached settlement deal between DCEH, Studio, and EPF contains numerous provisions that may or will affect South's contractual and equitable rights. For instance, the Settlement Agreement purports to define payments to be made by South. (ECF 82-1 at ¶ 2.) Further, the Settlement Agreement permits Studio to purchase what it calls "Shared IT assets" for $2 million from DCEH under certain circumstances. (*Id.* at ¶ 8.) That provision also contemplates the potential purchase of the "Shared IT assets" and performance of the TSA by an entity unknown to South. (*Id.*) Although not defined, it is presumed that the assets relate to the Shared IT Systems, which are

explicitly defined in the reorganization documents and are a significant part of South's relationship with Studio and DCEH during the transitional period. (*See* Exhibit A at ¶ 1.2, Exhibit B. at ¶ 2.19.) In light of those intimately related concerns, South has articulated a substantial legal interest in this action.

In addition, South has been named erroneously in certain pleadings in the receivership. (*See, e.g.*, ECF 68 at 1, Status Report (alleging, incorrectly as it relates to South, irregularities in Title IV funding by "pre-Receivership Dream Entities" defined to include South).) At a minimum this has caused confusion. South has an interest in ensuring that the record clearly reflects that South is not in receivership and has not taken wrongful actions with respect to funding or otherwise.

        3.    *Impairment*

A proposed intervenors' burden for the third element, impairment, is "minimal." *Miller*, 244 F.R.D. at 203. The impairment need not be imminent or likely, only *possible*. *Id.* Applying that standard, South has a possible chance of impairment in this action. The Receiver has repeatedly declared the potential impact that a lapse in the shared services might have on the receivership entities *and* South. (ECF 91 at 3.) The Receiver has also stated that it might sell receivership assets. (ECF 91 at 12.) It is unclear whether this could include the Shared IT Systems, which South has a contractual right to use. In light of the cross-asserted property claims and contractual concerns (Subsection 2, *supra*), South has articulated a substantial legal interest that could be impaired in this action.

        4.    *Inadequate Representation*

In this matter, South is inadequately represented. The burden for establishing this element is, again, minimal. *Oakland County v. Federal Nat'l Mortg. Ass'n*, 276 F.R.D. 491, 499

(E.D. Mich. 2011). Indeed "the intervenor does not have to show that representation *will* be inadequate. The inadequate-representation requirement will be satisfied if the intervenor shows that representation of its interest *may* be inadequate." *Id.* (emphasis in the original). In situations where some existing party could theoretically represent the interests of the intervening party, the court is to consider a list of three non-exhaustive factors: "(1) if there is collusion between the representative and an opposing party; (2) if the representative fails in the fulfillment of his duty; and (3) if the representative has an interest adverse to the proposed intervenor." *Purnell v. City of Akron*, 925 F.2d 941, 949–50 (6th Cir. 1991).

Against that standard, South is not adequately represented by any other party. No entity, including the Receiver, purports to represent South in the receivership, nor could they. The Receiver seeks to wind down certain receivership entities and sell off others. (*See, e.g.*, ECF 91, 112.) South, in contrast, continues to operate as an educational institution, which must fulfill its obligations to its students and employees. South requires services and access to assets from the Receiver at this time in order to do so. Further, Studio representatives indicated that the proper method for South to provide input on the Settlement Agreement was through the objection process. Accordingly, South is not represented adequately (if at all) in the receivership.

As a result, South has met all of the required elements for intervention as of right under Rule 24.

    **B.**     **Permissive Intervention**

Even where an applicant fails to satisfy the requirements of intervention as of right, the Court has discretion to grant permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure. "To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *See*

10

*United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (citation omitted). Once the proposed intervenor establishes those two requirements, the "court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id*. (citation omitted). As the U.S. District Court for the Southern District of Ohio has recently noted, "permissive intervention under Rule 24(b) is to be liberally granted, so as to promote the convenient and prompt disposition of all claims in one litigation." *Berk v. Moore*, No. 2:10-cv-1082, 2011 WL 1792534, at *3 (S.D. Ohio May 9, 2011) (internal quotations and citations omitted).

As discussed above, this Motion is timely and the relationship between South, Studio, and DCEH will be impacted by this proceeding, the Court's approval of the Settlement Agreement, or the Court's vacation of the Receivership Order. Neither the Receiver nor the Plaintiff oppose South's intervention and, as set forth herein, all other relevant factors weigh in favor of granting permissive intervention. Accordingly, if this Court is unable to grant intervention as of right under Rule 24(a), it should grant intervention on a permissive basis pursuant to Rule 24(b).

## IV.     CONCLUSION

For all of the reasons discussed herein, South's Unopposed Motion to Intervene should be granted. South requests that the Court enter an order substantially similar to the Proposed Order attached to the Motion.

Respectfully submitted,

COHEN & GRIGSBY, P.C.

By: */s/ Fridrikh V. Shrayber*

Fridrikh V. Shrayber (Ohio Bar No. 0095330)
Ingrid A. Bohme (*pro hac vice* application forthcoming)
Helen S. Ward (*pro hac vice* application forthcoming)
625 Liberty Avenue
Pittsburgh, PA  15222-3152
412-297-4900 / 412-209-0672 (Fax)
fshrayber@cohenlaw.com
ibohme@cohenlaw.com
hward@cohenlaw.com

*Attorneys for Intervenor,*
*Dream Center South University, LLC*

Dated: March 8, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of March, 2019, the foregoing *Memorandum in Support of Dream Center South University, LLC's Unopposed Motion to Intervene* was filed with the Court electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ *Fridrikh V. Shrayber*
Fridrikh V. Shrayber

2962150.v2