**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Digital Media Solutions, LLC, : | |
| : | Case No. 1:19-cv-145 |
| Plaintiff, : | |
| : | Judge Dan Aaron Polster |
| v. : | |
| : | Magistrate Judge |
| South University of Ohio, LLC, et al., : | Thomas M. Parker |
| : | |
| Defendants. : | |

## MOTION OF 2323 ELLIOTT AVENUE, LLC FOR (I) LIMITED RELIEF FROM STAY PROVISIONS OF ORDER APPOINTING RECEIVER AND (II) FOR AN ORDER DIRECTING THE RECEIVER TO PAY RENT

Now comes 2323 Elliott Avenue, LLC ("Elliott"), by and through the undersigned counsel, and requests relief from the provisions of the *Order Appointing Receiver* (Doc. 8) (the "Receivership Order") entered by this Court on January 18, 2019 for the limited purpose of allowing Elliott to prosecute its action for restitution of the property/building located at 2323 Elliott Avenue, Seattle, King County, Washington (the "Property") which Elliott commenced prior to the commencement of this case by filing the Complaint for Unlawful Detainer (the "Eviction Complaint") attached hereto as Exhibit A. Elliott also requests an Order directing the payment of all rent due after the entry of the Receivership Order. A Memorandum in support follows.

[continued on next page]

Respectfully submitted,

/s/ Myron N. Terlecky
Myron N. Terlecky (0018628)
John W. Kennedy (0042672)
Strip, Hoppers, Leithart,
McGrath & Terlecky Co., LPA
575 South Third St.
Columbus, OH  43215
Telephone (614) 228-6345
Facsimile (614) 228-6369
Email:  mnt@columbuslawyer.net
           jwk@columbuslawyer.net
Attorneys for 2323 Elliott Avenue, LLC

## MEMORANDUM IN SUPPORT

### I.   STATEMENT OF FACTS

2323 Elliott Avenue, LLC ("Elliott") is a Washington limited liability company and the owner of real property and improvements located at 2323 Elliott Avenue, Seattle, King County, Washington (the "Property").  The Property is a building containing approximately 72,180 square feet of rentable space.  Elliot, as landlord, leased the Property to The Art Institute of Seattle, Inc. pursuant to terms of conditions of a written lease dated October 24, 2012, as amended (the "Lease").  A copy of the Lease is attached hereto as Exhibit B.  The Assignment of the Lease to the Art Institute of Seattle, LLC ("AI Seattle") is attached hereto as Exhibit C.  The term of the Lease commenced on October 24, 2012 and is set to expire on October 23, 2025, unless terminated earlier as provided in the Lease.  The Lease permits AI Seattle to use the Property for executive and administrative offices, classrooms and support areas.  See, Exhibit B, Sections 1 and 8.

As set forth in the *Emergency Motion to Sell, Transition or Close Argosy University Campuses and Art Institutes Campuses* (the "Motion to Close"), AI Seattle is one of the Receivership Entities named in the Receivership Order.  See, Doc. 112. The Motion to Close was

denied as moot as the Court determined that most Argosy Schools are closed. AI Seattle has closed. As a result, the Property may be being looted, and possibly non-authorized personnel appear to be removing fixtures, thereby causing damage to the Property to the determent of both Elliott and the Receiver. See, https://www/kiro7.com/news/local/students-loot-art-institute-of-seattle-classrooms-as-school-suddenly-shuts-down/928844678.

As of February 1, 2019, the annual base rent payable under the Lease is $1,346,157.00, payable in equal monthly installments of $112,179.75. Exhibit B, Section 1. In addition to the base rent, the Lease requires AI Seattle to pay all "Expenses, Taxes, Landlord Insurance Costs and Property Management Fee" as those terms are defined in the Lease. Exhibit B, Section 1.

AI Seattle has breached the Lease by failing to pay its obligations thereunder. On or about December 5, 2018 a contractual five business day notice to pay $142,233.72 was delivered to AI Seattle; and on December 17, 2018, a statutory three-day notice to pay $142,233.72 or vacate was served upon AI Seattle. AI Seattle did not respond to Elliot's notice to leave the Property, and, consequently, on January 2, 2019, a *Complaint for Unlawful Detainer* (the "Eviction Complaint") was filed in the Superior Court of Washington for King County (the "Eviction Action").

The present action was commenced by the filing of a *Verified Complaint* (Doc. 1) (the "Complaint") by Digital Media Solutions, LLC (the "Plaintiff") on January 18, 2019. On the same date, this Court entered its Receivership Order. The Eviction Action is stayed by the stay and injunction provisions of the Receivership Order, at paragraph 10.

