UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et. al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### RECEIVER'S REPORT REGARDING PAY STATUS OF EMPLOYEES

Pursuant to this Court's Order of March 15, 2019 [Dkt. No. 172], Mark E. Dottore, (the "**Receiver**") the duly appointed and acting Receiver of the Receivership Entities submits this Report concerning the pay status of employees:

**Payroll on the Date of the Receiver's Appointment.**

One week's accrued and unpaid payroll on January 18, 2019, the date the Receiver was appointed was $2.7 million, plus approximately 12% for tax liabilities that had accrued on that date. These pre-Receiver amounts were paid with the February 1, 2019 payroll.

**Nature and Extent of Current Unpaid Payroll**

Due to the sudden loss of Title IV funding for Argosy University, the Receiver was unable to make payroll for the Argosy University campuses, and the Excluded Campuses for the two-week period ending March 1, 2019 and scheduled to be paid March 8, 2019. The total amount of unpaid Argosy University payroll is

{00021055-1 }

$1,507,557.42; the amount of unpaid payroll for the Excluded Campuses is $983.707.03. *See* Exhibit A for breakdown by account number.

### Sources of Funding for the Unpaid Payroll

The Receiver has identified various sources of funding for the payrolls. They are as follows:

### Cash in Bank of America Former Bank Accounts

To begin with, the Receiver has located some cash accounts that were on deposit at Bank of America. Bank of America was the depository for Argosy University Group ("**Argosy**") and Dream Center Educational Holdings LLC ("**DCEH**"). Bank of America was holding scores of accounts with small balances. The Receiver moved these accounts to the Receivership accounts this week. They include Account #1191 labeled "AU/DCEH Operating" with $150,000.00; Account #5908 labeled "Argosy Perkins" with $339,155.12; Account #2762 labeled "AU Phoenix AZ State Grant" with $4,429.00; Account #4670 labeled AU AI CA State Grant with $175,947.88; an account labeled "AU Atlanta GA State Grant with $62,516.00; an account labeled Argosy State Grant with $198,083.52; an account labeled Argosy MN State Grant with $62,348.00; and an account labeled "Donations" with $194,273.79. The total of these accounts is $1,186,753.31.

These account balances, and others that might be applied, might have restrictions on their use. The Receiver is investigating to determine if he can apply the funds to the unpaid payroll balances. Also, as the Court is aware, the Receiver is holding $1.5 million upon the Court's Order, until it can determined whether it should be held in trust to be paid to students.

The total amount of cash which might be applied to the unpaid payroll is at least $2,686,753.31.

### Sales of Physical Property

The Receiver has retained Hilco Global to remove and sell personal property at the various campus locations and sell that property. Property liquidations will occur quickly, as landlords are demanding that the Receiver exit property in the shortest possible time. In addition, DCEH has its IT assets, which it will sell. While these assets are in DCEH, they comprise the collateral for undersecured secured lenders (see below), and if the secured lenders consent, the money could be used for these payrolls.

### Litigation

The Receiver is exploring the option of filing various lawsuits. Director and officer liability insurance is in effect, and recoveries that are insured by these policies may be a source of funding for payroll. In addition, there appear to be sizable insider transfers that could be recovered. Obviously it will take a significant amount of time to identify these causes of action, develop them to the point of filing, litigate and recover funds.

### The Department of Education

At the time of the Studio Transaction, the United States Department of Education ("**DOE**") was holding approximately $10.5 million which was the proceeds of letters of credit posted with the DOE. Although the DOE has previously refused requests to fund Argosy's closure with these funds, or any other funds, the

Receiver remains hopeful that the DOE will make concessions when it is in the interest of the United States to do so.

