UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) CASE NO. 1:19-cv-145 |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC *et al.*, | ) |
| Defendants. | ) |

**The Receiver's Response to Hemingway at Richmond, LLC's Motion to Charge All Accrued and Ongoing Post-Receivership Rent as a Cost to Plaintif [*Sic*] and 3601 Sunflower LLC's Motion to Charge All Accrued and Ongoing Post-Receivership Rent as a Cost to Plaintiff**
**[Docs. 139 & 189]**

Pursuant to this Court's March 14th Order, Mark Dottore, Receiver for the Receivership Entities (the "Receiver"), submits his response to Hemingway at Richmond, LLC's ("Hemingway") Motion to Charge All Accrued and Ongoing Post-Receivership Rent as a Cost to Plaintif [*sic*] (Doc. 139) and 3601 Sunflower LLC's ("Sunflower") Motion to Charge All Accrued and Ongoing Post-Receivership Rent as a Cost to Plaintiff (Doc. 189).

**I.      INTRODUCTION**

Both Hemingway and Sunflower have filed almost identical motions (*compare* Doc. 139, *with* Doc. 189), each of which asks this Court to issue an "Order charging accrued post-receivership rent as a cost to Plaintiff." Hemingway Mot. to Charge All Accrued and Ongoing Post-Receivership Rent as a Cost to Plaintif [*sic*] at 1 (Doc. 139); Sunflower Mot. to Charge All Accrued and Ongoing Post-Receivership Rent as a Cost to Plaintiff at 1 (Doc. 189). To be sure, these are creative filings that seek to impose

{01299606-5}

Receivership Estate campus lease obligations upon the Plaintiff, Digital Media Solutions, LLC ("DMS"). But the motions lack any legal authority, and the Receiver contends that this Court would be committing reversible error by attempting to charge receivership rent as a cost to DMS. *See Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 375 (1908).

## II. FACTUAL BACKGROUND

### A. The Receiver is Appointed at DMS' Request.

In mid-January, DMS filed suit against Defendants Dream Center Education Holdings, LLC ("DCEH"), South University of Ohio, LLC, and Argosy Education Group, LLC because they had failed to pay over $250,000 that was due and owing to DMS. *See* Verified Compl. (Doc. 1). Although both Hemingway and Sunflower complain bitterly of the alleged "coordinated effort" to orchestrate the receivership, they have not disputed (nor has anyone) that: (1) DMS is owed over $250,000; (2) the Defendants have not satisfied that claim; and, (3) this Court has subject-matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332. Long ago, the Supreme Court held, in similar circumstances, that there is nothing problematic about such a scenario. *See In re Reisenberg*, 208 U.S. 90, 107-108 (1908).

DMS then filed an Emergency Motion to have a receiver appointed. (Doc. 3). It explained that DCEH and its affiliates were on the precipice of numerous creditor lawsuits that would likely eviscerate the going concern value of those entities to the detriment of all of their creditors, including DMS. Worse, DCEH and its affiliates, which operated universities, would likely be forced to close before completing teach-outs or having sufficient time to transfer students to new campuses. This result would have been devastating for the 10,000 or so students at Argosy University.

{01299606-5}

Accordingly, this Court lawfully exercised its discretion[1] to appoint the Receiver. Receivership Order (Doc. 8).

### B. The Receiver Obtains Stays of Eviction Actions.

Soon after he was appointed, the Receiver began obtaining stays of various eviction actions around the country, including a stay of Hemingway's eviction complaint. Initially, this was done for two reasons: (1) to allow the Receiver time to understand the entities he had been appointed to manage and whether/how he could manage them; and, (2) to afford the universities time to complete teach-outs.

Everything changed after the United States Department of Education's February 27, 2019 letter, which cut off Title IV funding for Argosy University. As the Court knows, without Title IV funding from the government, there was no manageable way for the Receiver to continue operating Argosy. Thus, the Receiver shifted his focus to (1) attempting to transfer or graduate as many students as he could; (2) completing teach-outs; and (3) providing an orderly wind down of Argosy.

