UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | MAGISTRATE JUDGE THOMAS PARKER |
| v. | ) | |
| | ) | **PLAINTIFF'S COMBINED OPPOSITION** |
| SOUTH UNIVERSITY OF OHIO, LLC | ) | **TO MOTIONS TO CHARGE ALL** |
| *et al.*, | ) | **ACCRUED AND ONGOING POST-** |
| | ) | **RECEIVERSHIP RENT TO PLAINTIFF** |
| Defendants. | ) | **[DOCS. 139 & 189]** |

## I.    INTRODUCTION

Two landlords of campuses operated by Receivership Entities move this Court for an Order charging accrued post-receivership rent as a cost to Plaintiff Digital Media Solutions, LLC ("DMS"). *See* Hemingway at Richmond, LLC's ("Hemingway") Mot. to Charge at 1 [Doc. 139]; 3601 Sunflower LLC's ("Sunflower") Mot. to Charge at 1 [Doc. 189]. These motions are devoid of any binding or on-point authority for this remarkable proposition and neither Hemingway nor Sunflower has offered any rationale to justify an exception to the general rule that receivership fees and expenses are a charge upon the property administered in the receivership estate – and not to the Plaintiff. In fact, binding Supreme Court precedent holds that a district court would exceed its authority in entering such an order.

What is more, neither Hemingway nor Sunflower (collectively "Landlords") reckon their arguments with Paragraph 6 of this Court's Receivership Order, which specifically permitted the Receiver to incur unsecured debt in the ordinary course of business and that such unsecured debt

"shall be a lien shall be a charge upon all property of whatsoever kind or nature in the Receivership Estate." Receivership Order ¶ 6 [Doc. 8].

As this Court has ruled that the Receivership is proper and must remain in place for the time being, as well as specifically ordered a mechanism by which any unsecured debt like the type at issue here would be handled, it is not a cost that can be charged to DMS. Therefore, DMS moves this Court to deny the Landlords' Motions to Charge All Accrued and On-going Rents to DMS [Docs. 139, 189] in their entirety.

## II. STATEMENT OF FACTS

Like both Landlords, DMS is owed a significant sum because Defendant Dream Center Education Holdings, LLC ("DCEH") and its affiliates failed to make payments between the middle to end of 2018. Verified Compl. ¶ 1, ¶ 17 [Doc. 1]. Specifically, DMS provided valuable lead generation services to DCEH, South University of Ohio, LLC ("SUO"), and Argosy University ("Argosy") (collectively "Universities"), among others. *Id.* at ¶¶ 14-15. Understanding that the non-payment of the sums due to DMS could not be handled in a vacuum, DMS brought this action to ensure an orderly wind down of those entities for its own benefit, the benefit of their creditors, and all other interested parties – including the students of the Universities who were mid-semester.

Given the unique issues posed by this matter, in conjunction with its Complaint, DMS filed an Emergency Motion for the Appointment of a Receiver. [Doc. 3]. DMS believed (and still believes) that: (1) a receivership would allow an orderly wind-up; (2) provide the best chance for it to be paid; and (3) that a receivership would be in furtherance of the public good. *See Shapiro v. Wilgus*, 287 U.S. 348, 356 (1932). DMS principally argued in its motion "that a bankruptcy filing would render the Universities ineligible to receive the principal source of their

2

{803566; 1425-0001}

revenues: federal grants and student loans provided under the Higher Education Act of 1965 (the 'Act'), 20 U.S.C. §1001 *et seq*." [Doc. 3, at 2]. DMS understood that absent that funding, DCEH and its affiliates would shutter almost immediately, leaving the many creditors to fight over the scraps of the entities.

After a hearing, this Court granted the Motion to Appoint Receiver on January 18, 2019. Receivership Order [Doc. 8].

After a significant number of filings in the case, the Court scheduled a Show Cause Hearing on March 11, 2019. [Doc. 111]. The focus of that hearing was to be whether the Receivership should be vacated or be permitted to move forward. In conjunction with this, the Court noted the several motions it had received from landlords, including Sunflower's Motion to Vacate the Receivership and Hemingway's Motion for Limited Relief from Stay, all of which would be considered in determining whether the Receivership would move forward.

