**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-CV-00145 |
| Plaintiff, | ) | |
| v. | ) | JUDGE DAN AARON POLSTER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | ) | |
| Defendants. | ) | MAGISTRATE JUDGE THOMAS M. PARKER |

**STUDIO ENTERPRISE MANAGER, LLC'S DETAILED PLAN FOR THE EXTRICATION OF THE ONGOING CAMPUSES OF SOUTH UNIVERSITY AND THE ARTS INSTITUTES ENTITIES FROM THE DREAM CENTER HOLDINGS, LLC'S SHARED IT PLATFORM**

Studio Enterprise Manager, LLC ("Studio") hereby files the attached detailed plan (the "Separation Plan") for the extrication of ongoing campuses of South University and the Arts Institutes from the Dream Center Education Holdings, LLC's ("DCEH") shared IT platform (the "Shared IT") within six months from the date (the "Separation Deadline") of the Court's Minutes of Proceedings and Order, Docket No. 162, entered on March 13, 2019.

Pursuant to the terms of the Court-approved settlement agreement (as amended), Docket No. 126 (the "Settlement Agreement") between Mark E. Dottore, the receiver (the "Receiver") and Studio, Studio will continue to perform its required obligations under the Transition Services and License Agreement with DCEH (the "TSA"), the Master Services Agreements (each, a "MSA" and together the "MSAs") with each of Dream Center South University, LLC (collectively with all of its subsidiaries, "South University") and The Arts Institutes International, LLC (collectively with all of its subsidiaries, "The Arts Institutes") pursuant to the terms of those agreements, provided that South University and The Arts Institutes continue to

fulfill each of their respective obligations (including making the required payments) pursuant to the MSAs. If Studio acquires the Shared IT assets in accordance with the terms of the Settlement Agreement (as amended), Studio is obligated to assume DCEH's obligations under the TSA (as amended), and Studio shall have no further obligations to DCEH. The terms of these agreements were affirmed by this Court in the March 19, 2019 order (Docket No. 190) approving the Settlement Agreement, and South's objection to the settlement (and the related process) was overruled.

As previously described to the Court in Studio's memorandum in opposition to the Receiver's Motion for Temporary Restraining Order and Preliminary Injunction, Docket No. 9 (Case No. 19-380), Studio was engaged on January 7, 2019 by South University, The Arts Institutes and Argosy Education Group, LLC ("AEG"), and Dream Center Argosy University of California, LLC (and collectively with AEG and all of their respective campuses, "Argosy University") under three separate MSAs to assist these struggling universities in separating from DCEH. The holistic reorganization plan – which all parties voluntarily negotiated, approved and signed (and which also was supported by the U.S. Department of Education and previewed with the Receiver) – provided that Studio would (a) help effectuate a change of control of South University and The Arts Institutes, (b) provide managed services under the MSAs to all three universities for a period of time (one year for South University and Argosy University and fifteen years for The Arts Institutes), and (c) receive transition services from DCEH under the TSA for approximately one year.

Several of the fundamental premises of the holistic restructuring plan were that (i) Studio initially would subcontract substantially all of the managed services to DCEH since all of the employees, vendor agreements and Shared IT assets were held at DCEH, and it would take

between six months and a year to transition all of these components to Studio and/or the universities, (ii) all three of the universities would be required to share the cost of the restructuring and transition, which included payment of the costs incurred by Studio to consummate the change of control and to perform the MSAs and TSA, and (iii) the universities could defer the payment of Non-Core Expenses (as defined in the MSAs), which include Studio's costs and the TSA fees due to DCEH, until the universities had sufficient cash on hand to pay such Non-Core Expenses.

As evidenced by the numerous proceedings before this court since the Receiver's appointment, the appointment of the Receiver did not result in the survival of Argosy University - one of the stated purposes of the receivership. Further, the receivership clearly has caused additional stress to the already fragile existence of South University and The Arts Institutes. Nonetheless, the existing MSAs and TSA were carefully structured by the parties to deal with a receivership situation. From Studio's perspective, nothing needs to be done other than to let Studio do the job that it signed up to do in January. Studio has already spent millions of dollars and thousands of hours of work preparing to efficiently and effectively execute its plan. Studio does not need the Receiver or South University in order to propose a plan for extrication (the "Separation Plan"), because the existing MSAs and the TSA already include the Separation Plan.

