# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | CASE NO. 1:19-CV-00145 |
| Plaintiff, | |
| v. | JUDGE DAN AARON POLSTER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | |
| Defendants. | MAGISTRATE JUDGE THOMAS M. PARKER |

**STUDIO ENTERPRISE MANAGER, LLC'S MOTION FOR AN ORDER REQUIRING THE RECEIVER TO (I) EXECUTE SUBLEASE FOR THE PITTSBURGH DATA CENTER; AND (II) COMPLY WITH THE TERMS OF THE REORGANIZATION DOCUMENTS AND THE SETTLEMENT AGREEMENT**

Studio Enterprise Manager, LLC ("Studio") hereby files this motion (the "Motion") for an order requiring the Receiver to (i) execute the sublease between Studio and the landlord for the Pittsburgh data center; and (ii) comply with the terms of the Reorganization Documents (as defined below) and the Court-approved settlement agreement (as amended), Docket No. 126 (the "Settlement Agreement") between Mark E. Dottore, the receiver (the "Receiver") and Studio.

A Memorandum in support of the relief requested in the Motion is attached.

April 4, 2019                                    Respectfully submitted,

/s/ *Scott N. Opincar*
M. Colette Gibbons (0003095)
Scott N. Opincar (0064027)
Maria G. Carr (0092412)
Adam C. Smith (0087720)
MCDONALD HOPKINS LLC
600 Superior Ave., E., Ste. 2100
Cleveland, OH 44114
T: (216) 348-5400
F: (216) 348-5474
Email: cgibbons@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
asmith@mcdonaldhopkins.com

-and-

Dianne F. Coffino (admitted *pro hac vice*)
Martin E. Beeler (admitted *pro hac vice*)
Gabriella B. Zahn-Bielski (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: dcoffino@cov.com
mbeeler@cov.com
gzahnbielski@cov.com

*Co-Counsel for Studio Enterprise Manager, LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | CASE NO. 1:19-CV-00145 |
| Plaintiff, | |
| v. | JUDGE DAN AARON POLSTER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | |
| Defendants. | MAGISTRATE JUDGE THOMAS M. PARKER |

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER REQUIRING THE RECEIVER TO (I) EXECUTE SUBLEASE FOR THE PITTSBURGH DATA CENTER; AND (II) COMPLY WITH THE TERMS OF THE REORGANIZATION DOCUMENTS AND THE SETTLEMENT AGREEMENT**

As described in detail in Studio Enterprise Manager, LLC's Status Report For the Extrication of the Ongoing Campuses of South University and The Arts Institutes Entities From The Dream Center Holdings, LLC's Shared IT Platform, Docket No. 229 (the "Status Report"), which was filed contemporaneously with the Motion and is fully incorporated herein by reference, Studio has faced consistent issues with Mark E. Dottore, the receiver (the "Receiver") throughout the course of the receivership and as it attempts to perform Studio's detailed plan for the extrication of ongoing Dream Center South University, LLC (collectively with all of its subsidiaries, "South University") and The Arts Institutes International, LLC (collectively with all of its subsidiaries, "the Arts Institutes") entities from the Dream Center Education Holdings, LLC's ("DCEH") IT platform ("IT Platform") within six months, Docket No. 162 (the "Separation Plan"). At this point, the Receiver appears to be actively preventing Studio from executing the Separation Plan in a number of ways, as described in the Separation Plan and the Status Report. However, as detailed in the Separation Plan and the Status Report, Studio already

{8006609:2 }  3

has an extensive plan (as thoroughly documented in the Reorganization Documents[1]) to execute the transition of the IT Platform, and Studio respectfully requests that this Court enter an order: (i) requiring the Receiver to execute the sublease for the Pittsburgh data center (the "Sublease"), attached hereto as <u>Exhibit A</u>; and (ii) requiring the Receiver to comply with the terms of the Reorganization Documents and the Court-approved Settlement Agreement. The execution of Studio's Separation Plan is the only way forward if the university systems are to be saved, given the tumultuous nature of this receivership proceeding so far.

