# EXHIBIT D

**McCarthy, Lebit, Crystal & Liffman**

Hugh D. Berkson
Principal
hdb@mccarthylebit.com

March 27, 2019

**Via U.S. Postal Service and Email:**
Eric Rothschild, Senior Counsel
National Student Legal Defense Network
1015 15th Street NW, Suite 600
Washington, DC 20005
eric@nsldn.org

RE: Dream Center Student Loan Stipend Division

Dear Mr. Rothschild,

Your letter of March 20 to Mary Whitmer and Robert Glickman just came to my attention. Unfortunately, neither Mary nor Rob is available to respond, so please accept this letter as the Receiver's response to your inquiries.

You have long expressed an interest in the stipend issue, even before you represented anyone who actually experienced that sort of problem. As I have explained to you previously, while the issue is of interest, we do not see it as *the* critical issue for which precious resources should be diverted at this moment. While we had hoped things would have settled down by now, it seems the existential crises never seem to end. At present, the Receiver's resources are focused on three principal goals (all of which serve to protect tens of thousands of students). First, he is working to complete the teach-out at the Western State College of Law, thereby allowing the 77 students eligible to graduate in May to actually receive their diplomas on May 8 and the balance of the students to transfer to other schools with their credits intact. This obviously affects your client, Marina Awed, who is among those who hope to graduate in a few weeks' time. He is simultaneously working with potential suitors who have expressed interest in buying the law school to continue its operations and allow its current students to continue their studies without interruption. There are, however, serious regulatory issues involved in effecting any transfer and the Receiver is doing what he can to facilitate a transaction to the benefit of the 321 law students who are not set to graduate in May. Second, he is attempting to transfer the Art Institute of Las Vegas to new ownership. Once again, there are serious regulatory issues that require considerable effort to resolve. Third, he is attempting to secure a plan to transition the data and contracts currently under the DCEH umbrella, which assets serve to keep

15,000 South and Art Institute students in classes, to platforms maintained by or on behalf of those two school systems. Unfortunately, it seems that Studio (on behalf of the Art Institute campuses) and Dream Center South University, LLC ("South") have differing views as to how best to conduct the transition and, with 15,000 students' well-being hanging on a successful transition from DCEH's platform to another platform, the Receiver is spending considerable time addressing the issue.

Balance the efforts required to address those existential issues against your curiosity regarding what happened to stipend money.

Putting aside the fact that you have already wasted thousands and thousands of dollars for an "emergency hearing" to address stipends when it turned out *you had no standing to raise the issue in the first place,* and putting aside the fact that you have no platform on which to serve any discovery, much less expedited discovery (merely intervening in the case does not confer the right to serve discovery), we question why you believe the focus of the entire receivership should address an issue allegedly experienced by two of your clients. We also question who you think should pay the bill required to engage in the electronic forensic examination you've demanded. The Receivership Estate's limited financial resources are no secret. Are you willing to pay for the staff and the tools required to dive into the electronic databases and uncover the data you're demanding, or would you leave less money available to pay creditors, your clients included?

Please know that the Receiver's staff *is* working to get to the bottom of the stipend issue. That work is not easy, nor will it be quick. The work is complicated by the departures of many accounting personnel who may have known something about how the process worked, and IT personnel who may have been able to help the Receiver's staff find the relevant data. The Receiver takes his obligations to protect and preserve the Receivership Estate seriously, and that means balancing limited resources against unlimited demands. Given that you indicate that you represent two clients who allege they did not receive stipends, and given the fact that you have failed to set forth the sums you claim they are due, we are not in a position to justify any of the work you've demanded be done within a matter of a few days.

Finally, we must note that the stipend issue you've raised for your clients is a curious one. In theory, your clients borrowed a sum in excess of their tuition obligation. The difference – known as a credit balance – was supposed to be paid to your clients. They have alleged they did not receive that credit balance, in whatever sum it was supposed to be. Presuming they did not receive those sums, you have not articulated any damages. If your clients did not receive money they borrowed, their loans were (or will be) adjusted accordingly. In short, your clients will not owe a bank for money they did not receive.

In conclusion, we do not intend to respond to your discovery requests. Instead, we again urge you to consider your clients' claims in the context of the entire receivership as you decide how to proceed.

Very truly yours,

Hugh D. Berkson

Cc: Robert T. Glickman (via email)
Mark Dottore (via email)
Mary Whitmer (via email)

3