# EXHIBIT 3

**South UNIVERSITY™** | **UNIVERSITY ADMINISTRATION**
ESTABLISHED 1899

March 21, 2019

*Via Email*

Bryan Newman, CEO
Studio Enterprise Manager, LLC
1201 West 5th Street, Ste. T410
Los Angeles, CA 90017
E-mail: bryan@studioenterprise.com

Dear Bryan:

We have received your letter sent on behalf of Studio Enterprise Manager, LLC ("Studio") on March 18, 2019.[1]

### *Non-Core Expenses*

Studio claims that Dream Center South University, LLC ("South") is responsible for Non-Core Expenses consisting of Studio's legal costs and Studio's overhead from January 2019 through February 2019 in excess of $2,900,000. Based on the now available information, South is neither required nor able to make such payments under the language of the Managed Services Agreement ("MSA") as a matter of law and policy.

In the first instance, the MSA does not require South to pay any fees or expenses, including the TSA Fee or Service Margin, that are not *directly related* to Services provided to South. (MSA § 5.1.) In the spreadsheet accompanying your communication, Studio simply allocates what it calls "Non-Core Expenses" through a 67.6%/32.4% split between South and the Arts Institutes. Your communication does not explain how or why South is liable for these prorated amounts as proper Non-Core Expenses, which by their definition can include only amounts incurred or paid by Studio *on South's behalf*. At this time, South has not received and is not receiving any meaningful services from Studio since the January 7, 2019 transaction.

Studio also has not provided the information South requires to evaluate Studio's claimed Non-Core Expenses figures. To determine whether South is responsible for any of the purported "Non-Core Expenses," South is entitled to documents and information from Studio. We have

---

[1] You note that your email was sent pursuant to Section 10.9 of the Managed Services Agreement. Please note that, going forward, in addition to Steven K. Yoho, Ingrid Bohme at Cohen & Grigsby rather than Ronald Holt at Rouse Frets White Goss Gentile & Rhodes also should be copied on behalf of the University on any such correspondence.

709 Mall Boulevard
Savannah, GA 31406
Phone 912.650.6234
Fax 912.650.5635
southuniversity.edu

repeatedly explained both the information we need and why it is important. In order to evaluate each claimed Non-Core Expense, South requires information in sufficient detail to establish:

- the nature and composition of each item;
- the relationship between the claimed fees or expenses and services provided to South;
- how the costs were incurred or paid by Studio on South's behalf;
- how and when South and its lenders approved these Services to which the Non-Core Expenses relate;
- how and when South and its lenders approved the Non-Core Expenses themselves; and
- an itemization of the out-of-pocket expenses, direct and indirect labor costs, allocations of overhead expenses and third party costs and expenses, and the costs of goods sold that are contained within these Non-Core Expenses.

South can only evaluate the claimed Non-Core Expenses and respond appropriately once it receives this information.

### *Studio's Legal Fees and Costs*

In response to South's requests for information and documents relating to the claimed Non-Core Expenses, Studio has provided what it contends are "legal invoices that are a part of the true up calculation."[2] Studio, however, failed to provide the requested individual time entries and descriptions of work performed, engagement letters with the applicable law firms, conflict of interest disclosures and waivers with the applicable law firms, and other related documentation that would support any payment of legal fees and other related costs as "Non-Core Expenses." Accordingly, before paying for these claimed expenses, South still needs this information regarding the parties that the law firms represented and further substantiation that the fees are associated with services performed for South pursuant to the MSA rather than for other parties, that the fees assessed are reasonable relative to the work performed, and that South is not being allocated a disproportionate or unreasonable share of the outstanding fees. Otherwise, the costs cannot be said to fall within the definition of Non-Core Expenses, *i.e.* amounts paid on South's behalf. (MSA App'x I-4.)

To date, South has given Studio the benefit of the doubt that the expenses it sought to collect from South *could* be legitimate Fully Burdened Costs to be paid as part of the Non-Core Expenses. At this point, based on Studio's repeated failures to provide the requested information, South is left to conclude that Studio may not be seeking reimbursement for costs incurred in providing Services on South's behalf (as the MSA requires), but instead is attempting

---

[2] Studio has not provided documentation to support its purported overhead as it relates to the provision of services for South. South can only conclude that this overhead does not relate to services performed for South and does not constitute a Non-Core Expense. This is especially true in light of the fact that in order for Studio to perform services on South's behalf, South must have requested those services. To date, South has not requested such services from Studio and any overhead figures constituting proper Non-Core Expenses would be minimal at best.

to recover its own attorneys' fees and costs incurred relating to the authorization, preparation, negotiation, execution, and performance of the January 7, 2019 transaction documents and other fee and cost amounts that are unrelated to Services performed for South. The MSA requires Studio to bear those fees and costs itself. (MSA § 10.16.)

The non-detailed, non-itemized "invoices" that Studio provided do not suggest that South owes these attorneys' fees and costs under the MSA. They include amounts for services rendered and expenses incurred during time periods when the MSA was not in place, for entities other than South, and on matters that cannot by any stretch be said to constitute the provision of Services for South. By way of example, Studio provided South with invoices that are clearly labeled as for the Arts Institutes for September 2018 through January 2019 totaling over $450,000. Studio also sent South a January 2019 statement directed to Studio that contains a single line item for $2,000,000 relating to the "Dream Center transaction" for undated services along with a similar February 2019 invoice that totals $500,000. Studio included invoices from its litigation counsel representing Studio in the DCEH receivership action where Studio has taken an adverse position to South on several occasions and has attempted to further its own distinct interests, including the potential acquisition of the Western State College of Law. Studio also presented South with "invoices" totaling more than $850,000 from its general counsel John Altorelli containing no information on the specific dates of the services (other than listing travel expenses, including hotel costs dated as early as September 2018), the amounts of the individual costs and fees, or the relationship of the services to South. All of the invoices provided by Studio are summaries at best and provide no evidence that these are Studio's actual Fully Burdened Costs for Non-Core Services provided to South, as opposed to services pertaining to Studio's interests and other ventures.

