UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **)** | |
| **DIGITAL MEDIA SOLUTIONS, LLC**  **)** | **Case No. 1:19–cv–145** |
| **)** | |
| **Plaintiff,**  **)** | **JUDGE DAN AARON POLSTER** |
| **)** | |
| **v.**  **)** | **MAGISTRATE JUDGE** |
| **)** | **THOMAS M. PARKER** |
| **SOUTH UNIVERSITY OF OHIO, LLC,**  **)** | |
| ***et al.*,**  **)** | |
| **)** | |
| **Defendants.**  **)** | |
| **)** | |

MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION OF THE RECEIVER FOR AN ORDER
REQUIRING STUDIO ENTERPRISE MANAGER, LLC AND
JOHN J. ALTORELLI SHOW CAUSE WHY THEY SHOULD NOT
BE HELD IN CONTEMPT OF THIS COURT FOR THEIR
VIOLATIONS OF THE INJUNCTIONS CONTAINED IN THE
<u>AMENDED ORDER APPOINTING RECEIVER (Doc 150)</u>

The words used in the orders referenced in this memorandum are clear.

Thus, the violation of those orders by an entity—Studio Enterprise Manager, LLC

("**Studio**")—which is both controlled by and represented by an experienced business

man and licensed attorney—John J. Altorelli ("**Altorelli**")[1]—is obviously a

---

[1] Although Altorelli is not a party to this case, he, as a corporate officer of
Studio, is nevertheless bound by this Court's orders. *See IBEW v. Gary's Elec. Serv.
Co.*, 340 F.3d 373, 382 (6th Cir. 2003).

calculated move by Studio to advance its own interests at the expense of the

Receivership Entities and those who have claims in the Receivership Estate.[2]

This Court enjoined "all persons" from "interfering in any way with the acts

of the Receiver." Amended Receiver Order ¶ 17 [Doc. 150]. Intervenor Studio has

brazenly violated this injunction. Studio is not shy about its violation. In fact,

Studio has told this Court that it has and will continue to interfere with the

Receivership. *See* Studio Status Report [Doc. 229]; Studio Mot. For an Order [Doc.

230]. In its Status Report, Studio—despite the Receiver's counsel's admonitions—

informed the Court that it was making offers of employment to employees of Dream

Center Education Holdings, LLC's ("**DCEH**")—employees who are critical to the

operation of the Shared IT Platform. Studio Status Report at 2-3 [Doc. 229]. The

Receiver has also just learned that Studio has hired DCEH's compliance personnel,

in an obvious attempt to put DCEH in violation of the EDMC Consent Order. *See*

*Declaration of Connie Adelman* at ¶ 4, attached as Exhibit 1. And in its recent

Motion, Studio told the Court that it had negotiated a sublease with DCEH's

landlord in Pittsburgh and asked this Court, without citing any authority in the

Reorganization Documents or otherwise, to order the Receiver to execute a sublease

that Studio negotiated on its own without the Receiver's input. Studio Mot. For an

Order at 1 [Doc. 230]. Just yesterday, Studio tried to take Receivership Property

under DCEH control—IP addresses worth in excess of a million dollars—but was

---

[2] Capitalized terms used but not defined in this motion shall have the meanings given to them in the Amended Receiver Order.

thwarted thanks to a quick-thinking DCEH employee. *See Declaration of Drew Smith* at ¶¶ 4-6, attached as Exhibit 2.

Studio has thumbed its nose at this Court's orders. It has continued to interfere with the Receivership and with the Receiver's management of the Property. Its purpose is now clear: to force the Receiver out and place itself in exclusive possession and control of the Shared IT Platform. *See* Studio Status Report at 5-6 [Doc. 229] and Studio Second Status Report [Doc. 247]. But this Court's Amended Receiver Order prohibits Studio's improper actions. Accordingly, the Receiver moves this Court for: (1) an order that Studio and Altorelli show cause why they should not be found in contempt of the Amended Receiver Order; (2) an order that Studio and Altorelli (a) provide the Receiver with the name and contact information that were used to contact current and former employees of DCEH (the "**Contacted Employees**"), (b) give notice to all Contacted Employees that Studio violated the Amended Receivership order as it sent the offers of employment to them, and (c) provide proof to this Court and the Receiver that it sent said notices; and (3) an order specifically enjoining Studio, Altorelli, and their agents, employees, representatives, and counsel from taking any action that in any way disturbs or interferes with the Receiver's management or control of any Receivership Property except upon further order of the Court after notice and a hearing.

