## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | CASE NO. 1:19-CV-00145 |
| Plaintiff, | |
| v. | JUDGE DAN AARON POLSTER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | |
| Defendants. | MAGISTRATE JUDGE THOMAS M. PARKER |

### STUDIO ENTERPRISE MANAGER, LLC'S THIRD STATUS REPORT FOR THE EXTRICATION OF THE ONGOING CAMPUSES OF SOUTH UNIVERSITY AND THE ARTS INSTITUTES ENTITIES FROM THE DREAM CENTER HOLDINGS, LLC'S SHARED IT PLATFORM

Studio Enterprise Manager, LLC ("Studio") hereby files this third status report in response to the Court's Order dated March 28, 2019, Docket No. 213 (the "Order") allowing "two weeks (or until 4:00 p.m. EDT on April 11, 2019) for the receiver, Studio and South University to negotiate any changes to the parties' existing agreements that are needed to effect the separation of South University and the Art Institutes from the IT Platform not later than September 11, 2019" (the "Separation Deadline").

Studio received a draft of Mark E. Dottore, the receiver's (the "Receiver") proposed plan for separation of the university systems (the "Receiver's Separation Plan") at 4:54 p.m. on April 10, 2019. The Receiver requested a call with Studio to discuss the Receiver's Separation Plan, and the call was held at 1:00 p.m. today. Representatives of Dream Center South University, LLC (collectively with all of its subsidiaries, "South University") and The Arts Institutes International, LLC (collectively with all of its subsidiaries, "the Arts Institutes") also participated in the call.

{8028996:2 }

Studio worked throughout the evening of April 10 and this morning to prepare a comparison of the Receiver's Separation Plan against Studio's Separation Plan (Docket No. 206). For ease of reference, a copy of the Receiver's Separation Plan is attached hereto as Exhibit A, a copy of Studio's Separation Plan is attached hereto as Exhibit B, and a copy of Studio's comparison of the two plans is attached hereto as Exhibit C (the "Comparison"). Studio provided a copy of the Comparison to the Receiver, South University, the Arts Institutes, Education Principle Foundation and certain lenders for South University (the "South Lenders") immediately prior to today's call.

South University and the Arts Institutes were offered the opportunity to posit questions to the Receiver and Studio about their respective plans, and Studio asked each of South University and the Arts Institutes to inform the group as to which plan they prefer. Both South University and the Arts Institutes informed the group that they each would like to move forward with Studio's Separation Plan.

Studio also informed the participants that the material differences between the Receiver's Separation Plan and Studio's Separation Plan are the following:

1. The Receiver is charging $250,000 per month ($1.5 million total) above the direct costs of the IT Platform.

2. The Receiver is allocating all costs other than employees on a 50/50 basis, which is contrary to the existing MSAs,[1] the TSLA and Studio's Separation Plan, and effectively shifts $1.7 million of the costs to the Arts Institutes.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Reorganization Documents. The Reorganization Documents include a Framework Agreement (the "FWA"), a Master Bundled Services Agreement (the "BSA"), a Technology Licenses and Services Agreement (the "TLSA"), a Master Asset Purchase Agreement (the "APA"), a License Agreement (the "License"), and a Restrictive Covenant Agreement (the "Restrictive Covenant Agreement" and collectively with the FWA, BSA, TSLA, APA and License, the "Ai Transaction Documents"), a Master Services Agreement with each of South University, the Arts Institutes, and Argosy University (each as defined below) (collectively, the "MSAs"), a Transition Services and License

3. The Receiver is seeking $250,000 per month ($1.5 million total) to pay past due payables based on his "business judgement" even though the post-receivership payables are only $629,635.00. It is not clear where the rest of the money will be spent.

4. The Receiver does not offer any deferral of any costs if either South University or the Arts Institutes are unable to pay such costs. Studio's Separation Plan, the MSAs and TSLA do provide for deferrals.

