UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) CASE NO. 1:19-cv-145 |
| | ) |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MOTION FOR AN ORDER AUTHORIZING PURCHASE OF
"TAIL" EXTENSION UNDER DIRECTORS AND OFFICERS
INSURANCE POLICIES AND GRANTING PRIORITY CLAIM TO
THIRD-PARTY LENDER ADVANCING FUNDS TO PAY INSURANCE
<u>PREMIUMS FOR THE TAIL EXTENSION</u>**

Mark E. Dottore, Receiver of the Receivership Entities [1] (the "**Receiver**"), moves this Court for the entry of an order authorizing the Receiver to purchase "tail" extension under directors and officers insurance policies (the "**D&O Policy**") currently in effect between various insurance carriers and the Receivership Entities. Funds for the payment of the premium will be advanced by Exeter Capital, LLC ("**Exeter**"), an entity which is related to the former directors and officers of the Receivership Entities. In return for advancing the premium for the extension of the D&O Policy, Exeter seeks priority repayment from and a secured priority lien on any fund

---

[1] The "Receivership Entities" are South University of Ohio LLC, Dream Center Education Holdings LLC, The DC Art Institute of Raleigh-Durham LLC, The DC Art Institute of Charlotte LLC, DC Art Institute of Charleston LLC, DC Art Institute of Washington LLC, The Art Institute of Tennessee - Nashville LLC, AiTN Restaurant LLC, The Art Institute of Colorado LLC, DC Art Institute of Phoenix LLC, The Art Institute of Portland LLC, The Art Institute of Seattle LLC, The Art Institute of Pittsburgh, DC LLC, The Art Institute of Philadelphia, DC, LLC, DC Art Institute of Fort Lauderdale LLC, The Illinois Institute of Art LLC, The Art Institute of Michigan LLC, The Illinois Institute of Art at Schaumberg LLC, DC Art Institute of Phoenix, LLC and its direct subsidiaries the Art Institute of Las Vegas LLC, the Art Institute of Indianapolis, LLC, and AiIN Restaurant LLC; Dream Center Argosy University of California LLC and its direct subsidiaries, and Argosy Education Group LLC; Dream Center Education Management LLC; and, South University of Michigan LLC. *See* Order Appointing Receiver [Docket no. 8, filed Jan. 18, 2019] (the "**Initial Receiver Order**") at 3-4; *see also* Order Clarifying Order Appointing Receiver [Docket no. 14, filed Jan 25, 2019] (the "**Clarifying Order**") at 1 (removing AU Student Funding, LLC as a "Receivership Entity").

{00021353-2}

created by litigation filed by the Receiver provided that the payment from and the lien priority is (i) behind any fees, costs and expenses of producing the litigation fund, including any contingency fees not to exceed forty (40) percent (and any contingency fee in excess of forty (40) percent is subject to approval of Exeter, or the excess of the contingency fee over forty (40) percent is payable behind the payment to Exeter); (ii) behind the fees and costs of the Receiver and his professionals (the "**Professional Fees**") including behind any lien granted to the Receiver and his professionals for the Professional Fees in the Amended Receiver Order; (iii) behind all other administrative costs and expenses of this Receivership (the "**Other Administrative Expenses**"), (iv) ahead of U.S. Bank National Association ("**U.S. Bank**"), as administrative agent and collateral agent under that certain Credit Agreement,[2] and (iv) ahead of Studio Enterprises Manager LLC, a possible secured lender. The advances will be interest free.

A memorandum in support of this Motion is attached.

Dated: April 16, 2019

Respectfully submitted,

/s/ Mary K. Whitmer
Mary K. Whitmer (0018213)
James W. Ehrman (0011006)
Robert M. Stefancin (0047184)
WHITMER & EHRMAN LLC
2344 Canal Road, Suite 401
Cleveland, Ohio 44113-2535
Telephone: (216) 771-5056
mail: mkw@WEadvocate.net
jwe@WEadvocate.net
rms@WEadvocate.net
*Counsel for Mark E. Dottore, Receiver*

---

[2] As used herein, the term "Credit Agreement" means that certain Senior Secured Credit and Guaranty Agreement, dated as of October 17, 2017, as amended by that certain Amendment No. 1 and Limited Forbearance Agreement dated as of August 31, 2018 and that certain Omnibus Amendment No. 2 to Credit Documents dated as of January 7, 2019, by and among Dream Center Education Holdings, LLC, Dream Center Argosy University of California, LLC, and Dream Center Education Management, LLC, as borrowers, certain subsidiaries of the borrowers, as guarantors, the lenders party thereto from time to time, and U.S. Bank National Association, as administrative agent and collateral agent, as the same may be amended, amended and restated, modified, supplemented, or otherwise modified from time to time.

