UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | : | Case No. 1:19-CV-145 |
| | : | |
| Plaintiff, | : | |
| v. | : | JUDGE DAN AARON POLSTER |
| | : | |
| SOUTH UNIVERSITY OF OHIO, LLC., et al., | : | MAGISTRATE JUDGE |
| | : | THOMAS M. PARKER |
| Defendants. | : | |

**<u>STATUS REPORT CONTAINING THE POSITION STATEMENT OF DREAM CENTER SOUTH UNIVERSITY, LLC REGARDING THE RECEIVER'S IT PLAN AND STUDIO'S IT PLAN</u>**

Intervenor Dream Center South University, LLC ("South"), by and through its undersigned counsel, files this Status Report Containing the Position Statement Regarding the Receiver's IT Plan and Studio Enterprise Manager, LLC's Separation Plan as reflected in Studio's Third Status Report (ECF # 257) in accordance with the Court's April 16, 2019 Order (ECF # 264).

## I. INTRODUCTION

South requires the critical shared transitional IT services and compliance services in order to function as a viable university system serving over 10,000 students.[1] On March 26, 2019, Studio filed a Separation Plan through which it intends to provide services to South and the Arts Institutes. (ECF # 206-1 ("Separation Plan").) On April 11, 2019, the Receiver filed its own plan and payment structure with the Court. (ECF # 256.) Neither plan was perfect. In comparing the plans, however, the Studio plan offers the most protection against the harm caused

---

[1] South also requires student financial services and originally was concerned that Studio's Separation Plan did not account for those services. In response, Studio represented that these are not shared services required by the Arts Institutes and that Studio would not object to South hiring such non-shared employees directly to the extent otherwise permissible. Based on Studio's representation, this problem has been resolved recently to South's satisfaction.

by additional departures of key employees, will be governed by existing contractual provisions that ensure that South will only pay reasonable, approved fees to Studio, and assures that the critical services will be maintained, which cumulatively will fulfill the needs of South and its students through the migration.  South and Studio have agreed to address their remaining issues within the structure of their Managed Services Agreement ("MSA") at a later date.  South's concurrence with Studio's Separation Plan does not waive, explicitly or implicitly, its rights, claims, defenses, and disputes relating to Studio or the MSA, which are all hereby reserved.

## II.  STATEMENT

### A.  The Receiver's IT Plan

The terms of the Receiver's IT transition plan, which was presented to South and Studio in draft form shortly before it was filed (ECF # 256 (the "Receiver's Plan")), identified for the first time what South perceives as unreasonable, additional charges that the Receiver would seek to collect from South and created uncertainty over whether receivership entity Dream Center Education Holding ("DCEH") could continue to provide the required services to South.  The Receiver's Plan disclosed that the Receiver no longer intended to charge actual costs to South and the Arts Institutes as the parties had previously approved (*see, e.g.*, ECF 239-1 PageID # 4580 at n.1.), nor did he intend to collect payments in accordance with the Transition Services and License Agreement's ("TSA") provisions.  Instead, the Receiver proposed to tack on $500,000 in extraneous and unsupported charges per month, charge South for amounts that it previously paid, and charge South for amounts that it had no obligation to pay, including for 2018 costs.  (ECF # 257-1 PageID # 4983 (March payroll amount); *id.* PageID # 4987 (2018 and 1st quarter 2019 amounts).)

South previously proposed that South and the Arts Institutes continue to pay for shared

services as agreed between and among the parties in recognition of the unexpected and unique post-Argosy world in which the TSA's beneficiaries found themselves. (*See, e.g.*, ECF # 239-1 PageID # 4580 at n.1; ECF # 240-1) The Receiver's efforts to charge those unsupported figures eviscerated the rationale for the parties' agreement to make direct payments to DCEH (with the agreement of Studio and DCEH). Moreover, Studio's and DCEH's conduct is governed by existing contractual agreements including the TSA (*see* ECF 240 at PageID # 4604-09, 4613-14). Because the Receiver's plan ignores the TSA and DCEH's corresponding obligations thereunder, it also removes the protection South receives from the TSA's provisions limiting fees charged to the universities for shared services that South requires in order to operate. (*See id.* at PageID # 4613-14.)

Aside from the monetary and contractual issues created by the Receiver's plan, the Receiver has recently lost the ability to provide essential compliance services to South. As the Receiver now concedes, Studio has hired the key compliance employees that provided services to South in accordance with the EDMC Consent Judgment. (ECF # 252 at PageID # 4932-33.) DCEH's loss of these employees is currently the subject of the Receiver's Emergency Motion for an Order to Show Cause as to why Studio and John J. Altorelli should not be held in contempt. (*Id.*) Because compliance services are essential, however, South cannot remain in limbo without this crucial service while the Receiver, Studio, and Mr. Altorelli resolve their dispute. As a result of the Receiver's failure to maintain the compliance employees, the only way for South to obtain compliance services from a skilled staff going forward was *directly from Studio* (rather than through Studio serving as pass-through of DCEH services under the TSA).

