UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | CASE NO. 1:19-CV-00145 |
| Plaintiff, | |
| v. | JUDGE DAN AARON POLSTER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | |
| Defendants. | MAGISTRATE JUDGE THOMAS M. PARKER |

**STUDIO ENTERPRISE MANAGER, LLC'S NOTICE REGARDING THE REORGANIZATION DOCUMENTS AND THE SUBLEASE**

Studio Enterprise Manager, LLC ("Studio") hereby files this notice regarding the Reorganization Documents[1] and Studio's proposed Sublease, as referenced in the Motion for an Order Requiring the Receiver to (i) Execute Sublease for the Pittsburgh Data Center; and (ii) Comply With the Terms of the Reorganization Documents and the Settlement Agreement, Docket No. 230 (the "Motion") and as required by this Court in a minute order dated May 1, 2019.

In brief, there is no explicit authorization in the Reorganization Documents providing for the execution of the Sublease; Studio did not originally anticipate that it would need to take over the lease for the Data Center in order to efficiently and effectively execute its separation plan. However, Studio recognized the need for the Sublease based on the Receiver's failure to pay the rent for the Data Center throughout the receivership until recently. Because the Receiver failed to pay the rent for the receivership for months on end, South University and the Arts Institutes were at risk of being evicted from the Data Center, and eviction of these two university systems

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

{8076799: } 1

would have been detrimental to the operation of both entities. Once Studio recognized the potential risk of eviction, Studio negotiated the Sublease with the landlord that offered certainty for both the landlord for the Data Center and the university systems that use the Data Center.

Further, the Receiver's control over the Data Center has been a continuing problem for Studio and DCEH employees (some of whom are now Studio employees) throughout the receivership (*See, e.g.* Studio's Second Status Report (Docket No. 257) (detailing the Receiver's termination of access to the shared IT platform for the shared compliance employees who accepted employment with Studio); *see also* the Receiver's motion for contempt against Studio (Docket No. 252) (in which the Receiver moved to find Studio in contempt for assisting the Arts Institutes in recovering their IP addresses) and Studio's response (Docket No. 261) (explaining that the IP addresses at issue were actually owned by and registered in the name of the Arts Institutes)). Now that virtually all of the employees remaining in the Data Center are employed by Studio, South University or the Arts Institutes, there is no valid reason to keep the Receiver in place as the middleman between Studio and the landlord for the Data Center. Both the landlord for the Data Center and South University support the execution of the Sublease, and the receivership itself is set to terminate in less than a month. Because of the Receiver's past behavior and apparent inability to pay expenses, the landlord for the Data Center actually prefers to have Studio as a tenant. Studio is willing to take on all of the lease obligations going forward.

The Sublease only requires Studio to pay some back rent and make regular payments for rent until September 30, 2019 (the termination date for the Sublease). In the absence of the Sublease, South University and the Arts Institutes will incur hundreds of thousands of dollars in additional costs to use the Data Center until Studio's separation plan is complete. Further, Section 16 of the main lease provides that any excess rent under a Sublease would be paid to the

landlord; therefore, the Sublease does not result in any loss of value to the receivership estates during the remaining few weeks of the receivership. Because the execution of the Sublease is in the best interest of all parties involved – especially given the fact that the receivership will terminate at the end of the month – Studio respectfully requests that this Court approve the Motion and the proposed Sublease.

*[Remainder of page intentionally blank; signature page follows]*

May 3, 2019　　　　　　　　　　　Respectfully submitted,

/s/ *M. Colette Gibbons*
M. Colette Gibbons (0003095)
Scott N. Opincar (0064027)
Maria G. Carr (0092412)
Adam C. Smith (0087720)
MCDONALD HOPKINS LLC
600 Superior Ave., E., Ste. 2100
Cleveland, OH 44114
T: (216) 348-5400
F: (216) 348-5474
Email: cgibbons@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
asmith@mcdonaldhopkins.com

-and-

Dianne F. Coffino (admitted *pro hac vice*)
Martin E. Beeler (admitted *pro hac vice*)
Gabriella B. Zahn-Bielski (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: dcoffino@cov.com
mbeeler@cov.com
gzahnbielski@cov.com

*Co-Counsel for Studio Enterprise Manager, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2019, a copy of the foregoing Studio Enterprise Manager, LLC's Notice Regarding the Reorganization Documents and the Sublease was filed electronically. Notice of this filing will be sent to all parties by the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *M. Colette Gibbons*
M. Colette Gibbons (0003095)