UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) CASE NO. 1:19-cv-145 |
| | ) |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | )   THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et. al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**POSITION STATEMENT REGARDING THE ORDER TERMINATING THE RECEIVERSHIP**

Mark E. Dottore, duly appointed and acting Receiver for the Receivership Entities in this case, files this position statement (the "**Position Statement**") regarding the Order Terminating the Receivership, its contents, and issues that might be considered by this Court in the termination of this Receivership.

### I.     Injunctions and the Barton Doctrine: Saving Court Time

This case is one of many parties, assets, liabilities, fiduciary duties and moving parts. The termination of this receivership while the assets are only partially administered presents various issues. Principal among these is protection of the Receiver and his professionals from pernicious litigation after the receivership terminates.

Receivers are protected by the Barton Doctrine, which provides that a party seeking recovery from a court-appointed receiver for conduct in the course of the administration of the estate must first obtain leave from the court that appointed

the receiver.  See *Barton v. Barbour,* 104 U.S. 126, 129, 26 L.Ed. 672 (1881) (involving a court-appointed receiver sued for damages allegedly suffered by a passenger while riding a railroad car in operation as part of ongoing railroad operations subject to the receivership proceeding).  The Supreme Court explained that the rationale behind the doctrine is to protect the interest of the trust or estate beneficiaries because a suit against the receiver has the effect to take money from the trust or estate without regard to the interests of other parties."

To obtain leave to pursue a complaint against a receiver, a movant must establish a prima facie claim in the complaint such that the alleged facts, if proven, state "a reasonable probability of recovery." In *PNC Bank, N.A. v. OCMC, Inc.*, 2010 U.S. Dist. LEXIS 98368, *10-12 (S.D. Ind. Sept. 20, 2010), the court denied a motion to file a complaint against a receiver sounding in breach of fiduciary duties as a result of the receiver allegedly engaging in frivolous litigation, failing to protect assets of the estate, and failing to supervise the administration of the estate since the movant could not establish that the receiver owed the movant a fiduciary duty.

In a case of this magnitude, the Receiver becomes a lightning rod for unpaid stakeholders who cannot pursue the entities or officers and directors who caused the failure of the university they attended, worked for or that owed them money. As a quasi-judicial officer of the Court, the Receiver acted in the interest of the Receivership entities, and often made hard decisions that were unpopular. The Receiver requires and deserves the protection of this Court. As a matter of federal equitable principles, the Barton Doctrine provides that protection. However, the

codification of the Barton Doctrine into the Order Terminating the Receivership allows the Receiver to deal with threats of litigation efficiently, by providing a copy of the Order Terminating the Receivership to the potential litigant, or the judge who is sitting on the case after its filing. In many cases, providing a copy of the Order will end the matter, without further involvement from the Court.

Because of the exigencies created by the termination of the receivership at this time, the Proposed Order Terminating Receivership which is attached hereto as Exhibit A contains provisions that express the equitable substance of the Barton Doctrine. These provisions are standard language in federal orders terminating receiverships. *See*, [Proposed] Order provided by the National Association of Federal Equity Receivers ("**NAFER**") attached hereto as Exhibit B.[1]

## II.   Accounting and Audit

On May 9, 2019, the Receiver was notified by the Department of Education (the "**DOE**") that there are close out audit requirements as well as other information and reporting requirements that must be met in order to complete the closure of the universities. Given the timing of the letter, the Receiver believes that the DOE might want the contents of the letter shared with the Court. Accordingly, a copy of the DOE letter is attached as Exhibit C. Obviously, it will not be possible to complete these obligations on or before May 31, 2019.

---

[1] Mr. Dottore is one of 80 full members of NAFER, which includes among its missions to develop a set of "best practices" and ethical standards for equity receivers and to improve the quality, efficiency and harmonization of receiver practices. Mr. Dottore currently is Chair of the Regulatory Outreach Committee. www.nafer.org.

The termination of the Receivership while the Receivership Entities are in possession of cash and assets requires that the Receiver pay expenses of the Receivership to the extent possible using the cash in unrestricted accounts. In addition, the Receiver intends to remove restrictions upon cash in restricted accounts in order to further pay expenses to the extent that he can. The Receiver seeks guidance from the Court regarding receivership priorities. The Receiver's view is that all available unrestricted cash should be used to pay the Receiver's fees, the unpaid employees, and then the healthcare claims of the employees. Care must be taken in order to maximize cash as quickly as possible and apply the cash to the receivership's priorities. At termination, unadministered assets shall revest in the Receivership Entities and then shall be available to executing creditors.

The Receiver intends to file a proposed Final Report containing a final proposed distribution of assets and will seek approval of the Court for the final payment of receivership expenses.

### III. Documents

There are two types of documents that need to be resolved, student records (the "**Student Records**") and books records and other documentation of the Receivership Entities (the "**Other Documents**"). With regard to the Student Records, the regulations requires that the Student Records be preserved for five (5) years. The Receiver secured the Student Records in each campus location. These secured documents were either (i) boxed and shipped to the Receiver's warehouse or (ii) boxed and sent to storage facilities. If in storage facilities, the future of the records is uncertain if no storage payments are made.

Prior to the termination of the receiverships, the Receiver intends to notify state regulators to determine whether the Student Records can be transferred to each state's safekeeping. This must occur on a state by state basis. To the extent that the Receiver cannot transfer documents in his warehouse to states, then he will maintain them and destroy them after five (5) years.

With regard to the Other Documents, those documents currently reside principally at 615 McMichael Dr. in Pittsburgh, PA. They would remain there, in the custody of those with access to the computer system. Those wishing to have access to the records must do so through the caretaker of the computer system, whomever that might be.

### IV. Diplomas and Transcripts

The Receiver is sending out as many diplomas and transcripts as possible. The Receiver is trying to locate a vendor who can provide the services to students and graduates after the receivership terminates, for a suitable fee. The Receiver will keep the Court advised as discussions continue.

### V. The Western State Law School and AI Las Vegas

When the receivership terminates on May 31, there is no solution that the Receiver is aware of that will save Western State Law School from closing. There will be no funding for the school, no registrar to certify students' coursework, no admissions, and no one to pay the lease. Similarly, AI Las Vegas will also be unable to continue if the receivership terminates The Receiver will need cooperation from Studio so that the services to the schools will be supported through May 31.

### VI  Employee Benefit Claims

Although the Receiver would like to attempt to administer and pay employee healthcare claims, the termination of the receivership will also foreclose that opportunity. The Receiver would like to see the implementation of a plan for the payment of these employee healthcare claims and a permanent injunction preventing along the lines of the plan.

### VII  Rolling Exit From Receivership

It is possible to end the receivership by entering separate terminating orders that pertain to a specific Receivership Entity thereby more slowly contracting the receivership activities when the documents can be transitioned to the state regulatory agencies and the money in unrestricted accounts can be disbursed in a responsible manner.

Dated:                                                  Respectfully submitted,

 /s/ Mary K. Whitmer
Mary K. Whitmer  (0018213)
James W. Ehrman  (0011006)
Robert M. Stefancin  (0047184)
WHITMER & EHRMAN LLC
2344 Canal Road, Suite 401
Cleveland, Ohio  44113-2535
Telephone: (216) 771-5056
Telecopier: (216) 771-2450
Email: mkw@WEadvocate.net
          jwe@WEadvocate.net
          rms@WEadvocate.net

*Counsel for Mark E. Dottore, Receiver*

## **CERTIFICATE OF SERVICE**

The foregoing was electronically filed this 10th day of May, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Mary K. Whitmer*
Mary K. Whitmer
*Counsel for Mark E. Dottore, Receiver*