UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et. al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**STATEMENT OF FINANCIAL BENEFITS ALLEGEDLY ACHIEVED THROUGH THIS RECEIVERSHIP**

Mark E. Dottore, (the "**Receiver**"), duly appointed and acting Receiver of the Receivership Entities, files this statement of benefits allegedly achieved through this Receivership pursuant to this Court's Order of May 20, 2019. The Receivership has accomplished the following:

- By finishing this semester at Western State Law School, the taxpayers were not obligated to pay for (through dollar amounts or loan forgiveness) for the spring semester tuition on behalf of 423 students. Each student's tuition is $21,430. Considering the students who dropped or added courses, the total saved is $7,829,035.[1]

---

[1] The Receiver was informed that the Department of Education did provide loan forgiveness to all law students for the entire spring semester, 2019. If this is true, then the taxpayers did pay the bill and the students attended for free. Regardless, a benefit was achieved by virtue of completing the

- By transitioning every Clinical Psychology student to a new program, the Receiver (with the assistance of Dr. Robert Barrett,[2] President and Chair of Clinical Psychology) prevented the triggering of debt forgiveness for some of Argosy's most vulnerable students. There were 1233 clinical psychology students, at an average cost savings of $10,000 for a part time semester, for a total savings of $12,330,000.

- By transitioning the Tampa, Florida campus from Argosy University to National Louis University, complete with Teach Out and Transfer Agreements, faculty, and transferred curriculum, the Receiver enabled students to complete their semester, and continue with their education uninterrupted. There were 482 students at Tampa, at an average cost savings of $10,000 for a part time semester, for a total savings of $4,820,000.

- By continuing the South University of Ohio and South University of Michigan Teach Outs, the receivership prevented the triggering of student debt forgiveness at an average cost savings of one semester for 120 students, totaling $1,800,000.

---

semester. Putting aside the financial component, 3L students were given the opportunity to graduate and take the bar examination and 1L and 2L students were given the opportunity to earn full credit for the semester..

[2] It is unfair to claim exclusive credit for the transition of many thousands of students to new university settings and programming. These students were often assisted by their deans and academic mentors, as well as the Receiver's activities in providing transcripts, securing student records, running transfer fairs, and so on. But we make the point that because of the receivership and its support services, these transitions were facilitated.

{00022039-1}　　　　　　　　　　　　　　　2

- AI Las Vegas completed its quarter, thereby avoiding a quarter of student debt forgiveness. The total tuition billed at AI Las Vegas for the winter quarter starting in January was $2,501,681.

- After the Department of Education advised Argosy that it would no longer receive Title IV Funds, the Receiver exited 27 physical locations within 30 days, a formidable accomplishment. While the landlords at these 27 locations did incur post-receivership rent shortfalls, which is regrettable, the Receiver's quick exits prevented further rent liabilities from continuing to accrue. It is notable that only a few of these landlords are complaining; the vast majority of the landlords have reclaimed their properties by agreement and have re-leased or are in the process of re-leasing the spaces. Many of the landlords are settling the amount of their claims with the estate. The prompt exits avoided continued rent accrual of approximately $4 million per month.

As the Court pointed out in its request for this information, these are amounts "allegedly" saved by implementation of the receivership. The Receiver's team has debated the monetary benefits of the receivership many times among themselves. At the time of the Receiver's appointment, the schools were on the verge of a catastrophic collapse. Such a "Corinthian Colleges-type"[3] collapse would have had disastrous effects for the students, who would not have been able to

---

[3] Corinthian Colleges announced on April 26, 2015 that they would cease operations at all remaining US locations the next day. The closure affected more than 16,000 students and employees, and is broadly cited as an example of what not-to-do in the winding up of a university system.

readily identify other educational opportunities or transfer their credits to other schools due to the lack of registrars to certify their transcripts. Such an immediate and precipitous collapse would have had harmful effects on the schools' faculty and staff, who would have been out of work immediately and who would have had no one to oversee their 401k plan and other employee benefits.

Such a collapse would have had adverse effects on the creditors, because any hope of maximizing the value of the assets held by the school entities would have diminished or disappeared. Finally, the DOE would have received many loan forgiveness applications, saddling taxpayers with the loss of hundreds of millions of dollars. As this Court is aware, students may receive complete debt forgiveness of all of their semesters of course study if they do not transfer their credits because of the closure. The Department of Education approves any such debt forgiveness applications.

The choice at the time the Court contemplated the appointment of a receiver was relatively simple. The Court could have simply allowed the schools to fail immediately and allowed the stakeholders to suffer the known harm. Or the Court could have—and did--appoint a receiver with the hope that the receiver would be able to provide for a more orderly wind-up, avoiding as much harm to the stakeholders as possible.

Because the receivership organized transfer fairs, and paid for the services of the "white glove team" that answered student questions and aided transfers, students were more aware of other educational opportunities and more readily

transitioned to new schools. Student transfers were facilitated by the fact that the Receiver maintained the schools' accreditations. The receivership also allowed for the reconciliation of student accounts, the paying of registrars to certify credits to new educational institutions, the completion of student semester grades where possible, and the providing of transcripts, all of which assisted students in transitioning to new educational institutions. Many faculty members sought and obtained employment by the colleges and universities that signed teach out and transfer agreements with the Receiver. The Receiver believes that the number of debt forgiveness applications made by students to the DOE will be substantially reduced. These contributions are not quantifiable.

      This Court and its Receiver have assisted thousands of students in carrying on their educations and their lives. Under the circumstances here, it was a certitude that students, faculty, taxpayers, vendors and landlords were going to suffer damage; it is a circular fallacy first to provide our own estimate the harm and then to try to describe how much the damage was lessened through the intervention of the auspices of this Court through its Receiver. But the damage *was* lessened. We are glad that we have been given the opportunity to serve this Court to achieve that purpose.

Dated: May 30, 2019         Respectfully submitted,

                */s/ Mary K. Whitmer*
                Mary K. Whitmer (0018213)
                James W. Ehrman (0011006)
                Robert M. Stefancin (0047184)
                WHITMER & EHRMAN LLC
                2344 Canal Road, Suite 401
                Cleveland, Ohio 44113-2535
                Telephone: (216) 771-5056
                Telecopier: (216) 771-2450
                Email: mkw@WEadvocate.net
                    jwe@WEadvocate.net
                    rms@WEadvocate.net

                *Counsel for Mark E. Dottore, Receiver*