UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | CASE NO. 1:19-cv-145 |
| Plaintiff, | JUDGE DAN AARON POLSTER |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et. al.*, | |
| Defendants. | |

**PROPOSED PLAN TO MODIFY AND STREAMLINE THE RECEIVERSHIP**

Mark E. Dottore (the "**Receiver**"), duly appointed and acting Receiver of the Receivership Entities, proposes to modify and streamline the receivership pursuant to this Court's Order of May 20, 2019. In doing so, subject to the Court's approval of this Plan, the Receiver will continue to operate and/or transition Western State Law School and AI Las Vegas. He will maintain and facilitate the "teach out" of South University of Ohio and South University Michigan. To financially support these entities, and to pay obligations of the receivership, he will continue to pursue and liquidate the receivership's remaining assets. He will streamline the receivership by transferring all student services to outside vendors, transferring all student records to state governmental regulatory agencies, and sharply reducing the number of employees remaining in the Receivership. He will close or conclude any and all remaining operational issues that have resulted from the Universities' abrupt

{00021949-1 }

closures. He will respond to governmental investigations and attempt to fulfill governmental regulatory requirements. He will endeavor to mitigate the burden imposed upon employees of Argosy University by paying their unpaid payroll and responsibly winding down their employee benefits. In connection with the administration and termination of the employee benefit plans, he will transition the fiduciary responsibilities for the Receivership Entities' 401(k) plan to an appropriate and accountable multinational investment bank and financial services company. He will investigate the possibility of promptly concluding the receivership by using a liquidating trust, thereby administering any remaining assets for the benefit of creditors within the liquidating trust and outside of this Court.

Every action taken will be completed with an eye to the speedy and orderly termination of the receivership. Many of these actions are already in process.

### 1. Operation and Transition of Western State Law School and AI Las Vegas

One of the principal instructions this Court has given is to save the Western State College of Law. The Receiver has spent considerable time negotiating with the buyer – Westcliff University – to address the terms of the sale and Westcliff's assumption of responsibility to run the school. Under the terms of the proposed agreement, the transaction will not close until August 1, and Westcliff will not commence operation of the law school until that date. Even then, Westcliff will not proceed with the transaction unless: (1) the U.S. Department of Education pre-approves the change in control; (2) the ABA grants accreditation following the change in control; and, (3) the Western Association of Schools and Colleges

("**WASC**") grants accreditation following the change in control. To that end, Westcliff has reached out to the U.S. Department of Education, and negotiations are continuing. More importantly, Westcliff has also learned that the earliest the ABA would begin to consider the accreditation issue is August, with a decision in late September. The Receiver will commit his best efforts to ensuring that Westcliff is able to get the requisite paperwork and data to the ABA by the August cutoff.

The Receiver will also use his best efforts to ensure that the school survives the two-month gap between the close of this semester and Westcliff's commencement of management, including maintaining a registrar to confirm to California and other state bar examiners that the students can transition from Western State to Westcliff. The registrar is also critical to ratify that those students preparing to sit for their various July 2019 bar exams did in fact graduated.

With respect to AI Las Vegas, the parties have entered into managed services and transition services agreements to provide the IT platform services needed until such time as the buyer can establish its own platform. After the approval of the Studio settlement, AI Las Vegas will be forced to obtain those transition services from Studio. The buyer will, however, need to ensure that the Accrediting Council for Independent Colleges and Schools ("ACICS") accreditation is maintained as well as state accreditation and licensing. There are a number of challenges to maintaining the accreditation and licensure and the Receiver and the buyer are working on them. The Receiver does not expect those accreditation and regulatory issues to be resolved before September.

2. **Maintenance and Teach Out of South University of Ohio and South University Michigan**

South University of Ohio and South University of Michigan are presently eligible for Title IV funding, but may lose that eligibility if they leave receivership and enter bankruptcy. As things stand now, the Receiver is operating the two Receivership South campuses under a teach-out. There are approximately sixty students at each of the two campuses, with the Ohio campus due to complete its teach-out in December, and the Michigan campus due to complete its teach-out in September. In its role as teach-out institution of the two campuses (which role has been previously acknowledged by the Department of Education), New South University manages all functions and pays the expenses for the two campuses.

3. **Liquidation of Assets to Support Western State Law School, AI Las Vegas and Receivership Operations**

Maintaining Western State Law School requires cash. AI Las Vegas, also, will require advances of cash. In addition, the Receivership needs cash to pay outstanding administrative obligations. These include an outstanding payroll, reimbursement of amounts deducted from employee paychecks, landlord and vendor claims. A list of the receivership's sources and uses of cash is attached hereto as Exhibit A. A week to week cash budget is attached as Exhibit B.

