UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | CASE NO. 1:19-CV-00145 |
| Plaintiff, | |
| v. | JUDGE DAN AARON POLSTER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | |
| Defendants. | MAGISTRATE JUDGE THOMAS M. PARKER |

**STUDIO ENTERPRISE MANAGER, LLC'S RESPONSE TO SAVE THE ART INSTITUTE'S LIMITED OBJECTION AND/OR MOTION TO APPROVE SECOND SETTLEMENT AGREEMENT**

Studio Enterprise Manager, LLC ("Studio") hereby files this response to the Save the Art Institute's Limited Objection and/or Response to the Motion to Approve Second Settlement Agreement (the "Limited Objection"), filed on May 29, 2019 (Docket No. 346), by intervener Save the Art Institute of Las Vegas Limited ("Save the Art"), by and through its counsel Anthony J. Long and Robert E. Graziani of Howard & Howard Attorneys PLLC ("H&H"), wherein attorneys Long and Graziani made (a) a substantial number of false statements that could easily have been avoided by simply reading the prior court proceedings, including the order approving First Settlement Agreement and the related pleadings (Docket No. 190), the Second Settlement Agreement (Docket No. 327) and the Reorganization Documents (Docket No. 283), or by calling Studio or its counsel to obtain the actual facts, and (b) requests that the Court include in any order approving the Second Settlement Agreement a requirement that Studio: (i) "provide a full and complete accounting of the funds that Studio received belonging to the Art Institute of Las Vegas ("AiLV") and the students of AiLV's from October 2018 to the present"; (ii) "to immediately turn over to AiLV all funds that were received from and/or paid by or on

{8126191: }

behalf of the AiLV students from October 2018 forward, but which were inadvertently or otherwise paid to, diverted and received by Studio, including but not limited to the VA funds totaling $112,462.48 and cash tuition payments paid through Tuition Options"; (iii) "to provide and/or turn over historical and financial data of AiLV to Save the Art"; and (iv) "to cease and desist with actions that interfering (sic) with AiLV's successful operation."

Before Studio addresses each of the above false statements and requests of the Court, Studio would like to point out that: (a) Studio does not have any existing contractual or other relationship with Save the Art or AiLV; (b) to Studio's knowledge, Save the Art does not currently own or control AiLV or have any right to act for or on behalf of AiLV; (c) to Studio's knowledge, no binding definitive agreement to sell AiLV to Save the Art has been approved by the Court; and (d) to Studio's knowledge, Save the Art has not received, and may not receive, all required regulatory approvals to acquire AiLV. Further, Studio does not understand the legal basis or standing that Save the Art has to claim entitlement to any VA funds or Title IV funds related to the students of AiLV or to compel Studio to provide anything to Save the Art. For those reasons alone, the Court should deny the Limited Objection.

### A. Studio Should Not Be Required to Provide Full Accounting and Turn Over Funds Belonging to AiLV Because AiLV is not Entitled to any Funds from Studio.

H&H claims that "Save the Art consists of dedicated faculty, current students, alumni and local community professionals united together to form this entity with the sole purpose of saving AiLV for the students and this local community." This is a laudable effort which Studio wholeheartedly supports. In fact, Studio has made repeated offers to Mark E. Dottore, the Receiver for the Receivership (the "Receiver") to assist Save the Art and requested that the Receiver inform Save the Art to contact Studio in this regard. No such contact occurred until attorney Gwen Rutar Mullins of H&H sent a letter on May 24, 2019 to Studio that makes the

same false statements and demands on Studio that H&H requests the Court to impose in the Limited Objection.

H&H falsely alleges that "the 2019 Spring Quarter AiLV tuition funds, which were paid by AiLV students and which belong to AiLV, were not received by AiLV but instead were "inadvertently" diverted and received by Studio." Studio does not receive and has not received any funds that belong to AiLV. If H&H had read the Second Settlement Agreement, they would have been able to ascertain that, in the recitals and paragraph 11 of the Second Settlement Agreement, the Receiver, Studio and the Arts Institutes have stated unequivocally that "The Arts Institutes will return to the Receiver on or before May 20, 2019, the sum of $112,462.48 (the "AI Las Vegas Funds"), which funds the VA intended to be sent to AI Las Vegas, but were inadvertently deposited into an account owned and controlled by the Arts Institutes."

H&H further falsely alleges in Footnote 3 of the Limited Objection, that "[i]n fact, had a request for return of such funds not been made, Studio would have likely not even acknowledged its receipt of these funds. Studio clearly did not take any action to turn those funds over to AiLV or returning them to VA, which it should have done immediately upon receipt of funds that did not belong to them." As Studio never received any funds, Studio cannot be expected to acknowledge receipt or return any funds.

