UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC ) | CASE NO. 1:19-cv-145 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE DAN AARON POLSTER |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC, ) | |
| *et al.* ) | |
| ) | |
| Defendants. ) | |

**STUDENT INTERVENORS' LIMITED OBJECTIONS TO THE RECEIVER'S PROPOSED PLAN TO MODIFY AND STREAMLINE THE RECEIVERSHIP**

Two groups of students have intervened in this receivership to protect their interests: the Dunagan Intervenors, former Illinois Institute of Art students litigating an active consumer protection and fraud case in the Northern District of Illinois against certain Receivership entities and their parent, the Dream Center Foundation; and a group of former Argosy students, seeking information in the control of the Receiver about the diversion of their student stipends so that they can determine what remedies are available to them. The students jointly file these Limited Objections to the Receiver's Plan to Modify and Streamline the Receivership.

**1. The Court Should Not Enter an Order That Establishes a Liquidating Trust**

The Receiver "believes that it would be beneficial to explore whether a liquidating trust process is feasible." Dkt. 349 at 7. Student intervenors do not understand the Receiver to be seeking a determination from the Court *now* that the Receivership be concluded by placement into a liquidating trust. The Receiver is also silent on whether he is recommending, or anticipates, that

he would be the trustee of such a device. However, because the proposed order accompanying the Proposed Plan is non-specific about what elements of the Proposed Plan would be adopted if the Order is entered, the student intervenors object to any order approving the Proposed Plan that could be interpreted to approve a liquidating trust. For the reasons explained below, such an order would be premature and not in the interests of student intervenors or other creditors.

Liquidating trusts are mechanisms typically used *after bankruptcy proceedings*, to resolve limited and discrete final issues. *See, e.g.*, *Maryland v. Antonelli Creditors' Liquidating Tr.*, 123 F.3d 777, 779 (4th Cir. 1997) (discussing liquidated trust created during bankruptcy proceedings). It is premature to determine, at this time, what issues will remain open after the Receivership and may require ongoing court supervision by a bankruptcy court.

Also, a bankruptcy proceeding affords rules and protections for the benefit of creditors that are not inherent in this equitable Receivership proceeding and would not be imposed on a liquidating trust. For example, a claims process would be required in bankrupty. Also a bankruptcy proceeding would include a creditors' committee where students, among others, would have their interests represented.

The Receiver emphasizes that the liquidating trust is desirable because it would happen "outside of the Court." Dkt. 349-7. But court supervision through a bankruptcy is precisely is what is required to protect, among others, the thousands of students who have been and who remain voiceless and unrepresented in this process. While undersigned counsel represents a select group of students, we receive constant communications from aggrieved students across the country regarding, among other things: lost student files needed to apply for and obtain closed school

discharges, shredded student records needed to obtain state licensure and employment (Dkt. 356),[1] the Receiver's decision not to honor the Dream Center's written agreement to provide $5,000 tuition grants to students who transferred to new schools, the failure to provide transcripts and diplomas, and, of course, countless requests and complaints relating to the missing student stipend funds.  Many of these students have told us that they have reached out to the Receiver and are not receiving responses, much less satisfactory responses, to their questions.   Undersigned counsel lacks the resources necessary to assist or represent all of these students.  In a bankruptcy, however, their interests would likely be represented on a creditors' committee.  Far from being undesirable, court supervision through the bankruptcy process is precisely what is needed to protect these and many other student interests, as well as the interests of other creditors.

### 2. The Plan Should Set a Date Certain for the Receiver's Report on the Stipend Investigation

The Court has stated that the Receiver "will be required to file [a] report [on the stipend investigation] before the receivership is terminated." Dkt. 336 at 3. That requirement is not mentioned among the list of actions that the Receiver proposes to carry out in the streamlined receivership.  Dkt. 349.  The Argosy student intervenors do not draw any adverse inference about the Receiver's intention to comply with this obligation from his failure to mention it, but raise the omission lest any inference be drawn from the approval of the Receiver's Proposed Plan that he is relieved from this responsibility.

