UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) |   THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et. al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE OF THE RECEIVER TO 3601 SUNFLOWER LLC'S, OBJECTIONS TO FEE APPLICATIONS OF RECEIVER AND RECEIVER'S COUNSEL**

Mark E. Dottore, Receiver of the Receivership Entities, responds to the untimely Objections of 3601 Sunflower LLC's ("**Sunflower**") to his Fee Application and the Applications of his Professionals. As a preliminary matter, the Receiver notes that of the scores of interested parties and participants in this case, the Sunflower objection is the only objection filed. The Receiver also notes that the failure of Dream Center Education Holdings has resulted in the displacement of more than 17,000 students and employees as well as the closure of nearly all of its campuses. It has left hundreds of creditors, thousands of former employees and hundreds of thousands of students and alumni of its schools in need of support and resolution. Both the Receiver and his professionals are dedicated to seeking resolution to the extent that is possible for all of those involved.

Sunflower makes both general and some specific objections. With regard to the general objections, Sunflower alleges that the fees are excessive. Sunflower does

{00022235-1 }

not, however, identify a single service that should not have been performed. The Receiver and his team worked on hundreds of projects to resolve issues and find a path forward for those impacted by the financial insolvency of the Receivership entities, such as:

- The operation of the schools in receivership;
- Efforts to transition the schools to another owner;
- Uncovering, researching and reporting on the failure of DCEH to pay millions of dollars in student stipends;
- The winding down of operations at the schools when their Title IV funds were cut off and it was clear they could not move forward;

    - working with close to 100 colleges and universities to create partnership agreements to transition students;
    - holding transfer fairs at each campus and urging the transfer schools to drop everything to help students as much as possible before the closure;
    - working to save entire cohorts of students so their ability to complete their degrees would not be impacted;

- Preserving student records at all locations so students would have documentation of their education in perpetuity needed for employment, licensure, continued education and the like;
- Exiting 27 physical locations in 30 days;
- Continuing to work to save the law school, The Art Institute of Las Vegas, and two locations of South University, the only surviving institutions;
- Continuing some services needed for campuses that became independent of DCEH as receivership began;
- Investigating, researching and responding to a host of subpoenas and investigations;
- Providing diplomas to thousands of students who did not receive them and more than 40,000 transcripts to current and former students in need of them for employment, licensure and continued education (each request having to be processed manually);
- Uncovering and unravelling massive issues with pay and benefits (and working to resolve those for the employees while addressing investigations on them from the department of labor);

    - Transitioning a 401(k) plan with 8,707 participants and half a *billion* dollars to administer.

- o Confronting unfunded healthcare issues with a total of $14 million in un-administered claims.
- o Terminating long term and short term disability, dental, HSA accounts, etc.

- Fielding tens of thousands of calls and emails from students and employees for the items noted above;
- Providing filings and information to the Court;
- Attending to many and various inquiries from state regulators and school accreditation agencies.;
- Locating, evaluating and selling various assets.

Sunflower did object specifically to the time required to talk to students and other interested parties who telephoned and emailed the Receiver's offices or whose requests for assistance were forwarded to the Receiver by the Court. The Receiver notes that the Court ordered the Receiver to respond to the thousands of inquiries and callers *within 48 hours of receipt*, and the Receiver and his team did his best to comply with that order in spirit and in fact.

Excessive fees might also be caused by hourly rates that were too high, but a review of the rates charged in this case will reveal that they are below market for service of like kind and complexity. In addition, excessive fees might be caused by spending too many hours on any one service. Because of the exigencies of this case, the Receiver and his team did not have the time to spend unneeded hours on any service.

Sunflower complains that Whitmer & Ehrman LLC ("WE") billed time before the Receiver's appointment. WE did charge for services before the Receiver was appointed but has disclosed in the past that it had been contacted before the receivership, and that it was rendering services prior to the Receiver's appointment.

Using bankruptcy as an example, attorneys for trustees in complicated cases do render services prior to the filing of a bankruptcy court case and generally are paid for them before filing or appointment. In these instances, the cut-offs are not perfect. Some services do not get paid before the filing. Under these circumstances, a legitimate request can be made for payment of such services. Generally, the test is whether the services were of benefit to the bankruptcy/receivership estate. Most Courts allow these requests for compensation. The amount is $9,712.50, not $20,000.00, as Sunflower alleged.

Sunflower also objected to the fees of Baker & Hostetler ("Baker"). The receiver filed an application to appoint Baker to assist the Receiver in the administration of large scale employee benefit issues. The 401(k) plan had 8,707 participants and half a *billion* dollars to administer. There are large unadministered healthcare claims and other employee benefits such as long term and short term disability, dental, and HSA accounts. At the urging of the Department of Labor, the Receiver sought to hire capable employee benefits counsel, with knowledge of ERISA. Consistent with the practice in bankruptcy court, Baker commenced services upon the filing of the application. Baker rendered valuable services and provided a benefit to the estate, even though the court declined the appointment. In such instances, the Court makes the decision as to whether Baker's services benefitted the receivership estate.

The Receiver acknowledges and apologizes for the few minor clerical errors pointed out in the Sunflower objection and will amend his filing to correct them.

The "make up something for Charlie" time entry is for .20 hours or $60.00 (in a $1 million fee request). Dottore Companies had gone to a new billing system, and the item was left as a "placeholder," to return to and fill in later. In the rush to get the go-forward plan and the fees together on the Court's schedule, the task did not get completed. In the future, Dottore Companies will insert the word "placeholder" rather than the other.

Some cross-country airfares were incurred at the first class rate which were billed through in error. All airfares will be reviewed so that they are charged at the economy rate. There is a spa charge at Reagan Airport that the Receiver's assistant thought was a meal and included ($87.00). It will be deleted. The dinner charges complained about are $155.34, 92.26 and $85.00. The Receiver checking to see if these were for more than one person or whether they should be reduced.

Travel costs on the road are often expensive without being unreasonable. Sometimes there are large conventions in a destination town and there are no rooms available except at an unreasonable rate. Sometimes the meeting place was chosen by others, and the Receiver and his team were required as a matter of convenience to stay at the same hotel. Sometimes the destination point is far from the airport and the exigencies of the situation require that additional travel expense be incurred. The Receiver is confident that his travel expenses are reasonable under the circumstances, but is reviewing them a final time to make sure that they are defensible.

The Receiver will be submitting amended expense requests consistent with this Response.

Dated: June 18, 2019   Respectfully submitted,

 /s/ Mary K. Whitmer
Mary K. Whitmer  (0018213)
James W. Ehrman  (0011006)
Robert M. Stefancin  (0047184)
WHITMER & EHRMAN LLC
2344 Canal Road, Suite 401
Cleveland, Ohio  44113-2535
Telephone: (216) 771-5056
Telecopier: (216) 771-2450
Email: mkw@WEadvocate.net
          jwe@WEadvocate.net
          rms@WEadvocate.net

*Counsel for Mark E. Dottore, Receiver*