# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | Case No. 1:19-cv-145 |
| Plaintiff, | Judge: Dan Aaron Polster |
| v. | |
| SOUTHERN UNIVERSITY OF OHIO, LLC, et al, | |
| Defendant(s). | |

## MOTION FOR INTERVENTION AND THE LIMITED LIFTING OF RECEIVERSIP STAY

Comes now, the State of Nevada, Commission on Postsecondary Education ("Commission"), through its attorney of record, State of Nevada Attorney General AARON FORD, through his Deputy, Deputy Attorney General Robert A. Whitney, and hereby files its Motion for Intervention and the Limited Lifting of Receivership Stay.  The Commission's Motion is based on Local Rule 7.1, on Federal Rule of Civil Procedure ("FRCP") 24(b)(2) and on and the Point and Authorities below.

## POINTS AND AUTHORITIES

## I.

## FACTS

1. The Art Institute of Las Vegas ("Art Institute") is a postsecondary educational institution licensed by the Commission.

2. The Art Institute had been licensed by the Commission since 1985, but at this time has failed to renew its license to operate, as its application for renewal was due June 4, 2019. Pursuant to Nevada Revised Statute ("NRS") 394.460(7), licensed postsecondary educational institutions must submit an application for license renewal at least sixty (60) days before license expiration. Recently the Art Institute contacted the Commission about renewing its license and requested an extension of time to renew its license. See Exhibit 1.

3. On January 18, 2019, this Court signed an Order Appointing Receiver ("Order" or "Order Appointing Receiver"; Document No. 8) which encompassed the Art Institute, as the Art

Institute is owned by Dream Center Educational Holdings, LLC.

4. Paragraph 10 on page 12 of the Court's Order states:

> All creditors, claimants, bodies politic, parties in interest and their respective attorneys, servants, agents and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Property, or its Books and Records or Property, or against the Receiver in any court. The parties are further stayed from executing or issuing or causing the execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession or interfering with, or enforcing any claim or lien upon the Property owned by or in possession of the Receivership Entities, or the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceedings or with the exclusive jurisdiction of this Court over the Property, its Books and Records and Property and the said Receiver.

Thus, it appears that this Court's stay would need to be lifted for the Commission to take any action against the Art Institute.

5. Upon information and belief, the Art Institute has not been paying its staff, including its instructors, their full salary since it almost paid full salary owed to staff on April 12, 2019. See Exhibit 1.

6.  The Art Institute failed to pay its quarterly fees to the Commission pursuant to NRS 394.540 for new enrollments for the past two academic quarters. Fees for the October 1, 2018 – December 31, 2018 and the January 1, 2019 – March 31, 2019 quarter were due to the Commission no later than 15 days after the end of the respective quarters. According to enrollment data provided to the Commission by the Art Institute, 19 student who started in the October-December 2018 quarter are still enrolled at the Art Institute, and 23 students who originally started in the January-March 2019 quarter are still enrolled at the Art Institute. See Exhibit 1.

7.  Services to Art Institute students have diminished since the transition of the school to the Receiver. This includes the loss of E-textbook and student disability accommodations provided by the Office of Disability Support Services, and Career Services. See Exhibit 1.

8.  The Art Institute's Financial Aid staff possess limited ability to manage its student ledger, as staff was unable to provide documentation requested to resolve student complaints in

4

response to the Commission Administrator's request for information. See Exhibit 1.

9.  A number of current and former Art Institute students have filed complaints concerning incurring debt with the Veteran's Administration ("VA") as a result of the Art Institute's inaction or failure to process adjustments and student refunds in a timely manner, which is a violation of NRS 394.449. See Exhibits 1 and 2. These facts appear to demonstrate an apparent deficiency in administrative capacity at the Art Institute.

## II.

## ARGUMENT

Out of an abundance of caution the Commission has filed a motion to intervene and a motion for this Court to lift the stay in its Order Appointing Receiver for the limited purpose of allowing the Commission to suspend the Art Institute's ability to enroll new students pursuant to Nevada Administrative Code ("NAC") 394.670(1)(a) and, if the violations alleged by the Commission Administrator are not resolved to the Commission Administrator's satisfaction within 30 days after suspension of enrollment, other possible action such as fining the Art

5

Institute or revoking its license, or a combination of those actions. The Art Institute would have the right to challenge such action at a hearing if requested pursuant to NRS 394.510(3).

