UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DIGITAL MEDIA SOLUTIONS, LLC,** | ) CASE NO. 1:19-cv-145 |
| | ) |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | )  THOMAS M. PARKER |
| **SOUTH UNIVERSITY OF OHIO, LLC,** *et. al.*, | ) |
| | ) |
| Defendants. | ) |

**EMERGENCY MOTION OF MARK E. DOTTORE, RECEIVER OF THE ART INSTITUTE OF LAS VEGAS, LLC, FOR AN ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE ART INSTITUTE OF LAS VEGAS, LLC FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS, AND OTHER INTERESTS (WITH CERTAIN EXCEPTIONS) AND FOR TRANSFER OF THE INTERESTS OF UNPAID HOLDERS OF INTERESTS TO THE PROCEEDS OF THE SALE**

Mark E. Dottore, (the "**Receiver**") duly appointed and acting Receiver, hereby moves this honorable Court, pursuant to the Order appointing him, federal common law and Fed. R. Civ. P. 66, and Rule 66.1(c) and (d) of the Local Rules for the United States District Court for the Northern District of Ohio for the entry of an Order, (i) authorizing the sale of substantially all of the assets (the "**Assets**") of The Art Institute of Las Vegas, LLC, an Arizona nonprofit limited liability company that is registered in the State of Nevada as the DC Art Institute of Las Vegas, LLC OPE ID #04051300, (the "**School**"), to Save the Art Institute of Las Vegas Limited, a Nevada limited liability company, or its assignee (the "**Buyer**"), consistent with the terms of an Asset Purchase Agreement (the "**APA**") attached hereto as Exhibit A; (ii) determining and directing that the sale of the Assets is free and clear of all

mortgages, pledges, security interests, liens, encumbrances, claims, charges, and any other interests of any kind or type whatsoever (the "**Interests**"), except for amounts that are required to be paid as part of the process of approval of the Sale by the United States Department of Education (the "**DOE**") or the Nevada Department of Employment, Training and Rehabilitation, Commission of Postsecondary Education (the "**DETR**") (the "**DOE/DETR Required Amounts**"); (iii) transferring all unpaid claims of persons holding Interests (the "**Claimants**") in the Assets to the proceeds of sale; and (iv) granting such other and further relief as is warranted in the circumstances.

This Motion is brought on emergency basis because there are imminent deadlines approaching that must be met for the School to be able to continue to operate. Until the approval of the sale, Buyer is unable to obtain finances that are necessary to continue to operate the School nor is Buyer able to submit applications or other necessary documentations to Governing Authorities or Educational Agencies (as defined in the APA) that are imperative to keep the School in compliance. Also, there is a substantial risk of (i) loss of accreditation from the Accrediting Counsel for Independent Colleges and Schools ("**ACICS**") and American Culinary Federation Education Foundation's Accrediting Commission ("**ACFEFAC**"), (ii) loss of eligibility to participate in federal student aid programs, and (iii) loss of School's State's licensure. The School simply cannot continue as an educational institution for even a short time without financial assistance and therefore immediate action by this Court is required to approve the sale of the

{00022445-1}  2

School.  As this Court is well aware, the most important to all of this are the students, and if the School ceases to operate as an educational institution, its students will be unable to complete their programs of study and they will be detrimentally hurt.

In support of this Motion, the Receiver says as follows:

## PROCEDURAL HISTORY

1. This Court appointed the Receiver on January 18, 2019, on an emergency basis, pursuant to its Order Appointing Receiver [Dkt. No. 8] (the "**Initial Receiver Order**"). On January 25, 2019, after discussions with the secured lenders of the Receivership Entities, the Receiver filed his *Motion of Mark E. Dottore, Receiver for Entry of Order Clarifying Order Appointing Receiver* [Docket No. 12], pursuant to which the Court entered the Clarifying Order, *nunc pro tunc* to the entry of the Initial Receiver Order. [Dkt. No. 14].

2. On February 25, 2019, the Receiver filed his *Motion of Mark E. Dottore Receiver for Entry of Amended Order Appointing Receiver*, seeking the entry of an Amended Order Appointing Receiver (the "**Amended Receiver Order**"), incorporating changes requested by persons with significant interests in the Receivership Entities and the operations of the receivership proceedings, including government entities and lenders.  The various iterations of the orders appointing the Receiver shall be referred to herein as the "**Receiver Order,**" when the differences between the Initial Receiver Order, the Clarifying Order and the

Amended Receiver Order (if entered by the Court) are insignificant for the purposes of this Motion.

