UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC | ) CASE NO. 1:19-cv-145 |
| | ) |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF MARK DOTTORE

I, Mark Dottore, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a resident of the State of Ohio.

2. I make the within declaration from my own personal knowledge, and I am competent to so testify.

3. I am the Court-appointed Receiver for the Receivership Entities. *See* Amended Receiver Order at 1-2 [Doc. 150] (listing the Receivership Entities). As relevant here, the Court appointed me the Receiver of The Art Institute of Las Vegas, LLC, an Arizona nonprofit limited liability company that is registered in the State of Nevada as The DC Art Institute of Las Vegas, LLC OPE ID #04051300 (the "School").

4. Before my appointment as Receiver, the School advertised itself as for sale to a willing buyer. The School was one of the Excluded Campuses as defined in the Amended and Restated Framework Agreement dated as of January 7, 2019 [Doc. 283-1] and the related Reorganization Documents filed as the exhibits to Docket Item no. 283; that is, the School was

not selected for acquisition by Education Principle Foundation, The Arts Institute International, LLC, or the Dream Center South University, LLC.

5. Immediately after my appointment, I was approached by Save the Art Institute of Las Vegas Limited ("Save Las Vegas" or the "Buyer") and another group both of which were seriously interested in acquiring the School and substantially all of the assets (the "Assets") of the School.

6. Since my appointment in this case, I have marketed all of the Assets in a manner that was designed to attract the maximum number of individuals and groups with an interest in purchasing one or multiple campuses. Further, this case has been the subject of extensive press coverage. Through the press coverage and through earlier efforts to sell the School, my interest in a sale transaction was widely known among educators, educational institutions, and investors in educational institutions. In excess of twenty prospective buyers have contacted me about the possibility of purchasing one or more campuses of the Receivership Entities.

7. The Asset Purchase Agreement dated July 15, 2019 submitted by Buyer (the "APA") is the highest and best offer I have received for the Assets. It represents the highest in terms of money offered for the Assets and includes the opportunity to continue the institution and honor the students' wishes to complete their programs of study. The APA offers the School's creditors the most money and the School's students an uninterrupted education. Principals of Buyer have demonstrated postsecondary education experience and knowledge and are more likely than other prospective purchasers to be successful in obtaining the approvals from regulatory authorities which are required to complete the sale transaction. Buyer also seeks to close at the earliest possible time and demonstrates the financial wherewithal to do so.

8.  If the Assets are not sold to Buyer at this time, the School will close and the Assets will be substantially devalued. Put another way, the Assets have value when sold as a "going concern"; in this case, as an educational institution. Without a sale at this time, the School will have to close because it cannot continue to operate as an educational institution, even for a short time, without outside financial assistance. The School is also in danger of losing both its accreditation and its ability to participate in federal student aid programs. The sale to Buyer will also benefit the School's students, faculty and the community as the school will be able to keep its accreditation and its ability to participate in federal student aid programs. In order to sell the Assets as a continuing educational enterprise in good standing, the Seller must complete its sale transaction immediately. If the sale is not completed by the end of this month, the Assets will have *de minimus* value.

9.  I believe that the consideration to be paid by the Buyer for the Assets constitutes adequate and fair value for the Assets and the terms and conditions of the APA are fair and reasonable.

10. I believe that the Sale should be consummated because in my business judgment if the Sale is not consummated: (i) there is a risk of immediate and irreparable loss of value of the Assets; (ii) there is a substantial risk of loss of accreditation from the Accrediting Counsel for Independent Colleges and Schools and American Culinary Federation Education Foundation's Accrediting Commission, and loss of eligibility to participate in federal student aid programs; (iii) the School cannot continue as an educational institution for even a short time without financial assistance, (iv) if the School ceases to operate as an educational institution, its students will be unable to complete their programs of study, (v) the consummation of the transaction

3

contemplated under the APA presents the best opportunity to realize the value of the Assets to avoid further decline and devaluation thereof; and (vi) the sale is an arm's length transaction.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief. Executed on this 22nd day of July 2019 in Cleveland, Ohio.

_____
MARK E. DOTTORE, RECEIVER