## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **DIGITAL MEDIA SOLUTIONS, LLC,** ) | **CASE NO. 1:19-cv-145** |
| ) | |
| **Plaintiff,** ) | **JUDGE DAN AARON POLSTER** |
| ) | |
| **v.** ) | **MAGISTRATE JUDGE** |
| ) | **THOMAS M. PARKER** |
| **SOUTH UNIVERSITY OF OHIO,** ) | |
| **LLC, *et. al.*,** ) | |
| ) | |
| **Defendants.** ) | |

---

**EMERGENCY MOTION OF MARK E. DOTTORE, RECEIVER OF DREAM CENTER ARGOSY UNIVERSITY OF CALIFORNIA, LLC, FOR AN ORDER AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF WESTERN STATE COLLEGE OF LAW AT ARGOSY UNIVERSITY, FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS, AND OTHER INTERESTS AND TO TRANSFER THE INTERESTS OF UNPAID LIENHOLDERS TO THE PROCEEDS OF THE SALE**

---

Mark E. Dottore, the duly appointed and acting receiver (the "**Receiver**"),

hereby moves this honorable Court, pursuant to the Order appointing him, federal

common law and Fed. R. Civ. P. 66, and Rule 66.1(c) and (d) of the Local Rules for

the United States District Court for the Northern District of Ohio, for the entry of

an Order: (i) authorizing the sale of all or substantially all of the assets (the

"**Assets**") of Western State College of Law at Argosy University ("**WSCL**"), to

Westcliff Management Group d/b/a Westcliff University or its assignee (the

"**Buyer**"), consistent with the terms of an Asset Purchase Agreement (the "**APA**")

attached hereto as Exhibit A; (ii) determining and directing that the sale of the

Assets is free and clear of all mortgages, pledges, security interests, liens,

encumbrances, claims, charges, and any other interests of any kind or type

whatsoever, including any lien or priority payment pursuant to 31 U.S.C. § 3713 (the "**Interests**"); (iii) transferring all unpaid claims of any person holding an Interest (the "**Claimants**") in the Assets to the proceeds of sale; and (iv) granting such other and further relief as is warranted in the circumstances.

This Motion is brought on emergency basis because there are imminent deadlines approaching that must be met for WSCL to be able to continue to operate. Buyer's teach out of current students at WSCL, which is scheduled to begin on August 1, 2019, is contingent upon approval of the sale of the Assets of WSCL to Buyer. Further, in order to sell the Assets as a continuing educational enterprise in good standing, the Receiver must complete its sale transaction immediately. The school cannot continue as an educational institution for even a short time without financial assistance, and there is no one to provide it. Thus, time is of the essence for the Court's approval of the Sale. And perhaps most important, if WSCL ceases to operate as an educational institution, its students will be unable to complete their programs of study and they will be detrimentally hurt.

In support of this Motion, the Receiver says as follows:

## PROCEDURAL HISTORY

1. This Court appointed the Receiver on January 18, 2019, on an emergency basis, pursuant to its Order Appointing Receiver [Dkt. No. 8] (the "**Initial Receiver Order**"). On January 25, 2019, after discussions with the secured lenders of the Receivership Entities, the Receiver filed his *Motion of Mark E. Dottore, Receiver for Entry of Order Clarifying Order Appointing Receiver* [Docket

No. 12], pursuant to which the Court entered the Clarifying Order, *nunc pro tunc* to the entry of the Initial Receiver Order. [Dkt. No. 14].

2.      On February 25, 2019, the Receiver filed his *Motion of Mark E. Dottore Receiver for Entry of Amended Order Appointing Receiver*, seeking the entry of an Amended Order Appointing Receiver (the "**Amended Receiver Order**"), incorporating changes requested by persons with significant interests in the assets and the operations of the receivership proceedings, including government entities and lenders. This Court entered the Amended Receiver Order on March 13, 2019. [Dkt. No. 150]. The various iterations of the orders appointing the Receiver shall be referred to herein as the "**Receiver Order,**" as the differences between the Initial Receiver Order, the Clarifying Order and the Amended Receiver Order are insignificant for the purposes of this Motion.

