UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, ) | CASE NO. 1:19-cv-145 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, ) | |
| LLC, *et. al.*, ) | |
| ) | |
| Defendants. ) | |

**MOTION OF MARK E. DOTTORE, RECEIVER OF ARGOSY EDUCATION GROUP LLC DBA ARGOSY UNIVERSITY, SARASOTA FOR AN ORDER AUTHORIZING THE SALE OF THAT CERTAIN EDUCATIONAL BROADBAND SERVICE LICENSE WNC980 ISSUED BY THE FEDERAL COMMUNICATIONS COMMISSION FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS, AND OTHER INTERESTS AND TO AUTHORIZE THE RECEIVER TO APPLY THE SALE PROCEEDS TO CERTAIN ADMINISTRATIVE COSTS OF THE RECEIVERSHIP ESTATE OR IN THE ALTERNATIVE TO TRANSFER THE INTERESTS OF UNPAID LIENHOLDERS TO THE PROCEEDS OF THE SALE**

Mark E. Dottore, (the "**Receiver**") duly appointed and acting Receiver of Dream Center Education Holdings LLC ("**DCEH**"), Argosy University of California LLC ("**Argosy California**"), and Argosy Education Group LLC ("**Argosy University**") hereby moves this honorable Court, pursuant to the Order appointing him, federal common law and Fed. R. Civ. P. 66, and Rule 66.1(c) and (d) of the Local Rules for the United States District Court for the Northern District of Ohio for the entry of an Order, (i) authorizing the sale of that certain Educational Broadband Service ("**EBS**") License WNC980 issued by the Federal Communications Commission (the "**FCC**") (the "**Asset**"), to Sarasota EBS License,

{00022726-1 }

LLC, a North Carolina limited liability company (the "**Buyer**"), consistent with the terms of a License Purchase Agreement (the "**Agreement**") attached hereto as Exhibit A (the "**LPA**"); (ii) determining and directing that the sale of the Asset is free and clear of all mortgages, pledges, security interests, liens, encumbrances, claims, charges, and any other interests of any kind or type whatsoever, including any lien or priority payment pursuant to 31 U.S.C. § 3713 (the "**Interests**"); (iii) authorizing the Receiver to use the proceeds derived from the sale transaction (the "**Sale Proceeds**") to pay the unpaid March 15, 2019 payroll or the compensation of the Receiver and his professionals, or in the alternative, transferring any unpaid claims of any person holding an Interest (the "**Interest Holders**") in the Asset to the Sale Proceeds pending further determinations by the Court; and (iv) granting such other and further relief as is warranted in the circumstances.

In support of this Motion, the Receiver says as follows:

## PROCEDURAL HISTORY

1.  This Court appointed the Receiver on January 18, 2019, on an emergency basis, pursuant to its Order Appointing Receiver [Dkt. No. 8] (the "**Initial Receiver Order**"). On January 25, 2019, after discussions with the secured lenders of the Receivership Entities, the Receiver filed his *Motion of Mark E. Dottore, Receiver for Entry of Order Clarifying Order Appointing Receiver* [Docket No. 12], pursuant to which the Court entered the Clarifying Order, *nunc pro tunc* to the entry of the Initial Receiver Order. [Dkt. No. 14].

2. On February 25, 2019, the Receiver filed his *Motion of Mark E. Dottore Receiver for Entry of Amended Order Appointing Receiver*, seeking the entry of an Amended Order Appointing Receiver (the "**Amended Receiver Order**"), incorporating changes requested by persons with significant interests in the assets and the operations of the receivership proceedings, including government entities and lenders. This Court entered the Amended Receiver Order on March 13, 2019 [Dkt. No. 150]. The various iterations of the orders appointing the Receiver shall be referred to herein as the "**Receiver Order,**" when the differences among the Initial Receiver Order, the Clarifying Order and the Amended Receiver Order are insignificant for the purposes of this Motion.

## JURISDICTION AND AUTHORITY OF THE RECEIVER

3. The relief requested in this motion is governed by FED. R. CIV. P. 66, Rule 66.1(c) and (d) of the Local Rules for the United States District Court for the Northern District of Ohio (the "**Local Rules**"), federal common law and the Receiver Order.

4. The Interim Receiver Order provides,

> 2.n. The Receiver is authorized to negotiate and effect an orderly sale, transfer, use or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Entities and, for the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property . . . The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.

5.      The Amended Receiver Order provides that the Receiver's authority to negotiate and effect a sale of the assets is subject Paragraphs 13 and 14 of the Amended Receiver Order. Paragraph 13 affirms that the regulatory authority of the United States may not be stayed or constrained and Paragraph 14 affirms the validity of the Federal Priority Statute, 31 U.S.C. § 3713.

