EXHIBIT A

# LICENSE PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "**Agreement**") is made as of August 6, 2019, ("**Execution Date**") by and between Mark E. Dottore, in his capacity as the receiver for Dream Center Education Holdings LLC ("**DCEH**"), and DCEH's assets, including Argosy Education Group LLC  (the "**Seller**"), and Sarasota EBS License, LLC, a North Carolina limited liability company, (the "**Buyer**").  Buyer and Seller may be referred to herein collectively as the "**Parties**" and individually, as a "**Party**".

## RECITALS

A.      Argosy Education Group, LLC, d/b/a Argosy University, Sarasota ("**Argosy Sarasota**"), is the licensee of a certain Educational Broadband Service ("**EBS**") license WNC980 (the "**License**") issued by the Federal Communications Commission (the "**FCC**").

B.      Seller has been appointed the receiver for Argosy Sarasota by the United States District Court for the Northern District of Ohio, Eastern Division (including any successor, the "**Court**"), in Case No. 1:19-cv-145 (the "**Receivership Case**").

C.      Seller desires to cause Argosy Sarasota to assign and transfer the License to Buyer and Buyer desires to take assignment and transfer of the License from Seller and Argosy Sarasota.

D.      Buyer and Seller desire to enter into this Agreement to effect the assignment and transfer of the License to Buyer free and clear of all liens, liabilities, claims, mortgages, pledges, security interests, encumbrances, adverse claims, equity interests, other interests or restrictions whatsoever (collectively, "**Liens**").

## AGREEMENTS

1.  **Assignment of License**:  Upon the terms and subject to the conditions outlined in this Agreement, on the Closing Date (as defined below), Seller will cause Argosy Sarasota to assign, and transfer to Buyer, and Buyer will take assignment and transfer from Argosy Sarasota, of all of Argosy Sarasota's right and interest in and to the License, free and clear of all Liens, in consideration of the payment by Buyer to Seller of the Consideration (as defined below).

2.  **Payment of Consideration**:  The consideration paid for the License will be Four Hundred Fifty Thousand Dollars ($450,000) (the "**Consideration**").  The Consideration shall be payable by Buyer to Seller on the Closing Date (as defined below) by wire transfer of immediately available funds to an account designated by Buyer.

3.  **Lease Agreement.**  The excess capacity of the License is leased to Independent Spectrum Sarasota, LLC pursuant to an Educational Broadband Service Long-Term De Facto Transfer Use and License Purchase Agreement, dated as of February 9, 2009, between such lessee and Argosy Sarasota (FCC Lease Authorization L000005376 (the "**Existing Lease**").  Seller shall comply and cause Argosy Sarasota to comply with the Lease.  Upon the Closing the Lease shall be deemed

terminated and of no further force and effect. Within ten (10) days of the Closing, Buyer and Seller shall join in requesting the cancellation of the Lease authorization by the FCC. Notwithstanding the foregoing, the provisions of Section 4 of the Lease are suspended as of the Execution Date, and shall be terminated along with the remaining provisions of the Lease but such suspension shall be lifted and the provisions of Section 4 of the Lease revived in the event this Agreement is terminated. To avoid a hiatus in the leasing of the spectrum authorized by the License, the parties agree that Buyer shall apply to the FCC for authorization (the "**New Lease Authorization**" of a lease between Buyer as lessor and Independent Spectrum Sarasota LLC as lessee to replace the Existing Lease effective on the Closing Date

4. **Assumption of Liabilities**: Buyer is not assuming and will not be responsible for any liabilities or obligations of Seller or Argosy Sarasota whether arising out of or in connection with the License, or otherwise. Seller shall assign the License to Buyer free and clear of all Liens.

5. **Payment of Expenses**: Buyer and Seller will each bear their own legal, accounting, brokerage, and/or other expenses incurred in connection with this Agreement.

6. **Closing**:

(a) Closing Date: The closing ("**Closing**") for the assignment and transfer of the License will occur ten (10) business days after the later of (i) the grant of the applications to the FCC for assignment of the License from Seller to Buyer or (ii) the grant of the application to the FCC for the New Lease Authorization have become Final Orders (as defined below); and the satisfaction of all other conditions specified in this Agreement (the "**Closing Date**").

(b) Cooperation: Buyer and Seller will cooperate, and Seller will cause Argosy Sarasota to cooperate, in good faith and exercise their reasonable best efforts to obtain all necessary consents from the FCC, entry of the Sale Order, the New Lease Authorization, and third party consents, if any, and finalize and execute any and all other documents or agreements required by the FCC to effect the assignment and transfer on or prior to the Closing Date. The Parties agree to cooperate in good faith to prepare and file the FCC assignment application for the License within ten (10) business days after the grant of the Pro Forma Transfer of Control Application. Buyer shall provide timely notice to the FCC of completion of this transaction following the Closing Date.

