# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) CASE NO. 1:19-CV-00145 |
| Plaintiff, | ) |
| v. | ) JUDGE DAN AARON POLSTER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | ) |
| Defendants. | ) MAGISTRATE JUDGE THOMAS M. PARKER |

**MOTION OF STUDIO ENTERPRISE MANAGER, LLC FOR THE ENTRY OF AN ORDER (A) PERMITTING SOUTH UNIVERSITY AND THE ARTS INSTITUTES TO ASSUME CERTAIN EMPLOYEE BENEFIT OBLIGATIONS WHICH AROSE BETWEEN JANUARY 1, 2019 THROUGH APRIL 30, 2019; (B) PERMITTING THE ARTS INSTITUTES TO FORGIVE CERTAIN LOAN OBLIGATIONS FOR STUDENTS WHO WERE THE VICTIMS OF MISREPRESENTATIONS MADE BY DCEH BETWEEN JANUARY 20, 2018 AND JUNE 15, 2018; (C) ISSUING A BAR ORDER PROHIBITING FURTHER CLAIMS AGAINST STUDIO AND CERTAIN OTHER RELATED PARTIES; AND (D) FOR SUCH OTHER RELIEF AS IS APPROPRIATE**

Studio Enterprise Manager, LLC ("Studio") moves (the "Motion") the Court for the entry of an order (i) permitting South University – Member, LLC (collectively with all of its direct and indirect subsidiaries "South University") and The Arts Institutes International, LLC (collectively with all of its direct and indirect subsidiaries the "Arts Institutes") to assume certain employee benefit obligations that arose between January 1, 2019 through April 30, 2019 (the "Covered Period") that neither the Receivership Entities[1] nor Mark E. Dottore, the receiver (the

---

[1] The Receivership Entities are Dream Center Education Holding LLC ("DCEH"), Dream Center Education Management LLC, Dream Center Argosy University of California LLC and its direct subsidiary Argosy Education Group LLC (together, "Argosy"), South University of Ohio LLC, South University of Michigan LLC, The DC Art Institute of Raleigh-Durham LLC, The DC Art Institute of Charlotte LLC, DC Art Institute of Charleston LLC, DC Art Institute of Washington, LLC, The Art Institute of Tennessee-Nashville LLC, AiTN Restaurant LLC, The Art Institute of Colorado LLC, DC Art Institute of Phoenix LLC, The Art Institute of Portland LLC, The Art Institute of Seattle LLC, The Art Institute of Pittsburgh, DC LLC, The Art Institute of Philadelphia, DC, LLC, DC Art Institute of Fort Lauderdale LLC, The Illinois Institute of Art LLC, The Art Institute of Michigan LLC, The Illinois Institute of Art at Schaumburg LLC, DC Art Institute of Phoenix, LLC, The Art Institute of Las Vegas LLC, The Art Institute of Indianapolis, LLC, and AiIN Restaurant LLC.

"Receiver") have paid; (ii) permitting the Arts Institutes to forgive certain loan obligations for students who were the victims of misrepresentations made by Dream Center Education Holding LLC ("DCEH") between January 20, 2018 and June 15, 2018; and (iii) issuing a bar order prohibiting further claims against Studio, South University, the Arts Institutes, and certain other related parties relating to the unpaid employee healthcare claims, the student loan obligations and other previously released claims, and including certain releases (the "Bar Order"); and (iv) granting such other and further relief as is just and proper.  In support of this Motion, Studio respectfully represents as follows:

## BACKGROUND

1.      On January 7, 2019 (the "Reorganization Date"), Studio, DCEH and certain other parties executed a series of documents and agreements (collectively, the "Reorganization Documents").  The Reorganization Documents[2] provided, among other things, for the acquisition of South University and the Arts Institutes by Education Principle Foundation, a Delaware nonprofit, non-stock corporation ("EPF"), and the acquisition of certain accounts receivable (the "Studio Receivables"), intellectual property or other assets of the Arts Institutes and the Receivership Entities by Studio.  All Studio Receivables collected to date have been assigned by Studio to the Arts Institutes to assist with the ongoing cash liquidity needs of the Arts Institutes.

2.      On January 18, 2019 (the "Receivership Commencement Date"), Digital Media Solutions LLC filed a complaint commencing the above-captioned action, and the Receiver was appointed as Receiver of the Receivership Entities  pursuant to an order entered January 18, 2019 [D.I. 8] (and later amended on March 13, 2019 [D.I. 150]).

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the applicable Reorganization Documents.  The Reorganization Documents were filed with the Court on April 25, 2019 (Docket No. 283).

3.     On February 27, 2019, Studio, the Receiver, and certain other parties entered into that certain settlement agreement dated as of February 27, 2019 (as amended) (the "First Settlement Agreement"), which was approved by the Court on March 18, 2019 (Docket No. 190).  Importantly, pursuant to the terms of the First Settlement Agreement and the Court's order from the March 18 hearing, the Receiver and Studio agreed to "abide by all [] provisions of the Reorganization Documents."

4.     To address further disputes between the parties, on May 14, 2019, Studio, the Receiver, and certain other parties entered into that certain Second Settlement Agreement (the "Second Settlement Agreement"), which was approved by the Court on June 3, 2019 (Docket No. 354).  Pursuant to the Second Settlement Agreement, Studio, the Receiver, on behalf of DCEH, and Ghostly Pearl, LP entered into that certain Sublease Agreement (the "Sublease"), whereby Studio subleased DCEH's data center located in Pittsburgh, PA (the "Data Center") solely for the purpose of assisting in the separation of the Arts Institutes and South University from their reliance on the Receiver to provide transition services under the TLSA which the Receiver was unable to perform.

5.     Pursuant to the Reorganization Documents, the First Settlement Agreement and the Second Settlement Agreement, Studio and the Released Parties (as defined in the Second Settlement Agreement) received a complete release from the Receiver and the Receivership Entities of all Receiver Claims (as defined in the Second Settlement Agreement) or any claims related to or arising out of the Reorganization Documents.  These releases were essential conditions to Studio's willingness to enter into the Reorganization Documents, the First Settlement Agreement and the Second Settlement Agreement.

