UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:19-CV-00145 |
| | ) | |
| v. | ) | Judge Dan Aaron Polster |
| | ) | |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | ) | Magistrate Judge |
| | ) | Thomas M. Parker |
| Defendants. | ) | |

**Memorandum in Support of Illinois and Colorado Attorneys General's
Motion to Modify December 5, 2019 Order to Delete Relief Against Them**

            KWAME RAOUL, Attorney General of Illinois;
            PHIL WEISER, Attorney General of Colorado

By: /s/ *Richard S. Huszagh*
    Richard S. Huszagh
    Illinois Assistant Attorney General
    100 W. Randolph St., 12th Floor
    Chicago, Illinois 60601
    *rhuszagh@atg.state.il.us*
    (312) 814-2587

Olivia D. Webster
Colorado Sr. Assistant Attorney General
Consumer Protection Section
Colorado Attorney General's Office
1300 Broadway
Denver, CO  80203
*Libby.Webster@coag.gov*
(720) 508-6203

**Introduction**

Illinois Attorney General Kwame Raoul and Colorado Attorney General Phil Weiser (the "Attorneys General") respectfully request that the Court delete the reference to them in its December 5, 2019 order. (Dkt. 501.) They are not appearing generally in this case; they do not seek to intervene in the case; and they are not submitting any claims to be satisfied out of the property of the defendants in receivership, South University of Ohio, LLC, *et al.* (the "Debtors"), that is subject to the Court's receivership order.[1] To the contrary, because the December 5, 2019 order entered relief against the Attorneys General even though they were never parties to this action, they bring this motion under Rules 59(e), 60(b)(4), and 60(b)(6) because the Court lacks personal jurisdiction over them and also lacked subject matter jurisdiction to enter that relief. (For simplicity, that relief against the Attorneys General is sometimes referred to as the "Bar Order.") In the alternative, if the Court does have jurisdiction, the Attorneys General bring this motion because the Bar Order violates the Eleventh Amendment, the Anti-Injunction Act, and Rule 65 of the Federal Rules of Civil Procedure, and was unjustified in the circumstances.

The focus of the Attorneys General's concern, described below, is loans that were procured by fraud, in violation of state court consent judgments. Because those loans were assigned to Studio Enterprise Manager, LLC ("Studio") *before* this action was filed, and Studio is not one of the Debtors, those loans (which Studio later reassigned to Arts Institutes International, LLC ("Arts Institutes"), which also is not one of the Debtors) are *not* receivership property. And if Studio or Arts Institutes (collectively, the "Studio Group") seek collection on any of those loans, the Attorneys General have the right, both under the consent judgments and their state anti-fraud laws, to take action to stop such collections. It appears, however, that Studio specifically sought the Bar Order to

---

[1] To the extent the Attorneys General must "appear" through their counsel for purposes of filing this motion, they do so on a special and limited basis to contest the Court's jurisdiction and, only if it has such jurisdiction, to object to the Court's exercise of that jurisdiction to enter relief against them.

prevent the Attorneys General — even though they are not parties in the case, and the loans are not receivership property — from taking such action. Studio apparently considered it convenient to have the Court, without formally adjudicating any claims between it and the Attorneys General, simply wipe out the Attorneys General's rights against the Studio Group relating to these loans that are not receivership property. But this action is not a bankruptcy reorganization, nor is it a proper vehicle to resolve this potential dispute between the Studio Group and the Attorneys General.

**Factual Background**

Based on allegations that it had engaged in pervasive fraud, Education Management Corp. ("EDMC"), which ran a network of for-profit schools, in 2015 entered into 40 separate consent judgments (collectively, the "Consent Judgment") with the Attorneys General of 39 states and the District of Columbia. (Dkt. 77-3.) The Consent Judgment prohibited EDMC from misrepresenting its accreditation status. (*Id.* at ¶¶ 81b.) It also specified that it was binding on EDMC's successors and assigns (Dkt. 77-3 at 1-2, ¶¶ 133-134), and provided for a court-approved "Settlement Administrator" to oversee compliance (*id.* at ¶¶ 34-55.) (As part of these duties, the Settlement Administrator has participated in this case but does not represent the Attorneys General; Dkt. 485 at 11 n.5.) In the event of any violation of the Consent Judgment, the Settlement Administrator may negotiate a "corrective action plan" with EDMC, and if such a plan cannot be reached by agreement, the Consent Judgment expressly states that the Attorneys General "may take whatever action they deem necessary, including but not limited to bringing an action to enforce this Consent Judgment [or] filing a new original action." (*Id.* at ¶ 116(a).)

