# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) |
| | ) CASE NO. 1:19-CV-145 |
| Plaintiff, | ) |
| | ) JUDGE DAN AARON POLSTER |
| v. | ) |
| | ) |
| SOUTH UNIVERSITY OF OHIO, LLC, | ) |
| *et al.* | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND DECEMBER 5, 2019 ORDER (DKT. 501) BY INTERVENOR STEPHANIE PORRECA, NON-INTERVENOR STUDENT MEGAN TUYLS AND THE NATIONAL STUDENT LEGAL DEFENSE NETWORK**

On December 5, 2019, the Court granted a motion by intervenor Studio Enterprise Managers, LLC, permitting Studio to forgive certain student loan obligations of former students of the Illinois Institute of Art ("IIA") and the Art Institute of Colorado ("AIC") that accrued during the semester that the students were misled into paying tuition for an education that was unaccredited. Dkt. 501 (the "Studio Order"). This may be a beneficial development for some students, but Studio did not need a court order to cease collecting on fraudulently induced loan obligations. At the same time, the order bars former students from commencing claims against Studio and its affiliates, and forbids the undersigned counsel National Student Legal Defense Network ("Student Defense") and state Attorneys General from advocating on their behalf. Dkt. 501 ¶ 19.

The Studio Order exceeds the scope of this Receivership—it does not involve Receivership entities at all. Studio is not in receivership, and its motion did not pertain to any property interest of Receivership entities. At the same time, it determines rights of many

hundreds of student-borrowers who have not participated in this proceeding, have never been provided a claims process to advance their interests, and who received no notice of Studio's motion. It also restricts Students Defense and state Attorneys General—also not parties in the Receivership—from advocating for students' interests.

Former IIA student Megan Tuyls, who has never appeared in this action nor received notice of Studio's Motion, appears in a special and limited capacity to submit this motion under Federal Rules of Civil Procedure 59(e) and 60(b), contesting the Court's jurisdiction to enter an order against non-party students foreclosing their rights to bring claims, and defending her due process right not to be subject to a judgment in litigation she has not participated in. Intervenor Stephanie Porreca joins in the motion to amend the Studio Order, which bars her from making claims against Studio for refunds of loan payments made to pay tuition during a period where she remained enrolled in school because of DCEH's misrepresentations about her school's accreditation by the Higher Learning Commission ("HLC").

Student Defense also appears in a special and limited capacity to move this Court to lift the bar on its representation of students who were harmed by accruing debt as a result of misrepresentations about their schools' accreditation, and who may not be able to secure affordable representation from other sources.

**I.      Background**

On January 18, 2019, this Court granted Plaintiff Digital Media Solution's emergency, uncontested motion for receivership of Dream Center Education Holdings, LLC ("DCEH"), and the for-profit colleges it owned and operated, including many campuses operating under the Art Institute and Argosy University brands. Dkt. 8. A primary rationale for the Receivership was to

allow the schools still operated by DCEH to retain access to Title IV funding, which is not available in bankruptcy. Dkt. 3 at 4; Dkt. 7 at 2.

The Court granted motions to intervene by numerous parties, including Studio and several groups of students. The Dunagan Intervenors, four named plaintiffs in a class action lawsuit pending against IIA, DCEH, and other entities, intervened as of right on February 13, 2019, Dkt. 49, followed by groups of students from other DCEH-owned schools, Dkts. 244, 385. All of the student intervenors are represented by Student Defense.

