UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, | ) | **Case No. 1:19-cv-00145** |
|  | ) |  |
| Plaintiff | ) | Judge Dan Aaron Polster |
|  | ) |  |
| v. | ) | Magistrate Judge Thomas M. Parker |
|  | ) |  |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**RECEIVER'S MOTION FOR ENTRY OF ORDER
(1) APPROVING GLOBAL SETTLEMENT AND COMPROMISE AMONG
RECEIVER AND ALL INSUREDS UNDER THE PORTFOLIOSELECT FOR
NON-PROFIT ORGANIZATIONS LIABILITY INSURANCE POLICY;
(2) APPROVING PAYMENT OF DEFENSE COSTS; AND
(3) BARRING AND PROHIBITING PARTIES FROM ASSERTING CERTAIN CLAIMS**

Mark E. Dottore, the duly appointed and acting receiver (the "**Receiver**") for the

Receivership Entities,[1] by and through undersigned counsel, respectfully states as follows in

support of this motion ("**Motion**"):

---

[1] The "**Receivership Entities**" include (i) South University of Ohio LLC; (ii) Dream Center Education Holdings, LLC; (iii) The DC Art Institute of Raleigh-Durham LLC; (iv) the DC Art Institute of Charlotte LLC; (v) DC Art Institute of Charleston, LLC; (vi) DC Art Institute of Washington LLC; (vii) The Art Institute of Tennessee - Nashville LLC; (viii) AiTN Restaurant LLC; (ix) The Art Institute of Colorado LLC; (x) DC Art Institute of Phoenix LLC; (xi) The Art Institute of Portland LLC; (xii) The Art Institute of Seattle LLC; (xiii) The Art Institute of Pittsburgh, DC LLC; (xiv) The Art Institute of Philadelphia, DC, LLC; (xv) DC Art Institute of Fort Lauderdale LLC; (xvi) The Illinois Institute of Art LLC; (xvii) The Art Institute of Michigan LLC; (xviii) The Illinois Institute of Art at Schaumberg LLC; (xix) DC Art Institute of Phoenix, LLC, and its direct subsidiaries (xx) the Art Institute of Las Vegas LLC; (xxi) the Art Institute of Indianapolis, LLC; (xxii) AiIN Restaurant LLC; (xxiii) Dream Center Argosy; (xxiv) University of California LLC, and its direct subsidiaries;  (xxv) Argosy Education Group LLC; (xxvi) Dream Center Education Management LLC; and (xxvii) South University of Michigan LLC. *See* Order Appointing Receiver ("**Initial Receiver Order**") [ECF No. 8] at 3-4; *see also* Order Clarifying Order Appointing Receiver ("**Clarifying Receiver Order**") [ECF No. 14] at 1 (removing AU Student Funding, LLC as a "Receivership Entity"). All capitalized terms not initially defined in this Motion shall have the same meaning(s) as defined later in this Motion; and all capitalized terms not otherwise defined in this Motion, shall have the same meaning(s) as ascribed in the Settlement Agreement.  In the event of any inconsistency between the terms of the Settlement Agreement and this Motion, the Settlement Agreement shall control.

## I.  RELIEF REQUESTED

1.      The Receiver requests entry of an order, substantially in the form attached hereto as Exhibit A (the "**Settlement and Bar Order**"): (a) approving that certain Settlement Agreement ("**Settlement Agreement**"),[2] a copy of which is attached hereto as Exhibit B, entered into by and among the Parties;[3] (b) approving a Bar Order (as defined below) in favor of the Insureds and National Union Fire Insurance Company of Pittsburgh, Pa ("**Insurer**" or "**National Union**");[4] and (c) authorizing the Insurer to make the Settlement Payment and pay the Approved Payments (including Defense Costs) and, to the extent necessary, lifting the stay imposed by this Court's prior Orders [ECF Nos. 8 and 150], as may be amended, modified, or supplemented.

## II.  BACKGROUND

### A.      Receivership

2.      On January 8, 2019, Digital Media Solutions, LLC ("**Digital Media**") filed a receivership Complaint against South University of Ohio, LLC, a/k/a DC South University of

---

[2] The Settlement Agreement remains subject to the Insurer's review and approval, and may be amended or supplemented, as necessary, prior to the hearing on this Motion.

[3] The Parties to the Settlement Agreement are as follows: the RECEIVER, as the federal equity receiver, custodian and liquidator for the Receivership Entities; THE DREAM CENTER FOUNDATION, and its former and current officers, directors, employees and affiliates (collectively, "**DCF**"); BRENT RICHARDSON ("**B. Richardson**"); CHRISTOPHER RICHARDSON ("**C. Richardson**"); JOHN CROWLEY ("**Crowley**"); CHAD GARRETT ("**Garrett**"); MONICA CARSON ("**Carson**"); MELISSA ESBENSHADE ("**Esbenshade**"); SHELLEY GARDNER ("**Gardner**"); MICHAEL LACROSSE ("**Lacrosse**"); RANDALL BARTON ("**Barton**"); SHELLY MURPHY ("**Murphy**"); ROB PAUL ("**Paul**"); DEBBI LANNON-SMITH ("**Lannon-Smith**"); STACEY SWEENEY ("**Sweeney**"); PASTOR MATTHEW BARNETT ("**Barnett**"); TIMOTHY SLOTTOW ("**Slottow**"); RUFUS GLASPER ("**Glasper**"); JACK DEBARTOLO ("**DeBartolo**"); CYNTHIA BAUM ("**Baum**"); and JAMES TERRELL ("**Terrell**"). B. Richardson, C. Richardson, Crowley, Garrett, Carson, Esbenshade, Gardner, Lacrosse, Barton, Murphy, Paul, Lannon-Smith, Sweeney, Barnett, Slottow, Glasper, DeBartolo, Baum and Terrell are referred to herein collectively as the "**Ds&Os**," and together with DCF and any and all other persons who are an "Insured" as defined in either of the Policies (including, with respect to the defined Primary Policy, the Receivership Entities and any non-Receivership Entities covered under the Primary Policy including without limitation DCF), the "**Insureds**." The Receiver, the Ds&Os, and DCF are collectively referred to herein as the "**Parties**" or singularly as a "**Party**."

