IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, ) | Case No. 1:19-cv-145 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| SOUTH UNIVERSITY OF OHIO, LLC, *et al.* ) | |
| ) | |
| Defendants. ) | **ORDER ON OBJECTIONS TO** |
| ) | **RECEIVER'S SETTLEMENT WITH** |
| ) | **INSURANCE CARRIER** |

I. **The Proposed Settlement**

Mark E. Dottore, the court-appointed receiver in this action, filed a motion to approve a settlement he negotiated with National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and persons insured under primary and excess insurance policies ("settlement policies") issued by National Union. ECF Doc. 674 ("Initial Motion to Approve").

According to the receiver,

> [T]he settlement policies "generally provide[d] certain coverage to protect and indemnify the directors and officers of the Insured Entity(ies) in connection with Losses, including Defense Costs, judgments, and settlements, arising from particular types of claims that might be made against them in their capacity as directors or officers of the Insured Entity(ies) or in connection with investigations dealing with their roles as directors or officers of the Insured Entity(ies)."

ECF Doc. 674 at 3. The receiver alleges that on July 8, 2020 he, through counsel, asserted claims against the directors and officers ("Ds&Os") of Dream Center Foundation and made a

1

settlement demand against them. ECF Doc. 674 at 4. He contends the Ds&Os dispute the receiver's claims and have informed the receiver that they have various affirmative defenses that could be asserted. *Id.* The receiver advised the court that at least twenty other claims against the receivership estate have been or could be asserted by various persons and entities. ECF Doc. 674 at 5-6. He points out that such claims "potentially implicate the policies." ECF Doc. 674 at 6.

After various objections were filed in response to the receiver's Initial Motion to Approve, the receiver negotiated revisions to the settlement agreement and filed an amended motion to approve the revised agreement. ECF Doc. 721 ("Amended Motion to Approve").[1] The court set a time for the filing of additional objections. ECF Doc. 722. Timely objections were filed by: Victoria Rice (ECF Doc. 726); Megan Castillo (ECF Doc. 727); Cherisse Hunter-Southern (ECF Doc. 728); and jointly by Emmanuel Dunagan, Robert Infusino, Jessica Muscari, and Stephanie Porreca (ECF Doc. 729) ("Dunagan Intervenors").

The receiver filed a declaration in support of the amended motion to approve. ECF Doc. 742, ECF Doc. 744. The Dunagan Intervenors filed a reply brief in support of their objections. ECF Doc. 746. The United States filed a statement of interest in which it responded to the receiver's argument that the Dunagan Intervenors were preempted from continuing to assert their claim in their Northern District of Illinois case. ECF Doc. 747.

The court conducted a hearing on August 18, 2021 on the objections to the amended motion to approve the settlement. During the hearing, the court indicated the proposed settlement agreement would not be approved unless it provided a means by which the Dunagan Intervenors (and other claimants) could "litigate" their claims. On that same date, the court

---

[1] The court considers all objections filed in response to the original motion to approve to be moot inasmuch as the amended motion to approve superseded the original motion.

2

ordered the receiver to submit a proposed order to establish a proposed litigation trust. ECF Doc. 749.

The receiver, in compliance with the court's order, filed his motion to approve a litigation trust. ECF Doc. 752. The Dunagan Intervenors (ECF Doc. 755) opposed that motion. And the receiver filed a reply in support. ECF Doc. 756.

The objections are ripe for disposition. The court analyzes the objections in two groups: (1) the Dunagan Intervenors, and (2) all other student intervenors.

## II.     Dunagan Intervenors' Objection

When the Dunagan Intervenors requested the right to intervene in this action, they did so, "to ensure that they have a forum to present their claims as well as represent the interests of students harmed by defendants." ECF Doc. 35-1 at 2. The Dunagan Intervenors had earlier filed a putative class action in Illinois state court that was removed to federal court in an action now pending in the Northern District of Illinois, *Dunagan v. Ill. Inst. of Art*, No. 19-cv-0809 (N.D. Ill.). The case alleges misrepresentations by DCEH and one of its member schools, the Illinois Institute of Art. *See generally* ECF Doc. 35-1 at 3. Further, as pointed out by the receiver (ECF Doc. 737 at 5), the Dunagan Intervenors also sued the Secretary of Education and the U.S. Department of Education, seeking relief for the same damages claimed both in this action and in the Illinois action. *Infusino v. DeVos, et al.,* No. 19-3162 (D. D.C.). According to the receiver, the *DeVos* litigation was settled to the advantage of the Dunagan Intervenors and attorney fees were awarded.