Since the present action was commenced, AI Seattle has not commenced payments of the base rent or other obligations under the Lease, and as of March 1, 2019, there remains due and owing a total of $422,889.95 under the Lease. A Statement of Account is attached hereto as Exhibit D.

## II. LAW AND ARGUMENT

A. <u>The Court Should Grant Relief from the Stay of the Receivership Order</u>

In the present case, Elliott is entitled to relief from the stay provisions of the Receivership Order for the limited purpose of regaining possession of the Property in order to secure the Property from any potential damage, to re-let the Property and mitigate its damages against the receivership estate. While the Sixth Circuit has not articulated a test for determining whether a receivership stay should be lifted, the District Court for the Southern District of Ohio has adopted the factors utilized by the Ninth Circuit:  (1) Whether refusing the lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.  *S.E.C. v. One Equity Corp.*, No. 2:08-cv-667, 2010 U.S. Dist. Lexis 124013 at *19 (S.D. Ohio Nov. 23, 2010) *citing S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*").

The first prong of the *Wencke II* test requires a court to consider not only the benefits of preserving the status quo, but also the consequences of the stay to third parties such as Elliott. Essentially, this factor is a balancing test between the interests in preserving the estate versus the interests of the third party. *See*, *U.S. v. ESIC Capital, Inc*., 675 F. Supp. 1462, 1463 (D. Md. 1987) (the court must assess "the competing interests of the injury to the moving party versus preserving the status quo.")

In the present case, Elliott is incurring substantial losses each day that it is prevented from regaining possession and control of the Property.  In addition, AI Seattle has not commenced rent payments following the appointment of the Receiver; therefore, the status quo is not being

maintained.  Granting limited relief from stay to Elliott to regain possession and control of the Property will "stop the bleeding" and allow Elliott to liquidate its claim in the receivership estate.

The second *Wencke II* factor requires the court to consider the time in a receivership in which a motion to lift a litigation stay is made.  There is no "clear cut-off date after which a stay should be presumptively lifted."  *U.S. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, (3rd Cir. 2005).  Rather, the court should consider the facts in each case to determine the timing factor.  Cases involving fraud, intensive research, or extensive litigation tend to favor the receiver in maintaining the stay; however, in the present case, AI Seattle has closed.  As a result, Elliott should be entitled to limited relief from the litigation stay.

Under the third *Wencke II* factor, the court must consider the merit of the movant's underlying claim.  "A district court need only determine whether the party has *colorable* claims to assert which justify lifting the receivership stay."  *Acorn Tech. Fund*, 429 F.3d at 444 (emphasis in original).  The more meritorious the underlying claim, the more heavily this factor will weigh in the movant's favor.  See, *S.E.C. v. Wencke*, 622 F.2d 1363, 1373 ("Where the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution.").  In the present case, there can be little doubt that Elliott has a meritorious claim for restitution of the Property.

The stay provisions in the Receivership Order likely were intended to prevent creditors from obtaining and enforcing money judgments against the Receivership Entities; however, the effect upon Elliott has been to force Elliott to fund the receivership by providing rent-free facilities to the detriment of Elliott.  This result is inequitable and should not be allowed to continue.

The analogous provisions of Title 11, United States Code (the "Bankruptcy Code") also suggest that Elliott is entitled to relief from stay.  Fed. R. Civ. P. 66 provides that "the practice in

administering an estate by a receiver … must accord with the historical practices in federal court or with a local rule."  In the present case, Local Rule 66.1 provides that the receiver "shall administer the estate as nearly as may be in accordance with the practice in the administration of estates in bankruptcy."  Therefore, analogies to the Bankruptcy Code are appropriate in this case.

A court of equity should "follow wherever practical" analogous insolvency law. Clark, 3 *Law of Receivers,* § 667.4 at 1215 and n. 447 (3d. 1959); *see also White v. Ewing,* 159 U.S. 36, 40 (1895) (Jurisdiction of court in receivership "does not materially differ from that of the district court in bankruptcy.").  A source of analogous law is title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").  "Bankruptcy law repeatedly borrow[s] principles from receivership law and vice versa.  Thus, in some ways the two bodies of law evolved together . . . " Janey *v. Alguire,* 2014 WL 12654910, 3 (N.D. Tex. July 30, 2014).  In *Janey*, the court looked to bankruptcy law to supplement existing federal equity receiver law and when the law was sparse.  *Id.* At *4.[1]

The case law regarding relief from stay of an order appointing receiver is sparse because these orders rarely grant the benefit of stay.  Here, the Receivership Order grants a "stay" by enjoining creditors from taking any action against the receivership.  Given the lack of case law concerning this unique circumstance, the Court should look to apply the Bankruptcy Code,