### The Candlewood Holdback Fund

There is a substantial fund of money that was placed in an escrow account at Morrison & Forester to pay the legal expenses of the Secured Lenders (as described below) who were preparing documentation of the January, 2019, Studio Transaction. If any of the money is left after all of the Secured Lenders' attorneys are compensated, the fund belongs to the universities. The original arrangement contained a number of terms and conditions, and contemplated a two-year time period for holding the escrow open. The secured lenders and the Receiver are in discussions to recover some of this fund, with the expectation that such a recovery could be in excess of $100,000. Studio also had such a fund, and it is not known whether the attorney fees exceeded the fund amount.

### Receiver's Plan to Pay Unpaid Payroll

The Receiver has requested that the payroll be analyzed by job description (*See*, Exhibit B). Each unpaid employee has been placed in one of four classifications: Student, Administrative, Facuty and Dean/Executive. The Receiver proposes to pay the students, first, in full, and the administrative personnel, second, in full. In this way, the most vulnerable will be paid with the first funds received, and those who likely earn more will be paid with the later funds.

The Receiver then proposes to pay the faculty, third, with a temporary limit established of $3,500 for each faculty member. Then finally to pay the Deans/Executives with the same temporary limit of $3,500. The balance due to each

employee will be paid pro rata. This is designed so that these employee groups will equitable share the burden imposed by the delay.

The Receiver submits that such a payment system is fair and equitable given the situation. This Court sits in equity, and this equitable arrangement is subject to the Court's approval.

**Lien Interests and Other Issues and Impediments**

The interests of lien holders and others who have an interest in money collected by the Receiver on behalf of the various Receivership Entities must be reviewed. Presently, there are two principal consensual secured creditors. U.S. Bank N.A. is agent for one group of consensual secured lenders (the "**Secured Lenders**"), but as a practical matter, Flagler Master Fund SPC, Ltd. ("**Flagler**") is the contact person for the primary secured lender.[1] Studio Enterprise Manager LLC ("**Studio**") also claims a lien in some of the Receivership Entities, but it is not owed any money.

The United States is also a substantial interest holder and by statute holds a lien interest in Argosy's assets, and in the assets of other Receivership Entities, by virtue of the federal priority statute, 31 U.S.C. § 3713. Argosy's closure has triggered student discharge indebtedness. In addition, the Receiver understands that students who did not receive their stipends have been applying for, and

---

[1] This group has been more properly described as, Flagler Master Fund SPC Ltd. as a lender under the Credit Agreement[1] and as a secured party and beneficiary of each of the First Lien Pledge and Security Agreement,[1] Second Lien Guaranty[1] and the Second Lien Pledge and Security Agreement,[1] and U.S. Bank, National Association, acting in its capacity as administrative agent and collateral agent under the Credit Agreement and as collateral agent under the First Lien Pledge and Security Agreement (in such capacities, the "DCEH Agent"), and as EDMC Agent under each of the Second Lien Guaranty and the Second Lien Pledge and Security Agreement.

receiving, loan discharges. The effect of the loan forgiveness, if it is occurring, is that the taxpayers are shouldering the burden of the failure to pay student stipends.

Which entities are subject to this lien, when the lien attaches, and to what that lien attaches, is yet to be discussed and decided. Also pressing is the priority of the federal government's lien, and whether it primes properly perfected, consensual liens of record, such as that of the Secured Lenders. The United States needs to be a party in these proceedings so that it will receive proper notice of matters affecting its interests, and the Court's orders determining payment and priorities will bind it.

There are other interest holders who may make appearances in regard to this issue.

Dated:                                    Respectfully submitted,

                                          */s/ Mary K. Whitmer*
                                          Mary K. Whitmer  (0018213)
                                          James W. Ehrman  (0011006)
                                          Robert M. Stefancin  (0047184)
                                          WHITMER & EHRMAN LLC
                                          2344 Canal Road, Suite 401
                                          Cleveland, Ohio  44113-2535
                                          Telephone: (216) 771-5056
                                          Telecopier: (216) 771-2450
                                          Email: mkw@WEadvocate.net
                                                    jwe@WEadvocate.net
                                                    rms@WEadvocate.net

                                          *Counsel for Mark E. Dottore, Receiver*

{00021055-1}                              6