### C. The March 11 Show Cause Hearing.

A week or so after the February 27 letter was sent, this Court issued a show cause order. The Court ordered that the Receiver and the original parties to the action, including DMS, "appear and show cause why the receivership order entered on January 18, 2019 (ECF Doc. 8) should not be vacated forthwith." Order to Show Cause at 1 (Doc. 111). The Court expressed concern "that the current receivership is doing more harm than good or that circumstances have changed to the degree that maintaining the receivership can no longer be justified." *Id.* at 4.

---

[1] The appointment of a receiver "is within the sound discretion of the District Judge." *Guy v. Citizens Fid. Bank & Tr. Co.*, 429 F.2d 828, 834 (6th Cir. 1970).

{01299606-5}

At the hearing, the Receiver, Studio Enterprise Manager, LLC ("Studio"), and Dream Center South University, LLC ("South University") explained to the Court why the receivership needed to be maintained. Both South University and the Art Institute use a Shared IT Facility in Pittsburgh, which is operated by the Receiver under the auspices of DCEH. Payroll, email, program files, and various software, among many other things, are all run out of the facility. Studio and South University explained that if the Receiver were removed, no one could run the facility and it would be likely that both South University and the Art Institute would quickly fail. That would put around 15,000 additional students out in the cold.

What is more, the Receiver explained that although he had shut down Argosy University, he was still operating four universities:

1. South University of Ohio ("South University Cleveland");

2. South University of Michigan ("South University Novi");

3. Art Institute of Las Vegas ("Ai Las Vegas"); and

4. Western State College of Law ("WSCL").

At South University Cleveland and South University Novi, the Receiver is working with South University to complete teach-outs. At Ai Las Vegas, the Receiver is negotiating with a potential purchaser who will continue to operate Ai Las Vegas. At WSCL, the Court ordered the Receiver to continue funding the school through the end of the semester. *See* March 19, 2019 Minute of Proceedings & Order (Doc. 190).

Thus, at the conclusion of the March 11 hearing, the Court refused to vacate the receivership and "ordered that the Receivership would remain in place for no more than six months until the IT platform issue could be resolved to ensure that the students using the IT platform would be able to continue their educations." March 13, 2019

{01299606-5}

Minutes of Proceedings & Order at 4 (Doc. 162). The Court necessarily held that the receivership was doing more good than harm. Having said that, the Court was explicit that the "Receivership entities must either pay rent or surrender the properties." *Id*. at 2.

### D. The Receiver Is Complying with the Court's Order.

At each of the locations where the Receiver is still operating universities, he has ensured that the landlord is being paid the per diem lease amount per day. For example, the Receiver and South University have paid Hemingway—the landlord for South University Cleveland[2]—through the end of March. Thus, the Receiver, contrary to Hemingway's motion, is making payments on the lease for as long as the teach-out is still being conducted at South University Cleveland or until he finds a better location to conduct the teach-out.

Despite this fact, Hemingway has not withdrawn its so-called Motion to Charge All Accrued and Ongoing Post-Receivership Rent as a Cost to Plaintif [*sic*]. But this motion—like the nearly identical one filed by Sunflower—is completely bereft of any legal authority that would allow this Court to make such a charge. The Receiver respectfully suggests that the Court deny Hemingway's and Sunflower's motions.

### III. ARGUMENT

Put simply, if the "receivership is proper,[3] the general rule is that receivership fees and expenses 'are a charge upon the property administered.'" *Netsphere, Inc. v.*

---

[2] Sunflower is not the landlord for any campuses the Receiver is currently operating. Instead, the Receiver entered an agreed order with Sunflower and voluntarily surrendered the premises to Sunflower. *See* Sunflower Agreed Order (Doc. 147).

[3] This Court certainly held this receivership proper when it "ordered that the Receivership would remain in place for no more than six months until the IT platform issue could be resolved to ensure that the students using the IT platform would be able to continue their educations." March 13, 2019 Minutes of Proceedings & Order at 4 (Doc. 162).

{01299606-5}

5

*Baron*, 703 F.3d 296, 311 (5th Cir. 2012) (quoting *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994)). Contrary to Hemingway's and Sunflower's supposition, the U.S. Supreme Court has squarely held that it did "not think that the mere insufficiency of the property or fund to meet the expenses of a receivership entitled the receiver to hol[d] the plaintiff in the suit personally liable, if all that could be said was that he instituted the suit and moved for the appointment of the receiver to take charge of the property and maintain and operate it pending the suit." *Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 375 (1908). *Atlantic Trust* is dispositive of Hemingway's and Sunflower's motions.