At the March 11, 2019 Hearing, both Dream Center South University, LLC ("South") and Studio Enterprise Manager, LLC ("Studio") (collectively "Continuing Schools"), among others, urged this Court to maintain the receivership because the Receiver maintained certain IT functions that were imperative to the ongoing operation of the Continuing Schools. Absent the ability for this shared IT service to move forward, which currently has to be done under the umbrella of DCEH, this would be a death knoll to the Continuing Schools. Specifically, the Continuing Schools would be unable to operate, meaning all of their students (estimated to be in the range of 15,000) would immediately lose access to their education.

In response, the Court ordered that the Receivership to remain for "no more than six months until the IT platform issue could be resolved." March 13, 2019 Minutes of Proceedings

& Order at 4 [Doc. 162]. This action ensured that there would be no interruption to the students of the Continuing Schools.

Further, as demonstrated at the March 18, 2019 Hearing, the Court has taken interest in the welfare of the students enrolled at the imperiled Western State College of Law, and ordered the Receiver to fund the school through May 29, 2019, thereby allowing eligible students to graduate or transfer to another school and to determine if a new owner can be located. [Doc. 190].

In sum, the Court initially found – and has subsequently reaffirmed – that the Receivership is proper and must continue for the time-being. Though the Landlords and others may be unhappy with how the receivership has proceeded thus far, given that the Court has determined that the receivership is necessary, it would be unjust to essentially sanction DMS and/or to make it a guarantor of any receivership costs by making it personally responsible for costs of the receivership simply because it was the party that sought the receivership. Rather, just like the many other parties in this case, DMS simply wants to recoup the amounts it is owed from the Universities. Therefore, DMS moves this Court to deny the Landlords' Motions to Charge All Accrued and On-going Rents to DMS [Docs. 139, 189] in their entirety.

### III. LAW AND ARGUMENT

**A. Under the Common Law, Only the Receivership Estate – Not the Plaintiff – Can Fund the Receivership.**

When a receivership is proper, the general rule is that receivership fees and expenses "are a charge upon the property administered." *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012), *quoting Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). Conversely, only if the receivership is improper or if "special circumstances" are present may a district court impose the costs of the receivership upon the plaintiff. *See Atlantic Trust Co. v. Chapman*, 208 U.S. 360,

375, 208 U.S. 360, 411 (1908); *accord Dayton Lodge, L.L.C. v. Hoffman*, 6 N.E.3d 638, 647 (Ohio Ct. App. 2d Dist. 2013) (holding trial court abused its discretion by ordering the plaintiff "to pay the receivership estate deficit"). Thus, contrary to the Landlord's contentions, there is not wide discretion as to who should bear the costs of a proper receivership:

> Neither the plaintiff in the case nor the party moving for a receiver is as a general rule personally liable for the expenses of the receivership and/or the receiver's fees and the fees of his counsel. . . . . The expenses of the receivership and the receiver's fees and those of his counsel in ordinary cases must come out of the property or funds placed in the custody of the receiver . . . .

2 Ralph E. Clark, *A Treatise on the Law and Practice of Receivers* § 637.1(a) at pp. 1055-56 (3d Ed. 1959), *citing Atlantic Trust*, 208 U.S. at 375.

The *Atlantic* Trust case is instructive. Therein, the Supreme Court of the United States ("Supreme Court") considered whether the trial court erred in holding the plaintiff personally responsible for the expenses incurred by the receiver, who was appointed on the plaintiff's motion. 208 U.S. at 364. *Atlantic Trust* was a foreclosure case in which the plaintiff asked that a receiver be appointed to take charge of the mortgaged property and operate it pending a foreclosure sale. *Id.* at 365. The trial court appointed a receiver, and, ultimately, the property was sold at a foreclosure sale. *Id.* at 367. Unfortunately, the sale proceeds were insufficient to cover the receiver's expenses. *Id.* The receiver therefore asked that the trial court tax the costs of the receivership to the plaintiff. *Id.* at 368. Both the trial court and court of appeals agreed with the receiver and approved the request. But the Supreme Court held "that the court of appeals erred in holding that the [plaintiff] was liable for the deficiency found to exist." *Id.* at 369.