To date, despite Studio's numerous attempts, the Receiver, Mr. Steven Yoho, and Mr. John Papp (the DCEH employees who are purportedly managing South University), refuse to provide information and comply with the terms of the TSA between Studio and DCEH and the MSA between Studio and South University, and have colluded to tortiously interfere with the MSAs and TSA. All that the Receiver, Mr. Yoho and Mr. Papp have done so far is challenge the

costs incurred by Studio to help keep South University from being in the receivership alongside its former sister-school, Argosy University, rather than help Studio save South University and The Arts Institutes.  Unfortunately, these schools may become collateral damage due to the ill-advised actions of the Receiver, Mr. Yoho and Mr. Papp.

Mr. Yoho and Mr. Papp are part of the DCEH management team that ran these universities into the ground.  Mr. Yoho has been with DCEH and its predecessor organization since 2007.  Although Mr. Yoho's LinkedIn profile claims that his title is "Interim Chancellor" of South University since July of 2018, Studio believes he is actually a DCEH employee.  His profile reports that he was the Campus President of Argosy University for over four years through March 2018; Studio assumes he materially participated in the management of the now-defunct Argosy University.  Mr. Papp has been with DCEH and its predecessor organization since 2011.  Based on information and belief, Mr. Papp is the Vice President of Finance in the Corporate Services Department of DCEH in Pittsburgh – the department that was involved directly or indirectly in the oversight of student stipends that have been the source of much attention.

The Separation Plan has three essential components.  The first component involves the transitioning of DCEH employees to South University, The Arts Institutes and Studio.  The second component involves the subleasing of the existing lease, utilities and maintenance contracts for the Pittsburgh data center to Studio.  This facility will house the employees hired by Studio to provide the Shared IT services to South University and The Arts Institutes until the transition of the Shared IT systems is complete.  The third component is the maintenance and transition of the Shared IT assets for the purpose of allowing Studio to access such systems until

the transition of the Shared IT systems is complete. A powerpoint version of the Separation Plan is attached hereto as Exhibit A.

**Employee Transition**

All employees required to operate South University and The Arts Institutes and to provide the Shared IT services currently are employed by DCEH. As of the date hereof, there are approximately 1,692 DCEH employees dedicated exclusively to South University (collectively, the "South Employees"), 923 DCEH employees dedicated exclusively to The Arts Institutes (collectively, the "Ai Employees"), and 243 DCEH employees shared by South University and The Arts Institutes (collectively, the "Shared Employees"). 56[1] DECH employees are performing services related to the Shared IT (collectively, the "Shared IT Employees"), and nine DCEH employees are performing services related to compliance and monitoring (collectively, the "Shared Compliance Employees").

As of April 7, 2019, South University and The Arts Institutes are scheduled to have the ability to hire the South Employees and the Ai Employees. Accordingly, South University and the Arts Institutes will begin processing payroll for these employees and provide such employees with healthcare benefits that the Receiver currently is not providing. The transfer of these employees will relieve the Receiver of over $8.4 million per month in payroll obligations. Moreover, South University and The Arts Institutes currently are paying the Receiver for healthcare benefits for these employees, but these employees are not being reimbursed by the Receiver for their healthcare expenditures. South University and the Arts Institutes are therefore paying those expenditures on behalf of these employees. Once these employees are transferred to the universities, they will have standard healthcare benefits and the universities will no longer

[1] This number may be as low as 50 and continues to decline rapidly as employees resign, which supports Studio's actions to move quickly to stem the tide of departures. Two of the nine compliance staff members have also recently resigned.

pay the Receiver for useless benefits in addition to reimbursing employees for their healthcare expenditures.