As described in the Separation Plan, part of Studio's plan to extricate the ongoing South University and the Arts Institutes entities involves Studio's assumption of the rent obligations of DCEH for the Pittsburgh data center ("Data Center"). To that end, Studio executed a sublease (the "Sublease") for the Data Center with the landlord, but the Receiver has not yet signed the Sublease. If the Receiver executes this Sublease, the Receiver will be relieved of the rent, utility and maintenance obligations for the Pittsburgh data center (approximately $175,000 per month), including past due payables of approximately $196,000 since the appointment of the Receiver and another approximately $296,000 in past due payable accrued prior to the appointment of the Receiver. The execution of this Sublease is therefore in the best interest of the receivership estate.

---

[1] The Reorganization Documents include a Framework Agreement (the "FWA"), a Master Bundled Services Agreement (the "BSA"), a Technology Licenses and Services Agreement (the "TLSA"), a Master Asset Purchase Agreement (the "APA"), a License Agreement (the "License"), and a Restrictive Covenant Agreement (the "Restrictive Covenant Agreement" and collectively with the FWA, BSA, TSLA, APA and License, the "Ai Transaction Documents"), a Master Services Agreement with each of South University, the Arts Institutes, and Argosy University (each as defined below) (collectively, the "MSAs"), a Transition Services and License Agreement with DCEH (the "TSA"), the Amended and Restated Framework Agreement (the "Amended FWA"), an Equity and Asset Purchase Agreement (the "EAPA"), the Omnibus Amendment No. 2 to Credit Documents (the "Bridge Loan"), and an Interim Framework Agreement (as amended, the "IFWA" and collectively with each of the MSAs, the Bridge Loan, the TSA, the Ai Transaction Documents, and the other transaction documents contemplated by the IFWA, the "Reorganization Documents").

Moreover, as detailed in the Separation Plan and Status Report, the effective implementation of the Separation Plan requires the Receiver's compliance with the existing terms of the Reorganization Documents, as modified by the Settlement Agreement between Studio, Education Principle Foundation ("EPF"), and the Receiver that was approved by this Court on March 18, 2019. As this Court recognized in its March 28, 2019 order (Docket No. 213), "a comprehensive plan is in place to separate these universities which has accounted for the complexities involved in separating the parties' use of the IT Platform," and "it is unnecessary to order the parties to start from scratch in devising a new method for extricating the South University and the Arts Institutes from the IT Platform."

Therefore, Studio has been working diligently to execute its Separation Plan by arranging for the Sublease, hiring critical employees, setting up payroll and accounting systems for the Arts Institutes (South University has refused Studio's assistance and presumably is setting up these systems on its own) and negotiating certain agreements, among many other activities. As described in the Status Report, however, the Receiver continues to obfuscate Studio's efforts by refusing to provide the TSA Services,[2] inappropriately holding back information, and using at least some of the TSA Fees for payroll expenses, among other activities. These activities are in direct violation of the terms of the Reorganization Documents; as the Court noted in its March 28, 2019 order, "these agreements were acknowledged in a settlement agreement between Studio and the receiver, which agreement, as later amended, was recently approved by the Court." (See ECF Docs. 82, 85 and 118). Specifically, Section 11 of the Settlement Agreement also requires the parties (including Studio, the Receiver, and EPF) to "abide by all other provisions of the Reorganization Documents." The Receiver has failed to do so. Therefore, Studio respectfully

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Status Report or the Reorganization Documents.

{8006609:2 } 5

requests that this Court enter an order requiring the Receiver to comply with the terms of the Reorganization Documents and the Settlement Agreement, even though the Receiver recently affirmed these same documents in recent court filings.

## LAW AND ARGUMENT

**I. The Court Should Require the Receiver to Execute the Sublease Because it is In the Best Interest of the Receivership Estate**

Studio is not certain why the Receiver has not executed the Sublease, which would relieve the Receiver and the receivership entities of significant liabilities associated with the Data Center. Section 2(m) of the Amended Order Appointing Receiver (Docket No. 150) specifically authorizes the Receiver to negotiate, enter into and executed leases which he "in his business judgment concludes are in the best interest of the creditors of the Receivership Estate." It is self-evident that Studio's assumption of the rent obligations for the Data Center, along with numerous other costs, is in the best interests of the receivership estate. Once the Receiver does not need to lease and operate the Data Center, as described above, significant funds will be freed up that can otherwise be used for the Receiver's liquidation activities. Although the Receiver may object generally to Studio's plan for the Sublease or otherwise, the Receiver has not proposed a better alternative that provides a substantial benefit to the creditors of the receivership estate. Furthermore, if the Receiver needs to use a portion of the premises for the purpose of housing existing DCEH employees necessary to the Receiver's liquidation activities of the receivership estate during the term of the Sublease, Studio certainly will make reasonable accommodations to provide for such use. Therefore, Studio respectfully requests that this Court enter an order requiring the Receiver to promptly execute the Sublease.