### *Approval of the Non-Core Expenses*

Moreover, as you are aware, before South can pay the Non-Core Expenses, they must be approved by the board of South and its lenders. (MSA App'x I-4.) There is no evidence that South or its lenders approved the Non-Core Expenses Studio that claims. You state that you attached an "approved Quarterly Budget," however, no such enclosure was provided. South has requested that Studio share any proof of approval of any purported budget, but Studio has failed to come forward with such information. This is not surprising given South's understanding that no budget approving the Non-Core Expenses was accepted by the appropriate authority at the university or by its lenders.

As a result of the foregoing, South has no obligation or authority to pay such amounts.

### *Payment of Amounts for DCEH Services*

In the aftermath of the closure of the Argosy schools, Studio is well aware that South, AI, and DCEH recently worked together to ensure that DCEH's payroll relating to the transitional services provided to South and AI was paid, with South paying 67.6% and AI paying 32.4%.

Your statement feigning ignorance about how South is paying for those services from DCEH is disingenuous. Indeed, Eric Russell on Studio's behalf contributed to these discussions and decisions set forth in a March 13, 2019 email conversation. This split and direct payment was appropriate for these particular charges.[3] Because Studio, South, the Arts Institutes, and DCEH worked together to develop an effective payment structure for payroll relating to the IT platform, South believes that they could and should do the same for vendor and other similar payments.

This is especially important given that South is leery of making payments directly to Studio because of Studio's blatant misapplication of South's payments in the past. As demonstrated by Studio's true-up calculation provided in your March 18, 2019 correspondence, it is now clear that Studio received South's February 2019 TSA Fee payment but did not apply the entirety of the disbursement to TSA Services. Instead, Studio—without South's knowledge, authorization, or approval—retained $402,388 from South's payment for Studio's "Fully Burdened Cost." ("February True Up".) As explained above, Studio has not provided any information to show that it incurred any such costs for the provision of Non-Core Services to South, that the expenses were approved by the necessary parties, or that the amounts charged to South represent a fair and accurate apportionment of such costs. Studio's misappropriation of South's payments is unacceptable, especially in light of the precarious nature of the DCEH structure upon which South, the Arts Institutes, teach out schools, and the remaining operational receivership schools rely for their continued existence.

The Court has made clear that the parties are required to pay DCEH to keep the IT platform operational and avoid causing harm to South, the Arts Institutes, any viable Receivership schools, and teach-out schools. Currently, Studio contends that South should pay Studio for critical shared DCEH services, but South cannot trust that Studio will forward those payments as necessary and appropriate. South is willing to continue to pay 67.6% of DCEH's payroll and benefit amounts that correspond to the IT platform and remaining shared compliance and payroll related employees. The University again proposes an equal split for ongoing actual vendor costs with the Arts Institutes. This mechanism is fair and efficient. Thus, going forward, South proposes paying actual TSA costs as requested by the Receiver for payroll and other vendor payments using an agreed upon sharing of costs between South and the Arts Institutes.

With respect to any South payments to DCEH through Studio, it is South's position that Studio must commit that it will remit the full amounts intended to cover DCEH's actual costs to the Receiver within 24 hours of the Receiver's request for payment and actually do so.

### *Financial Responsibility Composite Score*

Under the MSA, Studio agreed to negotiate in good faith "with respect to the payment by the University of the Service Margin to assist the University in complying with its financial

---

[3] It is notable that Studio goes so far as to employ the 67.6%/32/4% split of its $3.9 million in legal bills between South and the Arts Institutes.

responsibility composite score." (MSA § 5.1.) The Service Margin that Studio has indicated is accruing in the True-up correspondence is detrimental to South's composite score and is excessive and unreasonable, especially in light of the fact that South receives no Services from Studio. Accordingly, South requests that the Service Margin be eliminated and for Studio to negotiate in good faith regarding this issue.

### *IT Transition*

South has made it clear on several occasions that it is not engaging with Studio for any services outside of the IT migration. With respect to services that South did request, Studio has refused to participate in calls and meetings scheduled by South, nor has South been invited to participate in any IT meetings with Studio. Studio and its counsel have informed South that Studio is coordinating an IT transition for the Arts Institutes, but that it would not share its plan with South until required by the Court to do so and that South needed to do this work itself. Thus, your statement that Studio "is prepared to provide such assistance" to South is a direct contradiction of Studio's actions and statements to date. Based on Studio's previous words and actions, South has no hope that Studio will work with South on this matter either as a party to the MSA or as the entity controlling the Arts Institutes schools that are in a similar position as South. Please give me a call directly to discuss this point if my understanding is incorrect.

### *Conclusion*

The parties' exchange of written dispute notices and settlement offers has, to date, not been fruitful. It is South's hope that by reiterating its overarching concerns, Studio will carefully consider South's position and work with South to reach an amicable resolution. South University reserves all rights and defenses it has under the relevant contractual documents, at law, or in equity.

Sincerely,

*[signature]*

Steven K. Yoho, PhD
Interim Chancellor

cc: Katherine (Kate) Lee Carey
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
E-mail: kleecarey@cooley.com

Covington & Burling LLP
620 Eight Avenue
New York, NY 10018
Email: jpotash@cov.com
awollensack@cov.com