## I.    The Amended Receiver Order

The Amended Receiver Order [Doc. 150] provides, in pertinent part:

> [A]ll persons are enjoined and restrained . . . from *in any way* disturbing or *interfering with* the . . . management . . . of any of the Property.

Amended Receiver Order at ¶ 10 (*emphasis added*). Likewise,

> [A]ll creditors, claimants, parties in interest, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, and they hereby are, jointly and severally, . . . further stayed . . . *from doing any act or thing whatsoever to interfere with the Receiver* in the discharge of his duties in this proceedings or with the exclusive jurisdiction of this Court over the Property, its Books and Records and Property and the said Receiver.

Amended Receiver Order at ¶ 11 (*emphasis added*). And

> [A]ll other persons or entities[] *are hereby prohibited* from taking any act for or on behalf of the Receivership Entities, interfering in any way with the acts of the Receiver, and *from in any way*, manner or means wasting, disposing of, transferring, selling, assigning, pledging, canceling, concealing, *interfering with*, or hypothecating any of the Books and Records or *the Property*.

Amended Receiver Order at ¶ 17 (*emphasis added*). There are additional provisions throughout the Amended Receiver Order related to placing *all* of the Property of *all* of the Receivership Entities under the *exclusive control* of the Receiver.

## II.   Studio's Violation of the Amended Receiver Order

Since as early as March 22, 2019, Studio began interfering with the Receiver's ability to operate the Shared IT Platform by offering employment to members of the IT staff in Pittsburgh. *See* Studio Detailed Plan, Ex. B [Doc. 206-2]. When the Receiver first learned of the offers of employment, counsel for the Receiver—Charles A. Nemer and James W. Ehrman—immediately contacted counsel for Studio—M. Collette Gibbons—and directed her to tell her client to cease and desist. Nevertheless, Studio has persisted and, in fact, recently hired the eight

DCEH employees who are responsible for ensuring the school's compliance with those regulatory and compliance entities which oversee the operation of the related schools. *See Adelman Decl.*

Studio's poaching of these eight DCEH employees has been deleterious to the Receivership. These employees are critical to ensuring that DCEH remains compliant with the EDMC Consent Judgment. *See* Resp. to Order Requesting Views of the Settlement Administrator at 5-7 [Doc. 199] (explaining that the Receiver "must maintain" the compliance infrastructure to remain in compliance with many provisions of the Consent Judgment). The employees taken by Studio were the *only* compliance personnel on staff at DCEH. *Adelman Decl.* at ¶ 7. Even worse is the fact that these compliance employees provided compliance support for the Western State College of Law and the Art Institute of Las Vegas. *Adelman Decl.* at ¶ 5. Studio therefore not only affected the compliance for the South and Art Institute systems, but two of the campuses still within the control and management of the Receivership Estate.

In addition, and undeterred, Studio has negotiated with the landlord of the premises at which the Shared IT is located and has now asked this Court to compel the Receiver to enter into a sublease of those premises to Studio. *See* Studio Mot. For an Order, Ex. A [Doc. 230-1].

Finally, the Receiver has just learned that Studio made efforts to abscond with a series of IP addresses under DCEH control. *Smith Decl. at* ¶¶ 4-6. The IP addresses are worth over one million dollars. *Id.* at ¶ 1. Studio's chief information

officer, Kelly Kantola, was on site at the Pittsburgh Shared IT Platform on April 9 and attempted to take the IP addresses by asking a DCEH employee for a login and password to access those addresses. *Id.* at ¶ 6. But for the employee's refusal to provide the requested information, Studio would have stripped the estate of yet another asset – this one worth in excess of one million dollars.