5. The Receiver's Separation Plan will require amendments to the MSAs and TSLA, and these amendments may require consent of the South Lenders. This consent has not been obtained as of this date.

6. The Receiver claims to be in negotiations to provide, but currently does not have, healthcare benefits for the Shared IT Employees at a roughly equivalent cost of the healthcare benefits that Studio already has available.

Other participants on the call were offered the opportunity to ask questions, make comments and indicate if they had any preference to one plan or the other. Mr. Michael Lau, representing the South Lenders, inquired as to how Studio's Separation Plan would impact the receivership. The Receiver did not respond to Mr. Lau's question. Studio responded that Studio's Separation Plan would not require the receivership to continue, and Studio was confident that it could execute Studio's Separation Plan with or without the receivership. It is unclear to Studio how the receivership could survive.

---

Agreement with DCEH (the "TSA"), the Amended and Restated Framework Agreement (the "Amended FWA"), an Equity and Asset Purchase Agreement (the "EAPA"), the Omnibus Amendment No. 2 to Credit Documents (the "Bridge Loan"), and an Interim Framework Agreement (as amended, the "IFWA" and collectively with each of the MSAs, the Bridge Loan, the TSA, the Ai Transaction Documents, and the other transaction documents contemplated by the IFWA, the "Reorganization Documents").

Studio informs the Court that it is doubtful – given the continuous egregious behavior of the Receiver – that Studio actually would be allowed to execute Studio's Separation Plan with the Receiver in place.  The Receiver's behavior has only become more desperate and detrimental to the survival of South University and the Arts Institutes, as evidenced by the blatantly false assertions in his frivolous Emergency Motion of the Receiver for an Order Requiring Studio Enterprise Manager, LLC and John J. Altorelli to Show Cause Why They Should Not be Held in Contempt of this Court for their Violations of the Injunctions Contained in the Amended Order Appointing Receiver, filed today (Docket No. 252).  Consequently – and especially given the support of both the Arts Institutes and South University for Studio's Separation Plan – Studio believes the best solution is for this Court to terminate the receivership at the earliest possible date, allowing Studio, the Arts Institutes, and South University to move forward with Studio's Separation Plan without the interference of the Receiver.

Further, Studio received some additional comments and concerns from South University at 3:40 p.m., because South only had a short time to review the Comparison before today's call.  Studio believes it will be able to adequately satisfy the concerns raised by South University without having to change any terms of the Separation Plan, the MSAs or TSLA.  Studio will promptly engage with South to do so.

Given that South University and the Arts Institutes have made their decision unequivocally clear, Studio will dispense with setting forth a narrative description of all of the reasons that the Receiver's Separation Plan was defective and unduly burdensome to both university systems.  Studio's Comparison speaks for itself, and the Court will be able to make the appropriate judgment based on the facts.

*[Remainder of page intentionally blank; signature page follows]*

April 11, 2019                                     Respectfully submitted,

/s/ *Scott N. Opincar*
M. Colette Gibbons (0003095)
Scott N. Opincar (0064027)
Maria G. Carr (0092412)
Adam C. Smith (0087720)
MCDONALD HOPKINS LLC
600 Superior Ave., E., Ste. 2100
Cleveland, OH 44114
T: (216) 348-5400
F: (216) 348-5474
Email: cgibbons@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
asmith@mcdonaldhopkins.com

-and-

Dianne F. Coffino (admitted *pro hac vice*)
Martin E. Beeler (admitted *pro hac vice*)
Gabriella B. Zahn-Bielski (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: dcoffino@cov.com
mbeeler@cov.com
gzahnbielski@cov.com

*Co-Counsel for Studio Enterprise Manager, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2019, a copy of the foregoing Studio Enterprise Manager, LLC's Third Status Report for the Extrication of the Ongoing Campuses of South University and The Arts Institutes Entities from the Dream Center Holdings, LLC's Shared IT Platform was filed electronically. Notice of this filing will be sent to all parties by the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Scott N. Opincar*
Scott N. Opincar (0064027)