{00021353-2}

and

Robert T. Glickman (0059579)
Charles A. Nemer (0009261)
Robert R. Kracht (0025574)
Hugh D. Berkson (0063997)
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
(216) 696-1422 – Telephone
(216) 696-1210 – Facsimile
rtg@mccarthylebit.com
can@mccarthylebit.com
rrk@mccarthylebit.com
hdb@mccarthylebit.com
nro@mccarthylebit.com

*Special Counsel for the Receiver*

## CERTIFICATE OF SERVICE

The foregoing was electronically filed on April 16, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Mary K. Whitmer*
Mary K. Whitmer

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) CASE NO. 1:19-cv-145 |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER AUTHORIZING PURCHASE OF "TAIL" EXTENSION UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES AND GRANTING PRIORITY CLAIM TO THIRD-PARTY LENDER ADVANCING FUNDS TO PAY INSURANCE PREMIUMS FOR SAID TAIL EXTENSION**

I. INTRODUCTION

In 2017, Dream Center Education Holdings, LLC together with various subsidiaries and affiliates purchased Non-Profit Directors and Officers Liability insurance policies (the "**D&O Policies**") from National Union Fire Insurance Company of Pittsburgh, Pa and various other carriers[1] to cover claims against their directors and officers in connection with such individuals' responsibilities as directors and officers of any one or more of the Receivership Entities (collectively, the "**Individual Insureds**"). The D&O Policies along with excess insurers provided coverage for claims for "wrongful acts" against the Individual Insureds. Currently, the D&O Policies are set to expire on April 17, 2019 at 12:01 a.m.

---

[1] Coverage providers are National Union Fire Insurance Company of Pittsburgh, Pa, Policy Nos. 02-420-25-70 and 02-420-25-71; Everest National Insurance Company Policy No. SC5EX00111-171; Starr Indemnity & Liability Company Policy No. 1000620558171; Ironshore Indemnity Inc. Policy No. 003319600; and Landmark American Insurance Company Policy No. LHS674187.

{00021354-2 }

The Receiver intends to purchase an extension of the reporting period under the D&O Policies for approximately $722,000.00 plus taxes and fees, in order to extend the coverage reporting period through April 17, 2020 at 12:01 a.m. (the "**Tail Extension**"). The funds for the purchase of the Tail Extension will be paid by Exeter Capital, LLC ("**Exeter**"), a party related to certain officers and directors of the Receivership Entities. In return for advancing the premium for the extension of the reporting period under the D&O Policy, the Receiver seeks to repay Exeter from, and grant a secured priority lien for Exeter on, any proceeds created by litigation filed by the Receiver provided that Exeter's repayment and lien priority is (i) behind any fees, costs and expenses of producing the litigation fund, including any contingency fees not to exceed forty (40) percent (and any contingency fee in excess of forty (40) percent is subject to approval of Exeter, or the excess of the contingency fee over forty (40) percent is payable behind the payment to Exeter); (ii) behind the fees and costs of the Receiver and his professionals (the "**Professional Fees**") including any lien granted to the Receiver and his professionals for the Professional Fees in the Amended Receiver Order; (iii) behind all other administrative costs and expenses of this Receivership (the "**Other Administrative Expenses**"), (iv) ahead of U.S. Bank National Association ("**U.S. Bank**"), as administrative agent and collateral agent under that certain Credit Agreement,[2] and (iv) ahead of Studio Enterprises Manager LLC, a possible secured

---

[2] As used herein, the term "Credit Agreement" means that certain Senior Secured Credit and Guaranty Agreement, dated as of October 17, 2017, as amended by that certain Amendment No. 1 and Limited Forbearance Agreement dated as of August 31, 2018 and that certain Omnibus Amendment No. 2 to Credit Documents dated as of January 7, 2019, by and among Dream Center Education Holdings, LLC, Dream Center Argosy University of California, LLC,

2

{00021354-2 }

lender. For the avoidance of doubt, any such lien and priorities granted to Exeter shall not extend to the shared IT platform or any proceeds thereof. The funds advanced shall be interest free.

## II.  THE D&O POLICIES AND TAIL EXTENSION

The D&O Policies provide coverage in the amount of $50 million for new claims asserted from October 17, 2017 through April 17, 2019 at 12:01 a.m. (the **"Policy Period"**). Unless the Policy Period is extended, the D&O Policies coverage will be unavailable to the Individual Insureds for any new claims made after the Policy Period. Presently, the Receivership Estate is in the process of liquidation. The Receiver and Exeter seek to provide adequate insurance to the stakeholders of this Receivership as well as the Individual Insureds. By inducing Exeter to pay the costs of an extension of the D&O Policies with priority repayment, all stakeholders of this Receivership, secured and unsecured creditors alike, will benefit.