Accordingly, South is unable to accept the Receiver's plan for these reasons.[2]

---

2      Studio contends that it has the rights and ability to negotiate IT licenses and contracts and otherwise successfully provide critical services to South in accordance with the MSA through the migration regardless of

3

### B. The Studio Separation Plan

South previously stated its objections and concerns with Studio's Separation Plan and proposed sublease and sought Court intervention because Studio's actions threatened South's ability to transition from the DCEH shared IT system.[3] South reasserted certain of these and other objections to Studio before Studio filed its Third Status Report, and Studio promised the Court that it could satisfy South's concerns and would engage with South to do so. (ECF # 257 at PageID # 4979.) Initially Studio merely sent a dismissive email asserting that South's objections to the Separation Plan reflect changes to the MSA and ignoring all of South's concerns about Studio's violations of the MSA. Thereafter, however, South participated in direct communications with Studio and its counsel to explain that South's concerns were based on *Studio's disregard* for key MSA provisions. Through those calls and other exchanges, South and

---

whether the Receivership continues. Studio is in a superior position to South to know the full scope of its capabilities and plan, and Studio controls its performance of the MSA. South, however, still has reason to believe that the existing protections afforded through the Receivership will benefit the university system and its students despite DCEH's inability to provide the necessary transitional services directly to South.

[3] On March 28, 2019, South filed its Reply to Studio's Response to Brief Regarding Motion for Extension of Time. (ECF # 212.) On April 8, 2019, South filed its Motion for Clarification on Payment Terms (ECF # 239) and Response to Studio's Motion for an Order Requiring the Receiver to Execute Sublease and Comply with Terms (ECF # 240). Each of these filings addresses South's objections to Studio's Separation Plan as well as Studio's related actions. *South withdraws its request for relief in the Motion for Clarification (ECF # 239),* which sought to confirm the parties' arrangement of making payments directly to the receiver for shared services to eliminate the risk that Studio would fail to transmit payment promptly to the Receiver. Due to the Receiver's inability to provide compliance services from DCEH to South through the TSA-MSA structure, this course of action is not an option nor is it necessary in light of Studio's direct promise to provide services through South's migration. *See supra* II.A at 3.

Portions of South's response to the sublease motion (ECF # 240) have either been mooted or need not be decided by this Court. South objected to Studio's proposed sublease for the data center space because it contained unfavorable, harmful sublease terms that would hinder South's ability to complete the IT migration by entering into a more expensive lease for the data center space that could be terminated before the Court-mandated September 11, 2019 migration deadline. South also objected to Studio's attempt to require South to pay Studio additional, unreasonable overhead fees, and other charges in violation of the MSA. Studio has assured South that the shared services would be available until September 11, 2019, and Studio agreed to extend the term of the sublease it seeks. As South understands, the final payment terms for any sublease have yet to be determined, but the Receiver has paid some of the rent amounts for which the landlord was attempting to charge Studio in the sublease. In accordance with the MSA, South would pay its allocation of reasonable rent while it is receiving shared IT services housed at the data center. Studio assured South that the charges Studio makes to South will reflect actual costs regardless of the estimates in Studio's Separation Plan. South will object to any impermissible charges, including Wind Down charges and overhead costs, in accordance to the MSA if necessary.

4

Studio have agreed that, having resolved certain practical questions and concerns, their remaining disputes may ultimately need to be resolved according to the dispute resolution provisions of the MSA after the migration and without the need for this Court's intervention.

Specifically, Studio agreed that (i) it will provide shared IT and compliance services through the transitional period as South migrates from the DCEH IT platform; (ii) it will only charge actual costs for payroll, vendor contracts, license, rent, and other costs (regardless of the estimates in its Separation Plan); (iii) it will defer any amounts that South cannot pay due to budget constraints; and (iv) the MSA terms govern the provision of services. Studio and South still disagree on the import of several key MSA terms.[4] Studio and South are currently addressing such disputes over payment demands made by Studio. (*See, e.g.*, ECF # 240-8, 240-9.) The MSA contains payment requirements and provisions that Studio cannot (and South does not agree to) modify through the submission of its Separation Plan to this Court. It is South's expectation that Studio's ongoing provision of services will comply with its contractual and other legal obligations to South. (*Cf.* ECF # 257 at PageID # 4979 (services can be provided without changing MSA or TSA).) South continues to reserve all of its objections, rights, claims, and defenses, including those under the MSA and other transactional documents, at law, or in equity.

---

[4] For instance, Studio seeks to recover its attorneys' fees incurred in the authorization, preparation, negotiation, execution, or performance of the MSA and the potential consummation of the transactions contemplated thereby from South despite express terms in the MSA requiring Studio to bear those costs itself. (ECF # 240-9 PageID # 4664-4665.) South will continue to object to Studio's efforts to recover its attorneys' fees repackaged (without justification or backup) as legitimate "overhead". (ECF # 240 PageID # 4607-4608.)

### III.     CONCLUSION

Because of the serious issues with the Receiver's Plan as stated above, South has accepted Studio's Separation Plan in reliance upon the assurances provided by Studio recently and the existing protections set forth in the MSA.

        Respectfully submitted,

        COHEN & GRIGSBY, P.C.
        By:  */s/ Ingrid A. Bohme*
        Fridrikh V. Shrayber (Ohio Bar No. 0095330)
        Ingrid A. Bohme (admitted *pro hac vice*)
        Morgan J. Hanson (admitted *pro hac vice*)
        Helen S. Ward (admitted *pro hac vice*)
        625 Liberty Avenue
        Pittsburgh, PA  15222-3152
        412-297-4900 / 412-209-0672 (Fax)
        fshrayber@cohenlaw.com
        ibohme@cohenlaw.com
        mhanson@cohenlaw.com
        hward@cohenlaw.com

        *Attorneys for Intervenor,*
        *Dream Center South University, LLC*

Dated: April 18, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of April, 2019, the foregoing *Status Report Containing the Position Statement of Dream Center South University, LLC Regarding the Receiver's IT Plan and Studio's IT Plan* was filed with the Court electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. Parties identified as not receiving electronic filing notifications will be served by U.S. First Class Mail.



*/s/ Ingrid A. Bohme*