The Receiver needs to continue to sell, transition or liquidate assets to maintain the significantly reduced but still ongoing cash needs. In addition, the Receiver has located performance bonds that are highly collateralized. Generally speaking, the bonds insure that each university will complete education course work and reimburse students or their financial lending institutions in the event

that a semester is abruptly terminated. Presently claims are being made against these private bonds; the Receiver needs to oversee the claims process to determine whether any bond collateral is recoverable.

> **4. The Receiver will transfer all student services to outside vendors, transfer student records to state governmental agencies for safekeeping and reduce the number of employees.**

The Receiver has made arrangements to transfer transcript and diploma services to Parchment, the most widely adopted digital credential service, allowing learners and academic institutions to request, verify, and share credentials in simple and secure ways. After May 31, 2019, the Receiver will post instructions to students on websites to provide information about accessing their academic transcripts. Student records are in the process of being transferred to state regulatory agencies. The Receiver will have six employees at May 31, 2019, and fewer than five at the end of June. These employees are available to close up the remaining issues that have resulted from the Universities' closures and assist the receiver in providing information for governmental investigations and fulfilling as many governmental requirements as possible.

> **5. Alleviating the Burden on Employees of the Universities**

The Receiver is collecting funds to repay employees for the amounts deducted from the March 1, 2019, pay that were not paid over to medical providers (approximately $250,000.00) and to pay the employees for their March 1, 2019, wages. The Receiver also wishes to ameliorate the burden of health claims that were "self-insured" by the Receivership Entities prior to the Receivership and which the Receivership Entities did not pay and for which the Receivership Entities did

not reserve any funds. The Receiver paid nothing on the healthcare claims because he had nothing with which to pay them. There were no funds left when the Receiver arrived and learned that pre-receivership medical claims were more than $9 million. There were no reserves whatsoever to pay employee healthcare claims that accrued after that date.

### 6. Transferring fiduciary responsibility for the DCEH 401(k) Plan

At the time the Receiver was appointed, among the employee benefits was a 401(k) plan that was shared by the employees DCEH, Argosy, New South and New AI (the "**401(k) Plan**"). At December 31, 2018, the 401(k) Plan had over 8700 participants and half a billion dollars in assets. It was held by Fidelity Financial Services.

DCEH would like streamline the receivership by terminating the 401(k) Plan is an orderly way. To accomplish this, DCEH has reached out to Morgan Stanley. Morgan Stanley has agreed to step in to take discretion over the assets *and act as fiduciary*. This latter offer is particularly important as it will free the receivership from fiduciary obligations over the 401(k) Plan. Most investment bankers are unwilling to assume the liability associated with fiduciary responsibility. Morgan Stanley has also indicated that it will look to the 401(k) Plan for the payment of its fees so that their services will cost the estate *nothing*.

The Receiver will file a Motion to Approve the Morgan Stanley contract, indicating that Morgan Stanley has terminated 401(k) plans of similar size and complexity *nine times*, is qualified to undertake the responsibilities, and their

actions will allow the employees to rollover or otherwise take possession of, their 401(k) accounts, all without further assistance from the Court.

**7. Transitioning the Receivership to a Liquidating Trust**

Although the initial purpose for the receivership has largely been resolved, the receivership still has assets to liquidate and claimants to pay. There are administrative expenses of the receivership that remain unpaid (such as employees, vendors, landlords) and there are assets such as litigation that might be liquidated over time to pay these liabilities. A common way to complete the liquidation of an entity after bankruptcy without day to day court supervision is to transfer the assets to a trust and liquidate the assets under the trust agreement. By adopting a trust device, the liquidation process is completed efficiently, inexpensively and *outside of the Court*. Such a liquidating trust might be a useful tool here, where this Court is eager to conclude the receivership, and a bankruptcy is burdensome and expensive. The Receiver believes that it would be beneficial to explore whether a liquidating trust process is feasible under the circumstances.

WHEREFORE, the Receiver prays that this Honorable Court approve the Plan to Modify and Streamline the Receivership. A Proposed Order is attached hereto as Exhibit C.

Dated: May 30, 2019    Respectfully submitted,

 */s/ Mary K. Whitmer*
Mary K. Whitmer  (0018213)
James W. Ehrman  (0011006)
Robert M. Stefancin  (0047184)
WHITMER & EHRMAN LLC
2344 Canal Road, Suite 401
Cleveland, Ohio  44113-2535
Telephone: (216) 771-5056
Telecopier: (216) 771-2450
Email: mkw@WEadvocate.net
         jwe@WEadvocate.net
         rms@WEadvocate.net

*Counsel for Mark E. Dottore, Receiver*