H&H further falsely alleges in Footnote 4 of the Limited Objection that "[i]t was only after Save the Art and the Receiver advised Studio of the fact that VA inadvertently wired the AiLV funds to Studio's account, that Studio ultimately confirmed and acknowledged the receipt of those funds." Studio did not have conversations with Save the Art about anything. Prior to Studio's negotiation of the Second Settlement Agreement with the Receiver, all conversations about the AI Las Vegas Funds were between the Receiver and the Arts Institutes. And to set the

record straight yet again, Studio does own or control Dream Center South University, LLC (collectively with all of its subsidiaries, "South University"), The Arts Institutes International LLC (collectively with all of its subsidiaries, the "Arts Institutes"), or the Education Principle Foundation, the actual owner of the Arts Institutes and South University. There is ample evidence in the Reorganization Documents and in filings made with the applicable regulatory authorities to confirm this fact, and it would behoove intervenors, such as Save the Art, their legal counsel H&H and parties in this case to avail themselves of this fact and stop making the false claims about the ownership or control of the Arts Institutes, South University and Education Principle Foundation.

H&H further falsely alleges that "the Second Settlement Agreement does not address the 'inadvertent receipt' of the cash tuition payments made online through Tuition Options that Studio has received from AiLV students for the 2019 Spring Quarter." Again, H&H has made an egregiously false statement about Studio without any factual basis. Studio has not received any cash tuition payments made on online through Tuition Options that it is not entitled to receive. If H&H had bothered to peruse the Reorganization Documents and First Settlement Agreement and the related pleadings (Docket Nos. 190 and 283), it would have been readily apparent that Studio was entitled to receive all accounts receivable from all campuses of the Arts Institutes, including AiLV, that existed as of January 7, 2019. Studio has not received any cash tuition payments from students of AiLV that relate to the 2019 Spring Quarter. For the Court's benefit, please refer to paragraph 9 of the First Settlement Agreement (Docket No. 82) and the Tuitions Options Agreement attached thereto. Moreover, in order to make it abundantly clear and avoid having to point this out yet again, the last sentence of paragraph 9 of the First Settlement Agreement made it clear that Studio was not relinquishing its right to these accounts receivable.

The barrage of Save the Art and H&H falsehoods continues with the allegation that "[i]t is likely that from October 2018 forward Studio has received funds, other than the VA and Tuition Option funds referenced above, belonging to AiLV." The litany of false assertions goes on for another ten sentences that do not merit reciting again. First and foremost, Studio does not have any contractual or other obligations to AiLV or Save the Art. Studio could not and did not receive any funds prior to the consummation of the Reorganization Documents on January 7, 2019, so it is unclear why H&H is even suggesting the Studio could have received funds as far back as October 2018. Studio has not received any funds that belong to AiLV.

H&H and Save the Art may not understand how Title IV funds and VA funds are handled. Such funds can only be sent to the institution and are never sent to Studio. The only funds that Studio could be possibly receive are the accounts receivable payments from Tuition Options that it has legal right to receive. All Title IV and VA money is sent directly to the relevant institutions. The Arts Institutes has already acknowledged that $122,462.48 was inadvertently sent to the Arts Institutes – NOT STUDIO – and it will be returned to AiLV by the Arts Institutes when the Second Settlement Agreement is approved by the Court.

Studio does not know whether an additional $68,000 was inadvertently sent to the Arts Institutes, but it believes based on conversations with the Arts Institutes that such amount is related to student cancellations in which case the money would go back to the VA and not to AiLV, so Save the Art and AiLV have no reason to be involved and certainly have no standing to seek to compel Studio to waste further time and expense proving that Save the Art and H&H's allegations are completely false and without any basis. The Arts Institutes is already reviewing this matter directly with the VA, and Studio will have no involvement.

**B. Studio Should Not Be Required to Provide Save the Art All AiLV's Historical Student and Financial Data That Is on the Shared IT Platform Maintained by Studio Without Payment.**

H&H alleges that "[b]efore the receivership is terminated and for orderly transition of AiLV to Save the Art, Save the Art will need all of the student data (financial and educational records) and financial and accounting records maintained by DCEH/Studio for AILV to be provided (in electronic format), which is located on the Shared IT Platform maintained by Studio." H&H includes an extensive list of information it expects Studio to provide to Save the Art. H&H also includes a request that "this Court should order Studio to provide, or make otherwise available to the Receiver, Save the Art and Global, the following information, which again is located on the Shared IT Platform, within seven (7) days of the Court's Order" and again includes an extensive list of required information.

Pursuant the paragraph 7 of the Second Settlement Agreement, "[i]f the proposed transaction to sell AI Las Vegas to Save the Art Institute of Las Vegas Limited ("Save the Art") is approved by the Court prior to the Termination Date, Studio will negotiate in good faith with Save the Art to enter into the transition services agreement attached hereto as Exhibit A (the "Save the Art TSA"). If requested by Save the Art, Studio will also work with Save the Art to transfer the school's data and curriculum stored on the Shared IT Platform to Save the Art; provided that Studio shall not be required to incur unreimbursed out-of-pocket costs and expenses in connection therewith."