Further, the Argosy intervenors request that the Court set a date certain for the Receiver to report on the investigation.  The Receivership was, until recently, scheduled to terminate on May 31 (Dkt. 285) —had that date held, the Report would already have been delivered.  Indeed, the

---

[1] Undersigned counsel has recently been retained by students from the Georgia School of Professional Psychology to help them advocate and negotiate with the Receiver about deliverables to ameliorate the harm caused by the Receiver's destruction of some or all of their clinical training files.

3

Receiver's time records indicate that, in contemplation of the looming termination of the Receivership, his staff was completing that assignment. *See, e.g.*, Docket 333-3 at 66 (May 9, 2019 time entry by Dave Linscott: "work on stipend investigation summary"). While student intervenors understand the Receivership will likely be extended some additional weeks or months, that doesn't mean the delivery of the Report need be postponed indefinitely. The Receiver proposes to shed DCEH employees, Dkt. 336 at 1, which will make it progressively more difficult for the Receiver to gather the information it needs to complete its investigation.

Also, the longer the Receiver waits, the longer students will be deprived of information in the sole control of the Receiver that may give rise to causes of action on their behalf. The Receiver has consistently represented to the Court that the diverted stipend funds were used solely for "operarting expenses." *See, e.g.*, Dkt. 91 at 11. However, time sheets submitted by the Receiver and his counsel reveal that, since at least March 1, he has been investigating possible fraudulent transfers to DCEH's parent the Dream Center Foundation, as well as whether the stipends were diverted for the payment of employee bonuses. *See* Dkt. 334-1 at 25 (March 1, 2019 time entry: "investigate whether the two $750,000 transfers to the Dream Center Foundation were fraudulent transfers from any of the pre-receivership entities"); Dkt. 333-3 at 25 (April 15, 2019 time entry: "Work on investigation into unpaid stipends, staff bonuses paid immediately prior to receivership and student credit balance issues"). The recipients of such transfers would be potential sources of recovery of damages by students harmed by the stipend diversion.

The Argosy intervenors propose that the Court order the Receiver submit his report on the results of the investigation by no later than **July 15, 2019**.

### 3. The Receiver Should Not Be Permitted to Liquidate Restricted Funds Until After He Reports on His Investigation Into Stipend Diversion

The 13-week cash budget attached to the Proposed Plan (Dkt. 349-2) indicates that the Receiver intends to liquidate, during the week of June 10-17, the restricted $1.5 million fund that he represented, during court hearings, may include some of the stipend funds drawn down from the Department of Education. There is no discussion in the Proposed Plan or budget about the rationale or authority for doing this—effectively using what have been represented to be taxpayer-funded student stipend monies to pay for the Receiver's "operating expenses."  This should not be permitted until the Receiver has reported on his investigation about where the diverted stipend monies went, including whether the $1.5 million was accumulated from those funds, and a specific request is made to the Court for liquidation of the funds, with opportunity for all parties to respond.

Dated: June 7, 2019

Respectfully submitted,

                                                *s/Richard S. Gurbst*

Richard S. Gurbst (Bar # 0017672)
Eleanor M. Hagan (Bar # 0091852)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Telephone: +1 216 479 8500
E-mail: *richard.gurbst@squirepb.com*

Eric Rothschild
(Admitted Pro Hac Vice)
Alexander S. Elson
(Admitted Pro Hac Vice)
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street NW, Suite 600
Washington, DC  20005
Telephone:  +1 202 734 7495
E-mail:  *alex@nsldn.org*
            *eric@nsldn.org*

                              Counsel for Student-Intervenors,
Emmanuel Dunagan, Jessica Muscari, Robert J. Infusino, Stephanie Porreca, Marina Awed, Jayne Kenney and Kendrick Harrison

## **CERTIFICATE OF SERVICE**

It is hereby certified that on the 7th day of June, 2019, the foregoing Limited Objections were electronically filed through the Court's CM/ECF system, which caused the parties or counsel to be served by electronic means. The parties may access this filing through the Court's ECF system.

/s/Richard S. Gurbst
Richard S. Gurbst