Although the Sixth Circuit has not explicitly articulated a test for determining if a receivership stay should be lifted, it appears that Sixth Circuit Courts follow the standards for the lifting of receivership stays in the *Wencke* cases (*SEC v. Wencke,* 622 F.2d 1363 (9th Cir.1980) ( "*Wencke I*" ) and *SEC v. Wencke,* 742 F.2d 1230 (9th Cir.1984) ("*Wenke II*" )). *See S.E.C. v. One Equity Corp.,* No. 2:08-CV-667, 2010 WL 4878993, at \*6 (S.D. Ohio Nov. 23, 2010); *Huntington Nat'l Bank v. Saint Catharine Coll., Inc.,* No. 3:16-CV-465-DJH, 2017 WL 6347971, at \*6 (W.D. Ky. Dec. 12, 2017).

With respect to whether a stay in a receivership should be lifted, the three part test stated by the *Wencke* Court is:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim. In reviewing the district court's application of this test and ultimate decision, we apply an abuse of discretion standard

> *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984).

With respect to the first *Wencke* factor, whether a refusal to lift the stay would genuinely preserve the status quo, or whether the moving party would suffer substantial injury if not permitted to proceed, the Court balances the interests in preserving the receivership estate with the interests of the movants.  *Huntington Nat'l Bank v. Saint Catharine Coll., Inc.,* No. 3:16-CV-465-DJH, 2017 WL 6347971, at *6 (W.D. Ky. Dec. 12, 2017). *S.E.C. v. Stanford Int'l. Bank Ltd.,* 424 Fed.Appx. 338, 341 (5th Cir. 2012).  It has been recognized in non-receivership cases that States have a legitimate interest in enforcing their laws. *Maine v. Taylor*, 477 U.S. 131, 137, 106 S. Ct. 2440, 2446, 91 L. Ed. 2d 110 (1986); *See Younger v. Harris*, 401 U.S. 37, 44, 91 S. Ct. 746, 750, 27 L. Ed. 2d 669 (1971).

In the present case the State of Nevada will suffer substantial injury if it is not permitted to lift the stay put in place by the Court's Order Appointing Receiver for the limited purpose of following NAC 394.670.  With the current situation at the Art Institute, Nevada residents who enroll at the Art Institute face the real prospect of beginning their education at that institution only to have the Art Institute cease its operations, as it is apparent the Art Institute cannot

7

meet its various legal obligations, ranging from paying mandatory fees to the Commission in connection with licensing and operation, to failing to pay staff salaries, including instructor salaries. If the Art Institute closes and teach outs cannot be arranged then students will have paid their money and started to take courses that will have led to no educational credentials of any kind.

Additionally, pursuant to NRS 394.480(2), postsecondary educational institutions licensed in Nevada are required to file a surety bond with the Commission of at least $10,000.00 in the event that students enrolled at the postsecondary educational institution suffer damages as a result of a violation of NRS 394.383 to 394.560, inclusive.

The surety bond held by the Art Institute pursuant to NRS 394.480(2) was cancelled in January 2019. See Exhibit 3. Therefore, the Account for Student Indemnification established by NRS 394.553 would have to be used to indemnify students if the Art Institute were to close. NRS 394.553 states in relevant part:

**NRS 394.553  Account for Student Indemnification.**
1.   The Account for Student Indemnification is hereby created in the State General Fund. The existence of the Account does not create a right in any person to receive money from the Account. The Administrator shall

administer the Account in accordance with regulations adopted by the Commission.

2.  Except as otherwise limited by subsection 3, the money in the Account may be used to indemnify any student or enrollee who has suffered damage as a result of:

(a) The discontinuance of operation of a postsecondary educational institution licensed in this state; or

(b) The violation by such an institution of any provision of NRS 394.383 to 394.560, inclusive, or the regulations adopted pursuant thereto. . . .

It is estimated that if the Art Institute were to close and all students currently enrolled at the Art Institute made a claim for the amount of tuition for one year they had paid, the Account for Student Indemnification would be required to pay one million one hundred seventy-seven thousand four-hundred eighty-eight dollars ($1,177,488.00) for V.A. students and three hundred fifty-one thousand and eight hundred sixty one dollars ($351,861.00) for non-V.A. students. See Exhibit 1.