## JURISDICTION AND AUTHORITY OF THE RECEIVER

3. The relief requested in this motion is governed by FED. R. CIV. P. 66, Rule 66.1(c) and (d) of the Local Rules for the United States District Court for the Northern District of Ohio (the "**Local Rules**"), federal common law and the Receiver Order.

4. The Interim Receiver Order provides,

> 2.n. The Receiver is authorized to negotiate and effect an orderly sale, transfer, use or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Entities and, for the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property . . . The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.

5. The Amended Receiver Order provides that the Receiver's authority to negotiate and effect a sale of the assets is subject Paragraphs 13 and 14 of the Amended Receiver Order. Paragraph 13 affirms that the regulatory authority of the United States may not be stayed or constrained and Paragraph 14 affirms the validity of the Federal Priority Statute, 31 U.S.C. § 3713.

## FACTS AND HISTORY

6. Dream Center Education Holdings LLC ("**DCEH**") is a not for profit holding company. Prior to the commencement of this case, DCEH held the equity interests of Argosy University of California, LLC, Dream Center South University,

{00022445-1}  4

LLC, and The Arts Institutes International, LLC, an Arizona nonprofit LLC. Please see the First Report of Receiver [Dkt. No. 91], which is fully incorporated herein for further information as to DCEH's structure.

7. DC Art Institute of Phoenix, LLC (**"DC AiP"**), an Arizona nonprofit LLC, is the parent and the sole member of The Art Institute of Las Vegas, LLC, an Arizona nonprofit limited lability company which is registered in the State of Nevada as The DC Art Institute of Las Vegas, LLC. Buyer wishes to purchase all of the assets of the School used in the operation of the School, whether tangible or intangible, and assume certain liabilities and contracts of the School as set forth in the APA.

8. On or about March 28th, 2019, the Receiver on behalf of the School entered into a Managed Services Agreement ("**MSA**") with Buyer whereby Buyer agreed to provide certain Core services (as defined in the MSA) in support of the School's academic mission and purpose and that certain Non-Core services would be provided by DCEH pursuant to a Transition Service Agreement ("**TSA**").

## THE SALE TRANSACTION

9. On March 28, 2019, Receiver on behalf of the School entered into a Memorandum of Understanding ("**MOU**") with Buyer to acquire substantially all of the assets of the School used in the operation of the School, whether tangible or intangible.

{00022445-1}  5

10. Subsequently, on July 15, 2019, the Receiver on behalf of the School entered into an Asset Purchase Agreement with Buyer to acquire all of the assets of the School used in the operation of the School, whether tangible or intangible.

11. The APA sets forth the following terms and conditions:

   a. Buyer shall acquire substantially all of the assets of the School used in the operation of the School, whether tangible or intangible ("**Assets**"), and assume certain scheduled liabilities of the School including those liabilities which Buyer already committed to under the MSA (the "**Transaction**").

   b. Consideration for the Transaction is Two Hundred and Fifty Thousand Dollars ($250,000.00) as adjusted under the terms of the APA.

   c. Conditions to closing include:

      1.) Receiver obtaining a final order (the "**Sale Order**") from this Court authorizing and approving the Transaction and ordering that (i) Buyer shall receive the Assets of the School free and clear of Interests (except for DOE/DETR Required Amounts); and (ii) the time to appeal Sale Order shall have lapsed.

      2.) Each party hereto shall bear and pay its own fees and expenses and shall have no responsibility or obligation of any other party's fees or expenses.

      3.) Closing shall occur no later than three (3) business days following Buyer's receipt of all Governmental Approvals and Educational Approvals or such other date as the Buyer and Seller may mutually determine, provided, however, the time period may be extended if a party to this action files an appeal of the Sale Order. In addition, the APA states that other regulatory requirements and pre-conditions may otherwise determine the date of the Closing.

### THE SALE TRANSACTION IS CONSISTENT WITH SOUND BUSINESS JUDGMENT AND IS IN THE BEST INTEREST OF CREDITORS AND OTHER INTERESTED PARTIES, INCLUDING STUDENTS

12. Since his appointment in this case, the Receiver has marketed all of the Assets in a manner that was designed to attract the maximum number of

individuals and groups with an interest in purchasing the School. Prior to the appointment of the Receiver, the School advertised itself for sale to a willing buyer.

13. In addition to the marketing efforts by the Receiver and the School, this case has been the subject of extensive press coverage. Through the press coverage and through earlier efforts to sell the institution, the Receiver's interest in a sale transaction and its financial situation were widely known among educators, educational institutions and investors in educational institutions. The Receiver's business judgment is that no further marketing is required to produce interested purchasers.