## JURISDICTION AND AUTHORITY OF THE RECEIVER

3.      The relief requested in this motion is governed by 28 U.S.C. § 3103(b)(1), FED. R. CIV. P. 66, Rule 66.1(c) and (d) of the Local Rules for the United States District Court for the Northern District of Ohio (the "**Local Rules**"), federal common law and the Receiver Order.

4.      The Interim Receiver Order provides,

> The Receiver is authorized to negotiate and effect an orderly sale, transfer, use or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Entities and, for the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property. . . . The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith

and reasonable discretion, believes will maximize the proceeds received from the sale.

5.     The Amended Receiver Order provides that the Receiver's authority to negotiate and effect a sale of the assets is subject to Paragraphs 13 and 14 of the Amended Receiver Order. Paragraph 13 affirms that the regulatory authority of the United States may not be stayed or constrained, and Paragraph 14 affirms the validity of the Federal Priority Statute, 31 U.S.C. § 3713.

## **FACTS AND HISTORY**

6.     Dream Center Education Holdings LLC ("**DCEH**") is a not for profit holding company. Prior to the commencement of this case, DCEH held the equity interests of Argosy University of California, LLC, Dream Center South University, LLC, and The Arts Institutes International, LLC. Please see the First Report of Receiver [Dkt. No. 91], which is fully incorporated herein for further information as to DCEH's structure.

7.     Dream Center Argosy University of California, LLC (**"DC Argosy"**) was the sole member of Argosy Education Group, LLC ("**AEG**" and together with **DC Argosy**, the "**Argosy**"), which owned 25 university campuses and WSCL. Buyer wishes to purchase all of the assets of Argosy used solely in the operation of WSCL, whether tangible or intangible, and assume certain contracts of WSCL as set forth in the APA.

8.     On or about January 7, 2019, the Receiver on behalf of Argosy entered into a Managed Services Agreement ("MSA") with Studio Enterprise Manager, LLC ("Studio") whereby Studio agreed to provide certain Non-Core Services (as defined

in the MSA) in support of Argosy's academic mission and purpose and that said services would be provided by DCEH pursuant to a Transition Service and License Agreement ("TSLA").  Per the Settlement Agreement entered into between the Receiver and Studio and approved by this Court [Dkt. No. 354], the MSA was terminated.

## THE SALE TRANSACTION

9.     On April 24, 2019, Receiver on behalf of Argosy entered into a letter of intent ("LOI") with Westcliff University ("**Buyer**") to acquire all of the assets of Argosy used solely in the operation of WSCL, whether tangible or intangible.

10.     Upon consummation of the LOI, the parties negotiated and entered into an Asset Purchase Agreement ("**APA**"), which set forth the following terms and conditions:

a.     Buyer shall acquire all of the assets of Argosy used in the operation of WSCL, whether tangible or intangible ("Assets"), and assume certain scheduled liabilities of WSCL.  It being understood that return to Title IV and non-Title IV refund obligations would not be performed or assumed by Buyer ("Transaction").

b.     It is intended that as a consequence of and following closing of the Transaction, WSCL shall become an additional location of Buyer and, while merged into its institutional governance structure under Buyer's WSCUC accreditation and USDE OPE ID, WSCL would continue to operate as it currently is operating as a college within Buyer.

c.     Buyer shall, upon Court approval of the sale to Buyer, enter into a teach-out agreement with Argosy by which it shall, subject to Regulatory Approvals and WSCL having tenancy rights at a facility, agree to teach-out the current WSCL students so that all currently-enrolled WSCL students would be able to complete their programs of study in accordance with agreed upon policies

respecting good academic standing and satisfactory academic progress commencing in August 2019.

d.    Buyer and Studio, to the extent necessary, shall enter into a Transition Service Licensing Agreement for IT support and other services that Studio currently provides to WSCL.