**FACTS AND HISTORY OF DCEH, ARGOSY CALIFORNIA EDUCATION GROUP LLC DBA ARGOSY UNIVERSITY, SARASOTA**

6.      DCEH is a not for profit holding company. Prior to the commencement of this case, DCEH held the equity interests of Argosy California. Please see the First Report of Receiver [Dkt. No. 91], which is fully incorporated herein for further information as to DCEH's structure.

7.      Argosy California holds the equity of Argosy University which owned 25 university campuses including Western State College of Law at Argosy University. At one of its campus locations, Argosy University did business as Argosy University, Sarasota ("**Argosy Sarasota**").

8.      In March, 2019, due to the sudden loss of Title IV funding, Argosy University abruptly closed. The Receiver was unable to make payroll for the two week period ending March 8, 2019 which was scheduled to be paid March 15, 2019 (the "**March 2019, Payroll**"). The Receiver has now paid student workers and administrative staff, but is still collecting money to pay the balance of the March, 2019, Payroll. It is the Receiver's intention to use the Sale Proceeds to pay the March 2019, Payroll.

## THE SALE TRANSACTION

9. Generally speaking, the sale transaction envisions that the Buyer will immediately purchase the Asset for $450,000, subject to the LPA. By this Motion, the Receiver seeks approval of the LPA. The sale includes a variety of closing conditions, including (i) the entry of a Sale Order in form as is approved by the Buyer; and (ii) receipt of FCC approval. A detailed list of the Buyer's closing conditions is included in Para. 7(b) of the LPA.

## THE SALE TRANSACTION IS CONSISTENT WITH SOUND BUSINESS JUDGMENT AND IS IN THE BEST INTEREST OF CREDITORS AND OTHER INTERESTED PARTIES, INCLUDING STUDENTS

10. Upon examination of the assets of the receivership estate, the Receiver learned that Argosy Sarasota owned a wireless spectrum license, known as EBS License WNC980 (previously defined as the "**Asset**") which is subject to an Educational Broadband Service Long-Term De Facto Transfer Use and License Agreement dated as of February 9, 2009, FCC Lease Authorization L000005376 (the "**Existing Lease**"), between Argosy Sarasota, and Independent Spectrum Sarasota, LLC ("**Existing Lease Lessee**"). The terms of the Existing Lease require that the Existing Lease Lessee pay monthly licensing royalties for approximately thirty years, and then a lump sum to acquire the license near the end of the lease term.

11. In order to determine the value and salability of the Asset, the Receiver sought the assistance of Thomas Embrescia, principal of Second Generation LLC, an expert in broadcasting licensing. Mr. Embrescia advised the Receiver that because the Asset is subject to the Existing Lease, any sale presents challenging issues that could affect the sale price of the Asset, and that because of

these unique circumstances, the most logical purchaser is the Existing Lease Lessee.

12. The Receiver has negotiated with the Sarasota EBS License, LLC, an affiliate of the Existing Lease Lessee, and has received an offer of $450,000. The Receiver is advised by Mr. Embrescia that the price offered for the Asset, and the terms and conditions of the LPA for the purchase of the Asset are reasonable and fair in the circumstances.

13. In order to complete the sale of the Asset, the Receiver seeks the approval of the Court as soon as possible. The Asset must be maintained, and the Receiver is not in a position to do so. Once approval of the Court is obtained, the approval and consent of the FCC must be sought and provided to the Buyer. It is in the interest of the receivership estate to begin the FCC approval process and obtain the sales proceeds as expeditiously as possible, which the Receiver wishes to dedicate for use in paying the unpaid payroll.

14. The proposed sale pursuant to the LPA is in the best interest of the estate in that the Receiver avoids the expenses of liquidating the personal property and gains the purchase price, which is of a fair value. Time is of the essence, and the sale to Buyer must close at the earliest possible time.

## **LIENS AND ENCUMBRANCES**

15. Liens reported against the assets to be sold are as follows:

   a. Non-consensual liens obtained by the United States Government pursuant to 31 U.S.C. § 3713, known as the "federal priority statute;"

b. U.S. Bank National Association, as Collateral Agent under the Senior Secured Credit and Guaranty Agreement, dated as of October 17, 2017, by The Dream Center Foundation and the other parties thereto; collateral is all assets of the Debtor (DCEH), whether now owned or hereafter acquired.

c. U.S. Bank National Association, as Collateral Agent under the Senior Secured Credit and Guaranty Agreement, dated as of January 5, 2015, by Education Management II LLC and the other parties thereto; collateral is all assets of the Debtor (DCEH), whether now owned or hereafter acquired.

d. Great American Insurance Company; the collateral is all rights of the Debtors (DCEH and The Arts Institutes International, LLC, Dream Center Argosy University of California, LLC) growing out of bonds issued by Great American on behalf of Debtors and any of Debtors' subsidiaries and related entities (etc);

e. Studio Enterprise Manager, LLC All of Debtor's (DCEH) assets of or with respect to The Arts Institutes of California, San Diego and the Art Institute of Seattle, LLC, and Accounts Receivable campuses located at Hollywood, Inland Empire, Orange County, Sacramento, and San Francisco.

f. Dream Center Argosy University of California LLC has a lien on "Contributed Receivables," which is accounts due from student Account Debtors at various Argosy University campuses.

g. Studio Enterprise Manager, LLC has a right of first refusal on Argosy and various other campuses.