(c) Definitions: As used in this Agreement, "**Final Order**" will mean that forty (40) days have elapsed from the date of the FCC's issuance of Public Notice of the FCC's action on an application without any filing of any adverse request, petition or appeal by any Party or third party or by the FCC on its own motion with respect to the application, or any resubmission of any application, or, if challenged, the FCC's action will have been reaffirmed or upheld and the applicable period for seeking further administrative or judicial review will have expired without the filing of any action, petition or request for further review.

7. **Closing Conditions**:

(a) Seller's Closing Conditions. Seller's and Argosy Sarasota's obligations to close shall be subject to the satisfaction of all of the following conditions (except to the extent any such conditions are expressly waived by Seller in writing): (i) receipt of FCC consent, by Final Order,

of the assignment of the License to Buyer; (ii) receipt of any required third party consents and approvals required for the transfer of the License; (iii) receipt and the continued existence of the Sale Order as hereinafter defined; (iv) the continued truth and accuracy of Buyer's representations and warranties provided herein; (v) execution and delivery of appropriate instruments of sale and assignment and such other documents and instruments as the Parties or their counsel may reasonably request; and (vi) payment by Buyer of the Purchase Price on the Closing Date.

(b) <u>Buyer's Closing Conditions</u>. Buyer's obligation to close shall be subject to the satisfaction of all of the following conditions (except to the extent any such conditions are expressly waived by Buyer in writing):

(i) the Court's entry of an order, in a form approved by Buyer in all material respects (the "**Sale Order**") which is attached hereto as Exhibit A and which may be hereafter modified with the consent of the Parties, (a) authorizing Seller, via the Receiver, to enter into and perform under this Agreement, (b) authorizing and approving the assignment of the License to Buyer free and clear of all liens, claims, encumbrances and interests as set forth in this Agreement, and (c) finding and determining that Buyer is an arms-length, good faith purchaser for value, the Consideration is reasonably equivalent value, and Buyer is not a successor in interest to Seller;

(ii) receipt of FCC consent, by Final Order, of the assignment of the License to Buyer without any conditions materially adverse to Buyer;

(iii) FCC authorization, by Final Order, of the New Lease without any conditions materially adverse to Buyer;

(iv) receipt of any required third party consents and approvals required for the transfer of the License;

(v) receipt and the continued existence of the Sale Order without any conditions materially adverse to Buyer;

(vi) the continued truth and accuracy of Seller's representations and warranties provided herein; and

(vii) execution and delivery of appropriate instruments of sale and assignment and such other documents and instruments as the Parties or their counsel may reasonably request, including, without limitation, the assignment by Seller to Buyer and assumption by Buyer of wireless data services and devices of Seller by which Seller serves accredited educational institutions located within the Geographic Service Area of the License.

8. <u>**Representations and Warranties**</u>:

(a) <u>Seller's Representations and Warranties</u>:  Seller represents and warrants to Buyer as follows:  (i) Argosy Sarasota is the lawful, beneficial and exclusive owner of the License; (ii)

pursuant to the Sale Order, all action required by the Seller in this Agreement has been duly authorized and approved; (iii) to the best of Seller's knowledge, the License is valid and in good standing with the FCC; (iv) to the best of the Seller's knowledge, the License is not operating under any agreement encumbering the License or any FCC waiver of otherwise applicable rules and regulations; (vi) to the best of Seller's knowledge, there is no pending or threatened action, petition, pleading or competing application by a third party or the FCC to suspend, revoke, terminate or challenge the License, Argosy Sarasota's qualifications as licensee, or otherwise investigate the operation pursuant to the License(v) to the best of Seller's knowledge, no person or entity holds or has been granted a right of first refusal or option to purchase the License other than pursuant to the Existing Lease; (vi) following entry of the Sale Order and pursuant thereto, Seller shall have all required right, power and authority to cause Argosy Sarasota to assign, sell and transfer the License to Buyer at Closing free and clear of Liens. Each of Seller's representations and warranties will terminate at Closing.

(b) <u>Buyer's Representations and Warranties</u>: Buyer represents and warrants to Seller as follows: (i) Buyer is duly organized and in good standing under the laws of the state of its formation; (ii) this Agreement has been duly authorized and approved by all required company action of Buyer; (iii) Buyer is financially and legally able to meet its obligations under this Agreement; and (iv) neither the execution nor the delivery of this Agreement nor the consummation of the transaction it contemplates will conflict with, or result in, any material violation or default under any term of the certificate of organization or operating agreement of Buyer, or any agreement, mortgage, indenture, license, permit, lease or other instrument, judgment, decree, order, law or regulation by which Buyer is bound. Each of Buyer's representations and warranties will terminate at the Closing.

9. <u>**Seller's Covenants**</u>:

(a) Within ten (10) days of the date of the Execution Date, Seller will file a customary motion with the Court requesting entry of the Sale Order, together with a proposed form of Sale Order approved by Buyer.