6.      As reported by the Receiver in his Receiver's October 1, 2019 Report (the "October Report") filed with the Court (Docket No. 428), the Receiver had agreed to enter into a third settlement whereby, among other items, the Receiver would release the parties "from the payment of further healthcare claims" in return for the assumption of the "responsibility for administration and payment of approximately $3.5 million of healthcare claims that pertain to the transferred employees of New South and New Ai."

7.      On November 5, 2019, Studio and the Receiver filed a joint motion to approve a direction letter requiring Sterling Payment Technologies, LLC, now known as EVO Payments, Inc., to distribute credit card payments that belong to South University, The Arts Institutes, and/or Studio (Docket No. 444) which was approved by the Court on November 6, 2019 (Docket No. 445).

8.      On November 6, 2019, Studio and the Receiver filed a joint motion to approve the purchase by Studio of certain assets currently located at the Data Center pursuant to a Bill of Sale attached to the motion (the "Bill of Sale") (Docket No. 446), which is pending before the Court.

9.      Unfortunately, South University and the Arts Institutes and the Receiver were not able to reach a third settlement regarding the unpaid employee healthcare claims because the Receiver has since refused to provide the proposed release described in the October Report. Without such release, South University and the Arts Institutes will not agree to proceed with the assumption of the healthcare claims, which actually are approximately $4.6 million, or forgive over $2 million of loan obligations for students who were the victims of misrepresentations by DCEH.  Accordingly, South University and the Arts Institutes are prepared to move forward with the original plan that they had negotiated with the Receiver (which will relieve the Receivership

Entities of millions of dollars in liabilities to some of the most vulnerable victims of this receivership – students and employees), but will do so directly by seeking relief from this Court provided that this Motion and the Bar Order are approved in their entirety.

## I.     The Receiver's Inability To Pay Healthcare Claims

10.     Pursuant to an employee welfare benefit plan entitled "Dream Center Educational Holdings, LLC Signature Benefits Plan" (the "DCEH Plan") established by DCEH as the "Plan Sponsor" under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), DCEH provided various benefits, including medical and prescription drug benefits (collectively, the "Benefits") to certain of its and its direct or indirect subsidiaries' employees, their dependents and some other covered individuals (collectively, "Plan Participants").  The Benefits that DCEH made available to the Plan Participants were self-insured by DCEH, meaning that all Benefits obligations under the DCEH Plan are obligations of DCEH.

11.     Pursuant to that certain Master Services Agreement (the "Aetna MSA") between DCEH and Aetna Life Insurance Company ("Aetna"), DCEH engaged Aetna to provide claim administration services for the DCEH Plan.  DCEH terminated the Aetna MSA effective December 31, 2018 (the "Aetna Termination Date").

12.     On April 10, 2019, Aetna filed a motion to compel the Receiver to satisfy health insurance obligations under the Aetna MSA, or, in the alternative, to authorize Aetna to terminate all of its administrative obligations relating to the DCEH Plan (the "Aetna Motion," Docket No. 248).  Aetna alleged (a) that DCEH failed to satisfy all of its obligations for claims incurred by Plan Participants for Benefits under the Plan in the period prior to the Aetna Termination Date, and DCEH has not paid the December 2018 administrative fees to Aetna in

the amount of $110,872.06 ("Unpaid Fees"), (b) that Aetna's records reflect that DCEH has failed to reimburse Aetna for the amount of approximately $3,011,826.28 on account of claims for which Aetna advanced payment for Benefits under the DCEH Plan ("Unreimbursed Claims"), (c) separate from the Unreimbursed Claims, Aetna has received additional claims from providers and/or Plan Participants under the DCEH Plan incurred prior to the Aetna Termination Date, which as of April 3, 2019, were in the approximate amount of $5,980,083.56, and which continue to increase ("Runoff Claims"); and (d) the Unreimbursed Claims and Runoff Claims were all incurred by Plan Participants prior to the appointment of the Receiver on the Receivership Commencement Date.

13.     On April 11, 2019, the Court entered an order directing the Receiver to notify the Court if sums continue to be deducted from DCEH employees' paychecks to fund the Aetna insurance (Docket No. 251-1).   On May 28, 2019, the Court entered an Agreed Order Concerning Termination of Master Services Agreement and Related Obligations between the Receivership Entities and Aetna Life Insurance Company and Other Related Relief (Docket No. 343) (the "Aetna Agreed Order").  In the Aetna Agreed Order, the Receiver represented that the Receiver has never deducted from DCEH employees' paychecks sums to fund the claims administered by Aetna.  The Receiver also represented that the Receivership Entities are unable to satisfy the Unpaid Fees, the Unreimbursed Claims, the Runoff Claims, or any service fees for the processing of Runoff Claims.   Finally, the Aetna Agreed Order authorized: (a) the termination of any remaining obligations of Aetna under the Aetna MSA or otherwise to administer Runoff Claims or provide other administrative services in connection with the DCEH Plan; (b) Aetna's denial of all Runoff Claims for lack of payment, and Aetna's notification of nonpayment to health care providers, Plan Participants, and any other necessary parties; and

(c) all other actions by Aetna as reasonable and appropriate to effectuate Aetna's termination of obligations under the Plan.

14.     The Receiver informed Studio, South University, the Arts Institutes and the employees that he had entered into or intended to enter into one or more agreements with Anasazi Medical Payment Solutions. Inc. ("AMPS"), and Benefit Administrative Systems, LLC ("BAS"), whereby AMPS and BAS would be engaged by DCEH to help implement and administer a reference-based reimbursement plan design (the "RBR Plan") to replace the current DCEH Plan previously administered by Aetna.  It is unclear whether the RBR Plan was ever implemented or administered by the Receiver.

15.     On April 6, 2019 (the "Ai Employee Transfer Date"), all employees who had been employed by DCEH or other entities and who had been providing services to the Arts Institutes (collectively, the "Ai Employees") immediately before the Ai Employee Transfer Date became employees of the Arts Institutes.  On April 7, 2019 (the "South Employee Transfer Date" and together with the Ai Employee Transfer Date, the "Employee Transfer Date"), all employees who had been employed by DCEH or other entities and who had been providing services to South University (the "South Employees") immediately before the South Employee Transfer Date, became employees of South University.  On May 1, 2019 (the "New Plan Start Date"), South University and the Arts Institutes began providing the South Employees and the Ai Employees with healthcare benefits under employee welfare benefit plans established by South University and the Arts Institutes, respectively.