Pursuant to two transactions in October 2017 and January 2018, Dream Center Education Holdings ("Dream Center") took over multiple schools operated by EDMC, including Argosy University, South University, and the Art Institutes. (Dkt. 132-1 at 1.) On January 20, 2018, two Dream Center campuses, the Illinois Institute of Art ("IIA") and the Art Institute Colorado ("AIC"),

2

lost their accreditation. (Dkt. 323-1 at ¶¶ 2-3.) Until June 2018, however, Dream Center, in violation of the Consent Judgment, misrepresented on its websites, on student enrollment agreements, and in student catalogs that the schools were still accredited. (*Id.* at 5 & Ex. A; Dkt. 77-3, ¶ 81 (b); 323-1 at ¶¶ 7-9.) During this time, many Dream Center students, including students at IIA and AIC, took out loans originated by Dream Center and institutions it controlled to pay tuition and other education-related expenses (the "Student Loans"). (Dkt. 449, ¶ 32.)

On January 7, 2019, Dream Center assigned the Student Loans to Studio. (*Id.*, ¶ 1.) At the same time, Dream Center transferred certain Art Institute campuses, including IIA and AIC, to the Education Principle Foundation, the parent of the Arts Institutes. (*Id.*) As a result of this transfer, Arts Institutes became bound by the Consent Judgment, which it has acknowledged. (Dkt. 773-1 at 1-2, ¶¶ 133-34.) Some time later, Studio assigned the Student Loans to Art Institutes. (*Id.*)

After Dream Center made these assignments, Digital Media Solutions, LLC ("Digital Media") filed this action under the Court's diversity jurisdiction seeking recovery of amounts allegedly due pursuant to its contracts with the Debtors. (Dkt. 1.) Digital Media simultaneously requested appointment of a receiver, which the Court granted on the same day, giving the receiver authority over the Debtors' property and operations. (Dkt. 8 at 3-4, ¶¶ 1-2.) Because the Student Loans were assigned to the Studio Group *before* this action was filed, they were never receivership property or subject to the Receiver's administration.

Although the Attorneys General are not parties to this case, on December 5, 2019 the Court, at Studio's request (not the Receiver's), entered the Bar Order, which extinguishes their rights vis-à-vis the Studio Group relating to the Student Loans. (Dkt. 510, ¶ 19.) It provides that students who sign a broad release within 30 days after it is mailed to them will have collections stopped on their Student Loans and will receive refunds of their post-receivership payments to Arts Institutes on those loans. (Dkt. 466 at 4, ¶ (b)(a); Dkt. 501, ¶¶ 15-18.) It does not provide for similar refunds of post-

3

receivership payments to Studio on the Student Loans before Studio assigned them to Arts Institutes. (Such post-receivership payments are collectively referred to as the "Loan Payments.") The Bar Order further provides: "None of . . . the Attorneys General . . . shall commence any Claims or in any manner seek relief against any of the Released Parties [which include the Studio Group] through any suit or proceeding based on any EDMC Consent Judgment Obligations." (Dkt. 501, ¶ 19.) That term is defined in Exhibit 2 to the Bar Order to include "the DCEH Misrepresentations, HLC Student Refunds or the DCEH Corrective Action Plan," but those terms are not defined in the Bar Order or that Exhibit. *Id.*, Ex. 2. The Bar Order also provides: "Notwithstanding anything else contained in this Bar Order, nothing herein shall be construed to interpret or modify any rights or obligations under the Consent Judgment . . . ." *Id.* at 21.

As a practical matter, based on the Attorneys General's experience, many students who took out Student Loans or made Loan Payments will not submit releases as provided under the Bar Order. And if the Studio Group then pursues collection of the Student Loans or fails to refund the Loan Payments, the question will arise whether paragraph 19 of the Bar Order prevents the Attorneys General from acting to vindicate their States' anti-fraud laws and protect their residents, or whether the proviso in paragraph 21, leaving unaffected the "rights and obligations" in the Consent Judgment, preserves that ability. The Court should eliminate that issue by vacating the Bar Order.[2]

### Argument

Introduction. The Bar Order stretches this receivership beyond permissible bounds. It exceeds the Court's jurisdiction and authority to collect and distribute the Debtors' property among claimants to that property. Instead, without following any of the well-established features of a traditional adjudication of disputed claims (e.g., the formal addition of parties, the filing of pleadings, and the

---

[2] To the extent that the Bar Order, in light of the proviso in paragraph 21, is properly interpreted not to prevent the Attorneys General from doing anything they are otherwise legally authorized to do, the Bar Order effectively does nothing, and there is no justification for its reference to the Attorneys General.