Studio intervened based on its status as a secured creditor of DCEH, pursuant to a transaction in which companies affiliated with Studio purchased a group of Art Institute and South University schools from DCEH on January 7, 2019, before DCEH was placed in Receivership. Dkt. 42-1 at 1, 4. (To the best of movants' understanding, Studio does not have an ownership interest in the schools acquired from DCEH.) Studio represented that its security interests in property of the Receivership entities included "all accounts receivable of the AR Entities that were or will be in existence on or after January 8, 2019." *Id.* at 3. The "AR Entities" include AIC and IIA. *Id.* Studio also explained that "accounts receivable held by the AR entities . . . that were in existence on or prior to January 7, 2019, were assigned to Studio as part of the Transaction and are not Receivership Property," and are therefore not among the security interests that Studio relied upon as the basis for its intervention. *Id.* at 3 n.2. Those accounts receivable include what Studio refers to as the HLC Student Loans at issue here.

None of Studio's purchaser affiliates intervened in the Receivership; nor has the Art Institute or South schools that Studio's affiliates purchased.

On February 27, 2019, the United States Department of Education terminated participation in Title IV for the Argosy schools in receivership, resulting in the closing of most

3

Argosy campuses. Dkt. 98-2; 111 at 3-4. On March 6, 2019, noting its "concern . . . that the current receivership is doing more harm than good," Dkt 111 at 4, the Court entered an order to show cause why the Receivership should not be vacated. Following a hearing on March 11, 2019, however, the Court continued the Receivership at Studio's behest because the schools under Studio's management were too tightly integrated with DCEH's back office and information technology functions to operate independently. Dkt. 162 at 3-4.

On November 9, 2019, Studio filed a motion seeking entry of an order (a) permitting non-intervenors South University and the Arts Institutes to assume certain employee benefit obligations; (b) permitting non-intervenors the Arts Institutes to forgive certain loan obligations for students at IIA and AIC who were the victims of misrepresentations made by DCEH between January 20, 2018 and June 15, 2018; and (c) issuing a Bar Order prohibiting further claims against Studio and certain other related parties. Dkt. 449.

In its motion, Studio explained that on January 7, 2019—before the Receivership—it had executed a series of documents that provided, along with the acquisition of South University and Art Institute schools by non-profit corporation Education Principle Foundation, for the acquisition of certain accounts receivable by Studio, including the "HLC Student Loans." *Id.* ¶ 1.[1] Subsequently, Studio reassigned the student loan receivables it acquired in this transaction to the Arts Institutes International, LLC ("Arts Institutes"). *Id.* ¶ 32. As of the date of the motion, "the Arts Institutes [had] collected the aggregate amount of $64,475.94 from the HLC Students (the 'HLC Student Loan Collections'), and the HLC Students have outstanding student loan balances in the aggregate amount of $2,082,839.80 (the 'HLC Student Loans'). *Id.*

---

[1] This motion assumes familiarity with the capitalized terms and definitions—such as "HLC Student Loans"—provided in Studio's motion and in the Studio Order.

4

Studio acknowledged that the HLC Student Loans are "debts that may have been incurred as a result of misrepresentations by DCEH." *Id.* Had these loan obligations remained with DCEH, their discharge was likely to be included in the Corrective Action Plan DCEH was negotiating with the Settlement Administrator, Dkt. 323 at 2, or be a potential source of damages for the class action plaintiffs in *Dunagan v. Illinois Institute of Art,* No. 19-cv-809 (N.D. Il). While Studio may not have participated in DCEH's misrepresentations, any defenses students had against collection based on those misrepresentations survive the assignment of the loans from DCEH to other entities. *See* Dkt. 77-3 (Consent Judgment) at 1; *see also* Dkt. 483 at 3 n.3 ("Because Studio is an 'assign[ee]' of DCEH in debts owed by students affected by DCEH's material misrepresentation, whatever rights Studio acquired in those loans from DCEH were subject to DCEH's obligation to correct its violation—including by ceasing collections and returning relevant amounts paid.").

Studio's motion does not describe what time period the enumerated collections and balances correspond with, nor does it specify whether these receivables "were in existence on or prior to January 7, 2019" or "were or will be in existence on or after January 8, 2019," as those terms were employed in Studio's intervention motion. Dkt. 42-1 at 3. Studio did not attach any documentation to its motion relating to these loan balances so that the Court could confirm the extent of the loan forgiveness, and potentially affected parties could evaluate whether and to what extent the loan forgiveness program benefits or excludes them. Studio did not send notices of its motion to the students purportedly affected by it.