[4] All references to the Insurer include National Union Fire Insurance Company of Pittsburgh, Pa and AIG Claims, Inc., on behalf of themselves and their respective predecessors, successors-in-interest, assigns, subrogees, and persons acting by or through any of the foregoing.

Ohio, LLC, d/b/a South University, DCEH, and Argosy Education Group, LLC, in the United States District Court, Northern District of Ohio ("**Court**"), thereby initiating the above-styled receivership case ("**Receivership**," "**Receivership Estate**," or "**Receivership Case**").

3.     On January 18, 2019, the Court entered the Initial Receiver Order [ECF No. 8], as clarified [ECF No. 14] and amended [ECF No. 150], appointing Mark E. Dottore as the Receiver of the Receivership Entities.

4.     The Receivership remains open, including the stay orders issued therein, in order to allow the Receiver to close certain open issues, including among other matters, the Receiver's Alleged Claims (defined below) against the Insureds.

**B.     National Union Policies**

5.     Prior to the commencement of the Receivership, the Insurer issued a PortfolioSelect for Non-Profit Organizations liability insurance policy to Receivership Entity, Dream Center Education Holdings, LLC ("**DCEH**"), under Policy Number 02-420-25-70 ("**Primary Policy**"); and also issued a Side-A Edge excess insurance policy to DCEH, under Policy No. 02-42-25-71 ("**Excess Policy**") (the Primary Policy and the Excess Policy, including any and all declarations, amendments, supplements, and endorsements, and subject to all of the policies' terms, conditions and exclusions, are referred to herein collectively as the "**Policies**"), for the initial policy period from October 17, 2017 through October 17, 2018, as extended until April 17, 2019, along with a one-year Discovery Period following April 17, 2019.

6.     The Policies generally provide certain coverage to protect and indemnify the directors and officers of the Insured Entity(ies) in connection with Losses, including Defense Costs, judgments, and settlements, arising from particular types of claims that might be made against them in their capacity as directors or officers of the Insured Entity(ies) or in connection with investigations dealing with their roles as directors or officers of the Insured Entity(ies).

7.     Importantly, the Policies are "wasting" insurance policies; meaning the limits of coverage are reduced as Defense Costs are incurred.

8.     The Policies are also written on a "claims made and reported" basis, and the claims made by the Receivership Estate against the Insureds and certain claims identified below, are the only known timely claims remaining against the Policies.

**C.     Non-National Union Excess Carrier Policies**

9.     Upon information and belief, prior to the commencement of the Receivership, the following insurers ("**Non-National Union Excess Carrier(s)**") also issued liability insurance policies ("**Non-National Union Excess Policy(ies)**") to DCEH for D&O excess coverage relating to the Receivership Entities:

| Excess Carrier | Policy |
|---|---|
| Everest National Insurance Company | SC5EX00110-171 |
| Starr Indemnity and Liability Company | 1000620558171 |
| Landmark American Insurance Company | LHS674187 |
| Ironshore Indemnity Inc. | 003319500 |

**D.     The Receiver's Alleged Claims and Specified Litigation and Potential Claims**

10.     On July 8, 2020, the Receiver, by and through his counsel, Robert Glickman and Hugh Berkson, of the Law Firm of McCarthy Lebit Crystal Liffman, sent a confidential settlement demand letter to Special Settlement Counsel to DCF and the Ds&Os ("**Demand Letter**"), wherein the Receiver outlined his alleged claims against the Ds&Os ("**Receiver's Alleged Claims**").

11.     The Receiver asserts there is merit to the Receiver's Alleged Claims against the Ds&Os, and the Ds&Os dispute the validity of any and all claims by the Receiver against them. The Ds&Os, through counsel, have informed the Receiver that they will assert numerous affirmative defenses against any action the Receiver may bring against them and will vigorously defend their position through summary judgment, and trial if necessary.

12.     In addition to, or included in, the claims made by the Receiver on behalf of the

Receivership Estate, certain other parties have made, or may make, claims against the Receivership

Entities and/or the Insureds, including, without limitation, the following:

(i)     *Darlene Bolden, et al v. Argosy Education Group, LLC, et al*, Superior Court of the State of California, County of San Diego, Case No. 37-2018-00038876-CU-BT-CTL ("**Bolden Action**");

(ii)    *Emmanuel Dunagan, et al. v. Illinois Institute of Art-Chicago, LLC, et al*, United States District Court, Northern District of Illinois (Eastern Division), Case No. 19-CV-809 ("**Dunagan Action**");[5]

(iii)   *FSP Pacific Center, LLC v. Argosy Education Group, LLC*, Superior Court of the State of California, Orange County, Central Justice Center, Case No. 30-2019-01063136-CU-BC-CJC ("**FSP Action**");

(iv)    George L. Miller ("**Trustee Miller**"), as Chapter 7 Trustee of the bankruptcy estate of *In re The Art Institute of Philadelphia, LLC, et al*, United States Bankruptcy Court for the District of Delaware, Case No. 18-11535,[6] or any subsequent trustee or successor of said bankruptcy

---

[5] On February 13, 2019, the Court entered an Order [ECF No. 49] granting the Dunagan Plaintiffs' Motion to Intervene in the Receivership Case, and the Dunagan Plaintiffs have actively participated in the Receivership Case.