The Dunagan Intervenors also benefitted from and acknowledge that their rights have been affected by the Consent Judgment entered into by forty states' attorneys general, overseen by Settlement Administrator Thomas J. Perrelli, who also has intervened in this action ("DCEH and the Art Institute's misrepresentations to students about accreditation were incorporated into

3

the Settlement Administrator's oversight of the Consent Judgment."). ECF Doc. 35-1 at 5. The Dunagan Intervenors represented to this court that their Illinois action against DCEH, the Illinois Institute of Art and the Dream Center Foundation was to "recover tuition paid to the Art Institute . . . along with other damages." *Id.* at 4. The Dunagan Intervenors acknowledged that "[t]he Receivership Order stays their lawsuit in Cook County against DCEH and the Art Institute." *Id.* at 5.[2] And they asked to intervene to ensure that "their claims are considered along with those of other creditors before the Receiver disposes of the Defendants' assets." *Id.* at 6. The Dunagan Intervenors agreed that, to the extent they sought relief from receivership entities, this receivership action stayed their Illinois action. ECF Doc. 729 at 9. But the Illinois case continues in active litigation against Dream Center Foundation. ECF Doc. 729 at 9-11.

      The Dunagan Intervenors assert several different arguments in their objection to the receiver's settlement and bar order. First, they argue that the court does not have the authority to issue the bar order against them. They ask the court to consider the following factors as limits to its authority: (1) whether the objecting parties' claims are "independent and non-derivative" to those brought by the receiver; (2) whether the barred parties can "participate in the receivership process;" (3) whether the barred parties' suits "directly affect the receiver's assets;" and (4) whether the settlement brings "full and final peace" to the settling parties. *Zacarias v. Stanford Int'l Bank,* 945 F.3d 883, 897 (5th Cir. 2019)*; SEC v. Kaleta*, No. H-09-3674, 2013 U.S. Dist. LEXIS 7717120 (S.D. Tex. May 31, 2013) ("*Kaleta I*"); *cf. In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002) (holding that a bankruptcy court may release a non-consenting creditor's claim against a non-debtor only when seven factors are satisfied).

---

[2] The Dunagan Intervenors have asserted that they have always had the right to proceed in their action against Dream Center Foundation and any individual officers and directors thereof.

They further contend: they have not consented to this court's personal jurisdiction; the court's *in rem* jurisdiction does not extend to bar their claims; the receiver has not demonstrated standing to bring his alleged claims against DCF and the Ds&Os; the receiver has not demonstrated that his claims are substantially identical to the intervenors' claims; they will not benefit from an alternative compensation scheme; their claims do not affect receivership assets; the proposed settlement agreement does not bring full and final peace to the insureds; they continue to suffer harm that has not been fully compensated; and the receiver has not demonstrated the fairness of the proposed settlement. ECF Doc. 729 at 10-25. The court will address each of their arguments in turn.

### A. Personal Jurisdiction over Intervenors

The Dunagan Intervenors first argue that they have only consented to appear in this court to have it determine issues of jurisdiction. ECF Doc. 729 at 16. Their argument is not well taken. The intervenors moved to intervene near the beginning of the case, in February 2019. ECF Doc. 35. Until now, they have not argued that the court lacked personal jurisdiction over them. To the contrary, as noted above, they predicated their request to intervene upon the stated desire, "to ensure that they have a forum to present their claims as well as represent the interests of students harmed by defendants." ECF Doc. 35-1 at 2. The Dunagan Intervenors have been diligent in doing just that: presenting their claims. Further, they have objected to many of the receiver's motions and have frequently sought rulings from the court. The Sixth Circuit has held: "a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction," even when an intervenor attempts to reserve the issue of personal jurisdiction despite intervening. *County Sec. Agency v. Ohio DOC*, 296 F.3d 477, 483 (6th Cir. 2002); *see also SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("[A] party has consented to jurisdiction