---

[1] Courts often apply sections of the Bankruptcy Code in the context of federal receiverships.  *See SEC v. Capital Consultants, LLC,* 397 F.2d 733, 745 (9th Cir. 2005) (considering equitable mootness doctrine from the bankruptcy context in receivership's interim distributions); *SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657, 665 (6th Cir. 2001) (considering "person aggrieved" doctrine from bankruptcy context in non-party litigant's standing to appeal receivership); *Unisys Fin. Corp. v. Resolution Trust Corp.*, 979 F.2d 609, 611 (7th Cir. 1992) (referring to principles of bankruptcy law to determine whether a creditor had an enforceable security interest in the property of a receivership estate established under banking laws); *Fidelity Bank, Nat. Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 883 (6th Cir. 1996) ("[G]iven that a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and order administration of estates for the benefit of creditors, we find it appropriate and helpful to refer to the rules . . . in bankruptcy proceedings.").

including sections 362 and 365. In applying the Bankruptcy Code, the Court should (i) order DCEH to make timely rental payments and (ii) grant relief from stay.

Section 365(d)(3) of the Bankruptcy Code provides that "The trustee [or a debtor-in-possession] shall timely perform all the obligations of the debtor … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected …." Furthermore, section 362 provides that the bankruptcy court may grant relief from the automatic stay "for cause, including lack of adequate protection of an interest of such party in property."

Applying these provisions of the Bankruptcy Code to the present case, Elliott would be entitled to relief from stay, because the receiver has not "timely performed" the obligations under the Lease. See, *In re Sweet N Sour 7th Ave Corp.*, 431 B.R. 63, 69 (Bankr. S.D.N.Y. 2010), ("The failure to pay post-petition rent may also serve as grounds for lifting the automatic stay. The landlord will also not be adequately protected if the Debtor falls behind in postpetition rent." (internal citation omitted)). If Elliott would be entitled to relief from the automatic stay in bankruptcy, it should be entitled to relief from the litigation stay under the Order Appointing Receiver.

B. DCEH is Obligated to Pay Rent Under Section 365(d)(3) of the Bankruptcy Code

Section 365(d0(3) provides in relevant part:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3)

Section 365(d)(3) requires debtor-tenants to provide landlords of nonresidential real property full and timely payment for services due under an unexpired lease during the post-

7

petition, pre-rejection period. *Id; see also In re Phar-Mor, Inc.*, 290 B.R. 319, 322 (Bankr. N.D. Ohio 2003). The purpose of section 365(d) is to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate." *Tully Constr. Co., Inc. v. Cannonsburg Envtl. Assocs., Ltd. (In re Cannonsburg Envtl. Assocs., Ltd.)*, 72 F.3d 1260, 1266 (6th Cir. 1996) (citations and quotations omitted). Section 365(d)(3) "relieve[s] the burden placed on nonresidential real property lessors (or 'landlords') during the period between [the date] a tenant's bankruptcy petition [is filed] and assumption or rejection of a lease." *Omni Partners, L.P. v Pudgie's Dev. of NY, Inc. (In re Pudgie's Dev. of NY, Inc.)*, 239 B.R. 688, 692 (S.D. N.Y. 1999) (quotations omitted).

Here the Lease Agreement (i) concerns nonresidential real property; (ii) has not expired; and (iii) has neither been assumed nor rejected by DCEH or the Receiver. Under section 365(d)(3) of the Bankruptcy Code, Elliott is entitled to receive all monthly and additional rent payments due after the Court entered the Receivership Order, and the Court should order immediate payment thereof. *See In re Revco D.S., Inc.*, 109 B.R 264, 271 (Bankr. N.D. Ohio 1989) (ordering the immediate payment of rent in light of obligation pursuant to section 365(d)(3)).

### III. CONCLUSION

For the foregoing reasons, Elliott respectfully requests that this Court grant relief from the stay provisions under the Receivership Order, enter an Order directing the Receiver to pay timely all rent due after the entry of the Receivership Order, and that this Court grant such other and further relief as it deems appropriate.

Respectfully submitted,

/s/ Myron N. Terlecky
Myron N. Terlecky (0018628)
John W. Kennedy (0042672)
Strip, Hoppers, Leithart,
McGrath & Terlecky Co., LPA
575 South Third St.
Columbus, OH  43215
Telephone (614) 228-6345
Facsimile (614) 228-6369
Email:  mnt@columbuslawyer.net
           jwk@columbuslawyer.net
Attorneys for 2323 Elliott Avenue, LLC

### CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2019, a copy of the foregoing MOTION OF 2323 ELLIOTT AVENUE, LLC FOR (I) LIMITED RELIEF FROM STAY PROVISIONS OF ORDER APPOINTING RECEIVER AND (II) FOR AN ORDER DIRECTING THE RECEIVER TO PAY RENT was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/Myron N. Terlecky
Myron N. Terlecky (0018628)