As too here, Hemingway's and Sunflower's only bases for attempting to charge DMS is the mere insufficiency of the property or funds to meet the expenses of the receivership and that DMS is the party who requested a receiver.[4] But the Supreme Court emphatically held in *Atlantic Trust*, in an opinion by Justice Brandeis, that those bases are entirely insufficient for charging receivership costs to the plaintiff. *Accord Richey v. Brett*, 148 N.E. 92, 94 (Ohio 1925) ("[W]here the court appointing a receiver takes no precautions to obtain security from the parties who apply for the receiver, and, where no special circumstances are shown making it right and equitable to hold the persons responsible who have applied for the appointment of a receiver, persons dealing with the receiver can look to the corpus of the estate alone.").

Hemingway's and Sunflower's reliance on an out-of-circuit decision, *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433 (8th Cir. 1986), does not turn the tide. *Little Earth* involved a receiver who was appointed to

---

[4] The Receiver notes that we are only two months into this receivership. No claims process has been set up and the Receiver is still untangling the finances of the Receivership Entities. It is entirely premature to declare that the receivership, when it actually begins paying claims, will be unable to meet its expenses.

{01299606-5}

rehabilitate a multi-family rental complex. Unlike the instant matter, when the district court in *Little Earth* appointed the receiver, it "*require[d]* HUD to fund all repair and rehabilitation." *Id.* at 1438 (emphasis in original). HUD thereafter funded over $3 million for repairs and rehabilitation over a two-year period of time. *Id.* at 1441. Hemingway and Sunflower omit both these key distinguishing facts from their motions.

Here, the Receivership Order does not require DMS to fund any costs of the receivership. In fact, Paragraph 6 of the Amended Receivership Order provides

> Subject to paragraphs 13 and 14, the Receiver may obtain unsecured credit and incur unsecured debt in the ordinary course of business and said unsecured debt shall be a charge upon all property of whatsoever kind or nature in the Receivership Estate and the lien shall extend to all proceeds of or arising from the Property or any other property in the Receivership Estate, including all after-acquired property which but for the date of the acquisition would have been Property in the Receivership Estate, second in priority to the Receiver's lien for fees and expenses.

Amended Receivership Order ¶ 6 (Doc. 150). Neither Hemingway nor Sunflower objected to the Receiver's Motion to Amend the Order Appointing Receiver (Doc. 72). For these reasons, *Little Earth* actually hurts—not helps—Hemingway and Sunflower. *Little Earth* holds that the receivership order became the law of the case because HUD failed to either timely appeal or object to the receivership order. *See Little Earth*, 807 F.2d at 1441-42.

The same is true here. Both the original and Amended Receivership Orders addressed the Receiver's ability to incur unsecured debt in the ordinary course of business. *See* Original Receiver Order ¶ 6 (Doc. 8); Amended Receivership Order ¶ 6 (Doc. 150). And both state that this unsecured debt—including post-receivership accrued rent—operates as a charge against the receivership property, which charge takes

{01299606-5}

7

priority over pre-receivership unsecured debts. Thus, like in *Little Earth*, this Court should simply hold that the Receivership Order controls. What is more, this result is fair and equitable—not charging accrued rent against DMS.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Hemingway's and Sunflower's motions.

Dated: March 25, 2019    Respectfully submitted,

/s/ Nicholas R. Oleski
Robert T. Glickman (0059579)
Charles A. Nemer (0009261)
Robert R. Kracht (0025574)
Hugh D. Berkson (0063997)
Nicholas R. Oleski (0095808)
McCarthy, Lebit, Crystal
  & Liffman Co., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
(216) 696-1422 – Telephone
(216) 696-1210 – Facsimile
rtg@mccarthylebit.com
can@mccarthylebit.com
rrk@mccarthylebit.com
hdb@mccarthylebit.com
nro@mccarthylebit.com

*Special Counsel for the Receiver*

## **CERTIFICATE OF SERVICE**

The foregoing was electronically filed this 25th day of March, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Nicholas R. Oleski
Nicholas R. Oleski (0095808)