The Supreme Court explained that "[n]o such liability could arise from the simple fact that it was on plaintiff's motion that a receiver was appointed to take charge of the property pending the litigation." *Id.* at 370; *id.* at 375 ("We do not think that the mere insufficiency of the

5

property or fund to meet the expenses of a receivership entitled the receiver to hol[d] the plaintiff in the suit personally liable, if all that could be said was that he instituted the suit and moved for the appointment of the receiver to take charge of the property and maintain and operate it pending the suit."). After all, the Supreme Court elaborated, "[t]he contracts [the receiver] makes or the engagements into which he enters, from time to time, under the order of the court, are, in a substantial sense, the contracts and engagements of the court. The liabilities which he incurs are liabilities chargeable upon the property under the control and in the possession of the court, and not liabilities of the parties." *Id.* Thus, the Supreme Court enunciated a clear rule:

> When neither the order appointing a receiver nor the order authorizing him to borrow money and issue certificates were conditioned upon the plaintiff's (in a suit for foreclosure and sale) being liable for the expenses of the receivership, and when no special circumstances appear which, upon equitable principles, would authorize the court to fix liability upon the plaintiff for such expenses, the general rule should be applied which makes such expenses a charge upon the property or fund under the control of the court, without any personal liability therefor upon the part of the plaintiff, who invoked the jurisdiction of the court. The mere inadequacy of the property or fund to meet such expenses constitutes in itself no reason why liability should be fastened upon the plaintiff, who has been guilty of no irregularity …

*Id.* at 375-76; *In re Nat'l Carbon Co.*, 241 F. 330, 334 (6th Cir. 1917) ("Parties responsible, even for a receivership, are not ordinarily personally liable for the expenses by reason merely of the inadequacy of the fund to meet the same."); *accord Richey v. Brett*, 148 N.E. 92, 94, 112 Ohio St. 582, 588-589 (Ohio 1925)[1] ("[W]here the court appointing a receiver takes no precautions to obtain security from the parties who apply for the receiver, and, where no special circumstances are shown making it right and equitable to hold the persons responsible who have applied for the

---

[1] Both Hemingway and Sunflower cite to a supposedly "analogous" state-court case. In the absence of a wealth of federal case law on the subject, DMS will address relevant state court authority. It should be noted, however, that *Richey* and its progeny rely heavily on the U.S. Supreme Court's decision in *Atlantic Trust*. *Richey*, 148 N.E. at 94. As such, these analogous state-court decisions operate as strong persuasive authority.

6

appointment of a receiver, persons dealing with the receiver can look to the corpus of the estate alone.").

Accordingly, a district court may only hold a plaintiff personally liable for the costs of the receivership if "the appointment of the receiver was irregular or inequitable or the court which appointed him was without authority so to do." *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1002 (8th Cir. 1939); *see also Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1444 (8th Cir. 1986) (McMillian, J., dissenting) ("[A] court exceeds its equitable authority by ordering a mortgagee to pay receivership expenses in excess of the property's value merely because the mortgagee requests appointment of a receiver where no special circumstances[2] are present that make such an imposition of costs equitable."). As demonstrated below, no such special circumstances exist here.