As of April 7, 2019, Studio intends to hire all of the Shared IT Employees and the Shared Compliance Employees. Studio may offer employment to certain of the DCEH employees pursuant to the terms of the Amended and Restated Framework Agreement, which is one of the Reorganization Documents (as defined in the Settlement Agreement). A form of employment agreement is attached hereto as Exhibit B. Likewise, Studio will begin processing payroll for these employees and provide such employees with healthcare benefits that the Receiver currently is not providing. The transfer of these employees will relieve the Receiver of over $1.3 million per month in payroll obligations. Studio will employ such employees until the later of (a) June 30, 2019 or (b) the Shared IT services are no longer needed for South University and Ai University. Thereafter, South University and The Arts Institutes will be free to hire any of these employees if they so desire.

As such, the Receiver's last payroll for each of the South Employees, Ai Employees, Shard IT Employees, and the Shared Compliance Employees will be on April 12, 2019, which will cover the period from March 21, 2019 through April 6, 2019. Thereafter, the Receiver only will be responsible for payroll for those DCEH employees that the Receiver deems necessary for purposes other than the Shared IT services which, after such date, will be fully performed by Studio.

Studio has shared the proposed lists of the various categories of employees with the Receiver, South University and The Arts Institutes. The Arts Institutes are fine with Studio's proposed lists. If South University desires to amend the list of South Employees, Studio will not object. If South University believes there are other DCEH employees that it wants to hire who

are not included in the list of Shared IT Employees and Shared Compliance Employees, South University can hire those employees directly. The same process applies to The Arts Institutes. However, if either South University or The Arts Institutes does not want to pay its pro rata share of any of the Shared IT Employees or Shared Compliance Employees, Studio will not be liable to such university for the services not performed by such employees.

These proposed lists of employees are not meant to be a restriction on solicitation; South University can hire any DCEH employee it wants. However, if South University hires employees that ultimately prevent Studio from providing the Shared IT services to both The Arts Institutes and South University, Studio may not be able to provide the Shared IT services to The Arts Institutes, and the process may fail as a result. The Separation Plan was designed specifically to prevent either university from disadvantaging the other. Studio has no incentive not to provide the Shared IT services to either South University or The Arts Institutes; it will be paying all of the costs up front, and Studio can only recover those costs by providing the Shared IT services. Therefore, any notion that Studio will hold South University hostage because it holds the lease and employees cannot stand; it can only be a projection of the intentions of Mr. Yoho and Mr. Papp not to pay for the Shared IT services even if Studio bears the cost.

**Facility Lease and Facility Utilities and Maintenance Contracts**

As of April 1, 2019, Studio will sublease from DCEH the existing lease for the Pittsburgh data center (the "Facility Lease") whereby Studio will assume the rent obligations of DCEH under the Facility Lease, including the 41 critical utilities and maintenance contracts associated therewith (the "Facility Utilities and Maintenance Contracts"), and any past due payables to the landlord and vendors. Studio has an executed sublease with the landlord for the Facility Lease. A copy of the sublease is attached hereto as Exhibit C. As a result, the Receiver will be relieved

of the rent, utility and maintenance obligations for the Pittsburgh data center (approximately $175,000 per month), including past due payables of approximately $196,000 since the appointment of the Receiver and another approximately $296,000 in past due payable accrued prior to the appointment of the Receiver.

All of the Shared IT Employees, Shared Compliance Employees and Shared IT systems will remain at the Pittsburgh data center until the Separation Plan is completed. If the Receiver or South University can identify any other utilities or maintenance contracts necessary to provide the Shared IT services, Studio will include them in the Facility Utilities and Maintenance Contracts to be assumed by Studio.

**Shared IT Contracts**

Studio has identified a list of 69 critical Shared IT agreements, including 11 critical contracts for telecommunications and data storage, that are required to provide the Shared IT services for South University and Ai University (the "Shared IT Contracts"). Studio will assume the payment of the monthly fees, including any past due payables with respect to such Shared IT Contracts since the date of the Receivership and any renewal fees that are deemed necessary under such Shared IT Contracts until the earlier of (a) the Separation Deadline or (b) the date that the Shared IT services are no longer needed for South University and The Arts Institutes. Studio will attempt to negotiate with the applicable vendors under such Shared IT Contracts to (i) assign, modify and/or enter into new separate agreements for South University and the Arts Institutes (as they so desire) and (ii) eliminate, reduce and/or defer payment of outstanding payables with respect to such Shared IT Contracts. If the Receiver or South University can identify any other contracts or licenses necessary to provide the Shared IT services, Studio will include them in the Shared IT Contracts to be assumed by Studio.