## II. The Court Should Order Specific Performance of the Settlement Agreement

Initially, case law is clear that this Court has the inherent power to enforce the Settlement Agreement:

> It is well established that courts retain the inherent power to enforce agreements entered into settlement of litigation pending before them. A federal court possesses this power even if that agreement has not been reduced to writing. Before enforcing settlement, the district court must conclude that agreement has been reached on all material terms. The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement.

*Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (citations and internal quotation marks omitted). Here, the parties reached agreement on all material terms and reduced their agreements to writing, as documented in the Settlement Agreement and as approved by this Court in its order dated March 19, 2019 (Docket No. 190). The Receiver and Studio even filed a joint motion to approve the settlement agreement, and certain parties filed objections to the settlement. After hearing argument, the Court overruled the objections and approved the Settlement Agreement. Sixth Circuit law is clear that if "the objective acts of the parties reflect that an agreement has been reached," each party is obligated to perform. *Re/Max Int'l, Inc. v. Realty One, Inc.,* 271 F.3d 633, 646 (6th Cir. 2001). As described above and in detail in the Status Report, the Receiver continues to refuse to comply with numerous provisions of the Reorganization Documents, and such refusal is actively damaging the future of the university systems.

A settlement agreement is essentially a contract, and state-law contract principles govern a federal court's enforcement of a settlement agreement.[3] *See Limbright v. Hofmeister*, 566 F.3d 672, 674 (6th Cir. 2009); *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.

---

[3] Section 20 of the Settlement Agreement provides that the Settlement Agreement should be governed by Delaware law, and each of the parties consented to the exclusive jurisdiction of the Court in the event there is any dispute about the Settlement Agreement.

1992). Specific performance is an appropriate remedy for where a damages remedy is inadequate or impracticable. See *Whittington v. Dragon Group LLC*, Case No. 2291-VCP, 2013 WL 1821615, *5 (Del. Ch. May 1, 2013) (citing *Loppert v. WindsorTech, Inc.,* 865 A.2d 1282, 1292 (Del. Ch. 2004) ("breaches of settlement agreements are not readily remedied by monetary damages."). While Studio reserves all of its rights and claims to seek further remedies, including a monetary or other damages remedy, this Court should order specific performance of the Receiver's duties pursuant to the Settlement Agreement. If the Receiver continues to fail to comply with the terms of these documents, the receivership entities will only descend further into distress, potentially threatening the viability of South University and The Arts Institutes going forward. Compliance with Studio's already-existing plan, as modified in the consensual Settlement Agreement, is the only feasible way for the university systems to survive.

WHEREFORE, Studio respectfully requests that this Court enter an order requiring the Receiver to (i) execute the Sublease; and (ii) comply with the terms of the Reorganization Documents and the Settlement Agreement.

*[Remainder of page intentionally blank; signature page follows]*

April 4, 2019                                   Respectfully submitted,

/s/ *Scott N. Opincar*
M. Colette Gibbons (0003095)
Scott N. Opincar (0064027)
Maria G. Carr (0092412)
Adam C. Smith (0087720)
MCDONALD HOPKINS LLC
600 Superior Ave., E., Ste. 2100
Cleveland, OH 44114
T: (216) 348-5400
F: (216) 348-5474
Email: cgibbons@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
asmith@mcdonaldhopkins.com

-and-

Dianne F. Coffino (admitted *pro hac vice*)
Martin E. Beeler (admitted *pro hac vice*)
Gabriella B. Zahn-Bielski (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: dcoffino@cov.com
mbeeler@cov.com
gzahnbielski@cov.com

*Co-Counsel for Studio Enterprise Manager, LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 4, 2019, a copy of the foregoing Studio Enterprise Manager, LLC's Motion for an Order Requiring The Receiver to (I) Execute Sublease for the Pittsburgh Data Center; and (II) Comply With the Terms of the Reorganization Documents and the Settlement Agreement was filed electronically. Notice of this filing will be sent to all parties by the Court's electronic filing system. Parties may access this filing through the Court's system.

                /s/ *M. Colette Gibbons*
                M. Colette Gibbons (0003095)