### III.    Civil Contempt Proceedings Are Appropriate

Disobedience of a lawful court order may be punishable as contempt. *Glover v. Johnson*, 138 F.3d 229, 245 (6th Cir. 1998). Civil contempt proceedings are authorized by 18 U.S.C. § 401(3), which states, in pertinent part, that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."

The purpose of a civil contempt proceeding is wholly remedial and is intended to either coerce compliance with a prior court order or compensate for losses suffered as a result of non- compliance with that order. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *CFTC v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981). The contempt power of the court "enforce[s] the message that court orders and judgments are to be complied with in a prompt manner." *IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987)).

In a civil contempt proceeding, the moving party must prove, by clear and convincing evidence, that the respondent has violated the Court's order. *McComb*, 336 U.S. at 191; *United States v. Conces*, 507 F.3d 1028, 1042 (6th Cir. 2007)(in a contempt proceeding, the moving party must demonstrate "by clear and convincing evidence that the party to be held in contempt violated a court order"); *NLRB v. Ralph Printing & Lithography Co.*, 433 F.2d 1058, 1062 (8th Cir. 1970). To make a *prima facie* showing of contempt the movant need only prove that a defendant has failed to comply with a valid court order. *Heinold Hog Market, Inc. v. McCoy*, 700 F.2d 611, 615 (10th Cir. 1983). A district court does not have to find that the violation was "willful" or intentional. *McComb*, 336 U.S. at 191; *U.S. v. Ofe*, 572 F.2d 656 (8th Cir. 1978); *Faegre & Benson, LLP v. Purdy*, 367 F.Supp.2d 1238, 1243 (D. Minn. 2005). In civil contempt proceedings, the issue is not intent, but whether a party has in fact complied with the court's order. *In re General Motors Corp.*, 61 F. 3d 256, 258 (4th Cir. 1995); *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984).

Once a *prima facie* case has been shown, the burden shifts to the defendant to come forward with evidence showing categorically and in detail why he was unable to comply with court orders. *U.S. v. Rylander*, 460 U.S. 752, 755-7 (1983) *rehearing denied*, 462 U.S. 1112 (1983); *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). *Gary's Elec. Serv. Co.*, 340 F.3d at 379 ("Once the movant establishes his prima facie case, the burden shifts to the

contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order").

To satisfy this burden, "a defendant must show categorically and in detail why he or she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quotation omitted). The Court must consider whether the defendant "took all reasonable steps within his power to comply with the court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 379 (quotation omitted).

## IV.    Studio and Altorelli are in Contempt of Court

The terms of the Amended Receiver Order are clear, and there can be no doubt about Studio's actions or intent. There is no conceivable evidence that Studio or Altorelli could bring before the Court that would show why they are unable to comply with the injunctions contained in the Amended Receiver Order.

This Court's order is clear, direct, and unambiguous: no person may interfere with the Receiver or with the Receiver's management of the Property. *See* Amended Receiver Order ¶¶ 10, 11 & 17 [Doc. 150]. Studio has flagrantly flaunted its violations of the Amended Receiver Order in filings with this Court. *See* Studio Status Report [Doc. 229]; Studio Mot. For an Order [Doc. 230]. It has interfered with the Receiver's management of DCEH by offering employment to critical DCEH employees and by negotiating a sublease with DCEH's landlord. Studio's poaching of DCEH's staff is particularly offensive given Studio's complaint that DCEH is not providing the requisite services due under the parties' Transition Services and

License Agreement (the "TSLA"). [Doc. 237-1]. The TSLA requires, for example,

that DCEH provide Corporate Support services, yet Studio has taken the entire

staff of the compliance department, making it impossible for DCEH to provide those

services until additional staff is retained. Finally, Studio would have stripped the

Receivership Estate of the valuable IP addresses but for the quick thinking of a

DCEH employee. In short: Studio is doing everything it can to take as much as it

can from the Receivership Estate, all in unambiguous violation of this Court's

orders.

These are contemptuous acts in violations of the Amended Receiver Order.

Studio hopes that by tortiously interfering with DCEH's employment contracts and

its lease that Studio can remove the Receiver and place itself in control of the

Shared IT Platform. This Court need not guess at Studio's intent since that intent

was made crystal clear in its "Second Status Report" filed yesterday. [Doc 247]. This

Court's order of course prohibits Studio's chicanery.