The Receiver believes that the purchase price for the Tail Extension is fair and reasonable and the purchase of the extended reporting period through the current insurers would be the most cost-effective means because any insurance carrier unfamiliar with the Receivership Entities would most likely decline coverage or charge an unreasonably high premium.

The cost of the Tail Extension would be borne not by the Receivership Estate but rather, by Exeter, with a promise of repayment from litigation proceeds. While

---

and Dream Center Education Management, LLC, as borrowers, certain subsidiaries of the borrowers, as guarantors, the lenders party thereto from time to time, and U.S. Bank National Association, as administrative agent and collateral agent, as the same may be amended, amended and restated, modified, supplemented, or otherwise modified from time to time.

this Court's Receivership Order is broad enough to authorize the Receiver to purchase the Tail Extension in the ordinary course (*see* Amended Receivership Order ¶ 2(k) (Doc. 150)), the fact of the matter is that the Receiver does not currently have funds available to allocate to this purchase, and because the grant of a priority claim would impact the status of other creditors and stakeholder claims, the Receiver seeks the Court's approval to provide priority repayment to Exeter. This Court's Amended Order Appointing Receiver [Dkt.No. 150] (the "**Receiver Order**") provides that the Receiver may borrow funds on terms and conditions as the court may approve. (*See*, ¶¶ 7 through 9). Any such borrowing would in subject to Paragraphs 13 and 14 of the Receiver Order.

## III. THE RELIEF SHOULD BE GRANTED

The Sixth Circuit has explained the broad powers an equity receiver is invested with:

> To begin, we review the powers of a federal district court presiding over an equity receivership. Such receiverships are increasingly rare. The realm of bankruptcy encompasses the vast majority of cases involving receivership, and in that realm Congress has spoken by setting forth broad and detailed statutes to guide federal courts in the disposition of such cases. There remains a class of cases, however, in which the federal courts may exercise their equitable powers and institute receiverships over disputed assets in suits otherwise falling within the federal court's jurisdiction, but which fall outside the statutory bankruptcy proceedings or other legislated domain. In this range of cases the federal courts exercise the traditional, common law powers of equity. The current rules specifically reference such equitable practices and incorporate them into today's civil proceedings. Rule 66 of the Federal Rules of Civil Procedure instructs that: "The practice in the

4

> administration of estate by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts." Fed. R. Civ. Pro. 66. Indeed, we have held in related proceedings to the instant case that "a district court has broad powers in fashioning relief in an equity receivership proceeding ...." *Liberte Capital Group, LLC v. Capwill*, 421 F.3d 377, 382 (6th Cir. 2005).
>
> A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary. *See* 13 Moore's Federal Practice ¶¶ 66.02–.03 (3d ed.1999). As an officer of the court, the receiver's powers are coextensive with his order of appointment. *Id.*

*Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Likewise, this Court's Local Rules provide that "the receiver or similar officer shall administer the estate as nearly as may be in accordance with the practice in the administration of estates in bankruptcy, except as otherwise ordered by the Court." Local Rule 66.1(d).

Here, the analogous provisions of the Bankruptcy support the relief the Receiver requests. For centuries, the law has allowed a Receiver to borrow funds in exigent circumstances, and the credit extended may be secured by a lien on property of the estate that is senior to or equal to an existing lien on the property, provided that the existing lienholder is adequately protected. *See, Central Bank of Boston v. Stevens*, 169 U.S. 432 (1898), recitation of the terms of the Receiver's borrowing, pg. 438-440. The equitable terms and conditions of a receiver's borrowing are

analogous to those incorporated into Bankruptcy Code § 364(d). Under that provision, a trustee may "prime" an existing lien, notwithstanding covenants in the existing loan agreement or provisions of nonbankruptcy law that would protect the position of the existing lender.

The ability to prime an existing lien is extraordinary, and in addition to the requirement that the Receiver be unable to otherwise obtain the credit, the Receiver must provide adequate protection for the interest of the holder of the existing lien or obtain such lien holder's consent. *See* 11 U.S.C. § 364(d); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) ("Section 364(d)(1) of the Bankruptcy Code permits the Court to authorize a debtor-in-possession to obtain credit secured by a lien senior or equal to a lien on property of the estate if such credit cannot be otherwise obtained and 'there is adequate protection of the interest of the holders of the lien on the property of the estate on which such senior lien is to be granted.'"). Moreover, as with other non-ordinary course unsecured borrowing, the credit and its terms must be authorized by the court on terms that are equitable. Notice must be given to all affected secured lenders.

Here, all of the requirements for the incurrence of non-consensual priming financing are satisfied. <u>First</u>, exigent circumstances exist that justify the priming of the existing secured lenders' liens. The Receiver needs the borrowing in order to effectuate the Tail Extension.