Assuming Save the Art is willing to negotiate in good faith (Studio is skeptical based on the spurious false statements made by H&H to date), Studio will attempt to negotiate the proposed Save the Art TSA, a proposed form of which was filed with the Second Settlement Agreement, but Save the Art will have to demonstrate the financial ability to pay for Studio's services and will need to comply with the terms of the proposed Save the Art TSA. Studio

would like to point out to Save the Art and H&H, because they may not quite understand the magnitude and complexity of the numerous filings that will be required to accomplish the proposed transaction and respond to the HCM2 letter, it is not simply a matter of downloading data. Studio may be willing to assist in these efforts, but that will depend largely on the actions of Save the Art and H&H and Save the Arts' ability to pay for such assistance.

### C. Studio and its Affiliates Should Not Be Ordered to Cease and Desist Interfering with AiLV's Operations Because no Such Interference is Occurring.

In their final egregious attack on Studio, Save the Art seeks an Order from the Court requiring Studio and its affiliates to cease and desist with 'sabotaging' activities that undermine AiLV's operations. As Studio has had no interactions with AiLV or Save the Art during the Receivership, the only "egregious" act H&H offers is that South University, "an entity owned by Studio, has been cancelling Title IV processing activities for AiLV. In addition, AiLV's 2018/19 verification/c-code and packaging activities are being cancelled by South University centralized processing team." Yet again, Studio must point out that Studio does not own or control South. Anyone who has been even a casual observer of the Receivership would know that is obvious. Second, Studio has no knowledge regarding the merits of these allegations, although given the magnitude and brazenness of the false allegations made by H&H and Save the Art, the Court should be extremely skeptical of any such claims. Moreover, allowing intervenors, particularly an intervenor with no legal standing to act on behalf of AiLV (as this is the Receiver's domain), to interfere, solely for its own self-interest and with no regard for the costs and burdens it seeks to impose on non-Receivership Entities, with a fully negotiated settlement agreement among all of the relevant parties (including the Receiver who is tasked with protecting the interests of AiLV) with legal standing to participate, seems to be an inappropriate forum. The Second Settlement Agreement was negotiated by the Receiver to specifically benefit AiLV and

effectively deals with all of the issues, even the false allegations. The Limited Objection is a strange reaction to the obvious benefits that the Receiver negotiated on behalf of AiLV.

As the Court well knows, Studio has been under constant attack from many quarters for taking on the thankless job of saving South University and the Arts Institutes from almost certain demise. For that effort, Studio has incurred millions of dollars of expenses and over a year of effort. Notwithstanding the constant barrage of blatantly false accusations which Studio has time and time again definitively proven to be false, Studio has continued to work tirelessly to complete its task, even though it is owed millions. Studio was forced to negotiate not one but two settlements with the Receiver to effectively enforce the original terms of the Reorganization Documents.

The Receivership and the slim chance of survival of AiLV and WSCL has largely been funded by Studio, the Arts Institutes and South University even though they are not Receivership Entities. The Second Settlement Agreement was negotiated and agreed to by Studio, the Receiver, the Arts Institute and South University, the only relevant parties with legal standing to address the subject matter thereof. Even though Studio has no obligations to do so, Studio agreed to help Save the Art to the extent they were able to actually acquire and finance AiLV, which is questionable at best. In return for the gracious offer, rather than thank Studio and the Receiver for including them in the Second Settlement Agreement, Save the Art and their counsel deemed it appropriate to waste the Court's time and Studio's time and expense with a litany of offensive and false claims. Studio is done with this offensive behavior from the very parties that Studio is seeking to help.

The Second Settlement Agreement is the last attempt by Studio to help clean up this ill-advised Receivership and the wreckage it has wrought. If the Second Settlement Agreement is

not approved in its current form and the Limited Objection overruled, there is nothing further for Studio to do and the Arts Institute and South University will more than likely fail thanks to the unnecessary meddling of Save the Art and H&H.

WHEREFORE, Studio respectfully requests that the Court overrule the Limited Objection and grant the Motion to Approve Second Settlement Agreement.

May 31, 2019

Respectfully submitted,

/s/ *M. Colette Gibbons*
M. Colette Gibbons (0003095)
Scott N. Opincar (0064027)
Maria G. Carr (0092412)
Adam C. Smith (0087720)
MCDONALD HOPKINS LLC
600 Superior Ave., E., Ste. 2100
Cleveland, OH 44114
T: (216) 348-5400
F: (216) 348-5474
Email: cgibbons@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com
asmith@mcdonaldhopkins.com

-and-

Dianne F. Coffino (admitted *pro hac vice*)
Martin E. Beeler (admitted *pro hac vice*)
Gabriella B. Zahn-Bielski (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: dcoffino@cov.com
mbeeler@cov.com
gzahnbielski@cov.com

*Co-Counsel for Studio Enterprise Manager, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2019, a copy of the foregoing *Studio Enterprise Manager, LLC's Response to the Save the Art Institute's Limited Objection and/or Response to the Motion to Approve Second Settlement Agreement* was filed electronically. Notice of this filing will be sent to all parties by the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *M. Colette Gibbons*
M. Colette Gibbons (0003095)