Although there is an interest in preserving the status quo of the receivership, such as perhaps allowing the possible sale of the Art Institute, with the Art Institute's failure to comply with parts of NRS Chapter 394, with  the indicators that the Art Institute is not financially sound and capable of fulfilling commitments to students, such as the failure to pay its teaching staff its salary, failure to pay

mandatory fees to the Commission, the reduction in student services, and apparent failure to provide required student refunds, the State of Nevada and its residents will suffer substantial injury if not permitted to prohibit the Art Institute from enrolling new students, as the Art Institute's ability to serve future students and its current students and provide them with quality education appears impaired.

The Art Institute appears to be heading towards closure, thus resulting in the State of Nevada paying from its Account for Student Indemnification students harmed by the Art Institute's closure. Therefore, in balancing leaving the stay in place in order to preserve the status quo against the harm the State of Nevada will suffer if the stay is not lifted, it appears that the first factor, that the State of Nevada will suffer substantial injury if not allowed to proceed, favors the State of Nevada and the limited removal of the stay.

With respect to the second *Wencke* factor, the time in the course of the receivership at which the motion for relief from the stay is made, this factor seems to favor leaving the stay in place.

"Timing in a receivership process is fact specific, based on the number of entities, the complexity of the scheme, and any number of

10

other factors." *S.E.C. v. Stanford Int'l Bank Ltd.,* 424 F. App'x 338, 341 (5th Cir. 2011). Such factors courts appear to consider with respect to the second *Wencke* factor include the length of time a stay had been in existence, along with whether the stay is in essence still necessary. *See* 742 F.2d at 1231–32; See S.*E.C. v. Universal Fin.,* 760 F.2d 1034, 1039 (9th Cir. 1985). For example, courts have considered, in deciding if stays should be lifted, whether important facts were still coming to light in a receivership, and whether or not the receiver had time to become familiar with the subject of the receivership. 760 F.2d at 1039.

In the present case, although the receivership has only been in existence since January 2019, the purpose of the receivership appears to have been substantially completed, but not with respect to the Art Institute. In fact, the Court signed an Order (ECF No. 335) terminating the receivership on May 31, 2019. However, the Receiver, in response to the Court's Order (ECF #335), filed ECF #349, Proposed Plan to Modify and Streamline the Receivership ("Proposed Plan"), in which the Receiver asked the Court to continue the receivership and allow him to continue to operate the Art Institute and another entity. Some of the stated purposes listed by the Receiver in his Proposed Plan included

responding to "governmental investigations and attempt to fulfill governmental regulatory requirements," (ECF # 349, page 2) and attempting to maintain the Art Institute's accreditation and licensure. Additionally, the Receiver noted that the receivership needed cash advances in order to pay outstanding administrative obligations, such as payroll, landlord and vendor claims, and so there was a need "to continue to sell, transition or liquidate assets . . ., " (ECF # 349, page 4) so this was another reason for the receivership to continue. Thus, there appear to be stated reasons for continuing the receivership, although in reality the stated reasons for maintaining the receivership may not be fulfilled.

The third *Wencke* factor is the merit of the moving party's underlying claim. In this matter the Commission's claim has substantial merit. The Commission is the State of Nevada agency charged with licensing postsecondary educational institutions (NRS 394.415) and establishing minimum criteria for "quality of education, ethical and business practices, health and safety, and fiscal responsibility . . ." that must be met by licensed postsecondary educational institutions. See NRS 394.421(1)(a).

12

Additionally, the Commission serves as the State enforcement agency with respect to postsecondary educational institutions pursuant to NRS 394.510, and may revoke postsecondary educational institution licenses to operate if the postsecondary educational institution violates "the provisions of NRS 394.383 to 394.560, inclusive, or regulations adopted pursuant to those sections . . . ." NRS 394.510(1). Finally, NRS 394.445(1) states that "[a] postsecondary educational institution. . . . [m]ust be financially sound and capable of fulfilling its commitments to students."

With respect to the Commission's role as an enforcement agency for the State of Nevada, the purpose of NRS Chapter 394, which the Commission administers, is a helpful guide for the Commission's role as a State of Nevada enforcement agency.