14. Immediately after his appointment, the Receiver was approached by the Buyer. The APA submitted by Buyer is the highest and best offer received for the Assets. It represents the highest in terms of money offered for the Assets and also includes the opportunity to continue the institution and honor the students' wishes to complete their programs of study. The APA offers the School's creditors the most money and the School's students an uninterrupted education. Principals of Buyer have demonstrated postsecondary education experience and knowledge and are more likely than other prospective purchasers to be successful in obtaining approvals from regulatory authorities which are required to complete the sale transaction. Buyer also seeks to close at the earliest possible time and demonstrates the financial wherewithal to do so. A sale to Buyer is consistent with good business judgment and is approved by this Court.

15. The Buyer must have authority to complete the sale transaction through entry of an Order of Sale <u>and</u> submit an application for the change of control before July 31, 2019, or else it is possible that the School's license will be revoked. Even if the license is renewed, provisionally or permanently, absent an Order approving the sale transaction, there is a substantial risk of loss of accreditation from the Accrediting Counsel for Independent Colleges and Schools ("**ACICS**") and American Culinary Federation Education Foundation's Accrediting Commission ("**ACFEFAC**").

16. In short, the Buyer must close this transaction before July 31, 2019, or risk closure and/or loss of eligibility to participate in federal student aid programs. The failure to qualify for these programs is critical; the School cannot continue as an educational institution for even a short time without financial assistance, and without financial assistance, the Assets will be substantially devalued and/or the School will close.

17. The Assets are more valuable when sold as a "going concern," that is, as an educational institution. The sale to Buyer will also benefit the School's students, faculty and the community as the school will remain open. In order to sell the Assets as a continuing educational enterprise in good standing, the Seller must complete its sale transaction immediately, as it cannot continue to operate as an educational institution even for a short time without financial assistance and is in danger of losing both its accreditation and its ability to participate in federal student aid programs.

18. The Receiver asserts that approval of the Sale Motion and consummation of the Sale to the Buyer at this time is in the best interests of the School, its creditors and its students. The Receiver further asserts that in his best business judgment, the sale transaction on the terms and conditions set forth in the APA, is in the best interest of students, creditors and the community. Sound business judgment includes, but is not limited to, the fact that (i) there is a risk of immediate and irreparable loss of value of the Assets if the School ceases to operate as an educational institution, (ii) its students will be unable to complete their programs of study, (iii) the consummation of the transaction contemplated under the APA presents the best opportunity to realize the value of the Assets to avoid further decline and devaluation thereof; (iv) the sale is at arm's length; and (v) the Receiver has exercised reasonable diligence and good faith judgment.

19. The consideration to be paid by the Buyer for the Assets constitutes adequate and fair value for the Assets and the terms and conditions of the APA are fair and reasonable.

## LIENS AND ENCUMBRANCES

Liens reported against the Assets to be sold are as follows:

a. Non-consensual interests obtained by the United States Government pursuant to 31 U.S.C. § 3713, known as the "federal priority statute";

b. U.S. Bank National Association, as Collateral Agent under the Senior Secured Credit an Guaranty Agreement, dated as of October 17, 2017, by The Dream Center Foundation and the other parties thereto; collateral is

all assets of the Debtor (DCEH), whether now owned or hereafter acquired;

c. U.S. Bank National Association, as Collateral Agent under the Senior Secured Credit an Guaranty Agreement, dated as of January 5, 2015, by Education Management II LLC and the other parties thereto; collateral is all assets of the Debtor (DCEH), whether now owned or hereafter acquired;

d. Great American Insurance Company; the collateral is all rights of the Debtors (DCEH and The Arts Institutes International, LLC, Dream Center Argosy University of California, LLC) growing out of bonds issued by Great American on behalf of Debtors and any of Debtors' subsidiaries and related entities (etc);

e. Studio Enterprise Manager, LLC claims a lien and/or an interest on all of the assets in the Receivership Entities including but not limited to The Arts Institutes of California, San Diego and the Art Institute of Seattle, LLC, and Accounts Receivable campuses located at Hollywood, Inland Empire, Orange County, Sacramento, and San Francisco;

f. Dream Center Argosy University of California LLC has a lien on "Contributed Receivables," which is accounts due from student Account Debtors at various Argosy University campuses;

g. Studio Enterprise Manager, LLC has a right of first refusal on Argosy and various other campuses.