e.    Consideration for the Transaction is One Dollar ($1.00).

f.    Conditions to closing include:

1.)    Receiver obtaining final order from this Court authorizing and approving the Transaction and ordering that (a) Buyer shall receive the Assets of WSCL free and clear of any liabilities not specifically assumed in the APA; (b) the agreements entered into in November 2015 between EDMC and 39 state attorneys general and the District of Columbia do not apply to WSCL or its assets following closing (the "Approval Order"); (c) the time to appeal Approval Order shall have lapsed; and (d) the Approval Order shall be subject to Regulatory Approvals.

2.)    Receipt of all Regulatory Approvals.

3.)    Parties entering into a teach-out agreement, approved by the regulatory agencies, with respect to the existing WSCL students.

4.)    Buyer entering into a lease agreement or having the current lease assigned to it so that it can commence the teach-out as of August 1, 2019 subject to receipt of all Regulatory Approvals for facilities appropriate to operate an ABA accredited law school.

5.)    Consummation of the Transaction is conditioned upon the approval by the following regulatory agencies upon terms acceptable to Buyer:

(i)    Issuance by the U.S. Department of Education ("USDE") that the School's planned documentation submittal intended to demonstrate compliance with 34 CFR §600.9(a) will be accepted by the DOE and will not impede School's continued Title IV Programs participation after the Closing Date or result in the

issuance of the TPPA or PPA that includes an Adverse Regulatory Condition.

(ii)     WSCL shall have received a Pre-Acquisition Review Response that does not contain any Adverse Regulatory Condition or indicate the existence of any material impediments to the issuance of a TPPPA or PPPA following the Closing

(ii)     All necessary approvals by the WASC Senior College and University Commission ("WSCUC");

(iii)     All necessary approvals by the American Bar Association ("ABA"), or, alternatively, by the Committee of Bar Examiners of the State Bar of California;

(iv)     All necessary approvals by the California Bureau of private Postsecondary Education ("BPPE"); and

(v)     Approval by each of the foregoing regulatory agencies of a teach-out of the existing WSCL students.

7.)     Each party hereto shall bear and pay its own fees and expenses and shall have no responsibility or obligation for any other party's fees or expenses.

8.)     Closing shall occur upon the satisfaction of all necessary pre-closing conditions and approval by all Regulatory Agencies.

## THE SALE TRANSACTION IS CONSISTENT WITH SOUND BUSINESS JUDGMENT AND IS IN THE BEST INTEREST OF CREDITORS AND OTHER INTERESTED PARTIES, INCLUDING STUDENTS

11.     Since his appointment in this case, the Receiver has been approached by various groups and institutions who were seriously interested in acquiring parts of Argosy and the other campuses. The Receiver has actively pursued discussions with 15 different potential purchasers, two for WSCL and thirteen for the other campuses. Although there has been no specific advertisement for sale, this case has

been the subject of extensive press coverage. Through the press coverage and through his predecessor's earlier efforts to sell the Receivership Entities, the Receiver's interest in a sale transaction and its financial situation were widely known among educators, educational institutions and investors.  To date, the Receiver and/or those assisting him have discussed selling various parts of Argosy, South and AI with many different groups who expressed interest in the purchasing the Assets. The Receiver's business judgment is that no further marketing is required to produce interested purchasers.

12.     On February 27, 2019, the USDE published a letter denying Argosy any further Title IV funding (the "**Denial Letter**"). As a result, the Receiver has been accepting offers on an expedited basis.

13.     All interested parties were invited to submit bids.  Buyer was the only party to step forward and submit a bid for WSCL, which included an agreement to enter into a teach-out agreement commencing August 2019, allowing for the opportunity for WSCL to continue and honor the students' wishes to complete their programs of study.  The APA offers the only solution to providing the students an uninterrupted education.  Buyer also seeks to close at the earliest possible time, will use its own institutional licensure, accreditation, and USDE approvals to take over the school and demonstrates the knowledge, background and experience for gaining Regulatory Approval quickly.  As such, it is both the highest and best offer.  A transaction to Buyer is consistent with good business judgment and the Receiver here asserts that Buyer is a bona fide, good faith purchaser.  For all of these

reasons, it is the Receiver's opinion that the sale of the assets to Buyer should be approved by this Court.