## LAW AND ARGUMENT

16. This Court has the authority to approve a sale of the Asset free and clear of the Interests and, if necessary, to transfer the Interests to the proceeds derived from the respective sales of the Asset. The Court's authority to impose and administer this receivership is derived from its inherent powers as a court of equity. See *S.E.C. v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001); *U.S. v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996); see also Fed. R. Civ. P. 66 ("The practice in the administration of estate by receivers . . . shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district court."). A federal court exercises "broad powers and wide discretion" in crafting relief in an equitable receivership proceeding. See *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001).

17. The goal of a receiver charged with liquidating assets is to obtain the best value for the estate available under the circumstances. *Fleet Nat'l Bank v. H& D Entm't, Inc.*, 926 F. Supp. 226, 239-40 (D.C. Mass. 1996) (citing *Jackson v. Smith*, 254 U.S. 586 (1921)). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., *Four B.*

*Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997). Moreover, courts have recognized that a receiver's business judgment is entitled to significant deference when selecting the appropriate methods to achieve this goal. See, e.g., *Golden Pac. Bancorp v. F.D.IC.*, 2002 WL 31875395 (S.D.N.Y. 2002); aff'd sub nom, *Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2nd Cir. 2004) (recognizing receivers are afforded deference in corporate decision making); *In re JFD Enter., Inc.*, 2000 WL 560189, *5 (1st Cir. 2000) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.") (internal citations omitted). 51.

18. This Court's broad authority over a receivership estate includes the equitable power "to sell property free of liens, transferring the lien to the proceeds." *Seaboard Natl. Bank v. Rogers Milk Prod. Co.*, 21 F.2d 414, 416 (2nd Cir. 1927); see also *First Natl. Bank v. Shedd*, 121 U.S. 74 (1887) (affirming the sale of railroad property deteriorating in value free and clear of liens); *F.T.C. v. Trudeau*, No. 03-C-3904 (N.D. Ill. May 27, 2014) (order approving sale of receivership assets free and clear of encumbrances, liabilities, and claims); *S.E.C. v. Pearson*, No. 14 C 3785 (N.D. Ill. June 9, 2014) (order approving sale liens, claims, encumbrances, and interests); *Quilling v. Trade Partners, Inc.*, 2007 WL 296211 (W.D. Mich. 2007) (approving receiver's sale of property free and clear of all liens and encumbrances); *Stoder v. Am. Crushing 18 & Recycling, LLC*, 2006 WL 438615 (Conn. Super. Ct.

2006) (granting receiver's motion to sell property free and clear of liens); *Parks v. Carlisle Clay Prod. Co. of Carlisle*, 276 N.W. 591 (Iowa 1937) (allowing a receiver to sell the assets of the corporation free of liens and encumbrances).

19. Under Local Rule 66.1, the Court is to administer receivership estates "similar to that in bankruptcy cases." It is a bedrock principle of bankruptcy law that bankruptcy courts (which are courts of equity like courts administering receivership estates) may authorize the sale of estate assets free and clear of all liens and interests. See 11 U.S.C. § 363.

## OBJECTIONS

20. Any person who has an objection to this Motion, must submit it in writing and file it with the Clerk of the United States District Court **on or before 4:00 p.m. (Eastern Time) on August 28, 2019.**

## NOTICE TO INTERESTED PARTIES

21. The Receiver will notify all interested parties of the sale of the Asset. Specifically, the Receiver will notify the parties which claim or may claim an interest in the property; that the Receiver believes would have an interest in the sale or who have requested that they be notified of any sale. Notice shall consist of this Motion, with its exhibit. Upon completion of the notice to interested parties, the undersigned will file an appropriate Certificate of Service with this Court.

WHEREFORE the Receiver moves this honorable court for an order authorizing the sale of Asset free and clear of all liens, encumbrances claims with any such claims being transferred to the proceeds of the sale to be paid by further

order of this Court as their interests appear under the laws of the State of Ohio, and for such other and further relief as is just.

Date: August 9, 2019                  **WHITMER & EHRMAN LLC**

                                                  */s/Mary K. Whitmer*
Mary K. Whitmer (0018213)
James W. Ehrman (0011006)
2344 Canal Rd., Suite 401
Cleveland, OH 44113
Telephone: (216) 771-5056
Facsimile: (216) 771-2450
Email: mkw@weadvocate.net

*Attorneys for the Receiver*