(b) Within ten (10) days of the entry of the Sale Order, Seller will take, and cause Argosy Sarasota to take, such actions as are required to confirm and create its qualifications as the entity controlling Argosy Sarasota and as required to remain qualified to perform the Lease, including without limitation filing an application to the FCC for its consent to the transfer of control of Argosy Sarasota to the Seller (the **"Pro Forma Transfer of Control Application"**).

(c) From the date of this Agreement to the earlier of the Closing Date or termination of this Agreement, Seller will, and shall cause Argosy Sarasota to: (i) not sell, dispose, encumber or permit the assignment and transfer, disposal or encumbrance of the License; (ii) take all necessary actions necessary for Seller to comply with applicable FCC rules and to maintain the continued validity of the License; (iii) afford Buyer and its representatives reasonable access to the records relating to the License during normal business hours; (iv) not seek to modify or allow modification of any of the parameters under the License, including, without limitation, one or more frequency swaps or partitioning of the licensed Geographic Service Area; and (v) cooperate with Buyer in all applications or filings with the FCC in connection with this transaction. From and after the Closing Date, Seller will at any time and from time to time, upon Buyer's

reasonable request and without further cost to Buyer, prepare, execute and deliver the commercially reasonable instruments of conveyance and assignment and will take action as Buyer may reasonably request to more effectively transfer to and vest in Buyer, or its successors and assigns, and to put Buyer in possession of the License, free and clear of any and all Liens.

10. **Conflicting Agreements**: (a) To the best of Seller's knowledge, and subject to the receipt of the entry of the Sale Order, and except for the Existing Lease, neither Argosy Sarasota nor Seller is a party to, nor is the License subject to, any contract, law, court order, or arrangement that would preclude or would be violated by Seller's performance of Seller's obligations under this Agreement or by the consummation of the transactions contemplated by the Agreement; (b) Seller covenants that prior to Closing, Seller will not enter into for Argosy Sarasota, nor cause the License to be or become subject to, any such contract or arrangement, and Seller covenants that, if any person should allege that any such contract or arrangement exists or otherwise seeks to challenge consummation of the transactions (or any portion of the transactions) contemplated by this Agreement then Seller will promptly use Seller's reasonable best efforts to resolve the allegations or challenges so as to permit the transactions contemplated by this Agreement to be consummated as soon as is practicable, and Seller acknowledges that, until all allegations and challenges have been finally and favorably so resolved, Buyer will not be obligated to close the transactions contemplated by this Agreement;and (c) Buyer covenants that prior to Closing, Buyer will not enter into, or become subject to, any contract or arrangement that would be likely to prevent the FCC's consent to the assignment of the License to Buyer or the grant of the New Lease Authorization, or would otherwise preclude or be violated by Buyer's performance of Buyer's obligations under this Agreement. Buyer covenants that, if any person should allege that any contract or arrangement exists then Buyer will promptly use Buyer's reasonable best efforts to resolve the allegations so as to permit the transactions contemplated by this Agreement to be consummated as soon as is practicable.

11. **[Reserved]**.

12. **Specific Performance**: The Parties recognize that, in the event that a Party fails or refuses to perform any provisions of this Agreement (including compliance with the Parties' obligations under the Existing Lease), monetary damages alone will not be adequate. The non-defaulting Party shall therefore be entitled, in addition to any other remedies which may be available, including money damages, to obtain specific performance of the terms of this Agreement by temporary and/or permanent injunction or order without a showing of the inadequacy of remedies at law, without the posting of bond and without making any other showing except for the failure or refusal. In no event shall a Party be subject to a claim of wrongful enjoinment (or the jurisdictional equivalent of that claim) for obtaining a preliminary or permanent injunction that is subsequently found to have be wrongly issued. Notwithstanding the foregoing, in no event shall specific performance be available to a Party that is then in material breach of this Agreement (regardless of whether the associated cure period has expired or has not expired). Except as expressly set forth in this Agreement, no remedy conferred by any of the specific provisions of this Agreement is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise. Except as expressly set forth in this

Agreement, the election of any one or more remedies by a Party shall not constitute a waiver of the right to pursue other available remedies at any time.

13. **Waiver**:  Buyer and Seller, by written notice to the other, may (a) extend the time for performance of any of the obligations or other actions of the other under this Agreement, (b) waive any inaccuracies in the representations or warranties of the other contained in this Agreement or in any document delivered pursuant to this Agreement, (c) waive compliance with any of the conditions or covenants of the other contained in this Agreement, or (d) waive or modify performance of any of the obligations of the other under this Agreement; provided that neither Party may without the written consent of the other make or grant any extension of time, waiver of inaccuracies or compliance, or waiver or modification of performance, with respect to its own obligations, representations, warranties, conditions or covenants in this Agreement.  Except as provided in the preceding sentence, no action taken pursuant to this Agreement will be deemed to constitute a waiver of compliance with any representation, warranty, covenant or agreement contained in this Agreement and will not operate or be construed as a waiver of any subsequent breach, whether of a similar or dissimilar nature.