16.     During the period between December 24, 2018 and the Reorganization Date, South University paid to DCEH, or had funds withdrawn from its operating accounts by DCEH, approximately $2.7 million, and the Arts Institutes paid to DCEH, or had funds withdrawn from

its operating accounts by DCEH, approximately $5.7 million, for a total of $8.4 million (together, the "Pre-Reorganization Payments").  During the period between the Reorganization Date and the Receivership Commencement Date, South University paid approximately $3.2 million and the Arts Institutes paid approximately $4.0 million to DCEH, for a total of $7.2 million (together, the "Pre-Receivership Payments").

17.     On May 15, 2019 (the "First Accounting Report Date"), the Receiver filed his first and only accounting report to date (Docket No. 332) (the "First Accounting Report"). During the period between the Receivership Commencement Date and the First Accounting Report Date, South University paid approximately $17.4 million, the Arts Institutes paid approximately $8.3 million, and Studio paid approximately $4.5 million to the Receiver, for a total of $30.2 million (collectively, the "Pre-First Accounting Report Payments").  During the period since the First Accounting Report Date, South University paid approximately $172,000, the Arts Institutes paid approximately $177,000 and Studio paid approximately $750,000 to the Receiver, for a total of approximately $1.1 million (collectively, the "Post-First Accounting Report Payments").  In addition, assuming the Court approves the Bill of Sale, Studio will pay the Receiver an additional $500,000 (the "Asset Purchase Price", and collectively with the Pre-Reorganization Payments, the Pre-Receivership Payments, the Pre-First Accounting Report Payments and the Post-First Accounting Report Payments, the "DCEH Payments").

18.     The DCEH Payments from South University, the Arts Institutes and Studio collectively total approximately $47.4 million.  The DCEH Payments were made at the request of DCEH and the Receiver to cover payroll, payroll taxes, Benefits, employee claims for Benefits under the RBR Plan and bank fees (collectively, the "Employee Payroll Expenses") for Plan Participants who were South Employees and Ai Employees and certain other expenses

incurred by the Receiver, including rent and utilities for the Data Center, which were paid by Studio to the Receiver under the First Settlement Agreement and the Second Settlement Agreement.  The DCEH Payments exceeded the amount required to cover the Employee Payroll Expenses for the South Employees and the Ai Employees.

19.     Prior to the Employee Transfer Date and New Plan Start Date, the Receiver was responsible for all payroll transactions, including, but not limited to, payroll taxes and payroll deductions for Benefits under the DCEH Plan and/or the RBR Plan, for all DCEH employees, including the Ai Employees and the South Employees.  However, during this period, numerous claims under the DCEH Plan and the RBR Plan, as detailed in the Aetna Motion, were unpaid by the Receiver and the Receivership Entities and still remain unpaid to this day.  The Receiver has informed the Court on numerous occasions that DCEH does not have sufficient funds in order to satisfy all of its obligations and recently was granted the right to obtain $900,000 in financing to cover the approximately $1.8 million of payroll obligations (the "Payroll Obligations") that the Receiver has failed to pay (Docket No. 440).

20.     South University, the Arts Institutes and Studio paid DCEH and the Receiver approximately $47.4 million since December 24, 2018 for employee payroll and benefits for the South Employees and the Ai Employees, yet those employees have approximately $4.6 million in accrued employee benefits that have not been paid by the Receiver.  Studio has no knowledge regarding how the Receiver used the DCEH Payments and why payroll and employee benefits are still unpaid.

21.     During the spring and summer of 2019, the United States of America Department of Labor Employee Benefits Security Administration (the "DOL") issued subpoenas to the Receiver, Studio and EPF (collectively, the "DOL Subpoenas"), informing such parties that the

DOL is investigating the DCEH Plan pursuant to the DOL's enforcement ability under ERISA. The DOL requested that the Receiver, Studio and EPF provide certain information regarding DCEH as the sponsor of the DCEH Plan (the "Plan Sponsor").  Although Studio does not own or control any of the information that the DOL was seeking in the DOL Subpoenas, at the request of the Receiver, who has legal control over all electronic data currently stored on the DCEH servers located at the Data Center relating to any of the Receivership Entities (the "DCEH Data"), Studio attempted to locate all responsive documents and electronic files, including emails, that were stored at the Data Center.  As a result of this extensive search, Studio produced thousands of files and records to the DOL and has continued to provide information and fully cooperate with the DOL's investigation of the DCEH Plan.

## II.     The Proposed Assumption and Payment of the Covered Claims by the Arts Institutes and South University

22.     Although neither South University, the Arts Institutes, EPF nor Studio are liable for claims for Benefits of Plan Participants under the DCEH Plan or the RBR Plan, South University and the Arts Institutes are now faced with the consequences of the Receiver's failure to pay these claims.  The Ai Employees and South Employees that were transferred as of the Employee Transfer Date still face individual liability for the numerous unpaid Benefits that the Receiver has been unwilling or unable to pay.  Because these employees are current employees of South University and the Arts Institutes that provide critical services, the needs of these employees are of paramount concern.  South University and the Arts Institutes do not want the South Employees or the Ai Employees to be saddled with debts that resulted from the failure of DCEH to properly fund and administer the DCEH Plan and the RBR Plan, despite the millions of dollars that Studio, South University and the Arts Institutes funded for the Employee Payroll Expenses via the DCEH Payments.  Therefore, South University and the Arts Institutes are

willing to assume up to $4,600,000 of DCEH's obligations for Benefits incurred by South Employees and Ai Employees prior to the Employee Transfer Date during the Covered Period in accordance with the terms and conditions set forth below.