4

presentation of evidence relevant to the parties' claims and defenses), the Bar Order purports to permanently extinguish the rights of *non-parties* against *non-Debtors* that do *not involve receivership property*, or even any claims against the Debtors or the Receiver. And it does so strictly to benefit the Studio Group. Even more troubling, the Bar Order extinguishes Studio Group obligations — by what amounts to a discharge binding the entire world, including the Attorneys General — as part of a "settlement" in which Studio gets a release without paying anything for it; no one represented the Attorneys General (or the affected students), who were not notified or given any opportunity to obtain relevant information and negotiate; and the Studio Group has not shown that such extraordinary relief is necessary to accomplish the actual purposes of the receivership (e.g., collecting and distributing the Debtors' property among their creditors).

A settlement, even one approved by a federal court, "may not dispose of the claims of a third party . . . without that party's agreement." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986); see also *City of Warren v. City of Detroit*, 495 F.3d 282, 287 (6th Cir. 2007). Yet that is precisely what the Bar Order does to the Attorneys General without their consent, or even their participation. Thus, for no valid justification related to the purposes of the receivership, the Bar Order tramples on the rights of the Attorneys General and affected students alike, without any participation by them or representation of their interests. The law does not support such unusual and fundamentally unfair relief. The solution is not to require the Attorneys General to join this case, which the Court cannot do, *Martin v. Wilks*, 490 U.S. 755, 763-65 (1989), but to rescind the relief against them in the Bar Order.[3]

---

[3] The same concerns do not apply to provisions of the Bar Order that do not involve the Student Loans, including, in particular, the provisions concerning employee and healthcare benefits that the Receiver was responsible to pay, but did not pay, following his appointment until April 2019, as Dream Center staff became employees of South University and Art Institutes. Dkt. 449, ¶¶ 13, 15. The affected employees, unlike the Attorneys General, are claimants against the Debtors, and their benefit claims, which concern the Debtors' own liabilities and operations during the course of this case, lie at the heart of the receivership.

Personal Jurisdiction. As a threshold matter, the Court lacks personal jurisdiction over the Attorneys General, who are not parties in the case and have no obligation to join it. See *Wilks*, 490 U.S. at 763-65. They did not assert any claim against Debtors or their property, no party has filed a claim against them, and they were never served with process. Despite this, the Bar Order purports to permanently enjoin the Attorneys General from asserting claims against the Studio Group. But the Attorneys General cannot be bound by this relief. See *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.")

If the Attorneys General had a lien or similar claim against any property of the Debtors located in Illinois or Colorado, the Receiver, pursuant to the Court's *in rem* jurisdiction over the Debtors' property, could obtain service on them to adjudicate their rights. See 28 U.S.C. § 1692. But that situation is not present here. Moreover, to the extent that personal jurisdiction requirements differ in an *in rem* proceeding, see *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977), they have no application to the Bar Order, which does not protect the Debtor's property in receivership, or even enjoin the Attorneys General from pursuing *in personam* claims against the Debtors, but instead effectively adjudicates *in personam* rights and claims by the Attorneys General against the Studio Group, which is not in receivership. And without personal jurisdiction over the Attorneys General, the Court cannot grant relief against them. *Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 301 (4th Cir. 2001); see also *S.E.C. v. Ross*, 504 F.3d 1130, 1138-41, 1145-47 (9th Cir. 2007); see generally *Zenith Radio*, 395 U.S. at 110.[4]

---

[4] It is true that a receivership order prevents persons with mere "notice" of the order from interfering with the receiver's *possession* of the debtor's property; but the rationale for that rule is that the receivership court has exclusive *in rem* jurisdiction over that property. *Wash. v. Wash. State Comm'l Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 692 n.32 (1979); *Clark on Receivers*, §§ 625.1(b), 625.2 (3d ed. 1992); see also *Riehle v. Margolies*, 279 U.S. 218, 223 (1929); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, 234-35