The Dunagan Intervenors and intervenor Thomas Perrelli, the Settlement Administrator for a Consent Judgment between 40 state Attorneys General and DCEH (including DCEH's predecessor and successor entities), submitted responses to Studio's motion. Dkts. 485, 486. On

5

December 3, 2019, the Court held a hearing on the motion. The Court questioned why the intervenors were interfering with a motion that, if granted, would result in Studio assuming responsibility for employees' health benefits.

Studio challenged whether any of the four Dunagan Intervenors were affected by its motion. The Court entered an Order requiring the Dunagan Intervenors to answer whether any of them (i) received institutional loans from their DCEH institution for the educational period that included January 20, 2018 through June 15, 2018; and (ii) have had any of said loan funds collected by the lending DCEH institution, its successor or Studio. Dkt. 494. The Court stated that failing to make such a showing may cause it to overrule the Dunagan Intervenors' objections for lack of standing. *Id.*

The Dunagan Intervenors subsequently submitted pleadings demonstrating that one intervenor, Stephanie Porreca, satisfied the standing criteria set forth by the Court. Dkts. 496, 500. Ms. Porreca had entered into an agreement with her school, IIA-Schaumburg, on July 31, 2017 to pay $4,697.00 in tuition for the 2017-18 academic year through installment payments collected by Tuition Options. Dkts. 496-1, 496-3. IIA-Schaumburg is the lender for those obligations. Dkt. 496-3. She made payments on this loan obligation via auto-collections by Tuition Options throughout 2018, including the January-June "DCEH misrepresentation period," and in 2019, after the loan receivables were purchased by Studio and assigned to the Arts Institutes. Dkt. 496-2. Studio disputes that these loan payments are covered by the terms of the loan forgiveness program ordered by the Court. Dkt. 497. If Studio persists in this position, then, under the Studio Order, Ms. Porreca will not have her loan payments refunded by Studio, nor be

permitted to bring claims against Studio in other forums to have her payments refunded because they were made to pay tuition during the DCEH misrepresentation period.[2]

On December 5, 2019, the Court granted Studio's motion, overruling the Settlement Administrator and Dunagan Intervenors' objections because they "lack merit" (intervenors' standing was not discussed). Dkt. 501 at 2. With respect to student loan forgiveness, the Studio Order provides that "[t]he Arts Institutes will refund the HLC Student Loan Collections from the applicable HLC Students and forgive the collection of any outstanding balances on the HLC Student Loans, which are included in the Studio Receivables that have been assigned to the Arts Institutes, of the applicable HLC Students at the four HLC campuses, in each case, that were incurred during the academic quarter(s) that commenced after January 20, 2018 but prior to June 15, 2018 (the "HLC Student Loan Forgiveness Period")." *Id.* at ¶ 15. This includes the termination of auto-debit or credit card collections by credit card processing vendors such as Tuition Options. *Id.* at ¶ 16. The Order does not: (a) define what it means for the balance to be "incurred" during the January 20-June 15, 2018 period; (b) disclose how much of the $2.1 million in loan balances purportedly held, and $65,000 in refunds purportedly collected, by the Arts Institutes (Dkt. 449, ¶ 32) are covered under the terms of the Order; or (c) indicate whether the student loans being forgiven "were in existence on or prior to January 7, 2019" or "were or will be in existence on or after January 8, 2019," as those terms were employed in Studio's intervention motion. Dkt. 42-1 at 3.