[6] The debtors/entities included in the definition of Trustee Miller are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Education Centers, Inc. (6160); Argosy Education Group, Inc. (5674); Argosy University of California LLC (1273); Brown Mackie College - Tucson, Inc. (4601); Education Finance III LLC (2533); Education Management LLC (6022); Education Management II LLC (2661); Education Management Corporation (9571); Education Management Holdings II LLC (2529); Higher Education Services II LLC (3436); Miami International University of Art & Design, Inc. (1065); South Education – Texas LLC (2573); South University of Florida, Inc. (9226); South University of Michigan, LLC (6655); South University of North Carolina LLC (9113); South University of Ohio LLC (9944); South University of Virginia, Inc. (9263); South University, LLC (7090); Stautzenberger College Education Corporation (4675); TAIC-San Diego, Inc. (1894); TAIC-San Francisco, Inc. (9487); The Art Institutes International Minnesota, Inc. (6999); The Art Institute of Atlanta, LLC (1597); The Art Institute of Austin, Inc. (3626); The Art Institute of California-Hollywood, Inc. (3289); The Art Institute of California-Inland Empire, Inc. (6775); The Art Institute of California - Los Angeles, Inc. (4215); The Art Institute of California-Orange County, Inc. (6608); The Art Institute of California-Sacramento, Inc. (6212); The Art Institute of Charleston, Inc. (6048); The Art Institute of Charlotte, LLC (4912); The Art Institute of Colorado, Inc. (3062); The Art Institute of Dallas, Inc. (9012); The Art Institute of Fort Lauderdale, Inc. (0255); The Art Institute of Houston, Inc. (9015); The Art Institute of Indianapolis, LLC (6913); The Art Institute of Las Vegas, Inc. (6362); The Art Institute of Michigan, Inc. (8614); The Art Institute of Philadelphia LLC (7396); The Art Institute of Pittsburgh LLC (7441); The Art Institute of Portland, Inc. (2215); The Art Institute of Raleigh-Durham, Inc. (8031); The Art Institute of St. Louis, Inc. (9555); The Art Institute of San Antonio, Inc. (4394); The Art Institute of Seattle, Inc. (9614); The Art Institute of Tampa, Inc. (6822); The Art Institute of Tennessee-Nashville, Inc. (5359); The Art Institute of Virginia Beach LLC (2784); The Art Institute of Washington, Inc. (7043); The Art Institutes International II LLC (9270); The Illinois Institute of Art at Schaumburg, Inc. (3502); The Illinois Institute of Art, Inc. (3500); The Institute of Post-Secondary Education, Inc. (0283); The New England Institute of Art, LLC (7798); The University of Sarasota, Inc. (5558); and Western State University of Southern California (3875).

estate, and including the respective debtors and their respective directors, officers, shareholders, managers, agents and members;

(v) *Raymond Gonzales v. Education Management Corporation, et al.*, Superior Court of the State of California, County of San Francisco, Case No. CGC-18-564745 ("**Gonzales Action**");

(vi) *Coleby Lombardo v. Dream Center Foundation, Inc. et al.* Superior Court of the State of California, County of Los Angeles, Case No. BC694492 ("**Lombardo Action**");

(vii) *Burge v. Education Management Corporation, et.al.* (United States District Court, Northern District of Georgia). Case No. 1:16-CV-04299-RWS, and any related arbitration ("**Burge Action**");

(viii) *Robert Gillman v. Dream Center Education Holdings, LLC, d/b/a The Art Institutes, d/b/a The Art Institute of Pittsburg,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 1:18-cv-5844 ("**Gillman Action**");

(ix) *Tolani Akamo v. South University*, District Court of Williamson County, 368th Judicial District Court, Case No. 18-1167-C368 ("**Akamo Action**");

(x) *Vallerie Hancock v. Argosy University, Phoenix*, Case No. 18-009452, filed on or about September 13, 2018 with the Arizona Office of the Attorney General ("**Hancock Action**");

(xi) Thomas J. Perrelli, the Settlement Administrator appointed to monitor the compliance of Dream Center Education Holdings with consent judgments entered into in November 2015 with the Education Management Corporation ("EDMC") and the Attorneys General of 39 states and the District of Columbia to resolve consumer-protection claims arising out of alleged unfair and deceptive practices at EDMC's for profit educational institutions and all matters arising out of the consent judgments;

(xii) U.S. Department of Labor, including, without limitation, any Notice of Intent To Take Action Letters sent to any of the Insureds ("**DOL**");

(xiii) U.S. Department of Education ("**DOE**");

(xiv) The various accrediting agencies of the Receivership Entities, including, without limitation, the Higher Learning Commission ("**Accrediting Agencies**");

(xv) The Secured Lenders under: the Senior Secured Credit and Guarantee Agreement, dated as of October 17, 2017, by and among Dream Center Education Holdings, LLC, the Arts Institutes International, LLC, Dream

Center South University, LLC, Dream Center Argosy University of California, LLC, and Dream Center Education Management, LLC, as borrowers, and Dream Center Foundation ("Parent") and certain subsidiaries of the borrowers, as guarantors, the lenders party thereto from time to time, and U.S. Bank National Association, as administrative agent and collateral agent for the Secured Lenders, as amended, amended and restated, modified, supplemented, or otherwise modified from time to time and any ancillary documents, assignments or transfers related thereto; and, the Second Lien Guaranty dated as of October 17, 2017, made by each of the guarantors party thereto in favor of U.S. Bank National Association, as collateral agent for the Secured Lenders, as amended, amended and restated, modified, supplemented, or otherwise modified from time to time and any ancillary documents, assignments or transfers related thereto;

(xvi)   The various taxing authorities, including but not limited to, the Indiana Department of Revenue; the Commonwealth of Kentucky Department of Revenue; the State of Michigan, Department of Labor and Economic Opportunity, Unemployment Insurance Agency; the Missouri Department of Revenue, Taxation Division; the Missouri Department of Labor and Industrial Relations, Division of Employment Security; the Oklahoma Employment Security Commission; the Kansas Department of Revenue; the California Department of Tax and Fee Administration; the State of Maine Revenue Services; the Illinois Department of Revenue; the Illinois Department of Employment Security; the Oregon Department of Revenue; and the Oregon Employment Department;

(xvii)  The various state and district attorney generals, including, but not limited to, the Attorney Generals of Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Vermont, Virginia, Washington and Wisconsin;

(xviii) Claims by or on behalf of former employees of DCEH, DCF and/or other entity Insureds relating to, *inter alia*, layoffs and/or closure of individual campuses, offices or locations of DCEH and/or other entity Insureds;

(xix)   Claims by or on behalf of employee welfare benefit plans sponsored by DCEH, DCF and/or other entity Insureds, fiduciaries of such plans and/or plan participants or beneficiaries of such plans; and

(xx)    All creditors (or potential creditors) of the Receivership Estate, including but not limited to, claims by or on behalf of any government agency(ies), landlord(s), lender(s), former students, former employees and/or independent contractors.