5

when the party took some kind of affirmative act [such as] submitting a claim.") *United States v. Oregon,* 657 F.2d 1009, 1017 n.18 (9th Cir. 1981) (holding that "the court below gained personal jurisdiction over [the defendant] when it intervened as of right"); *City of Santa Clara v. Kleppe*, 428 F. Supp. 315, 317 (N.D. Cal. 1976) (holding that "by voluntarily intervening in this action under Rule 24, F.R.C.P., [the defendant] has submitted to the jurisdiction of this court").  Here, the court has personal jurisdiction over the Dunagan Intervenors because they voluntarily intervened in this case, never expressed that they were specially appearing while reserving a personal jurisdiction objection, and have both actively participated in the action and indicated a desire to assert their claims.

### B. In Rem Jurisdiction over Intervenors' Claims, Receiver's Standing and "Substantially Identical" Claims

The Dunagan Intervenors argue that the court lacks *in rem* jurisdiction over their claims because they do not directly affect the receivership property.  Rather, they contend that they have alleged fraud and misrepresentation claims against Dream Center Foundation arising from the statements about the accreditation status of the Illinois Institute of Art.  And they assert that the Ds&Os of DCF and/or DCEH are personally liable for such misrepresentations.  The Dunagan Intervenors contend the court does not have the power to bar such claims.  This argument is closely related to the intervenors' contention that the receiver lacks standing.  The intervenors argue that the receiver has not shown that any of the receivership entities have suffered an injury that can be traceable to the actions of the Ds&Os.

One of the assets of the receivership estate is its collection of claims or potential claims against EDMC and/or the directors and officers of DCF and/or DCEH.  It is the potential prosecution of those claims that precipitated the negotiations between the receiver, DCF, and the Ds&Os of DCF and/or DCEH.  To the extent the Ds&Os could satisfy those claims by virtue of

6

the National Union policies, the insurance policy proceeds are indirect assets of the receivership estate. As asserted by the receiver, "[t]he appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets." *Robb Evans & Associates, LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010), citing, *Pope v. Louisville, N.A. & C. Ry. Co.,* 173 U.S. 573, 19 S.Ct. 500 (1899). *See also, Alexander v. Hillman*, 296 U.S. 222, 56 S. Ct. 204, 237 (1935).

During the hearing on the receiver's motion to approve and issue bar order, the court directly asked receiver's counsel if the receiver was claiming that the fraudulent conduct of the Ds&Os had injured the receivership estate.

> THE COURT: … does the Receiver contend that the Directors and Officers of DCEH and [its member schools] engaged in a pattern of fraudulent activity regarding the financing of the schools, the accreditation of the schools, and the availability of health care coverage [to] employees of the schools from the time of DCEH's acquisition of the schools until the establishment of the Receivership, which was January of 2019, is that correct?
>
> MS. WHITMER: Your Honor, I believe that was one of the claims that we made against the insurance policies.

Hearing Tr. pp. 2-3; ECF Doc. 751[3]. Thus, contrary to the Dunagan Intervenors' arguments, the court finds that the receiver *has* alleged that the receivership suffered an injury traceable to the actions of the Ds&Os. In fact, the receivership estate's injury is more easily traceable to their actions than the Dunagan Intervenors' remaining uncompensated damages. The court also finds that the Dunagan Intervenors' claims against DCF and the Ds&Os are not "independent and non-derivative" from the receiver's similar claims, and that they involve assets claimed by the receivership. *Zacarias,* 945 F.3d at 897.

---

[3] This is an unedited version of the hearing transcript.

The Dunagan Intervenors and the receiver both allege that DCEH and DCF employees, and the Ds&Os made misrepresentations adversely affecting DCEH member schools, and specifically, the Illinois Institute of Art. They also both allege they suffered monetary damages as a result of those actions. The Dunagan Intervenors contend their damages include unreimbursed college expenses incurred while attending an unaccredited school. The receiver alleges the Illinois Institute of Art and DCEH were damaged by the Ds&Os' misrepresentations and failure to preserve accreditation, which doomed the school to lose federal funding, students, and the ability to operate. The court finds the claims of the Dunagan Intervenors and the receiver's causes of action against the Ds&Os are substantially identical. And there can be no doubt that both sets of claims impact the National Union insurance policy proceeds.