### 1. The Receivership Was Not Improper.

This very Court has declined to vacate the receivership and has ordered it to continue for the next six months. In this regard, earlier this month, the Court scheduled a show cause hearing on whether the receivership should be vacated. March 6, 2019 Order to Show Cause. [Doc. 111]. "The court's concern [was] that the current receivership [was] doing more harm than good or that circumstances have changed to the degree that maintaining the receivership can no longer be justified." *Id.* at 4. Through the course of the hearing (and then through the course of a subsequent hearing on March 18, 2019), it became clear that the receivership was needed to protect the students affected by the failing schools. Accordingly, both the Continuing Schools

---

[2] Ohio's courts of appeal have explained that "special circumstances" include: (1) when there has been an irregular or unauthorized appointment of a receiver; (2) when the plaintiff has given a bond or other contract to pay the expenses and fees of the receivership as a condition of the receiver's appointment; (3) where a party has received benefits from the receivership in excess of the amount required to be paid; and (4) where an action has unjustly been maintained without right. *See Dayton Lodge,* 6 N.E.3d at 646. None of these circumstances are present here.

7

{803566; 1425-0001}

contended that 15,000 students were in immediate peril absent the Receiver's ability to continue to run the IT platform necessary to operate their campuses.

As a result, following the March 11th Hearing, this "Court ordered that the Receivership would remain in place for no more than six months until the IT platform issue could be resolved to ensure that the students using the IT platform would be able to continue their educations." March 13, 2019 Minutes of Proceedings & Order at 4 [Doc. 162]. The welfare of the students enrolled at Western State College of Law was a focus of both the March 11 and March 18 hearings, and following the March 18 hearing, the Court entered an order requiring the Receiver to fund the Western State College of Law through the end of May 2019, allowing eligible students to graduate or ensure their current credits remained intact. [Doc 190]. In sum, this Court necessarily found that the receivership has been doing more good than harm and that the receivership is still justified.[3] Accordingly, there is no basis upon which to hold DMS personally liable for any receivership costs or expenses.

### 2. The Landlords' Sole Authority Is Easily Distinguishable.

The Landlords' reliance on the United States Court of Appeals for the Eighth Circuit's 2-1 decision in *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433 (8th Cir. 1986), to support the argument that costs could be properly attributed to DMS is misplaced. There, a district court appointed a receiver over a distressed multi-family rental project ("Little Earth") at the request of the United States Department of Housing and

---

[3] Of note also is that Sunflower withdrew its motion to vacate the receivership. *See* Agreed Order at 3 [Doc. 151]. The Court subsequently denied the motion "as moot." March 13, 2019 Order. Therefore, Sunflower has forfeited any argument that the receivership was improper. In that same vein, as Hemingway had joined in Sunflower's Motion to Vacate the Receivership, this was also denied as moot, as was Hemingway's Motion for Limited Relief from Stay. *See* March 13, 2019 and March 14, 2019 Orders.

8

{803566; 1425-0001}

Urban Development ("HUD").[4] *Id.* at 1434. Before the district court issued its receivership order, however, "the question of whether HUD was authorized and would be required to fund Little Earth's rehabilitation was thoroughly discussed in memoranda filed with the court and correspondence between the parties. In comments filed with the court regarding the terms and conditions of the receivership, HUD asserted it was authorized to fund repairs necessary to protect the health and safety of Little Earth's tenants. [The receiver] stated that it required funds for Little Earth's rehabilitation." *Id.* 1435. In November 1983, the district court entered its receivership order, which in relevant part required HUD to fund all repair and rehabilitation.

The receiver then began rehabilitating Little Earth. For two years, "HUD voluntarily advanced funds for repair and rehabilitation and added these advances to the debt attributable to Little Earth." *Id.* at 1441 (noting that HUD voluntarily advanced over $3 million for rehabilitation costs). Eventually, as the costs of the repair and rehabilitation grew ever larger, HUD objected to advancing funds to the receiver. The district court then ordered HUD to advance the funds, and HUD appealed.

Strangely, the principal focus of the appeal was not whether the district court could order HUD to pay receivership expenses. Instead, the principal issue before the Eighth Circuit was whether HUD could collaterally attack the November 1983 receivership order:

> The rationale for employing the law of the case doctrine applies here. [The receiver] has completed a major part of Little Earth's rehabilitation, relying on the finality of the district court's November 8 order. Almost two years elapsed between the issuance of that order and this appeal. During that time, HUD paid over $3 million in Little Earth rehabilitation costs. After receiving displeasing clarifications of the November 8 order, HUD stopped funding Little Earth's rehabilitation and now asks this court to belatedly consider the propriety of issues resolved in the November 8

---

[4] HUD insured Little Earth's $4.5 million loan. After the loan went into default, the insured lender assigned its mortgage to HUD. *Id.* at 1434-35.