As a result of this process, the Receiver will be relieved of over $356,000 per month in ongoing fees, past due payables of approximately $433,500 since the appointment of the Receiver, approximately $1.8 million in payables accrued prior to the appointment of the Receiver, and potential renewal fees of approximately $2.2 million related to the Shared IT Contracts.

There are numerous additional contracts that have perpetual licenses or have been prepaid that are sublicensed by DCEH to Studio under TSA. Studio proposes to keep the TSA in effect for the purpose of maintaining the sublicenses so Studio can perform the Shared IT services. When the Separation Plan is complete, South University and The Arts Institutes will be free to assume any of the Shared IT Contracts and to purchase any of the Shared IT assets that they so desire, subject to the rights of DCEH's secured lenders described in paragraph 8 of the Settlement Agreement (as amended).

**Conclusions**

The Separation Plan is simply the execution of the original holistic restructuring plan that Studio is currently pursuing on behalf of South University and The Arts Institutes. Every element of the Separation Plan was contemplated by and permitted under the current MSAs and TSA. No additional amendments are required to execute the Separation Plan. Studio simply requests that the Court require DCEH and the Receiver to comply with enforce the existing provisions of the TSA (to preserve the sublicenses and allow Studio to use the Shared IT hardware) and allow DCEH and the Receiver to assign the Facilities Lease, the Facilities Utilities and Maintenance Contracts and the Shared IT Contracts to Studio as proposed in the Separation Plan.

Studio does not need the intervention of the Court with respect to the MSAs with either South University or The Arts Institutes; these agreements are between parties that are not part of the receivership. Although South University has raised concerns about paying Studio's costs, those concerns are without merit; the MSAs already provide that both South University and The Arts Institutes can defer payment of any or all of the Non-Core Expenses (which includes Studio's costs and the TSA fees) to the extent that they do not have sufficient cash on hand to pay such Non-Core Expenses. Without Studio's willingness to incur additional millions in costs[2] that may never be recouped if the universities were not able to pay such Non-Core Expenses (as South University claims), and the Receiver is not able to fund such expenses (as the Receiver claims), the universities would be forced to shut down and over 16,000 students will be added to the list of casualties of the receivership in addition to the over 10,000 students of Argosy University. Further, the Shared IT Employees, the Shared Compliance Employees and the counterparties under the Facilities Lease, the Facilities Utilities and Maintenance Contracts and the Shared IT Contracts all are substantially better off with a credit-worthy counterparty such as Studio that is willing and able to pay rent, utilities, contracts, wages and provide healthcare benefits. Studio's Separation Plan is the only hope for the survival of these university systems.

[2] In addition to the permitted deferral of Studio's costs and service margin by both South University and The Arts Institutes, The Arts Institute desperately needs a $1 million working capital loan tomorrow and Studio (or its affiliate) is prepared to provide the loan, but only if the Court approves the Separation Plan and requires the Receiver to perform under the TSA.

March 26, 2019						Respectfully submitted,

/s/ *M. Colette Gibbons*
M. Colette Gibbons (0003095)
Scott N. Opincar (0064027)
Maria G. Carr (0092412)
Adam C. Smith (0087720)
MCDONALD HOPKINS LLC
600 Superior Ave., E., Ste. 2100
Cleveland, OH 44114
T: (216) 348-5400
F: (216) 348-5474
Email: cgibbons@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
asmith@mcdonaldhopkins.com

-and-

Dianne F. Coffino (admitted *pro hac vice*)
Martin E. Beeler (admitted *pro hac vice*)
Gabriella B. Zahn-Bielski (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: dcoffino@cov.com
mbeeler@cov.com
gzahnbielski@cov.com

*Co-Counsel for Studio Enterprise Manager, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2019, a copy of the foregoing Detailed Plan for the Extrication of Ongoing Campuses of South University and the Arts Institutes from the Dream Center Education Holdings, LLC's Shared IT Platform was filed electronically. Notice of this filing will be sent to all parties by the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *M. Colette Gibbons*
M. Colette Gibbons (0003095)