The Receiver expects Studio to point to the Reorganization Documents and

claim that the Receiver has failed to abide by them, thereby necessitating Studio's

assumption of the lease and employees.[3] The Receiver further expects that Studio

will not point to any particular provision in the Reorganization Documents allowing

---

[3] Studio's failure to make progress in the transition of data to its own
platform is a problem *exclusively* of its own making. While Studio continues to wave
the TSLA and claim the Receiver is in breach, it has been curiously silent on its own
failure to abide by Section 3.5 of the agreement, under which it was to have
established a Microsoft Team Foundation Server to be used to accept data from
DCEH's platform. Had Studio simply set up the platform and started moving data,
it would be months ahead of where it finds itself now.

it to so interfere. There is no provision in the Reorganization Documents that allows

Studio to sublease the Pittsburgh location. Nor does any provision in those

Documents allow Studio to offer employment to DCEH employees under contract

with DCEH. Nor are there provisions allowing Studio to otherwise strip assets from

DCEH in violation of this Court's orders.

Studio did not object to this Court's Amended Receiver Order. Studio and its

officers are bound by the terms of the Order. And the Order clearly enjoins Studio

from interfering in any way with the Receiver's management of the Property.

Studio's actions in (1) sending employment offers to current DCEH employees, *see*

Studio Detailed Plan, Ex. B [Doc. 206-2]; (2) negotiating a sublease with DCEH's

landlord in Pittsburgh, *see* Studio Mot. For an Order, Ex. A [Doc. 230-1]; and (3)

otherwise interfering with the Receiver's operation of the Shared IT Platform

violate the Amended Receiver Order.

Accordingly, the Receiver respectfully moves this Court for (1) an order that

Studio and Altorelli show cause why they should not be found in contempt of the

Amended Receiver Order; (2) an order that Studio and Altorelli (a) provide the

Receiver with the name and contact information that were used to contact current

and former employees of DCEH (the "Contacted Employees"), (b) give notice to all

Contacted Employees that in sending the offers of employment to them Studio was

violating the Amended Receiver Order, and (c) provide proof to this Court and the

Receiver of the giving of said notice; and (3) an order specifically enjoining Studio,

Altorelli, and their agents, employees, representatives, and counsel from taking any

action that in any way disturbs or interferes with the Receiver's management or control of any Receivership Property except upon further order of the Court after notice and a hearing.

## V.  Relief Sought

The Receiver respectfully asks that this Court rule that, on the strength of the evidence and arguments provided in in the Receiver's Motion and this memorandum, the Receiver has made the necessary showing that Studio and Altorelli have violated the Amended Receiver Order. The Receiver asks that the Court therefore order a show cause hearing take place *without delay*, during which the Receiver's evidence can be heard and Studio and Altorelli are ordered to show cause why they should not be held in contempt. At the conclusion of such a hearing, the Receiver requests that the Court find that both Studio and Altorelli are in contempt of the Amended Receiver Order and grant such relief as the Court may deem just and appropriate.

Dated: April 11, 2019                                Respectfully submitted,

 */s/ James W. Ehrman*
Mary K. Whitmer (0018213)
James W. Ehrman (0011006)
Robert M. Stefancin (0047184)
WHITMER & EHRMAN LLC
2344 Canal Road, Suite 401
Cleveland, Ohio 44113-2535
Telephone: (216) 771-5056
Telecopier: (216) 771-2450
Email: mkw@WEadvocate.net
        jwe@WEadvocate.net
        rms@WEadvocate.net

*Counsel for Mark E. Dottore, Receiver*

and

Robert T. Glickman (0059579)
Charles A. Nemer (0009261)
Robert R. Kracht (0025574)
Hugh D. Berkson (0063997)
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
   & LIFFMAN CO., L.P.A.
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
Telephone: (216) 696-1422
Telecopier: (216) 696-1210
Email: rtg@mccarthylebit.com
       can@mccarthylebit.com
       rrk@mccarthylebit.com
       hdb@mccarthylebit.com
       nro@mccarthylebit.com

*Special Counsel for Mark E. Dottore, Receiver*