<u>Second</u>, the Receiver is not otherwise able to obtain secured or unsecured credit. The Receiver is without funds to pay the Tail Extension because of the pre-

6

{00021354-2 }

Receivership transactions, including the Studio Transaction, the failure to pay over to students their stipends, and because the DOE has determined that it will no longer fund Argosy. No one else will lend to the Receiver for this purpose.

Third, and most importantly, the interest of the existing secured lenders in the collateral is adequately protected. It is anticipated that U.S. Bank will not object to the borrowing. The Receiver does not owe Studio any money, it is the other way around, Studio owes the Receiver. In addition, the secured creditors do not have a security interest in the litigation proceeds and the security interest and priorities to be granted do not extend to the shared IT platform or any other collateral or the proceeds thereof. Even if U.S. Bank and Studio could claim the litigation proceeds, the priming will enhance the value of the collateral being held by the secured lenders. *See First Sec. Bank & Tr. Co. v. Vander Vegt*, 511 B.R. 567, 581 (N.D. Iowa 2014) (affirming a bankruptcy court's decision to grant a non-consensual priming lien to secure debtor-in-possession financing because, among other things, the proposed loan would "more likely than not increase the value of the . . . collateral"); *see also, Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 123-24 (N.D. Ga. 1989) ("it is unlikely that Congress would have included § 364(d) and (e) in the Bankruptcy Code if it considered the loss of a first priority position, irrespective of adequate protection was, ipso facto, irreparable harm.").

Fourth, the terms of the proposed borrowing are equitable, and the borrowing is necessary to preserve the value of the secured lenders' collateral. This is

7

evidenced by the fact that Flagler Master Fund SPC, LTD supports the proposed financing. As to Studio, the Receiver's borrowing is in Studio's interest.

<u>Finally</u>, the Receiver believes that all parties with a beneficial interest in the collateral have obtained notice of this Motion. The United States Department of Education or another branch of the federal government asserts that it has a priority, or may be a lien holder in the future, and that, pursuant to 31 U.S.C. § 3713, its liens may or may not prime such lending. The federal government has been given notice of this borrowing and may enter its objections or consents as it sees fit.

Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a Court may authorize a debtor to enter into transactions outside the ordinary course of business if a sound business purpose exists for doing so. *See Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (noting that the criteria for approval of a transaction under section 363 of the Bankruptcy Code is whether the debtor has "an articulated business justification"); *see also Matter of Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984) (The debtor-in-possession "is required to justify the proposed [transaction] with sound business reasons[.]"). Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to

8

{00021354-2 }

the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).

There is ample business justification to support the purchase of the Tail Extension. The Receiver with the assistance of certain of the Individual Insureds have worked toward an orderly liquidation of the assets of the Receivership Entities to maximize value for all stakeholders. An extension of the D&O Policies will protect the Individual Insureds, and provide a benefit to creditors that may have claims under these Policies.

## IV. CONCLUSION

Because the Receiver does not have funds available to pay for the Tail Extension, the Court should grant a priority claim to Exeter (as described above), which is funding the Tail Extension. The Receiver respectfully requests entry of an order granting the relief requested herein and such other relief as the Court may deem just and appropriate.

Dated: April 16, 2019 　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Mary K. Whitmer*
　　　　　　　　　　　　　　　　　　　Mary K. Whitmer (0018213)
　　　　　　　　　　　　　　　　　　　James W. Ehrman (0011006)
　　　　　　　　　　　　　　　　　　　Robert M. Stefancin (0047184)
　　　　　　　　　　　　　　　　　　　WHITMER & EHRMAN LLC
　　　　　　　　　　　　　　　　　　　2344 Canal Road, Suite 401
　　　　　　　　　　　　　　　　　　　Cleveland, Ohio 44113-2535
　　　　　　　　　　　　　　　　　　　Telephone: (216) 771-5056
　　　　　　　　　　　　　　　　　　　Email: mkw@WEadvocate.net
　　　　　　　　　　　　　　　　　　　　　　　 jwe@WEadvocate.net
　　　　　　　　　　　　　　　　　　　　　　　 rms@WEadvocate.net
　　　　　　　　　　　　　　　　　　　*Counsel for Mark E. Dottore, Receiver*

　　　　　　　　　　　　　　　　　　　and

                Robert T. Glickman (0059579)
                Charles A. Nemer (0009261)
                Robert R. Kracht (0025574)
                Hugh D. Berkson (0063997)
                Nicholas R. Oleski (0095808)
                McCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA
                101 West Prospect Avenue
                1800 Midland Building
                Cleveland, Ohio 44115
                (216) 696-1422 – Telephone
                rtg@mccarthylebit.com
                can@mccarthylebit.com
                rrk@mccarthylebit.com
                hdb@mccarthylebit.com
                nro@mccarthylebit.com

                *Special Counsel for the Receiver*