NRS 394.125 states in relevant part that:

It is the purpose of this chapter to provide for the protection, education and welfare of the residents of the State of Nevada, its educational, vocational and professional institutions, and its students, by:

1. Establishing minimum standards concerning quality of education, ethical and business practices, health and safety, and fiscal responsibility, to protect against substandard, transient, unethical, deceptive or fraudulent institutions and practices;

13

...

6. Providing for the preservation of essential academic records; and

7. Providing certain rights and remedies to the consuming public and the Commission and the Board necessary to effectuate the purposes of this chapter.

By seeking to lift the stay imposed by this Court in its Order Appointing Receiver for limited purposes so that the Commission can suspend the continued enrollment of students at the Art Institute and possibly take further action, the Commission is "attempting to "implement the . . . statutory purpose of protecting the public interest" (*In re Luskin's, Inc.,* 213 B.R. 107, 111 (D. Md. 1997) (Internal quotations omitted), and enforcing minimum standards concerning the quality of education in Nevada, as the Art Institute does not appear to be financially sound, or capable of fulfilling its commitment to students.

In order for the Commission to fulfill its purpose of protecting Nevada students against substandard practices and ensuring the quality of education for Nevada residents, it is imperative that the Commission be allowed to take action against the Art Institute by suspending further enrollments of students at that institution, as the current situation at the Art Institute is one where new students should

14

not be enrolled, as the Art Institute does not appear to be financially sound and/or capable of fulfilling its commitments to students.

As noted above, the Art Institute has not paid its staff its full salary since April 10, 2019. Common sense tells us that unpaid staff will only teach a relatively short period of time before the staff leaves the Art Institute ( as some have already done, according to Exhibit 1), and since the Art Institute is not paying its instructors, it will be unable to recruit new instructors. Additionally, the Art Institute's resources for disabled students apparently has impacted, as the Art Institute has been unable to afford a sign language interpreter for a deaf student enrolled at the Art Institute. See Exhibit 1. Additionally, the loss of facility without quality replacements compromises the quality of education at the Art Institute.

Finally, there is evidence that the Art Institute has failed to process adjustments and refunds. See Exhibit 1. Pursuant to NRS 394.449(2), the Art Institute is required to refund money owed to students no later than 15 days after either the date of cancellation by the student of his or her enrollment, the date the Art Institute terminated the student's enrollment, the last day of an authorized leave

15

of absence if the student fails to return after the period of authorized absence, or the last day of the student's attendance, whichever situation is applicable. The Art Institute apparently failed to refund student money in accordance with NRS 394.449, thus again showing that it is not capable of fulfilling its commitments to students.

Therefore, the third factor of the *Wencke* test, the merit of the moving party's underlying claim, favors the Commission, as the evidence shows that the Art Institute is not financially sound and capable of fulfilling its commitment to students, and so it should not be permitted to continue enrolling students into such an environment. Additionally, as noted previously, the State of Nevada has an interest in enforcing its laws, especially its statutes designed to protect the welfare of its residents/students.

### The Commission should be granted permission to intervene so that it can file its Motion for the limited lifting of the Receivership stay.

Intervention pursuant to FRCP 24(b)(2) is proper in this case in order to allow the Commission to file its motion for the limited lifting of the stay imposed in this case. FRCP 24(b)(2) states in relevant part:

b) PERMISSIVE INTERVENTION.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

A court's decision to grant permissive intervention pursuant to FRCP 24(b) will be reviewed for "clear abuse of discretion." *Purnell v. City of Akron,* 925 F.2d 941, 951 (6th Cir.1991). Courts consider the following factors when determining whether a motion to intervene was timely made:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew

17

> or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001).

In this case the Commission, as stated above, requests to intervene in order to motion the Court lift its stay so that the Commission Administrator can suspend further enrollment of students at the Art Institute pursuant to NAC 394.670, and possibly take further action under that regulation. As noted above, the Commission is the State of Nevada agency charged with enforcing NRS/NAC Chapter 394, including NAC 394.670.