**LAW AND ARGUMENT**

This Court has the authority to approve a sale of the Assets free and clear of all Interests, and to transfer the Interests to the proceeds derived from the respective sales of the Assets. The Court's authority to impose and administer this receivership is derived from its inherent powers as a court of equity. See *S.E.C. v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001); U.S. v. Durham, 86 F.3d 70, 72 (5th Cir. 1996); see also Fed. R. Civ. P. 66 ("The practice in the administration of estate by receivers . . . shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district court."). A federal court exercises "broad powers and wide discretion" in crafting relief in an equitable receivership proceeding. See *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001).

The goal of a receiver charged with liquidating assets is to obtain the best value for the estate available under the circumstances. *Fleet Nat'l Bank v. H& D Entm't, Inc.*, 926 F. Supp. 226, 239-40 (D.C. Mass. 1996) (citing *Jackson v. Smith*, 254 U.S. 586 (1921)). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., *Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997). Moreover, courts have recognized that a receiver's business judgment is entitled to significant deference when selecting the appropriate methods to achieve this goal. See, e.g., *Golden Pac. Bancorp v. F.D.IC.*, 2002 WL 31875395 (S.D.N.Y. 2002); aff'd sub nom, *Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2nd Cir. 2004) (recognizing receivers are

afforded deference in corporate decision making); *In re JFD Enter., Inc.*, 2000 WL 560189, *5 (1st Cir. 2000) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.") (internal citations omitted). 51.

This Court's broad authority over a receivership estate includes the equitable power "to sell property free of liens, transferring the lien to the proceeds." *Seaboard Natl. Bank v. Rogers Milk Prod. Co.*, 21 F.2d 414, 416 (2nd Cir. 1927); see also *First Natl. Bank v. Shedd*, 121 U.S. 74 (1887) (affirming the sale of railroad property deteriorating in value free and clear of liens); *F.T.C. v. Trudeau*, No. 03-C-3904 (N.D. Ill. May 27, 2014) (order approving sale of receivership assets free and clear of encumbrances, liabilities, and claims); *S.E.C. v. Pearson, No. 14 C 3785* (N.D. Ill. June 9, 2014) (order approving sale liens, claims, encumbrances, and interests); *Quilling v. Trade Partners, Inc.*, 2007 WL 296211 (W.D. Mich. 2007) (approving receiver's sale of property free and clear of all liens and encumbrances); *Stoder v. Am. Crushing 18 & Recycling, LLC*, 2006 WL 438615 (Conn. Super. Ct. 2006) (granting receiver's motion to sell property free and clear of liens); *Parks v. Carlisle Clay Prod. Co. of Carlisle*, 276 N.W. 591 (Iowa 1937) (allowing a receiver to sell the assets of the corporation free of liens and encumbrances).

Under Local Rule 66.1, the Court is to administer receivership estates "similar to that in bankruptcy cases." It is a bedrock principle of bankruptcy law

that bankruptcy courts (which are courts of equity like courts administering receivership estates) may authorize the sale of estate assets free and clear of all liens and interests. See 11 U.S.C. § 363.

## OBJECTIONS

By a separate Motion filed contemporaneously herewith, and for the reasons stated herein, the Receiver is requesting the shortening of time for the filing of objections to the sale, and for an expedited hearing date.

## NOTICE TO INTERESTED PARTIES

The Receiver will notify all interested parties of the sale of the Assets. Specifically, the Receiver will notify the all parties to the lawsuit, the federal, state and local taxing authorities, all secured lenders, unsecured creditors that have demonstrated an interest in the Assets, the Attorney General of the State of Nevada, the Accreditors, and other parties that the Receiver believes would have an interest in the sale or who have requested that they be notified of any sale. Notice shall consist of this Motion, with its exhibits, and any Notice of Hearing required to be served by this Court. Upon completion of the notice to interested parties, the undersigned will file an appropriate Certificate of Service with this Court.

WHEREFORE the Receiver moves this honorable court for an order authorizing and approving the sale of the Assets free and clear of the Interests and for the transfer of the Interests of the Claimants to the proceeds of the Sale to be paid by further order of this Court as their interests appear under the law and for such other and further relief as is just.

Date: July 15, 2019  **WHITMER & EHRMAN LLC**

*/s/Mary K. Whitmer*
Mary K. Whitmer (0018213)
James W. Ehrman (0011006)
2344 Canal Rd., Suite 401
Cleveland, OH 44113
Telephone: (216) 771-5056
Facsimile: (216) 771-2450
Email: mkw@weadvocate.net

*Attorneys for the Receiver*