14.    In order to sell the Assets as a continuing educational enterprise in good standing, the Receiver must complete its sale transaction immediately. The school cannot continue as an educational institution for even a short time without financial assistance, and there is no one to provide it.  The school's financial situation is endangering its ability to maintain accreditation, and the USDE, WSCUC and the ABA are carefully and strictly monitoring the progress of this sale to ensure that the students are properly cared for.  The accrediting agencies are prepared to take swift and appropriate action if the sale cannot be closed. Thus, time is of the essence, and the sale to Buyer must close at the earliest possible time.

15.    The Receiver asserts that approval of the Sale Motion and consummation of the Sale to the Buyer at this time is in the best interests of WSCL, its creditors and its students.  The Receiver further asserts that in his best business judgment, the sale transaction on the terms and conditions set forth in the APA, is in the best interest of students, creditors and the community. Sound business judgment includes, but is not limited to, the fact that (i) there is a risk of immediate and irreparable loss of value of the Assets if WSCL ceases to operate as an educational institution, (ii) its students will be unable to complete their programs of study, (iii) the consummation of the transaction contemplated under the APA presents the best opportunity to realize the value of the Assets to avoid further

decline and devaluation thereof; (iv) the sale is at arm's length; and (v) the Receiver has exercised reasonable diligence and good faith judgment.

16.     The consideration to be paid by the Buyer for the Assets constitutes adequate and fair value for the Assets and the terms and conditions of the APA are fair and reasonable.

## LIENS AND ENCUMBRANCES

15.     Liens reported against the Assets to be sold are as follows:

a.      Non-consensual interests obtained by the United States Government pursuant to 31 U.S.C. § 3713, known as the "federal priority statute";

b.      U.S. Bank National Association, as Collateral Agent under the Senior Secured Credit and Guaranty Agreement, dated as of October 17, 2017, by The Dream Center Foundation and the other parties thereto; collateral is all assets of the Debtor (DCEH), whether now owned or hereafter acquired;

c.      U.S. Bank National Association, as Collateral Agent under the Senior Secured Credit and Guaranty Agreement, dated as of January 5, 2015, by Education Management II LLC and the other parties thereto; collateral is all assets of the Debtor (DCEH), whether now owned or hereafter acquired;

d.      Great American Insurance Company; the collateral is all rights of the Debtors (DCEH and The Arts Institutes International,

LLC, Dream Center Argosy University of California, LLC)
growing out of bonds issued by Great American on behalf of
Debtors and any of Debtors' subsidiaries and related entities
(etc.);

e.  [Studio Enterprise Manager, LLC claims a lien and/or an
interest on all of the assets in the Receivership Entities;

f.  Dream Center Argosy University of California LLC has a lien on
"Contributed Receivables," which is accounts due from student
Account Debtors at various Argosy University campuses; and

g.  Studio Enterprise Manager, LLC has a right of first refusal on
Argosy and various other campuses.

## LAW AND ARGUMENT

16.  This Court has the authority to approve a sale of the Assets free and
clear of Interests, and to transfer the Interests to the proceeds derived from the
respective sales of the Assets. The Court's authority to impose and administer this
receivership is derived from its inherent powers as a court of equity. See *S.E.C. v.
Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001); *U.S. v. Durham*, 86 F.3d
70, 72 (5th Cir. 1996); see also 28 U.S.C. § 3103(b)(1); Fed. R. Civ. P. 66 ("The
practice in the administration of estate by receivers . . . shall be in accordance with
the practice heretofore followed in the courts of the United States or as provided in
rules promulgated by the district court."). A federal court exercises "broad powers

and wide discretion" in crafting relief in an equitable receivership proceeding. See *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001).