15. **Notices**:  All notices and other communications hereunder shall be in writing and shall be deemed given (i) the same day if delivered personally or sent by email; (ii) the next business day if sent by overnight delivery via a reliable express delivery service; or (iii) after five (5) business days if sent by certified mail, return receipt requested, postage prepaid. All notices shall be delivered to the Parties at the following addresses (or at such other address for a party as shall be specified by like notice, provided that notice of change of address shall be effective only upon receipt thereof):

(a)  <u>If to Seller, to</u>:

Mark E. Dottore, Receiver
2344 Canal Road
Cleveland, Ohio 44113
Email: <u>mark@dottoreco.com</u>

With a copy to each of

Mary K. Whitmer, Esq
Whitmer & Ehrman LLC
2344 Canal Road, Suite 401
Cleveland, Ohio 44113
Email: <u>mkw@WEadvocate.net</u>

and

Charles A. Nemer, Esq.
McCarthy, Lebit, Crystal & Liffman Co. LPA
101 W. Prospect Ave.
Suite 1800
Cleveland, Ohio 44115
Email: CAN@mccarthylebit.com

(b)  <u>If to Buyer, to</u>:

John Schwartz
Sarasota EBS License, LLC
P.O. Box 6060
Boulder, CO 80306
Email:  <u>jschwartz@voqal.org</u>

With a copy to each of

Cavitch Familo & Durkin, LPA
Attn: Stuart A. Laven, Jr.
1300 E. 9th St, Suite 2000
Cleveland, OH 44114
Email: <u>slaven@cavitch.com</u>

and

Thomas Dougherty, Esq.
Fletcher, Heald and Hildreth
1300 17th St N #1100
Arlington, VA 22209
dougherty@fhhlaw.com

16.  **Assignment:** All covenants, agreements, representations, warranties and indemnities shall be binding upon, and inure to the benefit of, the Parties and their respective successors and permitted assigns.  This Agreement may not be assigned except that either party may assign its rights under this Agreement to the direct or indirect subsidiary or affiliate of either party, upon delivery of written notice to the other party, provided that, such assignment does not delay, and is not reasonably expected to delay, receipt of the FCC consent to the assignment of the License, or consummation of the transactions contemplated herein.

17.  **Counterparts**:  This Agreement may be executed in one or more counterparts, which shall be effective as original agreements of the Parties executing such counterpart. Original signatures transmitted by facsimile shall be effective to create such counterparts.

18.  **Governing Law:**  This Agreement shall be governed by the laws of the State of Ohio without giving effect to conflict of laws provisions thereof.

19.  **Interpretation:**  All headings used in this Agreement are for convenience of reference only and shall not be deemed to have any substantive effect.  Notwithstanding any law or rule of contract interpretation to the contrary, this Agreement shall not be interpreted strictly for or against any party hereto.  Each of the Parties certifies to the other that it has reviewed this Agreement with, and is relying solely upon the advice of, its independent counsel and tax advisor, as to the negotiation, preparation, execution and delivery of this Agreement and as to the legal and tax implications hereunder.  In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or unlawful by any administrative agency or court of competent jurisdiction, that provision shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, and the parties shall use their reasonable best efforts to make the covenant, condition or other provision valid and lawful if possible so as to preserve the rights and obligations of the parties hereto.

20.  **Amendment:** This Agreement, together with the Schedules hereto, constitutes the entire understanding and agreement between the Parties concerning the subject matter hereof, superseding all prior oral or written agreements or understandings.  This Agreement may not be changed, modified or altered except by an agreement in writing executed by the Parties.

21.  **Complete Agreement**. This Agreement and the Sale Order constitute the entire agreement between the Parties with respect to the subject matter addressed, and supersedes and replaces all prior or contemporaneous understandings or agreements, written or oral, between the Parties or any of their affiliates regarding this subject matter. No amendment to or modification of this Agreement will be binding unless in writing and signed by a duly authorized representative of each of the Parties.

IN WITNESS WHEREOF, this Agreement will be effective as a binding agreement among the Parties upon being fully executed by the Parties indicated below.

**SELLER:**

**BUYER:**

**MARK E. DOTTORE, RECEIVER**
**FOR Dream Center Education Holdings LLC**
**("DCEH"), and DCEH's assets, including**
**Argosy Education Group LLC and Argosy**
**Education Group LLC dba Argosy University**
**Sarasota**

**SARASOTA EBS LICENSE, LLC**

By:_____ as Receiver
Name:  Mark E. Dottore
Title:  Receiver

By:_____
Name:  John Schwartz
Title:  Manager

IN WITNESS WHEREOF, this Agreement will be effective as a binding agreement among the Parties upon being fully executed by the Parties indicated below.