23.     If the Court approves this Motion in its entirety (including the Bar Order) according to the terms and conditions outlined herein, South University will assume all allowable employee healthcare claims accrued during the Covered Period (the "South Covered Claims") for all South Employees (identified by member ID number for confidentiality purposes) set forth on Exhibit A (the "South Covered Employees").  Further, the Arts Institutes will assume all allowable employee healthcare claims accrued during the Covered Period (the "Ai Covered Claims" and, together with the South Covered Claims, the "Covered Claims") for all Ai Employees (identified by member ID number for confidentiality purposes) set forth on Exhibit B (the "Ai Covered Employees" and, together with the South Covered Employees, the "Covered Employees").  These claims must be submitted by the applicable medical providers to South University or the Arts Institutes, directly or through BAS and AMPS, prior to December 31, 2019 (the "Claim Cutoff Date").  Such Covered Claims will be subject to all of the provisions (e.g., deductibles, co-pays and other exclusions and limitations) of the RBR Plan which was to be administered by BAS and AMPS (the "Covered Plan").

24.     Each of South University and the Arts Institutes will engage BAS and AMPS (or such other administrator as South University and the Arts Institutes determine) to administer the Covered Plan (which shall be substantially similar to the RBR Plan), and South University and the Arts Institutes will pay the respective service fees to administer the validation, allowance, settlement and payment processes for the Covered Claims.

25.     The aggregate amount of South Covered Claims for the Covered Period that may be assumed by South University is capped at $2,800,000.00 (the "South Coverage Limit"), and the aggregate amount of Ai Covered Claims that are to be assumed by the Arts Institutes for the Covered Period is capped at $1,400,000.00 (the "Ai Coverage Limit"), for a total maximum amount of $4,200,000.00 (collectively, the "Coverage Limit").  In each case, such Coverage Limit shall be reduced by deductibles, co-pays and other exclusions and limitations, as well as negotiations between AMPS and the healthcare providers.  If the Coverage Limit reduces the amount that otherwise would be paid, such reductions shall be made on any reasonable basis determined by South University or the Arts Institutes (as applicable), in its discretion.  The Coverage Limit exceeds the currently known Covered Claims and the actual dollar amount of Covered Claims is not expected to exceed the Coverage Limit such that it is fully anticipated all Covered Claims will be satisfied.

26.     None of South University, the Arts Institutes, or any of the Released Parties[3] will have any liability or obligations with respect to (i) the Covered Claims (except to the extent expressly stated above), COBRA, or any other matters related thereto, (ii) any claims for any other employee of DCEH or the Receivership Entities, (iii) any claims not included in the Covered Claims for the Covered Employees during the Coverage Period, (iv) any claims not submitted prior to the Claim Cutoff Date, (v) any claims in excess of the Coverage Limit, (vi) any liabilities for claims for Benefits (even for Covered Employees) under any plans of

---

[3] The Released Parties shall include each of the parties already released pursuant to the Second Settlement Agreement, including Studio, Colbeck Partners IV, LLC, a Delaware limited liability company ("Colbeck Partners"), CB CA Lending, LLC, Delaware limited liability company ("CBCA"), Studio Enterprise, LLC, a Delaware limited liability company ("Studio Enterprise" and, collectively and together with Studio, CBCA, Colbeck Partners, and Colbeck Foundation, the "Studio Parties"), EPF, South University and the Arts Institutes, and each of their respective past and present, direct and indirect equity holders, directors, members, managers, partners, affiliates, subsidiaries, officers, employees, attorneys (including John J. Altorelli, Aequum Law, LLC, Covington & Burling LLP and McDonald Hopkins LLC), agents, and representatives, and each of their respective heirs, executors, administrators, personal representatives, successors and assigns (collectively and together with the Studio Parties, the "Released Parties")

DCEH, including the DCEH Plan or the RBR Plan, prior to the Covered Period, or (vii) any claims for Unpaid Fees, Unreimbursed Claims, Runoff Claims or to pay any additional service fee for processing of Runoff Claims (collectively, items (i) through (vii) above, the "Excluded Benefit Liabilities").  The assumption of the Covered Claims by South University and the Arts Institutes is not an adoption of any employee benefit plan; it is only an assumption of liabilities that would otherwise be obligations of the Receivership Entities by South University and the Arts Institutes.  This assumption and payment of the Covered Claims is critical for South University and the Arts Institutes to maintain the welfare of their employees.

### III.    The Receiver's Inability to Comply With the EDMC Consent Judgment Obligations

27.    The unpaid employee healthcare claims are not the only substantial obligations the Receiver has been unwilling or unable to pay throughout this receivership; the Receiver has also failed to comply with a consent judgment relating to significant student loan obligations. Prior to the receivership, Education Management Corporation, a Pennsylvania corporation ("EDMC"), entered into a Consent Judgment (collectively, the "EDMC Consent Judgment") with the Attorney Generals of the States of Alabama, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming and the District of Columbia (collectively, the "Attorneys General").

28.    Thomas J. Perrelli, Esq. (the "Settlement Administrator") was appointed as the administrator to oversee EDMC's compliance with the provisions of the EDMC Consent Judgment.  On March 22, 2019, the Settlement Administrator filed a Response to Order Requesting Views of the Settlement Administrator (Docket No. 199) (the "Settlement

Administrator's Response") (a) alleging, among other things, that during the period beginning January 20, 2018 through June 15, 2018, DCEH made certain misrepresentations to students (the "HLC Students") about the accreditation status of four Receivership Entities – The Art Institute of Colorado LLC, The Art Institute of Michigan LLC, The Illinois Institute of Art LLC and The Illinois Institute of Art at Schaumberg LLC (the "HLC Campuses") -- which were formerly accredited by the Higher Learning Commission (the "DCEH Misrepresentations"), (b) asserting that the Receiver must comply with a pending corrective action plan proposed by DCEH on December 20, 2018 (the "DCEH Corrective Action Plan") that requires DCEH to return at least $3 million in tuition payments paid by the HLC Students to DCEH (the "HLC Student Refunds"), and (c) requesting that the Court impose a "constructive trust" on assets of the Receivership Entities to satisfy DCEH's obligations with respect to HLC Student Refunds.