6

Subject Matter Jurisdiction. The Court also lacked subject matter jurisdiction to enter the Bar Order, which is not included in, or properly ancillary to, matters within its jurisdiction: Digital Media's claim against the Debtors, and the Court's *in rem* jurisdiction over the Debtors' property. This is not a bankruptcy action, in which the court has statutory subject matter jurisdiction over matters "related to" the case. 28 U.S.C. § 1334(b). Pursuant to the Court's receivership order, it has exclusive *in rem* jurisdiction over all of the Debtors' property — "complete jurisdiction and control of all such property with the right to take possession thereof," 28 U.S.C. § 754 — which is deemed to be "*in custodia legis.*" *Commonwealth Tr. Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 619 (1936); *Converse v. Highway Const. Co. of Ohio*, 107 F.2d 127, 129-30 (6th Cir. 1939).[5] But that *in rem* jurisdiction did not give the Court exclusive jurisdiction to adjudicate *in personam* claims against the Debtors (i.e., claims that do not seek judicial relief against their property). *Riehle*, 279 U.S. at 223; *Calhoun v. Lanaux*, 127 U.S. 634, 639-40 (1888); *Brown v. Duffin*, 13 F.2d 708, 709-10 (6th Cir. 1926); *Fox Theatres*, 69 F.2d at 61; see also *Morris*, 329 U.S. at 549 ("the notion that such control over the proof of claims is necessary for the protection of the exclusive jurisdiction of the court over the property is a mistaken one"); cf. *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 764 (7th Cir. 2017) ("[w]e have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court.") (citations and internal quotation marks omitted). Even more obviously, it did not give the Court jurisdiction over *in personam* claims against persons *other* than the Debtors, including the Studio Group. See *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841-43 (5th Cir.

---

(1922); *Chicago Title & Tr. Co. v. Fox Theatres Corp.*, 69 F.2d 60, 61-62 (2d Cir. 1934). That rationale, grounded in the court's *in rem* jurisdiction, cannot logically extend *in personam* claims against non-receivership property or entities, which is what the Bar Order purports to do here.

[5] See also *Fischer v. Am. United Life Ins. Co.*, 314 U.S. 549, 553-54 (1942); *United States v. Bank of New York*, 296 U.S. 463, 475-76 (1936); *Penn Gen. Cas. Co. v. Commonwealth of Penn. ex rel. Schnader*, 294 U.S. 189, 195-96 (1935); *Ex parte Tyler*, 149 U.S. 164, 182-84 (1893); *Roof v. Conway*, 133 F.2d 819, 823 (6th Cir. 1943); Wright & Miller, *Fed. Prac. & Proc.* § 2985 (3d ed.) ("*Wright & Miller*") ("the appointment of a receiver is in the nature of a proceeding *in rem*").

2019); *Rishmague v. Winter*, 2014 WL 11633690, *2 (N.D. Tex. 2014), aff'd, 616, F. App'x 138 (5th Cir. 2015); *Cobalt Multifamily Investors I, LLC v. Shapiro*, 2013 WL 5418588, *1-2 (S.D.N.Y. 2013). That is the situation here, however, where the Attorneys General are not parties to the case, and their claims against the Studio Group that the Bar Order purports to extinguish are not claims against the Debtors' property (because the Studio Group acquired the Student Loans *before* this action was filed), or even against the Debtors.[6]

The Bar Order also is not within the Court's ancillary jurisdiction over proceedings related to the exercise of its *in rem* jurisdiction over the Debtors' property, such as to prohibit interference with the Receiver's possession of that property. See *Wabash R.R. Co. v. Adelbert Coll.*, 208 U.S. 38, 54 (1908) (holding that receivership court has exclusive jurisdiction of debtor's property, as well as "ancillary . . . jurisdiction to hear and determine all questions respecting the title, the possession, or the control of the property"); *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *Wright & Miller*, § 3523.2. Such ancillary jurisdiction does not extend so far that it permits the Court to *adjudicate* the rights of non-parties, such as the Attorneys General, by permanently prohibiting them from pursuing claims against persons other than the Debtors that seek no relief against the Debtors' property. *SEC v. Stanford*, 927 F.3d at 841, 843; *Rishmague*, 2014 WL 11633690, *2; see also *Fox Theatres*, 69 F.2d at 61-62; cf. *Jimmy John's*, 877 F.3d at 764 (reversing