---

[2] Studio stated that "if Stephanie Porreca is able to demonstrate that she is entitled to the HLC Student Loan Forgiveness, she can follow the process and receive the same benefits as the other HLC Students." Dkt. 497 at 2. Undersigned counsel sent a letter to Studio on December 20, 2019, explaining why Ms. Porreca is entitled to HLC Student Loan Forgiveness, and inquiring what process she should follow to present her case. *See* Exh. A. Studio has not responded to the letter.

7

For students to receive the benefit of Studio's HLC Student Loan Forgiveness, they must execute a broad general release of "Released Parties," for all claims relating to or arising out of the EDMC Consent Judgment Obligations which include, but are not limited to, DCEH's misrepresentations about accreditation. Dkt. 449 ¶¶ 28, 31; Dkt 501 at ¶ 17. The Released Parties include intervenor Studio and a long list of <u>non-intervenors</u> including Colbeck Partners, the private equity company that funded the purchase of schools from DCEH; Education Principle Foundation, the non-profit owner of the schools purchased from DCEH; the Arts Institutes; South University; and multiple lawyers and legal organizations that have performed work for Studio and its affiliates. Dkt. 501 at 4 n.2. If students do not sign and return the release within 30 days, Studio and the Arts Institutes "will not be obligated to forgive the HLC Student Loans or reimburse the HLC Student Loan Collections of any HLC Student." Dkt. 501 ¶18.[3]

Paragraph 19 of the Studio Order provides that "[n]one of DCEH, the Receivership Entities, the Receiver, the HLC Students, the Settlement Administrator, the National Student Legal Defense Network, the Attorneys General, or any other party shall commence any Claims or in any manner seek relief against any of the Released Parties through any suit or proceeding based on any EDMC Consent Judgment Obligations or otherwise assist (unless required to do so by law) the efforts of any other party attempting to do so" (the "Bar Provision"). Other than the Dunagan Intervenors, no HLC Students have appeared in this proceeding; nor has Student Defense or any state Attorneys General appeared as a party. Students were never sent notice of Studio's motion or the Court's Order. The Court also has not ordered a claims process for this Receivership. Although Studio insisted that this Bar Provision is necessary because it has had to

---

[3] The HLC Student Notice has not been defined or included as an exhibit to any pleading or the Court's Order. The deadline referenced in paragraph 18 of the Order is not defined. However, Studio has explained in its motion papers that students will have 30 days to execute and return the release. Dkt. 466 at 9.

8

fend off "continuous frivolous, legally deficient, and false accusations," Dkt. 491 at 3, no HLC Students, the Settlement Administrator, Student Defense, State Attorney General, or any other party—other than the Receiver—has filed a claim against Studio in the Receivership or arising from the DCEH misrepresentations.

Megan Tuyls was a student at IIA's Novi, Michigan campus from August 2017 to July 2018. Tuyls Dec. ¶ 1. (Exh. B). She withdrew after finding out that the school had lost accreditation. *Id.* Ms. Tuyls will begin attending Kellogg Community College in Battle Creek, Michigan in the Spring of 2020; none of her IIA credits will transfer to her community college program. *Id.* ¶ 2. Ms. Tuyls incurred debt to IIA to pay tuition for the 2017-18 academic year. *Id.* ¶ 3. She made payments on that debt through collections vendor Tuition Options during the January-June 2018 "DCEH Misrepresentations Period," and has continued to make periodic payments in 2019. *Id.* ¶¶ 3-5. As of the date of this filing, she still owes approximately $3,500 on her IIA debt collected by Tuition Options. *Id.* ¶ 10. On multiple occasions in 2019, she has received notices from Tuition Options threatening negative actions on her account and pressuring her to make immediate payments. *Id.* ¶¶ 7-9. She did not receive notice of Studio's motion, and does not know whether she is eligible for loan forgiveness or refunds, and, if so, what portion of her IIA debt is covered. *Id.* ¶¶ 11-12.

To the best of Ms. Porreca's and Ms. Tuyls' knowledge, Studio has not sent notices to any HLC Students about the opportunity for loan forgiveness.