The foregoing lawsuits and/or potential claims, together with any known or unknown claims or potential claims involving the Receivership Entities, DCF, the Ds&Os, and/or the Insureds that arise from, are related to, or derive from the Receivership Entities or transactions conducted with the Receivership Entities and potentially implicate the Policies, and any and all attorneys' fees, costs or expenses arising out of or related thereto are referred to collectively as the "**Specified Litigation and Potential Claims**."

13.     The Specified Litigation and Potential Claims and all proposed third-party claims have been stayed by Orders of the Court [ECF Nos. 8, 14, 150] ("**Stay Orders**") as against the Receivership Entities, but any action against DCF is not stayed because it is not a Receivership Entity.

**E.     Settlement Agreement**

14.     The Parties and their respective professionals have engaged in lengthy negotiations in an effort to resolve all claims the Receiver has identified or asserted or could assert against the Insureds, the Insurer, and the Policies, in any manner or that might implicate the Policies, including, without limitation, each of the potential claims identified in the Receiver's Alleged Claims, and/or otherwise relating to the operations of the Receivership Entities and the Insureds, the Receivership Case, the Specified Litigation and Potential Claims, and/or any bankruptcy actions or other claim or action relating to the Receivership Entities, as more fully set forth in the Settlement Agreement (including any and all indemnification claims) that arise from, are related to, or derive from the Receivership Entities or transactions involving or related to the Receivership Entities (collectively, "**Claims**").

15.     As a result of the Parties' good-faith efforts, they successfully resolved their contested issues and entered into the Settlement Agreement, which subject to this Court's approval, will resolve all of the Claims, without the further cost and expense of litigation (the "**Settlement**").

16.     The salient terms of the Settlement, as set forth in more detail in the Settlement

Agreement, are summarized as follows:[7]

| Agreed Settlement Provisions | Summary |
|---|---|
| **Settlement Payment** | The Insureds shall cause the Insurer to pay to the Receiver from the proceeds of the Primary Policy's D&O Coverage Section, the agreed Settlement Payment in the amount of **Eight Million Five Hundred Thousand Dollars ($8,500,000.00),** consistent with, and subject to, the terms of the Settlement Agreement. |
| **Broad General Releases** | Subject to the exceptions set forth in the Settlement Agreement, the Parties will provide the broadest possible full and complete releases from any and all Claims and causes of action, whether known or unknown, including those that are currently pending or could be filed or asserted against one another. |
| **Release of Insurer and Policies** | Each of the Parties will release completely the Insurer and the Policies. The Insurer's payment of the Settlement Payment and any Defense Costs/Approved Payments will be deemed to have exhausted the limits of the Policies. Upon the Receiver's receipt of the Settlement Payment in cleared funds, the Policies shall be immediately discharged and cancelled, and the Insurer shall be immediately released from any and all obligations under the Policies. Notwithstanding the complete discharge and cancellation of the Policies, nothing in the Settlement shall be construed to release the Insurer's obligations under the Settlement Agreement. |
| **Bar Order** | The Settlement is contingent upon, among other things, the Court entering the Settlement and Bar Order approving the Settlement and incorporating a Bar Order permanently enjoining the pursuit of claims against the Insureds and Insurer as more specifically stated in the Settlement Agreement and this Motion. |
| **Termination of Settlement** | Prior to entry of the Settlement and Bar Order, all Parties shall retain, in their sole discretion, the right to terminate the Settlement at any time if they do not obtain such consideration as they deem just and proper, including the entry of the Bar Order. |
| **Preservation of Receiver's Rights to Pursue Actions for Recovery from Non-National Union Excess Carriers** | The Receiver shall retain all rights to seek recovery from any Non-National Union Excess Policy, subject to the terms and provisions in the Settlement Agreement. |

---

[7] Creditors and interested parties are encouraged to read the Settlement Agreement in its entirety.  In the event of any inconsistency between the terms of the Settlement Agreement and this Motion, the Settlement Agreement shall control.

| Agreed Settlement Provisions | Summary |
|---|---|
| **Remaining Proceeds (if any)** | The Insurer shall be authorized to utilize the Primary Policy in its sole discretion, consistent with the parties' Settlement Agreement, during the 36-Month Post-Effective Date Period. To the extent there are any Remaining Primary Proceeds in the Primary Policy after the expiration of the 36-Month Post-Effective Date Period, the Insurer shall pay such Remaining Primary Proceeds to the Receiver, or his designee, for the benefit of the Receivership Estate.  For the avoidance of doubt, the Insurer's maximum, aggregate payment under the Policies shall be $10 million, all of which shall be funded from the Shared Limit of Liability of the Primary Policy's D&O Coverage Section. |

17.     DCF has made valuable contributions to the Settlement that include the payment of the $500,000 Retention requirement necessary to implicate the Primary Policy's Non-Profit Directors & Officers Liability Coverage Section (the "**D&O Coverage Section**"). (The Receiver did not have the funds to make this payment.) Absent this payment, neither the Receiver nor any other person would have had access to the D&O Coverage Section. Moreover, DCF has continued to manage litigation against it that resulted solely from the filing of the Receivership, yet was not subject to any stay. Had DCF not managed this litigation, then competing litigants that should have looked to the Receivership for their claims may have attempted to access the proceeds of the Policies before this Settlement and negatively affected the ability of the Receiver to enter into this Settlement. Additionally, DCF and its directors and officers are Insureds and have a right to the Primary Policy proceeds for defense fees and expenses and potential indemnity obligations. DCF is willing to forego such rights as against the Primary Policy in order to allow the proceeds to fund the Settlement. Without such contributions, this Settlement may not be possible.