Moreover, the reason it is necessary to bar the intervenors' claims against DCF and the Ds&Os is because, absent the negotiated bar order, the receiver, and counsel for DCF have advised that neither the Ds&Os nor DCF would waive indemnification rights they may have under the National Union policies. In this sense, the need for the proposed bar order is similar to the situation addressed in *SEC v. Kaleta,* 530 F. App'x 360, 362 (5th Cir. 2013) (unpublished). In *Kaleta*, the district court approved a settlement between a court-appointed receiver and third parties who were closely affiliated with the receivership entities. 530 F. App'x at 361-62. As part of the settlement, the district court entered a bar order enjoining other investors from commencing any legal action against the third party entities arising from the underlying fraud. *Id*. at 362. A subset of investors challenged the district court's entry of the bar order, but the Fifth Circuit affirmed. *Id*. Recognizing that a district court has wide discretion to determine the appropriate relief, the court reviewed the factors the district court considered. It noted that there would have been no settlement without the bar order and that "the settlement expressly

8

permit[ted] Intervenors and other investors to pursue their claims by 'participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate.'" *Id.* The Dunagan Intervenors object to the receiver's reliance on *Kaleta*, citing *SEC v. Stanford International Bank, Ltd.*, 927 F.3d 830, 843 (5th Cir. 2019). But after criticizing *Kaleta*, the *Stanford* decision distinguished it and explained why a bar order is justified here:

> In *Kaleta*, the bar order prevented defrauded investors from suing parties closely affiliated with the entity in receivership after the parties had agreed to make good on their guarantees to the receiver. Moreover, the settling parties would have been codefendants with receivership entities, leading to the possibility of their asserting indemnity or contribution from the estate. The court was forestalling a race to judgment that would have diminished the recovery of all creditors against receivership assets. That bar order protected the assets of the receivership estate, whereas the bar orders before us extend beyond receivership assets.

*Id.* at 843. The same is true here. The Ds&Os of DCEH and DCF are potential parties against whom the receiver alleges he has causes of action. The Ds&Os and DCF have agreed, in exchange for the protection of the bar order, to release any claim they may have under the National Union policies. The bar order simply prevents "a race to judgment" and the assertion of claims against the National Union policy proceeds. The Dunagan Intervenors have been running this race since the institution of their Illinois case. And the very prosecution of that action erodes the assets of the receivership, because every dollar National Union pays to defend the Ds&Os in Illinois is a dollar that would otherwise be available to the receivership.

As noted above, the court indicated it would not approve the proposed settlement unless a litigation trust was established that permitting the Dunagan Intervenors – and others – to obtain further relief. The receiver has now filed a motion for an order approving such a trust. The proposed litigation trust will be funded, in part, by the National Union policy proceeds to which the Ds&Os are relinquishing their rights. With the approval of the proposed litigation trust, the granting of the amended motion to approve the insurance settlement and issuance of a bar order

9

will not prevent the Dunagan Intervenors from participating in the receivership process. And the proposed litigation trust expressly requires the receiver to set aside proceeds from any ancillary litigation to further compensate the Dunagan Intervenors (along with other claimants against the receivership estate). It puts them on equal footing with other non-secured creditors, treating them no more or less favorably than any other creditor. Like the *Kaleta* court, the court is willing to exercise its broad equitable powers to issue the bar order because, without such an order, there would be no settlement, and the receivership would not have funding to pay any claims.

### C. Benefit of Alternative Compensation Scheme For Intervenors Continued Uncompensated Harm

The Dunagan Intervenors argue that they will not benefit from an alternative compensation scheme. ECF Doc. 729 at 24. And they assert that the benefits of the litigation trust are illusory. ECF Doc. 755 at 5.