9

> order. To reconsider these issues would violate the fundamental purposes of the law of the case doctrine.

*Id.* at 1441. Thus, the Eighth Circuit's holding in *Little Earth* is that the law of the case doctrine applied and that HUD could not collaterally attack the November 1983 receivership order.

The Landlords champion *Little Earth* for, at best, its alternate holding or, at worst, its dicta. After holding that the law of the case doctrine disposed of HUD's arguments, the Eighth Circuit explained "[n]otwithstanding our view that the substantive issues raised in this appeal were decided in the district court's November 8 order and now stand as the law of the case, we are satisfied that the district court's order could also be affirmed on . . .the following ground[]: the district court's equitable power enabled it to order HUD to fund Little Earth's rehabilitation . . . ." *Id.* at 1442.

But *Little Earth* is vastly different from this case:

- Unlike here, before the district court appointed the receiver, HUD and the receiver engaged in substantial briefing and argument regarding whether HUD would be responsible for advancing costs of the rehabilitation to the receiver;

- Unlike here, the receivership order in *Little Earth* **required** HUD to pay some of the receivership expenses;

- Unlike here, HUD actually did pay some – over $3 million – of the receivership expenses; and

- Unlike here, HUD reneged on its promise to pay receivership expenses.

Put differently, in *Little Earth* – unlike here – special circumstances were present (namely, that HUD promised to pay the receiver as a condition of the appointment or continuance of the

10

receiver, and had in fact made many payments over the years) that made the imposition of receivership expenses on the requesting party equitable. The same is not true here.

Instead, the opposite is. The imposition of receivership expenses on DMS would be patently *in*equitable. Put simply, this Court would abuse its discretion and exceed its equitable authority by ordering DMS to pay receivership expenses where no "special circumstances" are present that make such an imposition of costs equitable. *See Atlantic Trust*, 208 U.S. at 375; *accord Dayton Lodge*, 6 N.E.3d at 647 (holding trial court abused its discretion by ordering the plaintiff "to pay the receivership estate deficit"). As demonstrated, there is no basis under the support cited by the Landlords to hold DMS personally liable for any receivership costs or expenses.

**B.      Hemingway's and Sunflower's Motions, Which Request that this Court Impose Their Leases Obligations on DMS, Are Absurd.**

In essence, the Landlords seek an Order from this Court that DMS is obligated under their leases. Unsurprisingly, they cite no authority for this extraordinary proposition. Instead, they claim without further explanation that "[i]t is only fair that DMS be held liable for any deficiency in past and ongoing receivership costs, including rent." Hemingway Mot. to Charge at 5 [Doc. 139]; *see also* Sunflower Mot. to Charge at 5 [Doc. 189]. DMS does not understand how, in any sense of the term, that to be "fair."

To be clear, DMS had, and has, no decision making authority with the Receiver regarding rent payments. That is solely within the scope of the receivership. Like in *Atlantic Trust*:

> No hint or warning was given, in the progress of the cause, that the [plaintiff] was to be liable in the event that the property or fund under the control of the court proved insufficient to meet the expenses of the receivership. The [plaintiff], it is true, invoked the jurisdiction of the court by bringing this suit for foreclosure and sale and making a motion for the appointment of a receiver to hold and manage the property *pendente lite*. That, surely, the [plaintiff] had the right to do, but it did not thereby make

11

> itself ultimately liable for money borrowed and receiver's certificates issued by order of the court. The one person who was in a position to inform the court from time to time of the condition and probable value of the property, and of what was or what seemed to be necessary in order to preserve it for the parties interested in it, was its officer and representative, the receiver. It was at his instance and because of his report of the condition and needs of the property, that money was borrowed and certificates issued in order that expenses incurred in the administration of the property might be met. To hold the [plaintiff] liable for indebtedness thus created would be most inequitable, and would not, we think, be in accord with sound principle.