The Commission's motion is timely. With respect to the first factor, courts consider not only the passage of time in a case, court also consider the nature of a case and the stage of a case's proceedings. *United States v. City of Detroit*, 712 F.3d 925, 931 (6th Cir. 2013). The current case has been in existence for approximately five months, being filed on January 18, 2019. At this time the Court has already terminated the receivership, but not with respect to the Art Institute. With respect to the Art Institute and another entity, the Receiver asked that the receivership continue to allow the operation of the Art Institute

to continue in order to transfer student records to State regulatory agencies, liquidate assets, fulfill government regulatory requirements and maintain accreditation, among other stated reasons (See ECF 349).

Apparently at present the Receiver is still in the process of trying to accomplish these tasks, and the chances of successful completion in view of the various problems at the Art Institute seem problematic, so that intervention at the present time is proper with respect to the point at which the present action/suit is currently in.  In fact, the Commission refrained from taking action for some weeks to allow the Receiver time to hopefully correct the issues and problems the Art Institute has but it appears that these acts were not accomplished, and the Art Institute is coming up on the expiration of its license.

With respect to the purpose of intervention, the Commission is seeking to intervene in order to take action under NAC 394.670 and enforce laws that it has been charged with administering in order to protect State of Nevada students and residents by ensuring that the Art Institute complies with applicable sections of NRS and NAC Chapter 394.

19

The State of Nevada has been aware of the existence of the receivership in this case since soon after the Receiver was appointed by the Court, and has had an interest in the proceedings of the case since that time, as the Art Institute was a licensed postsecondary educational institution operating in Nevada. Although the Art Institute was behind on paying its new student fees prior to the Court's Order Appointing Receiver in this case, matters did not reach the point where the Commission's Administrator determined there was the need to suspend further student enrollment at the Art Institute until after it began to fail to meet its payroll and after students began informing the Commission Administrator about the Art Institute's failure to process refunds and provide student refunds through the complaint process.

With respect to the prejudice the original parties might suffer from the Commission not attempting to intervene at an earlier stage of this proceeding, the prejudice the original parties would suffer appears no greater at this time than it would have been if the Commission had intervened within days of the Receiver being appointed. In fact, any alleged delay by the Commission in moving to intervene in this case has apparently provided the Receiver more time to attempt to sell the Art

Institute and to comply with the Art Institute's legal obligations, such as paying fees, processing refunds properly and finding or generating money to pay staff. Unfortunately, even with the extra time provided the Art Institute's legal obligations under NRS 394 have not been met.

Finally, there appear to be to be no unusual circumstances that militate for or against intervention in this case.

## III.
## CONCLUSION

Thus based on all of the above, the Art Institute's enrollment should be limited pursuant to NAC 394.670(1)(a), but in order to do so the stay put in place by this Court in its Order Appointing Receiver would need to be lifted for the limited purpose of allowing the Commission to suspend further enrollment of students at the Art Institute pursuant to NAC 394.670, and if the Art Institute fails to correct the violations, possibly pursue revocation of its license or impose a fine.

In sum, the Commission is simply asking that the stay that this Court put in place when appointing the Receiver be lifted for the limited purpose of allowing the Commission to take the same action against the Art Institute that the Commission would take against any other

licensed Nevada postsecondary educational institution that was performing in the same manner as the Art Institute is currently performing.

As demonstrated above, the Commission has satisfied the factors set forth in *Wencke* that 6th Circuit Courts look to when deciding whether to lift stays in receivership cases.

The Commission is seeking to intervene in this case only to allow it to motion for the limited lifting of the stay put in place by the Court in its Order Appointing Receiver.  Furthermore, as noted above, all of the factors for permissive intervention pursuant to FRCP 24(b)(2) have been met by the Commission.

. . .

. . .

. . .

Thus, it is respectfully requested that the Commission's Motion for Intervention and the Limited Lifting of Receivership Stay be granted by the Court.

Dated: June 28, 2019.

AARON FORD
Attorney General

By: _____

ROBERT A. WHITNEY
Deputy Attorney General
Nevada Bar No. 8726
Office of Nevada Attorney General
555 East Washington Ave., Ste. 3900
Las Vegas, NV 89101
(702) 483-3104
rwhitney@ag.nv.gov

*Attorney for State of Nevada,*
*Commission on Postsecondary*
*Education*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 28th day of June 2019 a copy of the foregoing Motion for Intervention and the Limited Lifting of Receivership Stay was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

An employee of the Office of the
Nevada Attorney General