17.    The goal of a receiver charged with liquidating assets is to obtain the best value for the estate available under the circumstances. *Fleet Nat'l Bank v. H&D Entm't, Inc.*, 926 F. Supp. 226, 239-40 (D.C. Mass. 1996) (citing *Jackson v. Smith*, 254 U.S. 586 (1921)). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., *Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997). Moreover, courts have recognized that a receiver's business judgment is entitled to significant deference when selecting the appropriate methods to achieve this goal. See, e.g., *Golden Pac. Bancorp v. F.D.IC.*, 2002 WL 31875395 (S.D.N.Y. 2002); aff'd sub nom, *Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2nd Cir. 2004) (recognizing receivers are afforded deference in corporate decision making); *In re JFD Enter., Inc.*, 2000 WL 560189, *5 (1st Cir. 2000) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.") (internal citations omitted).

18.    This Court's broad authority over a receivership estate includes the equitable power "to sell property free of liens, transferring the lien to the proceeds." *Seaboard Natl. Bank v. Rogers Milk Prod. Co.*, 21 F.2d 414, 416 (2nd Cir. 1927); see also *First Natl. Bank v. Shedd*, 121 U.S. 74 (1887) (affirming the sale of railroad

property deteriorating in value free and clear of liens); *F.T.C. v. Trudeau*, No. 03-C-3904 (N.D. Ill. May 27, 2014) (order approving sale of receivership assets free and clear of encumbrances, liabilities, and claims); *S.E.C. v. Pearson, No. 14 C 3785* (N.D. Ill. June 9, 2014) (order approving sale liens, claims, encumbrances, and interests); *Quilling v. Trade Partners, Inc.*, 2007 WL 296211 (W.D. Mich. 2007) (approving receiver's sale of property free and clear of all liens and encumbrances); *Stoder v. Am. Crushing 18 & Recycling, LLC*, 2006 WL 438615 (Conn. Super. Ct. 2006) (granting receiver's motion to sell property free and clear of liens); *Parks v. Carlisle Clay Prod. Co. of Carlisle*, 276 N.W. 591 (Iowa 1937) (allowing a receiver to sell the assets of the corporation free of liens and encumbrances).

19.     Under Local Rule 66.1, the Court is to administer receivership estates "similar to that in bankruptcy cases." It is a bedrock principle of bankruptcy law that bankruptcy courts (which are courts of equity like courts administering receivership estates) may authorize the sale of estate assets free and clear of all liens and interests. See 11 U.S.C. § 363.

## OBJECTIONS

By a separate Motion filed contemporaneously herewith, and for the reasons stated herein, the Receiver is requesting the shortening of time for the filing of objections to the sale, and for an expedited hearing date.

## NOTICE TO INTERESTED PARTIES

20.     The Receiver will notify all interested parties of the sale of the Assets. Specifically, the Receiver will notify the all parties to the lawsuit, the federal, state and local taxing authorities, all secured lenders, all unsecured creditors, the Attorneys General of the States of California and Ohio, all educational accrediting agencies, and other parties that the Receiver believes would have an interest in the sale or who have requested that they be notified of any sale. Upon completion of the notice to interested parties, the undersigned will file an appropriate Certificate of Service with this Court.

WHEREFORE the Receiver moves this honorable Court for an order authorizing and approving the sale of Assets free and clear of all the Interests and for the transfer of the Interests of the Claimants to the proceeds of the Sale to be paid by further order of this Court as their interests appear under the law, and for such other and further relief as is just.

Date: July 24, 2019

**WHITMER & EHRMAN LLC**

*/s/Mary K. Whitmer*
Mary K. Whitmer (0018213)
James W. Ehrman (0011006)
2344 Canal Rd., Suite 401
Cleveland, OH 44113
Telephone: (216) 771-5056
Facsimile: (216) 771-2450
Email:  mkw@weadvocate.net
             jwe@weadvocate.net

*Attorneys for the Receiver*