**SELLER:**

**MARK E. DOTTORE, RECEIVER FOR Dream Center Education Holdings LLC ("DCEH"), and DCEH's assets, including Argosy Education Group LLC and Argosy Education Group LLC dba Argosy University Sarasota**

By:_____
Name: Mark E. Dottore
Title: Receiver

**BUYER:**

**SARASOTA EBS LICENSE, LLC**

By:_____
Name: John Schwartz
Title: Manager

**Attachment A**

**IRS Form W9 (2018 form)**

**Attachment B**
**Closing Documents**

### BUYER'S CLOSING CERTIFICATE

The undersigned does hereby certify, represent and warrant on behalf of **SARASOTA EBS LICENSE, LLC**, a North Carolina limited liability company ("Buyer"), that:

1.      I am a duly appointed, authorized and acting officer of Buyer.

2.      The conditions and obligations applicable to Buyer under Section 7(b) of the Asset Purchase Agreement, dated as of _____ (the "Agreement"), between Buyer and **MARK E. DOTTORE, RECEIVER FOR Dream Center Education Holdings LLC ("DCEH"), and DCEH's assets, including Argosy Education Group LLC ("Seller")**, have been satisfied.

3.      All the representations and warranties of Buyer made in Section 8(b) of the Agreement are true and correct on the date of this Closing Certificate with the same force and effect as if they had been made by Buyer on and as of this date.

IN WITNESS WHEREOF, I have hereunto set my hand this date of _____.

BUYER:
**SARASOTA EBS LICENSE, LLC**


By: _____
Name:
Title:

## SELLER'S CLOSING CERTIFICATE

The undersigned does hereby certify, represent and warrant in his capacity as receiver for Dream Center Education Holdings LLC ("DCEH"), and DCEH's assets, including Argosy Education Group LLC ("Seller"), that:

1.       I am a duly appointed, authorized and acting officer of Seller.

2.       The conditions and obligations applicable to Seller under Sections 7(a) of the Asset Purchase Agreement, dated as of _____ (the "Agreement"), between Seller and **SARASOTA EBS LICENSE, LLC** ("Buyer"), have been satisfied.

3.       All the representations and warranties of Seller made in Section 8(a) of the Agreement are true and correct on the date of this Closing Certificate with the same force and effect as if they had been made by Buyer on and as of this date.

**IN WITNESS WHEREOF**, I have hereunto set my hand this date of _____.

<div style="margin-left:40%">

SELLER:
**MARK E. DOTTORE, RECEIVER**
**FOR Dream Center Education Holdings LLC**
**("DCEH"), and DCEH's assets, including**
**Argosy Education Group LLC**


By: _____
Name:  Mark E. Dottore
Title:  Receiver

</div>

**EXHIBIT A**

**Proposed Sale Order**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | CASE NO. 1:19-cv-145 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, | ) | |
| LLC, *et. al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION OF MARK E. DOTTORE, RECEIVER OF ARGOSY EDUCATION GROUP LLC DBA ARGOSY UNIVERSITY, SARASOTA FOR AN ORDER AUTHORIZING THE SALE OF THAT CERTAIN EDUCATIONAL BROADBAND SERVICE LICENSE WNC980 ISSUED BY THE FEDERAL COMMUNICATIONS COMMISSION, FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS AND OTHER INTERESTS AND TO AUTHORIZE THE RECEIVER TO APPLY THE SALE PROCEEDS TO CERTAIN ADMINISTRATIVE COSTS OF THE RECEIVERSHIP ESTATE OR IN THE ALTERNATIVE TO TRANSFER THE INTERESTS OF UNPAID LIENHOLDERS TO THE PROCEEDS OF THE SALE

This matter having come before the Court on the Motion (the "**Sale Motion**") of Mark E. Dottore (the "**Receiver**"), Receiver of Argosy Education Group LLC dba Argosy University ("**Argosy Sarasota**") for an Order Authorizing the sale (the "**Sale**") of a certain broadcasting license WNC980 free and clear of all liens and encumbrances and to authorize the Receiver to apply proceeds derived from the sale (the "**Sale Proceeds**") to certain administrative costs of the receivership estate or in the alternative to transfer the interests of unpaid lienholders to the Sale Proceeds. In the Sale Motion, the Receiver seeks the entry of an Order:

(i) authorizing the sale of that certain Educational Broadband Service ("**EBS**")

License WNC980 (the "**Asset**") issued by the Federal Communications Commission (the "**FCC**"), to Sarasota EBS License, LLC, a North Carolina limited liability company (the "**Buyer**"), consistent with the terms of a License Purchase Agreement (the "**Agreement**") attached to the Motion as Exhibit A; (ii) determining and directing that the Sale of the Asset is free and clear of all mortgages, pledges, security interests, liens, encumbrances, claims, charges, and any other interests of any kind or type whatsoever, including any lien or priority payment pursuant to 31 U.S.C. § 3713 (the "**Interests**"); (iii) authorizing the Receiver to use the Sale Proceeds to pay the unpaid March 15, 2019, payroll or the compensation of the Receiver and his professionals, or in the alternative, transferring any unpaid claims of any person holding an Interest (the "**Interest Holders**") in the Asset to the Sale Proceeds pending further determinations by the Court; and (iv) granting such other and further relief as is warranted in the circumstances.