29.     On October 4, 2019, the Settlement Administrator filed a Further Position Statement in Response to Receiver's Status Report (Docket No. 433) (the "Settlement Administrator's Position Statement") reiterating his request that the Court's final Receivership Order (a) require the Receiver to discharge the institutional debts of students enrolled at Ai-Colorado and Ai-Illinois between January 20, 2018 and June 15, 2018, and (b) recognize a "constructive trust" that consists of, to the extent available from existing or future proceeds, at least $3.1 million of DCEH's assets, including the $1.5 million the Settlement Administrator claimed was already set aside for this purpose by the Receiver, for the return of fraudulently obtained tuition payments as required by the EDMC Consent Judgment.

30.     On October 25, 2019, the Receiver filed a Response to the Settlement Administrator's Statement (Docket No.442) (the "Receiver Response"), wherein the Receiver stated, among other things, that (a) DCEH was obligated to refund approximately $3.1 million to

HLC Students pursuant to DCEH Corrective Action Plan that was proposed by DCEH and accepted by the Settlement Administrator; (b) the $1.5 million that the Settlement Administrator believes the Receiver is holding does not exist, because the Receiver stated that "[t]here are no such funds" and "those funds are gone;" and (c) notwithstanding the Settlement Administrator's "constructive trust" argument, which the Receiver rejects, the HLC Student Refunds should be administered according to a Court-approved claims process with priority rankings and with notice and an equal opportunity for all victims to be heard.

31. Neither Studio nor EPF did or could have made any representations to the HLC Students, since the alleged misrepresentation were made prior to the Reorganization Date. Therefore, any issues regarding the alleged DCEH Misrepresentations, HLC Student Refunds or the DCEH Corrective Action Plan (collectively, the "EDMC Consent Judgment Obligations") are DCEH's obligations. The Receiver and the Settlement Administrator have expressly acknowledged this in numerous Court filings. *See* Docket Nos. 199, 433 and 442.

32. As part of the Studio Receivables that Studio acquired from DCEH pursuant to the Reorganization Documents, which Studio subsequently assigned to the Arts Institutes, the Arts Institutes previously collected the aggregate amount of $64,475.94 from the HLC Students (the "HLC Student Loan Collections"), and the HLC Students have outstanding student loan balances in the aggregate amount of $2,082,839.80 (the "HLC Student Loans"). In furtherance of the longstanding objective of the Arts Institutes to help students achieve their goals of personal and professional advancement, the Arts Institutes desire that the HLC Students not be saddled with debts that may have been incurred as a result of misrepresentations by DCEH.

33. If the Court approves this Motion in its entirety (including the Bar Order) according to the terms and conditions outlined herein, the Arts Institutes will (a) refund the HLC

Student Loan Collections to the applicable HLC Students and (b) forgive the collection of all remaining debt balances on the HLC Student Loans, which are included in the Studio Receivables that have been assigned to the Arts Institutes, for the HLC Students at the four HLC Campuses incurred by such HLC Students during the period of January 20, 2018 through June 15, 2018 (together, the "HLC Student Loan Forgiveness").

## IV.   The Receiver Continues to Assert Claims That Were Released

34.    Despite two prior settlements with broad general releases, the Receiver continues to make allegations and threatens to file claims against the Released Parties.  The record in this receivership case is filled with such claims by the Receiver, all of which were denied by the Court or released pursuant to the First Settlement Agreement and the Second Settlement Agreement.  Studio, South University and the Arts Institutes have expended hundreds of thousands of dollars in legal fees defending such claims and enforcing the terms of the Reorganization Documents, the First Settlement Agreement and the Second Settlement Agreement, but this has not been sufficient to stop the Receiver's claims.

35.    Receiver's counsel has recently sent letters to certain employees of the Arts Institutes demanding the forfeiture and return of certain employee bonuses which were paid to such employees by DCEH prior the Receivership Commencement Date (collectively, the "Employee Bonuses").  Those employees of the Arts Institutes categorically deny that they are obligated to forfeit and return the Employees Bonus which were validly earned by such employees and received prior to the Receivership Commencement Date.  In addition, Receiver's counsel sent a letter dated September 17, 2019 to the chancellor of the Arts Institutes and a letter dated September 25, 2019 to the chancellor of South University (together with the chancellor of the Arts Institutes, the "Chancellors") which made several unsubstantiated allegations regarding

the actions of DCEH's officers and directors, including the Chancellors (the "Receiver Allegations").  The Chancellors categorically deny all of the Receiver Allegations.

36.     In addition to the numerous releases, indemnities and exclusion and limitation of liabilities contained in the Reorganization Documents and the First Settlement Agreement that were agreed to and are binding upon the Receiver and the Receivership Entities, paragraph 16 of the Second Settlement Agreement specifically provides that "the Receiver and the Receivership Entities shall be deemed to have ABSOLUTELY AND IRREVOCABLY AND UNCONDITIONALLY FULLY AND FOREVER released, waived and discharged" each of the Released Parties "from any and all claims, demands, suits, causes of action, liabilities, obligations, judgments, orders, debts, liens, contracts, agreements, covenants and causes of action of every kind and nature, whether known or unknown, suspected or unsuspected, concealed or hidden, vested or contingent, in law or equity, existing by statute, common law, contract or otherwise in each case arising from, related to or in connection with any of the Receiver Claims, the Reorganization Documents or the First Settlement Agreement, including any claims that the Receiver or the Receivership Entities made or could have made against any of the Released Parties prior to or during the Receivership Action, through Effective Date, which have existed, or do exist, against any of the Released Parties (collectively, the "Receiver Released Claims")."  As noted above, the definition of Released Parties include, among other parties, the officers, directors, employees and attorneys of Studio, South University and the Arts Institutes, including the Chancellors of South University and the Arts Institutes that were the subject of the Receiver Allegations and the employees of the Arts Institutes that were the recipients of the Employee Bonuses.  Further, the definition of the Receiver Released Claims covers the subject matter of the Employee Bonuses and the Receiver Allegations; therefore, the

Receiver and the Receivership Entities previously released these claims pursuant to the Second Settlement.