---

[6] Some courts, relying by analogy on a "district court's power to enter a blanket stay," have deemed the scope of a receivership court's jurisdiction to permit staying *in personam* claims against the receivership *entity* (not its property) on the theory that the *defense* of such claims, as opposed to the *relief* they seek, may deplete receivership assets. *SEC v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985); see also *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). That understanding of the court's jurisdiction, however, conflicts with longstanding precedent. See *Morris*, 329 U.S. at 549; *Riehle*, 279 U.S. at 223; *Kline*, 260 U.S. at 229-35 ("a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing"; "the pendency in a federal court of an action *in personam* [is] neither ground for abating a subsequent action in a state court nor for the issuance of an injunction against its prosecution"); *Fox Theatres*, 69 F.2d at 61; *Clark on Receivers*, § 625.2 ("It is rather apparent . . . that an injunction cannot . . . have the effect of closing other courts to ordinary actions *in personam* against the defendant."), § 646.  In any event, it does not support permanently enjoining non-party claims against non-receivership entities.

8

anti-suit injunction against non-parties that did not involve litigation directed to the same property).

<u>Eleventh Amendment</u>. Even if the Court had jurisdiction to enter the Bar Order, it violates the Eleventh Amendment because it enjoins, and controls, the discretionary actions of state officers. See *Ex parte Young*, 209 U.S. 123, 158 (1908). Under *Ex parte Young*, an exception to such immunity exists for court orders against state officials in their official capacity that prospectively enjoin an ongoing violation of federal law. See *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). But that exception has no application here because the Bar Order does not enjoin such a violation. To the contrary, any substantive dispute between the Attorneys General and the Studio Group (like the rights embodied in the Consent Judgment) involves state law, not federal law, and under the Eleventh Amendment a federal court may not enforce state law against a State. See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 120-21 (1984).

<u>Anti-Injunction Act</u>. The Bar Order also violates the Anti-Injunction Act, 28 U.S.C. § 2283, which prohibits a federal court from staying state court proceedings, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." See *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 294-96 (1970). That Act applies because the Bar Order interferes with the Attorneys General's enforcement of the Consent Judgment. See *Hill v. Martin*, 296 U.S. 393, 403 (1935) (Anti-Injunction Act applies "to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective"). If, for students who do not return releases as provided in the Bar Order, the Studio Group pursues collection of the Student Loans or fails to refund the Loan Payments, the Consent Judgment expressly permits the Attorneys General to take action against the Studio Group to redress these actions. (Dkt. 77-3, ¶ 116.) Thus, to the extent that the Bar Order purports to enjoin such redress and enforcement of the Consent Judgment, it violates the Anti-Injunction Act. (See above at 4 & n.2.)

None of the Anti-Injunction Act's exceptions applies to the Bar Order. No Act of Congress

9

expressly authorizes the Bar Order. The Bar Order also was not "necessary in aid of [the Court's] jurisdiction." That exception is generally limited to preventing state court interference with a federal court's *in rem* jurisdiction, and does not justify enjoining *in personam* claims in state court. *Kline*, 260 U.S. at 228-32; *Wyly v. Weiss*, 697 F.3d 131, 137-38 (2d Cir. 2012); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996); *Fox Theatres*, 69 F.2d at 61-62; see also *Atl. Coast Line R.R. Co.*, 398 U.S. at 294-96; *In re Life Inv'rs Ins. Co. of Am.*, 589 F.3d 319, 330-32 (6th Cir. 2009); *Jimmy John's*, 877 F.3d at 764. In receivership cases, that exception authorizes the court to prevent interference with the insolvent debtor's property. (See above at 6-8 & nn.4-6.) But it does not permit a court to go beyond such matters and grant any relief that might be deemed convenient to the litigants, including avoiding concurrent *in personam* jurisdiction in state and federal courts. *Atl. Coast Line R.R. Co.*, 398 U.S. at 295-96; *Jimmy John's*, 877 F.3d at 764-65; *Fox Theatres*, 69 F.2d at 61-62. Finally, the Bar Order does not protect or effectuate a *prior* judgment. See *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). To the contrary, in substance it *is* a judgment against the Attorneys General (albeit a judgment not based on any actual claim in the case).