**II.     Argument**

   **A.  Violation of Due Process Rights of Student-Borrowers**

Ms. Tuyls and Ms. Porreca join the personal and subject matter jurisdiction, Federal Rule of Civil Procedure 65, and non-consensual release arguments made by the Illinois and Colorado Attorneys General. They focus here on the violations of due process caused by the Bar Provision.

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which she is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). "Fundamental due process principles prohibit claim extinguishment against anyone not a party to [the] action." *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 554 (D.Colo. 1989); *Taylor v. Sturgell*, 553 U.S. 880 (2008) (rejecting claims preclusion based on "virtual representation" of non-parties' interests). This foundational constraint applies in receivership proceedings. *See e.g.*, *Cobalt Multifamily Investors, LLC v. Shapiro*, No. 06 Civ. 6468, 2013 WL 5418588 at * 2 (S.D.N.Y. Sept. 27, 2013); *Armstrong v. Collins*, No. 01-CV-2437, 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010).

The Bar Provision precludes all claims by student-borrowers against the "Released Parties" arising from DCEH misrepresentations, including by IIA and AIC students like Ms. Tuyls, who have never appeared in this proceeding as a party or intervenor. Intervenor Porreca is situated somewhat differently from non-party Tuyls in that she has participated in this proceeding as an intervenor. But her due process rights are violated nonetheless by delegating Studio sole authority over the circumstances in which the loan payments she made to fund her tuition obligations during the DCEH Misrepresentation Period may or may not be discharged. If she does not receive notice from Studio that her loans will be forgiven—as appears to be Studio's position—she will be prohibited by the Bar Provision from pursuing a claim for refund in any other forum, even though she has a sound legal position that some of her loan obligations

were for tuition to attend IIA during the DCEH Misrepresentation Period, which has never been adjudicated.[4] The Court need not resolve the merits of that potential claim to recognize that the Bar Provision forecloses her from making it.

In *Taylor v. Sturgell*, the Supreme Court set forth narrow exceptions to the general prohibition against precluding claims against non-parties, none of which apply here.[5] In particular, the interests of non-party student borrowers were not adequately represented in this proceeding. "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representatives are aligned; and (2) either the party understood herself to be acting in the representative capacity or the original court took care to protect the interests of the nonparty." *Id*. at 900. Sometimes, it requires "notice of the original suit to the persons alleged to have been represented." *Id.*

Studio did not issue notice of its motion to non-party students. And, no party or intervenor was permitted to act in a representative capacity for the non-party students. Throughout this Receivership, the Court has constrained student intervenors from representing the interests of any students other than themselves. *See, e.g.*, Dkt 385 (explaining that Georgia School of Professional Psychology students permitted to intervene to recover destroyed training files "will not be permitted to serve as delegates for the other unnamed students" whose training files had not been produced to them by the Receiver). Similarly, the Dunagan Intervenors were

---

[4] As the Attorneys General point out, the Court cannot bypass adjudication of claims by traditional means simply by invoking its equity jurisdiction. Dkt. 514. at 14.

[5] *See* 553 U.S. at 894-95 (providing the following narrow exceptions: (1) the non-party agrees to be bound by the judgment; (2) pre-existing substantive legal relationships between the non-party and a party to the judgment, such as bailee and bailor or assignee and assignor; (3) the non-party was adequately represented by someone with the same interests, such as properly conducted class actions, or trustees; (4) the non-party assumed control over the litigation; (5) the non-party is relitigating as a proxy for a party against whom judgment was rendered; or (6) a special statutory scheme that may expressly foreclose successive litigation by non-litigants, such as bankruptcy or probate proceedings).

never authorized to advocate on behalf of the proposed class in their litigation against DCEH and others, or on behalf of any other students harmed in the same way that they were. Ms. Porreca had to make a detailed showing that the proposed Studio Order would affect her just to advocate for herself.