### III.    BASIS FOR REQUESTED RELIEF

**A.    Settlement**

18.     This court has wide discretion when determining the fairness of a settlement. *See Liberte Capital Group, LLC v. Capw*ill, 462 F.3d 543, 551 (6th Cir. 2006) (emphasizing that a district court administering an equity receivership has broad discretion). The terms of the Settlement here are fair and equitable, were negotiated in good faith, represent a compromise of matters within the duties of the Receiver, and the Settlement Agreement is consistent with and furthers the purposes of this Receivership. "The primary purpose of the equitable receivership is the marshaling of the estate's assets for the benefit of all aggrieved investors and other creditors of the receivership entities." *SEC v. Parish*, 2010 WL 8347143 (D.S.C. 2010)(citation omitted). Moreover, in administering the receivership, the District Court has broad discretion to effectuate the purpose of the Receivership.  *United States v. Vanguard Inv. Co.,* 6 F.3d 222, 226-27 (4th Cir. 1993).

19.     The Receiver respectfully submits that the Settlement Agreement is the culmination of the Receiver's efforts to marshal the Receivership Estate's assets for the benefit of the stakeholders of the Receivership Estate. Importantly, subject to the Court's approval, the Settlement will (i) provide a significant, immediate cash benefit in the amount of $8.5 million to the Receivership Estate, which will allow meaningful distributions to the Receivership Estate's stakeholders; (ii) avoid the costs and uncertainty of protracted litigation of the Receiver Estate's Claims against the Insureds, and the Specified Litigation and Potential Claims; (iii) eliminate significant claims and liabilities against the Receivership Estate; and (iv) help facilitate the long overdue closing of this complex Receivership.

20.     While the Receiver believes the Claims have merit, the probability of success in litigating the Claims against the Insureds is uncertain at best, especially considering the defenses

already raised by the Ds&Os in informal negotiations.  The Claims involve complex factual and legal issues, all of which are contested by the Ds&Os.  Litigation would require further investigation, discovery, retention of experts, preparation and prosecution of motions and preparation for trial.  The Receiver estimates that rejecting the offer and Settlement Agreement and incurring the costs to litigate the Claims, coupled with the depletion of funds available from the Policies, would net less to the Receivership Estate than the Settlement Payment.  By contrast, approval of the Settlement Agreement will eliminate the risk of this uncertainty.

21.     Moreover, because the Settlement Proceeds will be administered through the Receivership and distributed to stakeholders with allowed claims against the Receivership Estate, the result will be far more fair and efficient than having the Receiver and other creditors (*i.e.,* claimants in the Specified Litigation and Potential Claims) compete for recoveries through the prosecution of multiple lawsuits against the Insureds in various jurisdictions.

22.     Finally, the Settlement preserves the Receivership Estate's rights to pursue additional recoveries from the Non-National Union Excess Policies.

23.     Based on the foregoing, the Receiver respectfully submits that there is good and sufficient cause for the Court to approve the Settlement Agreement.

**B.      Bar Order**

**i.           The Requested Bar Order**

24.     The Settlement is contingent upon the Court entering a Bar Order to permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner, directly, indirectly or derivatively, any suit, action, cause of action, cross-claim, counterclaim, third-party claim, or other demand (including, without limitation, the Specified Litigation and Potential Claims and any of the Claims being released herein) in any federal or state court or any other judicial or non-judicial proceeding (including, without limitation,

any proceeding in any judicial, arbitral, mediation, administrative, or other forum) by any Barred Person (as defined below) against or affecting any of the Insureds or the Insurer (Insureds and the Insurer are collectively defined herein as the "**Insured Released Parties**") that arises from, relates to, or derives from the Receivership Entities or transactions involving or related to the Receivership Entities, and which is based in whole and part on any allegation, claim, demand, cause of action, matter or fact directly or indirectly relating in any way to or arising in connection with the Receivership Entities, the Insureds, the Policies, and/or the facts and circumstances underlying the Claims and all other claims that have been made or could be made, in connection with the Receiver's Alleged Claims and/or the Specified Litigation and Potential Claims, or otherwise, whether or not asserted therein, or which may implicate the Policies in any way, subject to the exceptions set forth in the Settlement Agreement (collectively, the "**Barred Claims**").  For purposes of the Bar Order,  "**Barred Persons**" shall mean any person or entity that has held, holds, may hold, or purports to hold a claim or other debt or liability or an interest in or other right against, in, arising out of, or in any way related to the Receivership Entities and the Insureds (including, without limitation, all persons that have or could bring claims in connection with the Specified Litigation and Potential Claims, or otherwise), whether that person or entity filed a proof of claim, proof of interest, or otherwise against the Receivership Estate.

25.     In the event such potential holder of a claim timely objects and the Parties and/or Court do not resolve or overrule the objection to the satisfaction of the Insured Released Parties, then the Insured Released Parties shall have the right to withdraw from the Settlement without the need for Court approval or the consent of any Party, and such Settlement shall be null and void.

26.     The intent and purpose of the Bar Order are to enjoin directly the most expansive and comprehensive group of third parties, whether such party is known or unknown, identified or

unidentified, suspected or unsuspected, named or unnamed class action members or potential class action members from pursuing any and all claims or causes of action against the Insured Released Parties that would implicate the Policies.

27.     Notwithstanding anything herein to the contrary, the Bar Order shall <u>NOT (i) relieve the Parties from their obligations under the Settlement Agreement; (ii) preclude the Barred Persons from pursuing any independent claim or action against any of the Insured Released Parties, but only if such independent claim or action is completely and wholly unrelated to the activities of the Receivership Entities and such claim is not able to implicate either of the Policies in any manner; nor (iii) preclude the Receiver from pursuing claims that would implicate any Non-National Union Excess Policies, as discussed further in paragraph 12 of the Settlement Agreement.</u>

28.     <u>The Bar Order shall be in substantially the form attached as Exhibit A and include the provisions discussed in paragraph 6 of the Settlement Agreement regarding the Receiver's subsequent settlement, if any, with any Non-National Union Excess Carrier.  To be clear, the Bar Order shall prevent any and all actions related to any of the Barred Claims against and/or that may implicate the Insurer and/or the Policies.</u>

29.     The Receiver respectfully submits that, based on the Court's inherent powers as a court of equity, this Court has the authority to approve the Settlement and releases, issue a Bar Order, and establish procedures, as necessary, relating to the Bar Order.