The Dunagan Intervenors acknowledge receipt of monetary relief for the losses sustained by the alleged wrongdoing by their former schools, DCF and the Ds&Os. For example, they obtained loan discharges from the U.S. Department of Education through the *DeVos* litigation, and they were permitted to transfer credits earned at the Illinois Institute of Art to other, accredited schools. Factoring their federal loan discharges, the intervenors essentially received portions of their education at no cost. Nevertheless, they contend their claims should not be barred because they have not yet been *fully* compensated. Their filings include documentation to substantiate their claims of uncompensated harm. *See* ECF Doc. 730, ECF Doc. 731, ECF Doc. 732, ECF Doc. 733, ECF Doc. 734. However, as already explained, the anticipated litigation trust will permit the Dunagan Intervenors to "litigate" their claims, albeit not in the forum in which they have filed their action and not in a way that allows them the first bite at the apple of

the Ds&Os assets. The bar order will not preclude them from continuing to seek compensation, and the litigation trust will enable them to participate in the receivership process. These instruments will also ensure that others in similar or more aggrieved positions will have an opportunity to recover some of the damages caused by the fraudulent conduct of the insured parties.

Inherent in any equity receivership is the need to adopt processes that divide limited resources among legitimate claimants. Although the court has made every effort to oversee a receivership that does just that, the reality is that some will be left not fully compensated. This group will likely include landlords who rented space to DCEH schools, medical care claimants who are not fully reimbursed, vendors who supplied computers and software to the DCEH schools, and students who did not receive all they were promised. Many students were forced to transfer mid-college. DCEH employees scrambled to find new jobs or to have their rights preserved. Law students faced the risk of not being able to sit for their bar exam after years in school. The U.S. Department of Education had to cancel thousands of student loans, costing the U.S. taxpayers tens of millions of dollars. Some who taught school in 2019 are still awaiting compensation over two years later.

Given these realities, it is no ground for objection that an alternative compensation system – or litigation trust – will not necessarily enable every claimant to recover all of their claimed damages. And, balancing the equities, the court must take the steps necessary to secure assets for the receivership even though, by doing so, some may be negatively impacted.

### D. Intervenors' Claims Impact Receivership Assets

The intervenors contend that the insurance policy proceeds are not part of the receivership's assets and, therefore, that their claims do not impact the receivership. ECF Doc. 729 at 27. This argument is not well taken. As discussed above, the prosecution of the Dunagan

11

Intervenors' Illinois claims directly impacts assets that are available to the receivership. The insurance assets would not be available to the receivership but for the actions of the receiver to assert claims against the Ds&Os and to negotiate the settlement thereof with their (and DCF's) carrier. And those insurance proceeds are being eroded by the insureds' (and insurer's) cost of defending that case. By approving the settlement agreement and issuing the bar order, the court will be exercising its broad equitable powers to preserve the insurance proceeds – putative assets of the receivership estate – for the benefit of many.

### E. Full and Final Peace to Insureds

The intervenors argue that the court should not approve the receiver's settlement because it will not bring full and final peace to the insureds under the policy. ECF Doc. 729 at 28. The intervenors cite *Kaleta I,* stating that without "full and final peace" parties typically will not settle with a receiver. See ECF Doc. 729 at 28. Then, they argue that the receiver's settlement agreement will not bring full and final peace to the insureds because the receiver and the U.S. government retain the right to sue the insureds. But even if the receiver's proposed settlement agreement would not bring full and final peace to the insureds, it is the insureds – not the Dunagan Intervenors – who have standing to raise such an argument.

Further, it is disingenuous for the Dunagan Intervenors to object to the settlement on the ground that it does not bring "final peace" when it is *they* who seek to maintain their Illinois federal case, something that prevents closure of the claims against the insureds. The intervenors' argument seems to be that, if the insureds are willing to leave open the possibility that the receiver and government might sue them, they shouldn't object to the Dunagan Intervenors suing them also. But this argument overlooks the receiver's and U.S. government's unique positions compared to the countless individuals who could bring claims similar to the intervenors' claims.

The insureds have consented to the settlement agreement; it is not for the intervenors to object to a lack of full and final peace.