*Atlantic Trust*, 208 U.S. at 372-73.

This long-settled precedent easily puts to rest the Landlords' motions. It was the Receiver – not DMS – who apparently declined to pay post-receivership rent to the Landlords. And it was the Receiver – not DMS – "who was in a position to inform the court from time to time of the condition and probable value of the property, and of what was or what seemed to be necessary in order to preserve it for the parties interested in it." *Id.* That is why, exactly like in *Atlantic Trust*, charging any receivership costs to DMS would be inequitable.

What is more, DMS is not aware of any authority – and importantly neither of the Landlords cites any – that would allow a creditor in a receivership to ask the court to tax its debt to the plaintiff. If this Court were to allow the Landlords to do this, it would turn DMS into a guarantor of the Receiver and would permit the Landlords to become super-priority creditors, which would be completely inequitable. Additionally, it would be essentially writing DMS into a contract that it is not a party to as the basis for all of the Landlords' claims are broken lease agreements. Rather, DMS is in the exact same position as the Landlords – it is owed money from the Universities and is looking to recoup those funds. There is no contract or agreement between DMS and the Landlords that would create liability. Similarly, there is no basis to hold DMS personally responsible to the Landlords – or any other creditor in this case.

**C.     The Receivership Order Allows the Receiver to Incur Unsecured Debt.**

Paragraph 6 of the Receivership Order provides:

> The Receiver may obtain unsecured credit and ***incur unsecured debt*** in the ordinary course of business of this title and said ***unsecured debt shall be a lien*** shall be a charge upon all property of whatsoever kind or nature in the Receivership Estate and the lien shall extend to all proceeds of or arising from the Receivership Property or any other property in the Receivership Estate, including all after-acquired property which but for the date of the acquisition would have been Receivership Property in the Receivership Estate, ***second in priority*** to the Receiver's lien for fees and expenses set forth in Paragraph 25 of this Order.

Receivership Order ¶ 6 [Doc. 8] (***emphasis*** added).  This paragraph thus allowes the Receiver to incur unsecured debt, but, with the caveat, that the creditor would have priority lien on "all property of whatsoever kind or nature in the Receivership Estate." *Id.*

The Landlords (and any other landlords as well to be frank) thus have claims in the receivership for any post-receivership accrued rent, which claims will take priority over pre-receivership unsecured debts. Again, not only is this result is far more equitable than charging DMS for the accrued rent, but this is the arrangement that has previously been approved by this Court.

## IV.     <u>CONCLUSION</u>

As has been made clear during these proceedings, absent DMS' efforts in initiating this case thousands of students, in multiple different university systems, would have lost the benefit of the education they completed to date. While the fact that any of the parties find themselves in the present situation is unfortunate, the Landlords' efforts in seeking to shift the sums they are owed to DMS – an entity they have no relationship with – based solely on the fact that DMS initiated the present action is unfounded. As the Court has ruled on two occasions that the receivership is warranted, such repercussions against DMS are not only unsupported in law, but

13

{803566; 1425-0001}

unsupported in fact. For the foregoing reasons, DMS moves this Court to deny the Landlords' Motions to Charge All Accrued and On-going Rents to DMS [Docs. 139, 189] in their entirety.

                         Respectfully submitted,

                         /s/ *Audrey K. Bentz*
                         STEVEN G. JANIK (0021934)
                         AUDREY K. BENTZ (0081361)
                         JANIK L.L.P.
                         9200 South Hills Blvd., Suite 300
                         Cleveland, Ohio 44147
                         Phone: (440) 838-7600 * Fax: (440) 838-7601
                         Email: Steven.Janik@janiklaw.com
                                 Audrey.Bentz@janiklaw.com

                         *Counsel for Plaintiff Digital Media Solutions, LLC*

{803566; 1425-0001}