The Court having reviewed the Sale Motion, the Declaration of the Receiver, and all other pleadings, motions, and other responses (the "**Written Statements**") related thereto, and no objections having been filed, and the Court having weighed and considered the Written Statements:

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    All capitalized terms not defined herein shall have the same meaning as set forth in the Sale Motion and the Agreement.

B.    Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 3103(b)(1), FED. R. CIV. P. 66, Rule 66.1(c) and (d) of the Local Rules

for the United States District Court for the Northern District of Ohio (the "**Local Rules**"), federal common law and the Receiver Order.

C.    The Interim Receiver Order provides,

> 2.n. The Receiver is authorized to negotiate and effect an orderly sale, transfer, use or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of the Receivership Entities and, for the proceeds thereof, to pay the secured and unsecured indebtedness of the Property, including the Real Property . . . The Receiver is authorized to conduct such a sale of the Property in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.

D.    The Amended Receiver Order provides that the Receiver's authority to negotiate and effect a sale of the asset is subject Paragraphs 13 and 14 of the Amended Receiver Order. Paragraph 13 affirms that the regulatory authority of the United States may not be stayed or constrained and Paragraph 14 affirms the validity of the Federal Priority Statute, 31 U.S.C. § 3713.

E.    Notice of the Sale Motion and the Sale was provided to hundreds of persons, who the Receiver identified as having an interest in the sale proceeding.  Notice was served upon all parties to this lawsuit and their lawyers, the federal, state and local taxing authorities, all secured creditors, unsecured creditors that have demonstrated an interest in the Asset, the Department of Justice and the Department of Education (the "**USDE**"). The list of persons served through the Court

is a matter of record; the additional parties served is contained in a certificate of service filed with the Court.

F.     Proper, timely, adequate and sufficient notice of the Sale Motion and the proposed Sale has been provided to all interested parties.

G.     No Objections were filed.

H.     This Court has the authority to approve a Sale of the Asset free and clear of all Interests, to order that the Sale Proceeds be used to pay the March 15, 2019 unpaid payroll or to the Receiver's costs and fees and in the alternative, to transfer all Interests whatever to the Sale Proceeds pending further determination of the Court.

I.     Liens reported against the Asset are as stated in the Sale Motion;

J.     Buyer has not assumed any liabilities of any of the Receivership Entities.

K.     Those holders of Interests who did not object to the Sale Motion are deemed to have consented to the Sale.

L.     Since his appointment in this case, the Receiver has marketed the assets of the Receivership Entities in a manner that was designed to attract the maximum number of individuals and groups with an interest in purchasing any or all of the assets.  Further, this case has been the subject of extensive press coverage.  Through the press coverage and through earlier efforts to sell the institution, the Receiver's interest in sale transactions and its financial situation were

widely known among educators, educational institutions and investors in educational institutions.

M.    The Asset is subject to an Educational Broadband Service Long-Term De Facto Transfer Use and License Agreement dated as of February 9, 2009, FCC Lease Authorization L000005376 (the "**Existing Lease**"), between Argosy Sarasota, and Independent Spectrum Sarasota, LLC ("**Existing Lease Lessee**"). The terms of the Existing Lease require that the Existing Lease Lessee pay monthly licensing royalties for approximately thirty years, and then a lump sum to acquire the license near the end of the lease term.

N.    The Existing Lease posed difficulties to the sale of the Asset. In order to determine the value and salability of the Asset, the Receiver sought the assistance of qualified professionals who had knowledge of the nature of the Asset and the terms of the Existing Lease. The Receiver was aware that there are challenges to a sale of the Asset due to the Existing Lease because the Asset would have to be sold subject to the Existing Lease. Because of these unique circumstances, the Receiver believes that the most logical purchaser is the Existing Lease Lessee.

O.    The Receiver negotiated with the Buyer, an affiliate of the Existing Lease Lessee; the Buyer offered $450,000. Based upon the Receiver's representations in the Sale Motion, the price offered for the Asset represents fair and reasonably equivalent value, and the terms and

conditions of the LPA for the purchase of the Asset are reasonable and fair in the circumstances.

P.  The Agreement submitted by Buyer is the highest, best and only offer received for the Asset.  It represents the highest in terms of money offered for the Asset and also eliminates the problem of selling the Asset subject to the Existing Lease. The Agreement offers creditors the most money. Further, buyer is an experienced and knowledgeable user of the Asset and is more likely than other prospective purchasers to be successful in obtaining FCC approvals which are required to complete the sale transaction. Buyer also seeks to close at the earliest possible time and demonstrates the financial wherewithal to do so.  The Sale to Buyer is consistent with good business judgment.

Q.  If the Asset is not sold to Buyer at this time, it will be substantially devalued or may not be renewed. The Sale to Buyer will also benefit the community as the Buyer will continue to broadcast under the license. The Receiver seeks to sell the Asset at the earliest possible time because the estate is in need of the funds.