## V. Bar Order and Release Required for Assumption of Employee Healthcare Claims and Student Loan Forgiveness

37. While South University and the Arts Institutes desire to assume the Covered Claims to arrange for their prompt payment and the continued engagement and welfare of the South Employees and the Ai Employees, and Arts Institutes desires to provide the HLC Student Loan Forgiveness to relieve the HLC Students of these burdens, these proposed assumptions of liabilities – especially when all of these obligations are indisputably obligations of the Receivership Entities – is not without some conditions and protections for Studio, South University, the Arts Institutes, and certain other related parties. Ideally, the assumption of the Covered Claims and the HLC Student Loan Forgiveness will provide for the conclusion of all matters relating to the unpaid employee healthcare claims during the Covered Period and will provide much needed relief for the employees.

38. However, given the unknown future of this receivership and the continuing potential for parties to assert claims against Studio, South University, the Arts Institutes, and certain other related parties, in exchange for the payment of the Covered Claims by South University and the Arts Institutes and the HLC Student Loan Forgiveness, South University, the Arts Institutes, and Studio desire the entry of a Bar Order, substantially in the form attached hereto as Exhibit C,[4] detailing a claims process and including certain provisions barring further claims relating to these topics. The Motion and Bar Order is necessary to put an end to the claims against the Released Parties given the Receiver's repeated attempts to raise previously released claims, including the Receiver Allegations, or regarding obligations that rightly belong

---

[4] Studio will supplement this Motion by filing a proposed Bar Order (together with proposed exhibits) during the week of November 11, along with a motion regarding notice procedures for this Motion.

to the Receivership Entities, and is a necessary condition of South University and the Arts Institute's proposal to assume the Covered Claims and the HLC Student Loan Forgiveness. Studio, the Arts Institutes, South University should not be the repeated targets of these duplicative and unsubstantiated allegations.

39.     Specifically, in exchange for the agreement to assume the Covered Claims, Studio, South University, and the Arts Institutes respectfully request the entry of a Bar Order: barring any and all claims, demands, suits, causes of action, liabilities, obligations, judgments, orders, debts, liens, contracts, agreements, covenants and causes of action of every kind and nature, whether known or unknown, suspected or unsuspected, concealed or hidden, vested or contingent, in law or equity, existing by statute, common law, contract or otherwise (collectively, the "Claims") by the Receiver, the Receivership Entities or any other party against any of the Released Parties in each case arising from, related to or in connection with any of the following: the EDMC Consent Judgment Obligations, the Payroll Obligations, the Employee Payroll Expenses, the DCEH Payments, the Covered Claims, the HLC Student Loan Forgiveness, the Employee Bonuses, the Receiver Allegations, the Excluded Benefit Liabilities, the Excluded Liabilities (as defined in the Bill of Sale) set forth in the Bill of Sale, the Reorganization Documents, the First Settlement Agreement, the Second Settlement Agreement, DCEH, the Receivership Entities, the Receiver, the receivership, the Receiver Released Claims[5] and any other claims, liabilities, obligations that were excluded, limited, released and/or indemnified against by the Receivership Entities pursuant to the Reorganization Documents, the First Settlement Agreement, the Second Settlement Agreement and/or this Motion and Bar Order, including any Claims that the Receiver, DCEH or the Receivership Entities made or could have

---

[5]  The Receiver Released Claims includes those claims released by the Receiver and the Receivership Entities in the Second Settlement Agreement, as further defined in the Second Settlement Agreement.

made against any of the Released Parties prior to or during the receivership, which have existed, or do exist, against any of the Released Parties (collectively, the "Global Released Claims").

40.     Further, the agreement of South University and the Arts Institutes to assume the Covered Claims is subject to and expressly conditioned upon the satisfaction of the following conditions:

> (a)     the entry of an order approving this Motion and the Bar Order by the Court;
>
> (b)     the inclusion of a provision in the Bar Order requiring each Covered Employee (and, if applicable, his or her beneficiary, as determined in the discretion of South University and the Arts Institutes) who desires to have his or her Covered Claim assumed by South University or the Arts Institutes, as applicable, to execute a broad general release of the Released Parties, substantially in the form attached as <u>Exhibit 1</u>[6] to the Bar Order, for all Claims relating to or arising out of the Excluded Benefit Liabilities, which shall include a specific acknowledgement that the Released Parties are not assuming any Excluded Benefit Liabilities;
>
> (c)     a prohibition in the Bar Order providing that none of DCEH, the Receivership Entities, the Receiver, the Covered Employees or any other party shall commence a Claim or in any manner seek relief against any of the Released Parties through any suit or proceeding based on any Excluded Benefit Liabilities or otherwise assist the efforts of any other party attempting to do so; and
>
> (d)     a prohibition in the Bar Order releasing South University and the Arts Institutes from the obligation to assume the Covered Claims if any Claim is brought by DCEH, the Receivership Entities, the Receiver, any Covered Employee or any other party (e.g., the DOL, Aetna, BAS, AMPS, any health care provider or Plan Participant) against any of the Released Parties seeking to impose liability for the Excluded Benefit Liabilities or otherwise assist the efforts of any party attempting to do so.

41.     The Arts Institutes' agreement to provide the HLC Student Loan Forgiveness is subject to and expressly conditioned upon the satisfaction of the following conditions:

---

[6] Studio will supplement this Motion by filing a proposed Bar Order (together with proposed exhibits) during the week of November 11, along with a motion regarding notice procedures for this Motion.

(a)     the entry of an order approving this Motion and the Bar Order by the Court;

(b)     the inclusion of a provision in the Bar Order requiring each HLC Student who desires to receive the benefit of the HLC Student Loan Forgiveness to execute a broad general release of the Released Parties, substantially in the form attached as Exhibit 2 to the Bar Order, for all Claims relating to or arising out of the EDMC Consent Judgment Obligations, which shall include a specific acknowledgement that the Released Parties are not assuming any EDMC Consent Judgment Obligations;

(c)     a prohibition in the Bar Order providing that none of DCEH, the Receivership Entities, the Receiver, HLC Students, the Settlement Administrator, the Attorneys General, or any other party shall commence a Claim or in any manner seek relief against any of the Released Parties through any suit or proceeding based on any EDMC Consent Judgment Obligations or otherwise assist the efforts of any other party attempting to do so; and

(d)     a prohibition in the Bar Order releasing the Arts Institutes from the obligation to provide the HLC Student Loan Forgiveness if any Claim is brought by DCEH, the Receivership Entities, the Receiver, any HLC Student, the Settlement Administrator, the Attorneys General or any party against any of the Released Parties based on any EDMC Consent Judgment Obligations or otherwise assist the efforts of any party attempting to do so.