Fed. R. Civ. P. 65(d)(1). The Bar Order also violates Rule 65(d)(1), which specifies that an injunction must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required." The Bar Order satisfies none of these requirements.

The Bar Order also lacks sufficient findings about why it issued, and no such finding could validly be made in these circumstances. Entry of an injunction is subject to well-known requirements, including an enforceable right and the absence of an adequate remedy at law, *Jimmy John's*, 877 F.3d at 769; cf. *In re Cont'l Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) (addressing inadequacy of findings for bar order in bankruptcy case), which are not satisfied here. Significantly, the Bar Order did not just *temporarily* stay or enjoin separate actions by the Attorneys General

10

against the Studio Group; it purports to *permanently* enjoin such actions, and thus effectively adjudicates, and extinguishes, the Attorneys General's rights that could be asserted in such actions. See *SEC v. Stanford*, 927 F.3d at 848. But the Studio Group has made no showing that the Attorneys General lack such rights as a matter of law or that the Studio Group's normal remedy — defending such actions if the Attorneys General bring them — is inadequate. In addition, the Bar Order's seeming internal inconsistencies — prohibiting the Attorneys General from enforcing state laws relating to the fraudulently induced Student Loans and Loan Payments, while at the same time providing that it does not modify any "rights or obligations" in the Consent Judgment — forces the Attorneys General to guess, at their peril, what the Court actually intended and ordered. Finally, the Bar Order uses terms that are defined only in other documents. (See above at 4.)

Fed. R. Civ. P. 65(d)(2). The Bar Order further violates Rule 65(d)(2), which limits the persons who may be bound by an injunction, because the Attorneys General whom it purports to enjoin were not "parties" to the case, their agents, or "in active concert or participation with" them. See *Zenith Radio*, 395 U.S. at 112.[7] Indeed, the notion that the Court, at Studio's behest, could permanently enjoin the Attorneys General from pursuing their rights in any court, and do so without giving them any opportunity to be heard in this case, offends the most fundamental principles of procedural fairness. See *id.*; *Alemite Mfg.*, 42 F.2d at 832-33.

Non-Consensual Third-Party Release. Finally, the Bar Order should be rescinded because it does not satisfy the conditions for granting the unusual and extraordinary relief of releasing claims by persons who have not consented to releasing them. As noted, persons generally are not bound by

---

[7] See also *Chase Nat'l Bank v. City of Norwalk, Ohio*, 291 U.S. 431, 436-37 (1934); *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 124 (6th Cir. 2003); *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930) ("[A] court of equity . . . cannot lawfully enjoin the world at large, no matter how broadly it words its decree. . . . [I]ts jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court."); see generally *Herrlein v. Kanakis*, 526 F.2d 252, 253-55 (7th Cir. 1975); *Wright & Miller* § 2956.

11

litigation to which they have not been made parties. See *Zenith Radio*, 395 U.S. at 110; see also *Wilks*, 490 U.S. at 761-62 ("A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings."). This principle applies even when parties to a case agree among themselves to affect the rights of non-parties. *Local No. 93*, 478 U.S. at 529 ("Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . without that party's agreement."); see also *Lawyer v. Dep't of Justice*, 521 U.S. 567, 579 (1997); *City of Warren*, 495 F.3d at 287; *Davis v. Blige*, 505 F.3d 90, 102-03 (2d Cir. 2007). And that principle does not somehow disappear in a receivership case. See *SEC v. Stanford*, 927 F.3d at 840-42; see also *Herrlein*, 526 F.2d at 253-54; cf. *In re SportStuff, Inc.*, 430 B.R. 170, 177-78 & n.15 (B.A.P. 8th Cir. 2010) (bankruptcy court in Chapter 7 case lacks jurisdiction to extinguish claims against non-debtor that do not involve debtor's assets). Although courts have approved *temporary* stays of non-party claims against a debtor in receivership, see *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984); see also *Liberte Capital Grp.*, 462 F.3d at 551-53 (upholding receivership court stay of suits by parties against non-debtors who were also parties), they cannot by judicial fiat — i.e., without an actual adjudication of the merits of the claims — *permanently* extinguish substantive claims by non-parties against non-debtors that do not involve the debtor's assets, see *Wencke*, 742 F.2d at 1231; *SEC v. Stanford*, 927 F.3d at 841, 843; *Rishmague*, 2014 WL 11633690, *2 & n.3.