Nor did the Court establish any "special procedures" to protect non-party students' interests. As a threshold matter, it is not clear that this refers to anything less rigorous than the procedures applied to class actions. *See Amos v. PPG Industries, Inc.*, 699 F.3d 448, 452 (6th Cir. 2012). In any event, the protections afforded by the Court all run in favor of Studio and its affiliates, acquiescing to their demand that any forgiveness of fraudulently induced loans come with <u>two</u> protections: (a) a narrow "opt-in" window, that requires students to release claims within 30 days of receiving notice; and (b) a court-imposed claims bar against all other students, whether or not they agreed to release claims, or have even been afforded the opportunity to decide. Students' interests were also yoked to Studio's assumption of employee benefit obligations, even though they have no relationship to each other, and no party opposed Studio's motion in that regard.

The Court did not require Studio to provide documentation of the amounts of loans it means to refund or cancel. Nor is any monitoring process established by the Order. If, for example, Studio should be refunding far more than $65,000, no one will ever know it, least of all the non-party students that have been excluded from its disposition.

The Studio Order also did not result from a special statutory scheme that may expressly foreclose successive litigation by non-litigants, such as bankruptcy. *See, e.g.,* Dkt. 514 (Attorneys General Mem. of Law) at 7. In fact, the Receivership was sought for the specific purpose of avoiding bankruptcy, although it has remained in place long since the primary

rationale—maintaining access to Title IV funds—expired. But the Receivership is not governed by any statutory scheme that requires creditor interests to be addressed, nor did the Court establish comparable procedures to protect the rights of non-party students. For example, the Court has not established a creditors' committee to look after non-party rights, nor ordered a claims process, with notice to potentially affected claimants, even though such procedures are available to receiverships of failed for-profit schools. *See, e.g.*, *VC Macon, Ga LLC v. Virginia College LLC, et al,* 5:18-cv-00388-TES Dkts. 148, 175 (M.D. Ga.) (Exh. C).

More fundamentally, none of the "Released Parties" are among the Receivership entities over which this Court has asserted jurisdiction, nor was the Studio Order entered in furtherance of a transaction or a settlement in which the Receiver participated. While receivership courts have discretion to issue bar orders to protect receivership assets or, under some circumstances, protect third parties that are entering into settlements that benefit the receivership, *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840-41 (5th Cir. 2019), that authority does not extend to transactions that do not involve receivership entities or receivership property at all. "[T]he court may not exercise unbridled authority over assets belonging to third parties to which the receivership estate has no claim." *Id.* at 841.

To the best of movants' understanding, the loan receivables at issue do not constitute any part of the security interests that Studio relied upon to justify its intervention. The transfer of institutional loan receivables from DCEH to Studio occurred before the Receivership, and the Receiver has expressly disclaimed any involvement with or interest in the HLC Student Loan Forgiveness program. Dkt. 477-2. Also, the beneficiaries of the Bar Provision include not just Studio, a non-Receivership entity that intervened in this Receivership to protect secured interests that are not the subject of the Studio Motion, but also non-intervenors like the Arts Institutes, the

current holder of the loan obligations and the beneficiary of loan collections, which have not even intervened in this proceeding. Receiverships are not forums for imposing equitable "settlements" between non-receivership entities, especially those that have never appeared to represent their interests.

### B. The Bar on Future Representations By Student Defense Violates Its First Amendment Rights and the Rights of Non-Party Students to Representation

Student Defense joins in the jurisdictional, Federal Rule of Civil Procedure 65, and non-consensual release arguments made by the Attorneys General.

The Bar Provision prohibits Student Defense, a non-profit legal organization, from bringing or assisting in any claims against the Released Parties arising out of the DCEH misrepresentations. This is an extraordinary prior restraint on a legal organization's representation of clients and fulfillment of its mission. Non-profit legal organizations' right to pursue their missions are protected by the First Amendment. *NAACP v. Button*, 371 U.S. 415 (1963). In *NAACP v. Button*, the restriction that the Court found to violate the First Amendment involved the *solicitation* of clients—activity that states are typically permitted to regulate. Here, Student Defense is prohibited from representing even clients that come to it, and who may have no other options for affordable representation.