### ii.     Authority to Enter the Bar Order

30.     As discussed more fully below, bar orders similar to the one requested herein have been approved by the United States Court of Appeals for the Sixth Circuit as well as other courts.

31.     A district court "has broad powers in fashioning relief in an equity receivership proceeding." *Liberte Capital*, 421 F.3d at 382; *see also SEC v. Basic Energy & Affiliated Res., Inc.,* 273 F.3d 657, 668 (6th Cir. 2001). These broad powers extend to claims brought against

assets in the receivership and "the costs of defending such claims as a drain on receivership assets." *Liberte Capital*, 462 F.3d at 551 (citing *SEC v. Universal Fin.*, 760 F.2d 1024, 1038 (9th Cir. 1985)).

32.     "Blanket anti-litigation stays repeatedly have been upheld in circumstances affecting assets of a receivership estate." *SEC v. Kaleta*, No. H-09-3674, 2013 WL 2408017, *6 (S.D. Tex. 2013) (approving bar order prohibiting third-party claims by insureds against insurance company that issued policies to defendant in receivership proceeding); *see also SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010); *Liberte Capital*, 462 F.3d at 551-52. Of critical import, a district court's approval of a bar order under these circumstances, where a wasting insurance policy is at issue, protects the assets of the receivership estate by "forestalling a race to judgment that would have diminished the recovery of all creditors against receivership assets." *SEC v. Stanford Int'l Bank*, 927 F.3d 830, 843 (5th Cir. 2019) (discussing *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013)); *see also Zacarias v. Stanford International Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019).

33.     The use of bar orders is not limited to claims against the receiver or the receivership estate only; "courts have also used bar orders to bar claims against third parties settling with receiverships." *S.E.C. v. Stanford International Bank, Ltd.*, No. 3:09-CV-0298, 2017 WL 9989249, *3 (N.D. Tex. 2017).

34.     There are no stringent standards for approving a settlement or bar order in a federal receivership; "instead, a district court has wide discretion to determine what relief is appropriate." *Gordon v. Dadante*, 336 Fed. Appx. 540, 549 (6th Cir. 2009).

35.     When a Court is considering the resolution of potential claims against the receivership estate by a third party that has materially contributed to or participated in the resolution of such claims, the entry of a bar order may be especially appropriate. The approval of

a bar order also may be critical – and permissible – where a third party may refuse to participate in a settlement or resolve claims without the issuance of an injunction or stay (especially where such a settlement may resolve a significant portion of claims against a receivership estate). *See SEC v. DeYoung*, 850 F.3d 1172, 1182 (10th Cir. 2017) ("there would have been no settlement without the bar order.").

36. Bar orders that do not totally enjoin all claims concerning a receivership estate or the receiver – or preserve the right of parties to pursue claims through a claims administration process in the receivership case – have also been affirmed as valid. *See Zacarias*, 945 F.3d 883. (noting that investors may still pursue claims in the claim process in the receivership estate); *see also Kaleta*, 530 Fed. Appx. at 362 (5th Cir. 2013) (noting that investors still retained the opportunity to participate in the claims process, and retained the right to pursue certain other claims).

37. Importantly, a court's approval of a settlement and related bar order "does not necessarily require that the Court find the settlement to be a net benefit to every non-settling party." *S.E.C. v. Stanford International Bank, Ltd*., No. 3:09-CV-0298, 2017 WL 9989249 (N.D. Tex. 2017). Because of the nature of a receivership, "[t]he inability of a receivership estate to meet all of its obligations is typically the *sine qua non* of the receivership," and a court may consider nontraditional resolutions of claims that may be in the best interest of the receivership estate as a whole as part of its considerations. *Liberte Capital*, 462 F.3d at 552 (6th Cir. 2006) (finding that a blanket stay against claims against the receivership assets in a bar order was valid).

38. This Court is no stranger to the issue. It has already entered a bar order in this Receivership Case in connection with DCEH's transactions with Studio Enterprise Manager, LLC. *See* ECF No. 501.

39.     Similarly, Mr. Dottore has obtained bar orders in connection with other receivership cases in this District before the Honorable Kathleen McDonald O'Malley.  *See Gordon v. Dadante*, 336 F. App'x 540 (6th Cir. 2009) (affirming bar order in a securities fraud case involving an equity receiver); *Gordon v. Dadante*, 2008 WL 1805787 (N.D. Ohio 2008) (approving settlement with Ferris, Baker, Watts, Inc. including entry of a bar order); *Gordon v. Dadante*, 2008 WL 4625157 (N.D. Ohio 2008) (approving settlement with McDonald Investments, Inc. n/k/a KeyBanc Capital Markets, Inc. including entry of a bar order).

40.     In the *Gordon v. Dadante* case, Mr. Dottore, in his capacity as the federal court appointed equity receiver for several entities that held stock in various brokerage accounts, reflecting substantial margin debt allegedly incurred pursuant to a fraudulent scheme, asserted claims against Ferris Baker, Watts, Inc. ("**Ferris Baker**"), a brokerage firm, and (2) McDonald Investments, Inc. n/k/a KeyBanc Capital Markets, Inc. ("**McDonald**"), an investment company, under the securities laws. Mr. Dottore sought and obtained approval of settlements including similar bar orders with both Ferris Baker and McDonald. In his settlement with Ferris Barker, Ferris Baker contributed $7,200,000 to the receivership estate, delivered significant shares of stock (valued at approximately $9 million) to the receivership estate, and waived its $9 million+ claim against the receivership estate.  In exchange, the receivership estate released Ferris Baker and certain of its directors and officers, and agreed to seek approval of a bar order in favor of Ferris Baker.  Judge O'Malley approved the settlement and entered the bar order.  In the order approving the settlement agreement, Judge O'Malley found as follows:

> After its own review of the Release and Bar Order, the Court finds the conditions found therein to be both fair, and fairly typical, conditions to impose in exchange for settlement. Entry of a bar order that is required by a proposed settlement agreement is within a court's authority and discretion. *See In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996); *CFTC v. Equity Fin. Grp.*, 2007 U.S. Dist. LEXIS 53310 (D.N.J. 2007); *S.C. Nat'l Bank v.*

> *Stone,* 749 F.Supp. 1419, 1431 (D.S.C. 1990). Accordingly, the Court approves the Settlement Agreement and declines to require modification of any aspect of the Settlement Agreement, its attendant Releases, or the Bar Order. Within seven (7) days of the date of this Order, the Court will enter the *Bar Order, Injunction and Dismissal of Claims* attached to the proposed settlement agreement as Exhibit A.

*Gordon v. Dadante*, 2008 WL 1805787, *14 (N.D. Ohio 2008).

41.     Notably, the bar order entered in favor of Ferris Baker barred claims by the "Non-Settling Defendants," which included (a) all defendants, counter-defendants, cross-defendants and third-party defendants, other than Ferris Baker, in the underlying litigation; and (b) any other person or entity that directly or through his/her/its counsel had been served with notice of the hearing on the Motion. The Non-Settling Defendants were barred "from commencing, prosecuting or asserting claims for indemnity or contribution against [Ferris Baker] (or any other claim against [Ferris Baker] where the injury to the Non-Settling Defendant is the Non-Settling Defendant's liability to the [receivership entity]) arising out of or relating to the claims or allegations in the Receivership Action, the Small Action or the Amantea Action, trading in the stock of Innotrac Corporation, or the conduct of a former employee of Ferris Baker, Stephen J. Glantz." *See Gordon v. Dadante,* Case No. 1:05CV2726 (N.D. Ohio 2008), ECF No. 362.

42.     Thereafter, a group of former investors (Regalbuto Plaintiffs) appealed the Order approving the Ferris Baker settlement, including the bar order. The Court of Appeals for the Sixth Circuit affirmed and remarked that "no federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." 336 Fed. Appx. at 549 (citing *Liberte Capital Group, LLC,* 462 F.3d at 551).

43.     In Mr. Dottore's settlement with McDonald, McDonald delivered shares of stock (valued at approximately $562,000) to the receivership estate, and waived its claim against the

receivership estate.  In exchange, the receivership estate released McDonald and its directors and officers, and agreed to seek approval of a bar order in favor of McDonald. Judge O'Malley approved the settlement and entered the requested bar order.

44.    Accordingly, there is ample authority to enter the Bar Order as requested.

### iii.    Application of Authority to Requested Bar Order

45.    Exercising its broad, equitable powers, the Court should approve the Settlement, including the entry of the Bar Order requested.

46.    First, the Insureds (and the Insurer) are parting with significant consideration in exchange for the Bar Order. The Settlement calls for the Insureds to cause the Insurer to pay $8.5 million from the Primary Policy's proceeds to the Receiver for the benefit of the Receivership Estate. In addition, certain of the non-Receivership Entities that are Insureds under the Policies (namely, DCF) have given additional valuable consideration. As set forth above, DCF has (i) contributed the payment of the $500,000 retention requirement necessary to implicate the Primary Policy; (ii) continued management of litigation against it which deterred competing litigants from asserting claims against the Receivership Estate or from accessing proceeds of the Policies before this Settlement; and (iii) agreed to forego certain rights against the Primary Policy in order to allow the proceeds to fund the Settlement.

47.    That is why the entry of the Bar Order is a critical condition of the Settlement, without which, the Insureds would not enter into the Settlement Agreement. *DeYoung*, 850 F.3d at 1182. The Insureds face known and unknown claims by third parties, other than the Receiver, stemming from their conduct in connection with the Receivership Entities, including the Specified Litigation and Potential Claims, which may implicate the Policies. As a result of the Insureds' agreement to have the Insurer fund the $8.5 million Settlement Payment to the Receivership Estate, the Policies will be deemed exhausted. Without the entry of the Bar Order, the Insureds will face

the Specified Litigation and Potential Claims without the benefit of the Policies' coverage. That is an untenable result for the Insureds.

48.     Moreover, the Settlement also provides additional value to the Receivership Estate by eliminating the indemnification and contribution claims the Insureds would have against the Receivership Entities.

49.     Further, the Bar Order is limited to enjoining any claims, including derivative claims that belong to the Receivership Estate, and does not bar independent claims against the Insured Released Parties that are wholly unrelated to the Receivership Entities and do not implicate the Policies. Because the Receiver preempts the field with respect to these claims, including the Specified Litigation and Potential Claims, the Bar Order is narrowly tailored and equitable under the circumstances.

50.     Similar to the bar order approved by the Fifth Circuit in the *Stanford* receivership, this Bar Order protects the assets of the receivership estate by "forestalling a race to judgment that would have diminished the recovery of all creditors against receivership assets." *SEC v. Stanford Int'l Bank*, 927 F.3d at 843. Indeed, the Policies are wasting policies. By entering the Bar Order and channeling all claims that could implicate the Policies to the Receivership Estate, the Court is preserving the Policies' proceeds for the benefit of the Receivership Estate's stakeholders. That is especially so under the circumstances where the Receivership Estate is preserving the right to seek additional recoveries from the Non-National Union Excess Policies.

51.     Finally, the Bar Order does not prevent the Barred Persons from bringing claims against the Receivership Estate. Instead, the Bar Order would not prohibit any party, including claimants in the Specified Litigation and Potential Claims, from asserting claims against the Receivership Estate, where such claims should properly be brought and adjudicated.  In fact, some

of the claimants in the Specified Litigation and Potential Claims have already intervened and are actively involved in the Receivership Case.

52.     Consistent with the foregoing, the Receiver respectfully submits there is good and sufficient cause to enter a Bar Order in connection with the Settlement.