### F. Fairness of the Proposed Settlement

Finally, the Dunagan Intervenors argue that the receiver has not demonstrated the fairness of the proposed settlement. ECF Doc. 729 at 31. The court disagrees. The court has reviewed the settlement agreement carefully and did not merely accept the representations of the receiver. In fact, the court has required the receiver to propose a litigation trust and a method by which the Dunagan Intervenors can obtain further relief. That proposed trust has been submitted to the Dunagan Intervenors.

The receiver has garnered the consent to the proposed settlement agreement from numerous parties who have substantial claims against the receivership assets. Included among them are the secured creditors and the United States Department of Labor. If approved, the settlement will immediately bring $8.5 million into the receivership estate. Those funds would be used to: reimburse certain pre- and post-receivership health care expenses incurred by former DCEH employees; pay unpaid salary claims of former employees of the Art Institute of Las Vegas (which obligations accrued during the receivership); and then pay expenses of the receivership, secured creditors, and other claimants. If the settlement is not approved, the receiver would be unable to satisfy any of those claims. And if the Dunagan Intervenors' claims against the insureds are allowed to be litigated, the insureds will not waive their contractual rights under the National Union policies.

Given all of the foregoing, the court finds that the proposed settlement is fair and equitable and in the best interest of the receivership estate. The court has the authority to extinguish the claims of non-consenting parties when the best interest of the receivership estate

may be served thereby.  But here, the court does not fully extinguish the Dunagan Intervenors' claims.  Instead, a mechanism will be established that will allow them to continue to seek recovery through the receiver's actions under a litigation trust.  Every receivership, by definition, requires the careful management of limited assets and the making of difficult choices.  Here, the proposed settlement is a reflection of that exact process.

The Dunagan Intervenors' objections to the settlement are not well taken and must be overruled.

### III. Remaining Student Objections

Three other objections were filed in response to the receiver's amended motion for an order approving settlement agreement:

1) Objection by Victoria Rice (ECF Doc. 726);
2) Objection by Megan Castillo (ECF Doc. 727); and
3) Objection by Cherisse Hunter-Southern.  (ECF Doc. 728).

These three objections appear to have been filed by former students of EDMC schools and are vaguer than the Dunagan Intervenors' objection.  These former students appear to have asserted claims against their former EDMC schools, entities that are not a part of the receivership.  And, as the receiver has pointed out (ECF Doc. 738), the proposed bar order would not affect the ability of these former EDMC students to continue with their claims against those schools or to make claims against the receivership.  Further, the receiver advises that some of these claimants have an avenue to assert their claims in the bankruptcy case filed by or against the former EDMC schools.  Nothing about the proposed settlement impacts the ability of these former student objectors to pursue their claims in that bankruptcy case.

To the extent the former EDMC students have claims against the National Union insureds – which claims would likely be long barred by the statute of limitations – their claims would be partly limited: they would be barred from directly suing the National Union insureds.  But the former EDMC students could, if they chose, continue to pursue their existing lawsuits.  And they could, conceivably, seek a way to participate in the claims asserted by the litigation trust.

The court has required that the receiver establish a litigation trust in which claimants such as Ms. Rice, Ms. Castillo and Ms. Cherisse Hunter-Southern are provided with a forum for bringing their claims.  The settlement agreement proposed by the receiver is the first step for funding the litigation trust.  For equitable reasons including those stated above, the court overrules the objections filed by Ms. Rice (ECF Doc. 726), Ms. Castillo (ECF Doc. 727) and Ms. Hunter-Southern.  ECF Doc. 728.

**IV.    Conclusion**

The court finds the objections filed by the Dunagan Intervenors (ECF Doc. 692, ECF Doc. 729) to be not well taken and overrules the same.  Likewise, the court finds the objections filed by former EDMC students Victoria Rice (ECF Doc. 726), Megan Castillo (ECF Doc. 727) and Cherisse Hunter-Southern (ECF Doc. 728) to be not well taken and overrules the same.  The court will rule on the motion to approve the settlement in a separate order.

IT IS SO ORDERED.

Dated: October 20, 2021        *s/Dan Aaron Polster*
United States District Judge

*s/Thomas M. Parker*
Thomas M. Parker
 United States Magistrate Judge