R.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested herein has been afforded to all interested persons and entities, including but not limited to, all parties and intervenors to this action, all secured lenders, all unsecured creditors who have requested that notices be sent to them, and other

parties that the Receiver believes would have an interest in the Sale or who have requested that they be notified of any sale.

S. The Receiver has demonstrated that approval of the Sale Motion and consummation of the Sale to the Buyer at this time is in the best interests of the receivership estate, its creditors and its students. The Receiver has advanced good and sufficient business justification supporting the Sale of the Asset to the Buyer as set forth in the Sale Motion and it is a reasonable exercise of the Receiver's business judgment to consummate the Sale of the Asset on the terms and conditions set forth in the Agreement, and to execute, deliver and perform its obligations thereunder. Sound business judgment includes, but is not limited to, the fact that (i) there is a risk of immediate and irreparable loss of value of the Asset if the Sale is not consummated (ii) the consummation of the transaction contemplated under the Agreement presents the best opportunity to realize the value of the Asset to avoid further decline and devaluation thereof; (iii) the Sale is at arm's length; and (iv) the Receiver has exercised reasonable diligence and good faith judgment.

T. The consideration to be paid by the Buyer for the Asset constitutes adequate and fair value for the Asset and the terms and conditions of the Agreement are fair and reasonable.

U.   The Receiver is authorized and directed to negotiate, execute and deliver all documents necessary to consummate the Sale with the Buyer on the same general terms and conditions as the Agreement with such changes as the Receiver, in his sole discretion, deems necessary or desirable, and is further authorized to execute other ancillary agreements and other documents to sell the Asset and to complete the Sale of the Asset without further order of this Court free and clear of all  Interests whatsoever, as long as the terms and conditions of the Agreement and other documents are not materially worse, in the aggregate, to the Buyer, or materially worse with respect to the interests of individual secured and unsecured creditors, than the terms and conditions contained in the Agreement;

V.   Argosy Sarasota has good title to the Asset, and accordingly the sale of such Asset by and through the Receiver to the Buyer will be a legal, valid and effective Sale of the Asset;

W.   The terms and conditions of the Agreement were negotiated, proposed and entered into in good faith, from arm's length bargaining positions by the Receiver and the Buyer and constitute the highest or otherwise best offer for the Asset. The Buyer is entitled to the protections of a good faith purchaser with respect to the Sale approved hereby.  The Buyer is not a successor in interest to Argosy Sarasota.

X.   The Agreement is conditioned upon several events, which include (i) all of the terms and conditions of the sale must be approved by the Court through an Order of Sale (as defined in the Agreement) and the Order of Sale must be final and not appealable; and (ii) the Sale must be free and clear of all Interests whatsoever; and (iii) the Receiver must receive FCC consent by "Final Order" of the transfer of the Asset without conditions materially adverse to the Buyer.

Y.   The Receiver does not have any interest in Buyer or any party affiliated with Buyer;

Z.   The Sale was non-collusive, fair and reasonable and conducted in good faith.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.   The Sale of the Asset is approved and authorized on terms consistent with those in the Agreement which is attached to the Sale Motion and made a part hereof;

2.   The Agreement is hereby approved and the Receiver is hereby authorized and empowered to fully perform under and consummate the Sale as contemplated under the Agreement on the same general terms and conditions as the Agreement.  To the extent that  changes are needed to consummate the Sale as contemplated under the Agreement,  the Receiver, in his sole discretion, and without further order of this Court, is authorized to execute such additional

instruments and documents that may be reasonably necessary or desirable to implement the Agreement and to take all further actions as may reasonably be requested by the Buyer for the purpose of selling, assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to the Buyer's possession, any or all of the Asset free and clear of all Interests;

3.      As of the Closing of the Sale of the Asset (as defined in the Agreement), the sale of the Asset to the Buyer will be a legal, valid, enforceable, and effective sale of the Asset, and will vest the Buyer with all right, title, and interest in the Asset free and clear of all Interests of any kind or type whatsoever;

4.      Subject to Paragraph 12, all persons and entities holding or asserting any Interests arising under or out of, in connection with, or in any way relating to WSCL, the Receivership Entities, the Asset, the operation of WSCL's businesses prior to Closing or the transfer of the Asset to the Buyer, are hereby forever barred, estopped and permanently enjoined from asserting such Interests against the Buyer or any of the Asset. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Receiver to transfer the Asset to the Buyer in accordance with the terms of the Agreement and this Order;

5.      Subject to Paragraph 12,  the Buyer is not, shall not be, nor be deemed to be, a successor to WSCL, the Receiver or the Receivership Entities by reason of any theory of law or equity and the Buyer shall not assume or in any way be responsible for any liability, obligation, commitment or responsibility of WSCL, the

Receiver or the Receivership Entities, or any debts, liabilities, responsibilities or commitments in any way relating to the Asset, or WSCL's, the Receiver's or the Receivership Entities' use of the Asset prior to Closing;