42.     Ultimately, the Court's approval of the above-referenced provisions and the Bar Order will allow the Arts Institutes and South University to: (a) arrange for payment of unpaid liabilities relating to the Covered Claims, (b) maintain and stabilize employee relations at the Arts Institutes and South University relating to the unpaid employee healthcare claims, and (c) provide much-needed student loan forgiveness for the HLC Students who were victims of misrepresentations by DCEH, and (d) fully and finally address all concerns relating to the Covered Claims and the HLC Student Loans.  In addition, issuance of the Bar Order and the payment or forgiveness of these substantial obligations by South University and the Arts Institutes will relieve the Receiver and the Receivership Entities of significant liabilities and allow the Receiver to focus on other matters.  South University and the Arts Institutes will also

be free to focus on the welfare of their students and employees without interference from the Receiver or other parties concerning liabilities relating to the Receivership Entities.  After these liabilities are addressed, any remaining claims against the Receiver or the Receivership Entities should rightly be administered by the Receiver and satisfied by the Receivership Entities according to a Court-approved claims process, complete with adequate notice procedures and an equal opportunity for all victims to be heard (as recommended by the Receiver in the Receiver Response).

## LAW AND ARGUMENT

43.     This Court has the authority to approve South University and the Arts Institutes' assumption of the Covered Claims, the forgiveness of the HLC Student Loans, and the issuance of the Bar Order and related procedures and releases based on its inherent powers as a court of equity.  *See Liberte Capital Group, LLC v. Capwill,* 462 F.3d 543, 441 (6th Cir. 2006).  A district court "has broad powers in fashioning relief in an equity receivership proceeding." *Liberte Capital Group, LLC v. Capwill,* 421 F.3d 377, 382 (6th Cir. 2005); *see also S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001).  These broad powers extend to claims brought against assets in the receivership and "the costs of defending such claims as a drain on receivership assets."  *Liberte Capital,* 462 F.3d at 551 (6th Cir. 2006), citing *SEC v. Universal Fin.,* 760 F.2d 1024, 1038 (9th Cir. 1985).

44.     When analyzing a potential settlement or the proposed resolution of claims in an equity receivership, "a district court has wide discretion to determine what relief is appropriate." *Gordon v. Dadante,* 336 Fed. Appx. 540, 549 (6th Cir. 2009).  Because of the nature of a receivership, "[t]he inability of a receivership estate to meet all of its obligations is typically the *sine qua non* of the receivership," and a court may consider nontraditional resolutions of claims that may be in the best interest of the receivership estate as a whole as part of its considerations.

*Liberte Capital*, 462 F.3d at 552 (6th Cir. 2006) (finding that a blanket stay against claims against the receivership assets in a bar order was valid).

45.     Here, for reasons unknown to Studio, the Arts Institutes, and South University, the Receiver has been unable or unwilling to pay all of the Covered Claims and other employee healthcare claims accrued after the Receivership Commencement Date but prior to the New Plan Start Date.  While Studio, the Arts Institutes and South University are currently unaware of extent of the assets or monies in the receivership estate, it is likely that the Receiver does not have sufficient funds to ever fully pay $4.2 million in Covered Claims, the Excluded Benefit Liabilities, or the unknown amount of employee benefit liabilities that have accrued against the receivership estate.  The assumption of the Covered Claims by the Arts Institutes and South University – in exchange for the entry of the Bar Order – efficiently resolves millions of dollars of claims in the receivership estate by healthcare providers and former employees of the Receivership Entities, protects the current South Employees and Ai Employees from collection efforts and claims by healthcare providers or insurance companies, and relieves the Receiver of potentially significant liabilities.  This Court should therefore approve South University and the Arts Institutes' generous offer to assume the Covered Claims –which has the potential to resolve a significant portion of the claims against the Receivership Entities – without issue.

46.     Further, as shown by the Receiver Response regarding the EDMC Consent Judgment Obligations, the Receiver does not appear to intend to comply with the ECMC Consent Judgment at any point in the near future.  The Receiver's inability or lack of desire to attend to these obligations leaves hundreds of students without a remedy, however, and the Arts Institutes desires to arrange for the HLC Student Loan Forgiveness to allow these students to move on with their professional careers without concern as to these liabilities.  The forgiveness

of these significant liabilities – which the Settlement Administrator may seek to enforce against the Receiver or the Receivership Estates at some point in the near future – also relieves the receivership estate of substantial claims, and Studio respectfully requests that this Court approve the Arts Institutes' proposal to address these obligations succinctly and efficiently.

47.     As consideration for the HLC Student Loan Forgiveness and assumption of the Covered Claims by South University and the Arts Institutes – which together total millions of dollars of potential liability against the Receivership Estates – the request for the entry of a Bar Order prohibiting further claims against Studio, South University, and the Arts Institutes and certain other related parties concerning these claims is certainly within the Court's broad equitable authority in this receivership.  "Blanket anti-litigation stays repeatedly have been upheld in circumstances affecting assets of a receivership estate." *S.E.C. v. Kaleta,* No. H-09-3674, 2013 WL 2408017, *6 (S.D. Tex. 2013) (approving bar order prohibiting third-party claims by insureds against insurance company that issued policies to defendant in receivership proceeding); *see also SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010); *Liberte Capital,* 462 F.3d at 551-52 (6th Cir. 2006).  The use of bar orders is not limited to claims against the receiver or the receivership estate only; "courts have also used bar orders to bar claims against third parties settling with receiverships."  *S.E.C. v. Stanford International Bank, Ltd.*, No. 3:09-CV-0298, 2017 WL 9989249, *3 (N.D. Tex. 2017).  There are no stringent standards for approving a settlement or bar order in a federal receivership; "instead, a district court has wide discretion to determine what relief is appropriate." *Gordon v. Dadante*, 336 Fed. Appx. 540, 549 (6th Cir. 2009).  Especially when the Arts Institutes and South University are offering to take on millions of dollars in liabilities that are clearly obligations of the receivership estate, Studio, the Arts Institutes, and South University should not be forced to endlessly defend previously-released

claims by the Receiver and other parties relating to the Receivership Entities or related assets indefinitely.