  Applying these principles, the Fifth Circuit, in *SEC v. Stanford*, held that the district court erred by entering a bar order that prohibited non-parties from pursuing claims against non-receivership entities that "extend[ed] beyond receivership assets." 927 F.3d at 843. Noting that the purpose of a receivership is to marshal, administer, and ultimately distribute the debtor's assets among competing claimants, the court ruled that one limitation on a receivership court's authority, "arising from [its] *in rem* jurisdiction, is that the court may not exercise unbridled authority over

12

assets belonging to third parties to which the receivership estate has no claim." *Id.* at 840-41. Citing the Supreme Court's decisions in *Local No. 93* and *Wilks*, the court held: "The prohibition on enjoining unrelated, third-party claims without the third parties' consent . . . is a maxim of law not abrogated by the district court's equitable power to fashion ancillary relief measures." *Id.* at 842. Rejecting the appellants' reliance on cases upholding interim measures to "protect the *estate*," *id.* at 843 (emphasis in original), the court ruled that these cases "do not support that a district court's *in rem* jurisdiction over the estate may serve as a basis to *permanently* bar and extinguish independent, non-derivative third-party claims that do not affect the *res* of the receivership estate," *id.* (emphasis added).[8][9]

Those principles apply directly here. The Bar Order permanently extinguishes the Attorneys General's rights against non-receivership entities that do not involve receivership assets. The Debtors have no legal or economic interest in the Student Loans, which they assigned to the Studio Group *before* this action was filed, or in the Loan Payments received by the Studio Group *after* the action was filed. Thus, the Bar Order is merely a device to give the Studio Group a global release, good

---

[8]  In reaching this conclusion, *SEC v. Stanford* distinguished *SEC v. DeYoung*, 850 F.3d 1172 (10th Cir. 2017), which approved a third-party release against intervening parties. *DeYoung*, the court explained, was "a narrow and deliberately fact-specific opinion" in which the contested order "simply channeled redundant claims into the receivership while preventing diminution of receivership assets." 927 F.3d at 843-44. That unique situation existed, *Stanford* held, because those claims "precisely mirrored claims that had been asserted and settled by the receiver," and the bar order "averted a duplicative lawsuit whereby the [released] bank could have asserted its contract right to indemnity from the receivership assets." *Id.* It is relevant, too, that the bar order in *DeYoung* was entered against parties that intervened, and the court never addressed whether, absent that intervention, it would have jurisdiction to enter the relief against them.

[9]  In a more recent decision, a divided panel of the Fifth Circuit reached a result in tension with *SEC v. Stanford*. In *Zacarias v. Stanford Int'l Bank, Ltd.*, No. 17-11073, 2019 WL 6907376, *8 (5th Cir. Dec. 19, 2019), the court affirmed a receivership order barring claims by non-consenting parties against non-debtor banks.  In doing so, it distinguished *SEC v. Stanford* on the basis that the banks participated in the receivership entity's fraud, and the barred claims against it "were derivative of and dependent on the receiver's claims, and their suits directly affect the receiver's assets."  In dissent, Judge Willett stated that despite the settlement's "practical value," the court lacked jurisdiction or power to impose it, in lieu of adjudicating the barred claims, because they were not "'substantially identical' to the receiver's claims." *Id.* at *15 (quoting *SEC v. Stanford*, 927 F.3d at 835-36).

against the world at large, without its having to "endur[e] the rigors of bankruptcy," *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237 (3d Cir. 2004); see also *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 437 (2d Cir. 1987) (noting "the wisdom of not using a receivership as a substitute for bankruptcy"); *FirstEnergy*, 606 B.R. at 742 ("nondebtors should not be able simply to buy their own release or quasi-discharge without themselves being bankruptcy debtors").[10]

Because the Attorneys General have not filed any claim in this case against Debtors or their property, and no one filed a claim against the Attorneys General, there is no claim by or against the Attorneys General for the Court to adjudicate by traditional means — namely, identifying the pertinent legal principles and applying them to the relevant facts. See *Zenith Radio*, 395 U.S. at 110; *Herrlein*, 526 F.2d at 254-55; *Alemite Mfg.*, 42 F.2d at 832-33. And if the Court cannot adjudicate such a claim directly, it should be highly suspect of the Studio Group's suggestion that the Court can achieve the same result indirectly, bypassing those means entirely, by invoking its "equity jurisdiction." That is especially true where the vehicle used to dispose of the Attorneys General's rights is a supposed "settlement" of claims the Court cannot actually adjudicate. See *Local No. 93*, 478 U.S. at 529; *City of Warren*, 495 F.3d at 287. That concern is particularly acute here because the Bar Order enters relief against non-parties, who are unrepresented, and therefore had no ability to seek a more advantageous resolution of their claims. See *Hansberry v. Lee*, 311 U.S. 32, 40-45 (1940); see also *Taylor v. Sturgell*, 553 U.S. 880 (2008) (holding that privity, to bind non-parties, is not established by participation in case of persons with similar interests); cf. *Jimmy John's,* 877