Model Rule of Professional Conduct 5.6 and Ohio Rule of Professional Conduct 5.6 do not even permit attorneys to restrict *themselves* from representation as part of the settlement of a claim or controversy of an existing client, because, among other things, it deprives the public of lawyers who, by virtue of their background and experience, might be the best available talent to represent these individuals. *ABA Formal Op.* 93-371, at 2.[6] Studio and the Court have imposed that same kind of constraint on Student Defense *involuntarily*.

---

[6] Studio's Proposed Order, which was adopted by the Court, named Student Defense, but not its co-counsel Squire

14

The restriction imposed on Student Defense is likely to deprive the very students that need representation the most regarding the Studio Order from receiving it. Whereas Ms. Porreca, as an intervenor, had an opportunity to respond to the Studio motion, and Ms. Tuyls at least has representation now, many students will have their rights wiped away without any notice or representation.

As the Attorneys General note in their brief, and as this Court has surely observed in its administration of consumer class action relief, "many students who took out Student Loans or made Loan Payments will not submit releases as provided under the Bar Order," Dkt. 514 at 4. Many students will likely not receive the notice due to a defunct address, and Studio has committed only to use "reasonable efforts" to locate students whose notices are returned as non-deliverable. Dkt. 466 at 9. Many other students will not open the mail from an unfamiliar party and, if they do, will not understand or appreciate that executing the release—which is hard to follow even for attorneys—constitutes their sole opportunity to relieve themselves from fraudulently induced loan obligations. If Studio persists with collecting from students after the 30-day deadline expires, they will likely to turn to Student Defense, one of the few non-profit legal organizations practicing full time in this space, and the one most associated with Dream Center litigation through its representations of students in this Receivership as well as in other contexts and venues. *See, e.g. Dunagan v. Illinois Institute of Art,* No. 19-cv-809 (N.D. Il); *Infusino v. DeVos,* No. 19-cv-3162 (D.D.C); *Armour v. DeVos*, No.19-cv-2556 (D.D.C). To comply with the Studio Order, Student Defense will almost certainly have to turn harmed

---

Patton Boggs. While neither firm is a party to this proceeding, the likely intended effect of this provision is to bar additional non-intervenor student clients of Student Defense from raising claims against Studio in the future.

15

students down, meaning such students will not just be unrepresented in the disposition of Studio's motion, but potentially for good.

## III. CONCLUSION

This Receivership, which was initiated primarily so schools operated by DCEH could retain access to Title IV funding, should not be converted into a forum wherein non-parties with past relationships to Receivership entities seek equitable relief between one and other. While some students may benefit from the forgiveness of loans incurred because of DCEH's misrepresentations, those loans should never have been collected in the first place. Studio does not require the Court's permission to confer those benefits, and is not entitled to subvert students' due process rights to do so.

Respectfully Submitted,

/s/ Richard S. Gurbst
Richard S. Gurbst (Bar # 0017672)
Eleanor M. Hagan (Bar # 0091852)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Telephone: +1 216 479 8500
E-mail: richard.gurbst@squirepb.com

Eric Rothschild
Admitted Pro Hac Vice
Alexander S. Elson
Admitted Pro Hac Vice

NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street NW, Suite 600
Washington, DC  20005
Telephone:  +1 202 734 7495
E-mail:  alex@defendstudents.org
eric@defendstudents.org

16

                      Counsel for Intervenors,
                      Emmanuel Dunagan, Jessica Muscari,
                      Robert J. Infusino and Stephanie Porreca

                      Counsel for Megan Tuyls and National Student Legal Defense Network, non-parties making special, limited appearances to file Rule 59 motion