**C.     Insurer's Payment of Defense Costs/Approved Payments**

53.     As set forth in the Settlement Agreement, the Parties agree to cooperate with the Insureds so that all of their current and future reasonable attorneys' fees, professional fees, and expenses that arise from, are related to or derive from (i) the Receivership Entities, or transactions conducted with the Receivership Entities, and which may implicate the Policies, including, without limitation, the Claims (including but not limited to the Receiver's Alleged Claims), and the Specified Litigation and Potential Claims, as well as any and all other claims, if any, that may be disguised derivative claims that are in actuality claims the Receiver, any bankruptcy trustee, liquidator, or successor to the Receivership Entities has possessed, now possesses, or could ever possess as rightful holder of derivative claims of the Receivership Entities that may implicate the Policies; and (ii) the enforcement of the Settlement and Bar Order against any Barred Persons, and related matters ("**Defense Cost Matters**") will be funded by the Primary Policy's proceeds without the necessity of satisfying any additional retention or co-insurance amounts under the Polices, provided that such payments will not interfere with nor affect the payment of the Settlement Payment. The Receiver agrees, and respectfully requests the Court approve in the Settlement and Bar Order the following terms regarding payment of Defense Costs/Approved Payments:

(a)     The automatic stay imposed by the Court in the Initial Receiver Order, and any other Order entered in the Receivership Estate, and/or any other applicable injunction ("**Stay**") does not apply to the proceeds of the Primary Policy.  To the extent the Stay applies to any portion of the Policies, it is modified and lifted to allow the Insurer in its reasonable discretion, to settle, advance and make payment from the Remaining Policy Proceeds of the Primary Policy's D&O Coverage Section on behalf of any and all Insureds

under the Primary Policy, either jointly or severally, for (i) any and all Claims that have been or may be made against the Policies and/or any of the Insureds, whether direct or indirect, including, without limitation, claims by the Receiver and for any Defense Costs Matters, (ii) any and all other applicable Loss covered under the Policies, and (iii) any and all Defense Costs (including for Defense Costs Matters), and including payments for fees and expenses to defense counsel, experts, or other third-party professionals and vendors, who may be retained on behalf of the Insureds, that have already incurred or will be incurred in connection with any such Claims or potential litigation ("**Approved Payments**");

(b)     The Insurer is authorized and allowed, but not directed, to make the Approved Payments under the terms herein on behalf of the Insureds. The Insurer, in accordance with the Policies and subject to all rights of the Insureds and their counsel, shall determine if the Approved Payments (including Defense Costs) are reasonable and necessary, and no further motion, notice or court order is necessary for the Insurer to make the Approved Payments;

(c)     The Approved Payments shall reduce the Shared Limits of Liability applicable to the D&O Coverage Section of the Primary Policy and shall not be considered a violation of the Stay, nor shall they be considered property of the Receivership Estate;

(d)     The Receiver, the Receivership Entities, the Receivership Estate, and any subsequent receiver, trustee or successor for the Receivership Entities, are not allowed to recover any payment of Defense Costs, including attorneys' fees, advanced in accordance with the terms of the Primary Policy and the Settlement and Bar Order;

(e)     Nothing in this Settlement Agreement nor the Settlement and Bar Order shall constitute (i) a waiver, modification, or limitation of the contractual rights and obligations provided for in the Policies or the Insurer's reservation of all of its rights, remedies and defenses under the Policies; nor (ii) a finding that such sums are due and owing under either the Policies;

(f)     Nothing in the Settlement Agreement nor the Settlement and Bar Order shall give the Insureds or their counsel, representatives, agents, or assigns, or anyone acting through them, any rights in and to the Settlement Payment, and the Parties expressly acknowledge that, notwithstanding anything in the Settlement Agreement, in the event the Insurer fails to pay any of the Insureds' current and future reasonable attorneys' fees, professional fees, and expenses relating to the Receivership, the Specified Litigation and Potential Claims, the Settlement Agreement, the enforcement of the Settlement and Bar Order against any Barred Persons, and related matters, for any reason, the Insureds or their counsel, representatives, agents or assigns or anyone acting through them shall have no claim in or to the

Settlement Payment and the Releases herein in favor of Receiver shall remain in full force and effect; and

(g)    The Settlement and Bar Order shall be immediately valid and fully effected upon its entry and any applicable stay shall be waived.

## IV.    NOTICE

54.    Notice of this Motion will be provided pursuant to the provisions of this Court's Order on the Receiver's Motion seeking approval of the form and manner of notice, which is being filed simultaneously herewith.

## V.    NO PRIOR REQUEST

55.    No party has made any prior request for the particular relief sought in this Motion to this or any other court in connection with this Receivership Case.

## VI.    CONCLUSION

56.    For the reasons stated above, the Receiver respectfully submits that the Settlement and Bar Order meets the applicable legal standards for approval and is in the best interest of the Receivership Estate and its creditors, and represents the exercise of the Receiver's sound and prudent business judgment.  Moreover, subject to the Court's approval, the Settlement will avoid lengthy, burdensome, and expensive litigation, and bring substantial cash to this Estate.

**WHEREFORE**, the Receiver respectfully requests that this Court enter the Settlement and Bar Order, in substantially the form attached hereto as Exhibit A:  (a) granting this Motion; (b) approving the terms of the Settlement Agreement (including approval of the Bar Order,  and the requested modification of the Stay, to the extent applicable, regarding the Approved Payments); and (c) granting any further relief as the Court deems appropriate.

RESPECFULLY SUBMITTED this 18th day of February, 2021.

/s/ Mary K. Whitmer
Mary K. Whitmer (0018213)
James W. Ehrman (0011006)
Robert M. Stefancin (0047184)
WHITMER & EHRMAN LLC
2344 Canal Road, Suite 401
Cleveland, Ohio 44113-2535
Telephone: (216) 771-5056
Telecopier: (216) 771-2450
Email:   mkw@WEadvocate.net
           jwe@WEadvocate.net
           rms@WEadvocate.net

*Counsel for Mark E. Dottore, Receiver*