6.      Subject to Paragraph 12, all persons and entities holding liens or interests, including the Secured Claimants, are hereby barred and enjoined from asserting such liens or interests against the Buyer, its successors or assigns, or the Asset;

7.      Effective upon Closing, all persons in possession of the Asset shall deliver such Asset to the Buyer at its request. All holders of Interests on the Asset are hereby directed to prepare and file promptly after the Closing, releases of such encumbrances reasonably satisfactory to the Receiver and the Buyer;

8.      Proper, timely, adequate and sufficient notice of the proposed Sale has been provided by the Receiver to all relevant parties, and no other or further notice is required;

9.      The foregoing notwithstanding, the provision of this Order authorizing the Sale of the Asset free and clear of all Interests whatsoever shall be self-executing, and notwithstanding the failure of the Receiver, the Buyer or any other party to execute, file or obtain releases, discharges, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof or the contemplated Agreement with respect to the Sale of the Asset, all liens, claims, encumbrances and interests on such Asset shall

be deemed released and if the Court so orders, shall attach to the proceeds of the Sale;

10.    Subject to Paragraph 12, this Order shall be binding upon and govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons or entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report to or insure title or state of title in or to any of the Asset, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement;

11.    Subject to Paragraph 12, from and after entry of this Order, no creditor or other party in interest shall take or cause to be taken any action that would interfere with the sale of the Asset to the Buyer in accordance with the terms of this Order;

12.    Nothing in the Agreement or this Order shall constrain the regulatory authority of any agency of the United States, including the USDE;

13.    Subject to Paragraph 12, from and after entry of this Order, no creditor or other party in interest shall assert any claims or take any legal or other actions

relating to the Asset to be sold to Buyer, before the Closing of the Sale against Buyer, its principals or the Asset;

14.     The Receiver is authorized to execute such other documents as are necessary or desirable to implement this Order;

15.     This Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of the contemplated Agreement and all amendments thereto, any waivers and consents thereunder and any other agreements executed in connection therewith, (ii) to resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, and (iii) to interpret, implement and enforce the provisions of this Order.

16.     Pursuant to Fed. R. Civ.R. 54(B), this Order is a final Order and there is no just reason for delay.

**IT IS SO ORDERED.**

Date: _____

_____
 MAGISTRATE JUDGE THOMAS M.
PARKER


_____
JUDGE DAN AARON POLSTER

Respectfully submitted,

*/s/ Mary K. Whitmer*
Mary K. Whitmer (0018213)
James W. Ehrman (0011006)
Robert M. Stefancin (0047184)
WHITMER & EHRMAN LLC
2344 Canal Road, Suite 401
Cleveland, Ohio 44113-2535
Telephone: (216) 771-5056
Email: mkw@weadvocate.net

*Attorney for Mark E. Dottore, Receiver*

**Attachment A**

**IRS Form W9 (2018 form)**

**Attachment B**
**Closing Documents**

## BUYER'S CLOSING CERTIFICATE

The undersigned does hereby certify, represent and warrant on behalf of **SARASOTA EBS LICENSE, LLC,** a North Carolina limited liability company ("Buyer"), that:

1.      I am a duly appointed, authorized and acting officer of Buyer.

2.      The conditions and obligations applicable to Buyer under Section 7(b) of the Asset Purchase Agreement, dated as of _____ (the "Agreement"), between Buyer and **MARK E. DOTTORE, RECEIVER FOR Dream Center Education Holdings LLC ("DCEH"), and DCEH's assets, including Argosy Education Group LLC** ("Seller"), have been satisfied.

3.      All the representations and warranties of Buyer made in Section 8(b) of the Agreement are true and correct on the date of this Closing Certificate with the same force and effect as if they had been made by Buyer on and as of this date.

**IN WITNESS WHEREOF,** I have hereunto set my hand this date of _____.

BUYER:
**SARASOTA EBS LICENSE, LLC**


By: _____
Name:
Title:

## SELLER'S CLOSING CERTIFICATE

The undersigned does hereby certify, represent and warrant in his capacity as receiver for Dream Center Education Holdings LLC ("DCEH"), and DCEH's assets, including Argosy Education Group LLC (Seller"), that:

1.      I am a duly appointed, authorized and acting officer of Seller.

2.      The conditions and obligations applicable to Seller under Sections 7(a) of the Asset Purchase Agreement, dated as of _____ (the "Agreement"), between Seller and **SARASOTA EBS LICENSE, LLC** ("Buyer"), have been satisfied.

3.      All the representations and warranties of Seller made in Section 8(a) of the Agreement are true and correct on the date of this Closing Certificate with the same force and effect as if they had been made by Buyer on and as of this date.

        **IN WITNESS WHEREOF,** I have hereunto set my hand this date of _____.

> SELLER:
> **MARK E. DOTTORE, RECEIVER**
> **FOR Dream Center Education Holdings LLC**
> **("DCEH"), and DCEH's assets, including**
> **Argosy Education Group LLC**
>
>
> By: _____
> Name:  Mark E. Dottore
> Title:   Receiver