48.     When a Court is considering the resolution of potential claims against the receivership estate by a third party that has materially contributed to or participated in the resolution of such claims, the entry of a bar order may be especially appropriate.  The approval of a bar order also may be critical – and permissible – where a third party may refuse to participate in a settlement or resolve claims without the issuance of an injunction or stay (especially where such a settlement may resolve a significant portion of claims against a receivership estate).  In *S.E.C. v. Kaleta*, for example, two personal guarantors of certain obligations of the receivership estate refused to provide personal guarantees without the issuance of a bar order, and the Fifth Circuit concluded that the district court did not abuse its discretion in entering a bar order prohibiting claims against the guarantors in this circumstance.  530 Fed. Appx. 360, 362 (5th Cir. 2013) (approving entry of bar order where necessary and appropriate as "ancillary relief").  In another receivership matter, the Tenth Circuit also affirmed a bar order prohibiting claims against certain third party entities relating to the underlying fraud at issue in the case where "there would have been no settlement without the bar order."  *S.E.C. v. DeYoung,* 850 F.3d 1172, 1182 (10th Cir. 2017).  In *S.E.C. v. Quiros,* for example, the Southern District of Florida approved a settlement and the entry of a bar order which prohibited all parties from commencing or continuing litigation against Citibank – the settling third party – that relates in any manner to the receivership or the settling claims.  No. 16-cv-21301, 2016 WL 9254719 (S.D. Fla. 2016); *see also Zacarias v. Stanford International Bank, Ltd.,* 931 F.3d 382 (5th Cir. 2019) (affirming entry of bar order against third party investors' claims; settlement maximized assets and facilitated orderly and equitable distribution of receivership assets).

49.     Bar orders that do not totally enjoin all claims concerning a receivership estate or the receiver – or preserve the right of parties to pursue claims through a claims administration process in the receivership case – have also been affirmed as valid.  *See id.* (noting that investors may still pursue claims in the claim process in the receivership estate), *see also S.E.C. v. Kaleta,* 530 Fed. Appx. at 362 (5th Cir. 2013) (noting that investors still retained the opportunity to participate in the claims process, and retained the right to pursue certain other claims).  Here, any bar order would not prohibit claims against the Receiver or the Receivership Entities.

50.     Further, in this case, the assumption and payment of the Covered Claims by South University and the Arts Institutes and the HLC Student Loan Forgiveness is better relief than what the Receiver has or will be able to offer the employees and students given the limited assets in the receivership estate.  It is unknown what the Receiver's plan was to pay or address any of these claims prior to this proposal by Studio, the Arts Institutes, and South University. Importantly, a court's approval of a settlement and related bar order "does not necessarily require that the Court find the settlement to be a net benefit to every non-settling party." *S.E.C. v. Stanford International Bank, Ltd.*, No. 3:09-CV-0298, 2017 WL 9989249 (N.D. Tex. 2017).

51.     Here, the payment of the Covered Claims allows numerous employees to receive the benefit of promptly paid healthcare claims, avoiding potentially years of collection efforts and payment disputes with healthcare providers and insurance companies for the unpaid employee healthcare claims during the Covered Period.  South University and the Arts Institutes also receive the benefit of fully engaged employees who are not distracted by looming unpaid healthcare claims.  The HLC Student Loan Forgiveness will also allow the HLC Students to move on with their professional lives despite the DCEH Misrepresentations.  In exchange, issuance of the Bar Order will allow Studio, South University, the Arts Institutes, and certain

other Released Parties to ensure that they no longer face the continuing threat of or actual liability relating to these issues from the Receiver, the Receivership Entities, or any other third party in the future.

WHEREFORE, Studio respectfully requests that this Court enter an order: (i) permitting South University and the Arts Institutes to assume the Covered Claims that arose during the Covered Period; (ii) permitting the Arts Institutes to arrange for the HLC Student Loan Forgiveness; (iii) issuing the Bar Order prohibiting further claims against Studio, the Arts Institutes, South University, or any of the Released Parties relating to the Global Released Claims; and (iv) granting such other and further relief as is just and proper.

*[Remainder of page intentionally blank; signature page follows]*

November 9, 2019                        Respectfully submitted,


                                        /s/ *M. Colette Gibbons*
                                        M. Colette Gibbons (0003095)
                                        Scott N. Opincar (0064027)
                                        Maria G. Carr (0092412)
                                        Adam C. Smith (0087720)
                                        MCDONALD HOPKINS LLC
                                        600 Superior Ave., E., Ste. 2100
                                        Cleveland, OH 44114
                                        T: (216) 348-5400
                                        F: (216) 348-5474
                                        Email: cgibbons@mcdonaldhopkins.com
                                        sopincar@mcdonaldhopkins.com
                                        mcarr@mcdonaldhopkins.com
                                        asmith@mcdonaldhopkins.com

                                        *Counsel for Studio Enterprise Manager, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2019, a copy of the foregoing Motion of Studio Enterprise Manager, LLC For the Entry of an Order (A) Permitting South University and The Arts Institutes To Assume Certain Employee Benefit Obligations Which Arose Between January 1, 2019 Through April 30, 2019; (B) Permitting the Arts Institutes to Forgive Certain Loan Obligations For Students Who Were The Victims Of Misrepresentations Made By DCEH Between January 20, 2018 and June 15, 2018; (C) Issuing a Bar Order Prohibiting Further Claims Against Studio and Certain Other Related Parties; and (D) For Such Other Relief as is Appropriate was filed electronically.  Notice of this filing will be sent to all parties by the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *M. Colette Gibbons*

M. Colette Gibbons (0003095)