---

[10] The Bar Order would not be proper even in a Chapter 11 bankruptcy reorganization proceeding, despite a bankruptcy court's statutory jurisdiction over all proceedings "relating to" the bankruptcy case, 28 U.S.C. § 1334(b). Several courts have held that a bankruptcy court may not grant third-party releases in any circumstances. See, e.g., *Matter of Zale Corp.*, 62 F.3d 746, 756–61 (5th Cir. 1995); see generally *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 655-57 (7th Cir. 2008) (surveying cases). And courts that have allowed them, including the Sixth Circuit, have emphasized that they are proper only upon strict compliance with multiple criteria (which the Studio Group could not possibly satisfy here), *Class Five Nevada Claimants v. Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002), and are reserved for "rare," "extraordinary," and "unusual" situations, *In re Firstenergy Solutions Corp.*, 606 B.R. 720, 734-39 (Bankr. N.D. Ohio 2019).

F.3d at 764-66 (holding that anti-suit injunction generally cannot apply against non-parties).[11]

Finally, before disposing of a person's rights, a court may not proceed in a peremptory fashion, but must give affected persons an adequate opportunity to be heard, and must carefully consider all relevant considerations. See, e.g., *Cont'l Airlines*, 203 F.3d at 214; *Adkins v. Nestlé Purina PetCare Co.*, 779 F.3d 481, 483 (7th Cir. 2015). But the Court did not do that here. It entered the Bar Order without giving notice to, or receiving input from, the Attorneys General. The results of that inadequate process are readily apparent. Among other things, the Court accepted at face value, without any investigation or substantiation, the Studio Group's assertion that Arts Institutes received only $64,475.94 in Loan Payments (Dkt. 449 at 15), although the real amount may be significantly higher. In addition, the Bar Order releases Studio from any liability for the Loan Payments *it* received *before* it reassigned the loans to Arts Institutes, but does not require Studio to account for, or refund, any of those payments. That feature of the Bar Order merely highlights how it was obtained in a completely one-sided manner, with the Studio Group apparently assuming that it could get the relief the Bar Order provides, including global releases, without any meaningful disclosure of information, negotiation, participation, representation of, or even notice to, persons whose rights it extinguished. The Court should take this opportunity to cure these defects by simply rescinding the Bar Order.

## Conclusion

For the foregoing reasons, the Attorneys General respectfully request the Court to delete any reference to them in the Bar Order, including, in particular, in paragraph 19.

---

[11] The Attorneys General reiterate that they do not wish to intervene or participate in the case, but if the Court has jurisdiction, it must give them an opportunity to be heard before entering relief against them.

                        Respectfully submitted,

                        KWAME RAOUL, Attorney General of Illinois;
                        PHIL WEISER, Attorney General of Colorado

By:   /s/ *Richard S. Huszagh*
        Richard S. Huszagh
        Illinois Assistant Attorney General
        100 W. Randolph St., 12th Floor
        Chicago, Illinois 60601
        *rhuszagh@atg.state.il.us*
        (312) 814-2587

Olivia D. Webster
Colorado Sr. Assistant Attorney General
Consumer Protection Section
Colorado Attorney General's Office
1300 Broadway
Denver, CO  80203
*Libby.Webster@coag.gov*
(720) 508-6203

16

**Certificate of Filing and Service**

I hereby certify that on January 2, 2020, I electronically filed the foregoing <u>Memorandum in Support of Illinois and Colorado Attorneys General's Motion to Modify December 5, 2019 Order to Delete Relief Against Them</u> with the Clerk of the Court for the United States District Court for the Northern District of Ohio, Easter Division, by using the CM/ECF system, which will effect service on the other participants in the case.

<u>      /s/ *Richard S. Huszagh*      </u>